IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ALAN GRAYSON,

     Plaintiff,

                               CASE NO.: 6:20-cv-01824-PGB-LRH

v.

NO LABELS, INC.; PROGRESS TOMORROW,
INC.; UNITED TOGETHER, INC.; NANCY
JACOBSON, MARK PENN, and JOHN DOE(S)

     Defendants.

_____/

## DEFENDANTS' MOTION TO DISMISS THE COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Defendants No Labels, Inc. ("No Labels"), Progress Tomorrow, Inc. ("Progress Tomorrow"), United Together, Inc. ("United Together"), Nancy Jacobson ("Jacobson"), and Mark Penn ("Penn") (together, "Defendants"), by and through their undersigned counsel, pursuant to Fed. R. Civ. P. 12(b)(2) and (6), and M.D. Fla. L. R. 3.01, hereby move to dismiss Plaintiff Alan Grayson's ("Grayson" or "Plaintiff") Complaint (the "Complaint") with prejudice and as grounds state as follows:

## PRELIMINARY STATEMENT

As eloquently stated in the landmark decision *New York Times v. Sullivan*, there is "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials. . . (I)t is of the utmost consequence that the people should discuss the character and qualifications of candidates for their suffrages. The importance to the state and to society of such discussions is so vast, and the advantages derived

are so great that they more than counterbalance the inconvenience of private persons whose conduct may be involved, and occasional injury to the reputations of individuals must yield to the public welfare, although at times such injury may be great. The public benefit from publicity is so great and the chance of injury to private character so small that such discussion must be privileged." *New York Times v. Sullivan*, *376* U.S. 254, 270, 281 (1964) (internal citations omitted). It is against this backdrop that the Complaint should be examined.

Plaintiff Alan Grayson, a career lawyer and politician, is a former member of the United States House of Representatives and was a candidate once again in 2018[1], when he lost a Democratic Primary election for Florida's Ninth Congressional District to United States House Representative, Darren Soto on August 28, 2018. Instead of graciously accepting defeat in his failed election bid, Grayson has decided to direct his efforts toward finding others to blame for his own personal failure. In fact, this is not his only lawsuit related to his failed election bid.[2] Plaintiff's Complaint is a misguided and inappropriate attempt to blame his political opponents for his defeat and to deter them from engaging in constitutionally protected free speech through intimidation and harassment in the form of a lawsuit.  Grayson's Complaint attempts to paint Defendants as "right-wing" conspirators with an agenda aimed at "destroy[ing] the reputations of progressive political candidates," conveniently ignoring the fact that his opponent, who Defendants are implicitly

---

[1]     Grayson was a candidate for the House of Representatives again in 2018, because he gave up his seat in the House of Representatives when he decided to run for Florida's United States Senate seat in 2016 and lost. His former staff director -- turned wife, ran in the primary election for Grayson's vacated House seat in 2016 and lost to Darren Soto, who ultimately won the general election. Grayson then sought to reclaim his House seat in 2018, running against Soto, the incumbent, in the Democratic primary election.

[2]     Grayson filed a separate lawsuit against his former legal client claiming that the client defamed him and injured his reputation prior to the subject election. The action captioned *Alan Grayson v. Thomas Ubl*, bearing case number 2020-CA-007854-O, was filed in the Ninth Judicial Circuit in and for Orange County, Florida and is currently pending.

alleged to have backed in the subject election, is a self-described "proud progressive" Democrat, Darren Soto.[3]

Setting aside Grayson's inappropriate motives and intimidation tactics, the Complaint is fatally defective on multiple levels as a matter of law and should therefore be dismissed. In the first instance, the Court should dismiss all claims against defendants Jacobson, Penn, and No Labels, as it lacks personal jurisdiction over them. The only allegations against defendant Jacobson are in her capacity as President of defendant No Labels. Because Jacobson cannot be considered a co-conspirator with her own company under the "intra-corporate conspiracy" doctrine there are no independent allegations that subject her to personal jurisdiction in Florida. As it pertains to defendant Penn, the vague and ambiguous allegations against him, based on hearsay and innuendo, are insufficient to establish personal jurisdiction over him in this State, where it is clear that he did not commit any tortious conduct in the State of Florida and had no involvement in any conspiracy that would subject him to jurisdiction. Similarly, No Labels, a Washington D.C. 501(c)(4) organization with no offices or employees in Florida, that  did not commit any tortious conduct in the State of Florida, and had no involvement in any conspiracy that would subject it to jurisdiction, is not subject to personal jurisdiction in Florida.

In addition, the Complaint is simply improperly pled as a whole insofar as every cause of action asserted by the Plaintiff lumps together all of the Defendants without ascribing individual tortious conduct to any particular defendant. Further, each of the Plaintiff's claims fails in its own right as a matter of law.

Plaintiff's defamation claims fail for at least four reasons: (i) the defamation claims are

---

[3]     *See* Darren Soto For Congress, *Darren Soto Democrat For Congress*, www.darrensoto.com (last visited October 9, 2020).

LAW OFFICES LEGON FODIMAN, P.A.
3225 AVIATION AVENUE, SUITE 301, MIAMI, FL 33133 · TEL: 305-444-9991 · FAX: 305-444-9937

insufficiently pled as a matter of law; (ii) plaintiff has failed to allege malice in a more than conclusory manner; (iii) the alleged defamatory statements are protected under the "fair report" privilege; and (iv) the defamation claims are at least partially barred by the statute of limitations.

Next, Plaintiff's claims for cyberstalking and invasion of privacy fail under the "single publication/single action" doctrine, as they are based on the same facts as the failed defamation claim. Moreover, even if they were not barred by the "single publication/single action" doctrine, the cyberstalking claims fail because they only allege that statements were made ***about*** Grayson, not that that they were ***directed to*** him, as required under Florida law.

Likewise, the invasion of privacy claims fail in their own right because they do not allege that Defendants published facts that are actually true, as is legally required to establish such a claim. In fact, the invasion of privacy claims are based on publication of allegedly false statements, which are not actionable under an invasion of privacy theory.

Further, as it pertains to the fraudulent transfer claims, they are improperly pled because they merely adopt statutory buzzwords without alleging any specific fraudulent transfers.

Lastly, the civil conspiracy claims fail because there is no legally viable underlying tort to support the civil conspiracy claims and they are, in any case, insufficiently pled as a matter of law.

For all of these reasons, set forth in greater detail below, the Court should dismiss Plaintiff's Complaint in its entirety and with prejudice.

<u>**FACTUAL AND PROCEDURAL BACKGROUND**</u>

**Procedural History**

Plaintiff Grayson, a Florida resident, filed the instant Complaint on or about August 19, 2020 in the Ninth Judicial Circuit in and for Orange County, Florida asserting Florida state law claims against Defendants, who are each citizens of other states. *See generally* Complaint (attached

LAW OFFICES LEGON FODIMAN, P.A.
3225 AVIATION AVENUE, SUITE 301, MIAMI, FL 33133 · TEL: 305-444-9991 · FAX: 305-444-9937

hereto as Exhibit A). Defendants removed the case to this Court on October 2, 2020, based on diversity jurisdiction, as there is complete diversity of citizenship between Plaintiff and all Defendants and the amount in controversy exceeds $75,000.00. *See* Notice of Removal [D.E. 1].

**Summary of Allegations of the Complaint[4]**

Plaintiff Grayson alleges that No Labels, through Jacobson, its President and founder, raised money from donors to run "attack ads" against Grayson in connection with Grayson's 2018 campaign for Florida's Ninth District seat in the United State House of Representatives. *See* Compl. at ¶¶ 11, 15-17. Specifically, Grayson alleges that No Labels and Jacobson obtained a $500,000.00 contribution from a donor, which was made to United Together and then transferred to Progress Tomorrow. *See id.* at ¶¶ 15-16. Further, Grayson alleges, based on hearsay obtained from a complaint in a New York court pleading, that Penn supposedly "was calling all the shots regarding No Labels-related campaign activity." *See id.* at ¶ 13.

Grayson then alleges that Defendants (without specifying which specific defendants), at some unspecified time during 2018, publicly communicated statements disparaging Grayson to voters in the Ninth District prior to the August 28, 2018 election. *See id.* at ¶ 17.  In particular, Grayson alleges that Defendants published statements on various social media platforms and websites concerning a Congressional Ethics Investigation[5] lodged against Grayson and unspecified

---

[4]     The Defendants assume the truth of the allegations asserted in the Complaint, as they must, only for purposes of moving to dismiss this action for failure to state a cause of action pursuant to Fed. R. Civ. P. 12(b)(6).  However, for all other purposes, the Defendants deny all allegations of wrongdoing in the Complaint.

[5]     Defendants request that the Court take judicial notice of the December 18, 2015 Report (the "Report") adopted by the Office of Congressional Ethics of the United States House of Representatives concerning Representative Alan Grayson, attached hereto as Exhibit B. *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1280 (11th Cir. 1999) ("[i]n determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record ... may be taken into account.") (internal citations omitted).

LAW OFFICES LEGON FODIMAN, P.A.
3225 AVIATION AVENUE, SUITE 301, MIAMI, FL 33133 · TEL: 305-444-9991 · FAX: 305-444-9937

"false allegations" made by his ex-wife Lolita Carson-Grayson that were taken from news reports. *See id.* at ¶¶ 18-22. Grayson further alleges that Progress Tomorrow spent at least $544,480.00 in his race, primarily in negative advertising. *See id.* at ¶ 23. Lastly, the Complaint alleges without any factual basis, by merely regurgitating the elements of a fraudulent transfer claim, that the corporate defendants, No Labels, Progress Tomorrow, and United Together were somehow stripped of their assets in order to defraud creditors and become judgment proof. *See id.* at ¶ 14.

Based on the above allegations, Plaintiff asserts five boiler-plate causes of action against all Defendants collectively, failing to parse out allegations against any individual defendant and merely parroting the legal elements of each cause of action without providing factual support for each element. *See id.* at ¶¶ 29-58. Specifically, Plaintiff asserts claims for defamation (Count I), invasion of privacy (Count II), cyberstalking (Count III), civil conspiracy (Count IV), and fraudulent transfer (Count V), seeking both monetary and injunctive relief. *See id.*

**Jurisdictional Facts Concerning Defendant Penn**

Defendant Mark Penn is resident and citizen of Washington D.C. *See* Declaration of Mark Penn, attached hereto as <u>Exhibit C</u>, at ¶ 2. He has no involvement whatsoever with any of the entities named in the Complaint and therefore, has not and could not have plausibly conspired with any of these entities to commit a tort in the State of Florida. *See id.* at ¶¶ 4-5. In fact, Penn's only relationship to any of the defendants is as husband of defendant Nancy Jacobson. *See* Compl. at ¶ 7. Moreover, at no point has Penn engaged in any individual tortious conduct in the State of Florida directed toward Plaintiff Alan Grayson or anyone else for that matter. *See* Ex. C at ¶ 3.

**Jurisdictional Facts Concerning Defendant Jacobson**

Defendant Nancy Jacobson is a resident and citizen of Washington D.C. *See* Declaration of Nancy Jacobson, attached hereto as <u>Exhibit D</u>, at ¶ 2. She is the President and founder of

defendant No Labels, an organization for which she volunteers her time without receiving any compensation. *See id.* at ¶ 3-4. Jacobson has not engaged in any individual tortious conduct in the State of Florida directed toward Plaintiff Alan Grayson or anyone else for that matter. *See id.* at ¶ 5. Moreover, although she vehemently denies the allegations of the Complaint, accepting the alleged facts as true as required under Fed. R. Civ. P. 12(b)(6), to the extent that Jacobson is alleged to have conspired to commit a tort in the State of Florida, such allegations are asserted against Jacobson solely in her capacity as President and founder of defendant No Labels. *See id.* at ¶¶ 6-7.

**Jurisdictional Facts Concerning Defendant No Labels**

Defendant No Labels is a 501(c)(4) organization committed to fighting political polarization and gridlock, incorporated in Washington D.C, with its principal place of business in Washington D.C. *See* Declaration of Corporate Representative of No Labels, Inc., attached hereto as <u>Exhibit E</u>, at ¶ 2. It has no offices or employees in Florida. *See id.* at ¶ 5. It has not engaged in any tortious conduct in Florida against Grayson or otherwise. *See id.* at ¶ 6. In addition, it has not conspired to commit a tort in the State of Florida against Grayson or otherwise. *See id.* at ¶ 7. In fact, No Labels was not involved in any way in any of the conduct alleged in the Complaint concerning the subject election involving Grayson. *See id.* at ¶ 8.

<u>**ARGUMENT**</u>

**I.      STANDARD OF REVIEW**

**A.  Applicable Law**

It is a long-recognized principle that federal courts sitting in diversity "apply state substantive law and federal procedural law." *Hanna v. Plumer*, 380 U.S. 460, 465 (1965). Specifically, courts "apply the substantive law of the forum state." *See Admiral Ins. v. Feit Mgmt.*

LAW OFFICES LEGON FODIMAN, P.A.
3225 AVIATION AVENUE, SUITE 301, MIAMI, FL 33133 · TEL: 305-444-9991 · FAX: 305-444-9937

*Co.*, 321 F.3d 1326, 1328 (11th Cir. 2003).

### B.  Fed. R. Civ. P. 12(b)(2) Standard

On a motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), "[t]he plaintiff bears the burden of making out a prima facie case for personal jurisdiction by presenting evidence to withstand a directed verdict motion." *Thomas v. Brown*, 504 F. App'x 845, 847 (11th Cir. 2013) (*citing Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006)); *Oldfield v. Pueblo de Bahia Lora, S.A.*, 558 F.3d 1210, 1217 (11th Cir. 2009) ("[W]here the defendant challenges the court's exercise of jurisdiction over its person, the plaintiff bears the ultimate burden of establishing that personal jurisdiction is present."). "If a plaintiff pleads sufficient material facts to support the exercise of personal jurisdiction, the burden shifts to the defendant to challenge the plaintiff's allegations by affidavits or other competent evidence." *Klayman v. Judicial Watch, Inc.*, 2013 U.S. Dist. LEXIS 126789, at *13 (S.D. Fla. Sep. 5, 2013). If a defendant rebuts a plaintiff's prima facie case that the defendant is subject to personal jurisdiction in the forum state, the burden shifts to the plaintiff to prove jurisdiction by affidavits, testimony or documents. *United Bully Kennel Club*, 2011 U.S. Dist. LEXIS 163196 at *9 (S.D. Fla. Oct. 4, 2011); *Kim v. Keenan*, 71 F. Supp. 2d 1228, 1231 (M.D. Fla. 1999); *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627 (11th Cir. 1996).

### C.  Fed. R. Civ. P. 12(b)(6) Standard

Under Fed. R. Civ. P. 12(b)(6), "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' ... it demands more than an unadorned, the-defendant-unlawfully-harmed me accusation." *Id.* (*quoting*

*Twombly*, 550 U.S. at 555). A pleading must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 129 S. Ct. at 1950 (*citing Twombly*, 550 U.S. at 556). To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949.

## II.    THE CLAIMS AGAINST PENN, JACOBSON, AND NO LABELS SHOULD BE DISMISSED AS THE COURT LACKS PERSONAL JURISDICTION OVER THEM

In order to determine whether a court has personal jurisdiction over an individual defendant, a court must assess: (1) whether the plaintiff has alleged facts sufficient to establish a basis for jurisdiction under Florida's Long-Arm Statute, Fla. Stat. § 48.193 and, if so, then (2) whether the court's exercise of jurisdiction satisfies the Due Process Clause of the Fourteenth Amendment of the Constitution. *Erwin v. Ford Motor Co*., 2016 U.S. Dist. LEXIS 185960, at \*10 (M.D. Fla. Aug. 31, 2016) (*citing Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990)). "Only if both prongs of the analysis are satisfied may a federal or state court exercise personal jurisdiction over a nonresident defendant." *Id.* Under the Florida Long-Arm Statute, a defendant can be subject to personal jurisdiction in one of two ways: (1) jurisdiction that is based upon a defendant's "substantial and not isolated activity" in the State of Florida (i.e. general personal jurisdiction), regardless of whether or not the asserted claims involve the defendant's activities in Florida; or (2) jurisdiction arising out of or relating to defendant's contacts with Florida (i.e. specific personal jurisdiction). *Carmouche v. Tamborlee Mgmt., Inc*., 789 F.3d 1201, 1204 (11th Cir. 2015).

Here, the Complaint alleges that jurisdiction over Penn, Jacobson, and No Labels is based on the second prong of the Long-Arm Statute -- specific jurisdiction, as Plaintiff alleges that Penn,

Jacobson, and No Labels "committed tortious acts within this state and within this judicial district." *See* Compl. at ¶ 9. This is simply erroneous as a matter of law for the reasons set forth below.

### A. The Court Lacks Personal Jurisdiction Over Penn Because He Did Not Commit a Tortious Act or Conspire to Commit a Tort in the State of Florida

Since Penn, a citizen and resident of Washington D.C., is not alleged to have committed any independent tortious acts in Florida, the only basis for jurisdiction against him, is under a theory of conspiracy to commit a tort in Florida.[6] *See id.* at ¶¶ 7, 12-13. In particular, Plaintiff lobs sparse and conclusory legal allegations against Penn merely asserting that he was "calling all the shots regarding No Labels-related campaign activity" (*see id.* at ¶ 13), in a feeble attempt to establish specific jurisdiction under Fla. Stat. § 48.193(1)(a)(2).  However, Plaintiff's conclusory allegations are simply untrue and uncorroborated by any actual facts. Indeed, Penn has no relationship with and exercises no control over No Labels, United Together, or Progress Tomorrow, nor did he participate in any of the activities alleged in Complaint or commit any tortious acts in the State of Florida, by conspiracy or otherwise. *See* Ex. C at ¶¶ 3-5. Without such exercise of control or participation, jurisdiction cannot be established. *See Hard Candy, LLC v. Hard Candy Fitness, LLC*, 106 F. Supp. 3d 1231 (S.D. Fla. 2015) (finding individual defendant's lack of control over corporate defendant's allegedly infringing activities insufficient to establish specific jurisdiction).

---

[6]    It bears noting that to the extent Plaintiff seeks to base long-arm jurisdiction over Penn and Jacobson on the fraudulent transfer claim, a fraudulent transfer is not a "tortious act" under Florida's long-arm statute. *See Edwards v. Airline Support Grp., Inc.*, 138 So. 3d 1209, 1212 (Fla. 4th DCA 2014).

LAW OFFICES LEGON FODIMAN, P.A.
3225 AVIATION AVENUE, SUITE 301, MIAMI, FL 33133 · TEL: 305-444-9991 · FAX: 305-444-9937

Therefore, Penn's lack of involvement in the alleged civil conspiracy precludes the exercise of personal jurisdiction over Penn under the Florida Long-Arm statute and renders the due process analysis academic. For these reasons, the Court should dismiss the Complaint as against Penn.

**B.   The Court Lacks Personal Jurisdiction Over Jacobson Because She Did Not Commit A Tortious Act in the State of Florida and Cannot Be Considered A Co-Conspirator Under the Intra-Corporate Conspiracy Doctrine**

Likewise, the Court lacks personal jurisdiction over defendant Jacobson. It is well-settled under Florida law that acts of a corporate employee performed in a corporate capacity do not form the basis for jurisdiction over the corporate employee in an individual capacity. *See  Doe v. Thompson*, 620 So. 2d 1004, 1006 (Fla. 1993) (*citing* Estabrook v. Wetmore, 129 N.H. 520, 529 A.2d 956 (1987) (acts of corporate employee performed in corporate capacity do not form the basis for jurisdiction over corporate employee in individual capacity)).

Here, the only acts alleged against Jacobson, are in her capacity as President of No Labels. *See* Compl. at ¶¶ 7, 11, 15. Thus, these acts cannot form the basis for personal jurisdiction over her in her individual capacity.

In addition, the intra-corporate conspiracy doctrine prevents Jacobson from being held personally liable for conspiracy. Under the intra-corporate conspiracy doctrine, "a civil conspiracy claim will not succeed where the only members of the alleged conspiracy are a corporation and/or its officers." *HRCC, Ltd. v. Hard Rock Cafe Int'l (USA), Inc.*, 302 F. Supp. 3d 1319, 1325 (M.D. Fla. 2016). This is because the actions of corporate agents, acting within the scope of their employment, are attributed to the corporation itself, thereby negating the multiplicity of actors needed for a conspiracy. *See id.* Thus, because Jacobson is alleged to have conspired with her employer, defendant, No Labels, she cannot be held liable for conspiracy under the "intra-corporate conspiracy" doctrine. *Lipsig v. Ramlawi*, 760 So.2d 170, 180 (Fla. 3rd DCA 2000)

11

(finding that "neither an agent nor an employee can conspire with his or her corporate principal or employer"). In any case, as set forth below, No Labels was not involved in any tortious conduct in the state of Florida or any conspiracy to commit a tort in the State of Florida.

Accordingly, the allegations of civil conspiracy to commit a tort in Florida would not form a basis for personal jurisdiction over Jacobson.

For these reasons, the Court lacks personal jurisdiction over and should dismiss the Complaint against Jacobson.

### C. The Court Lacks Personal Jurisdiction Over No Labels Because It Did Not Commit a Tortious Act or Conspire to Commit a Tort in the State of Florida

The Court, likewise, lacks personal jurisdiction over No Labels. It is well-settled that where, as here, an out-of-state corporation rebuts allegations that it committed a tort in the State of Florida or conspired to commit a tort in Florida, the claims against the corporation must be dismissed for lack of personal jurisdiction. *See United Technologies Corp. v. Mazer*, 556 F.3d 1260, 1279-83 (11th Cir. 2009) (dismissal of complaint against corporation was warranted where corporation rebutted jurisdictional allegations of complaint by affidavit establishing that corporation did not engage in tortious conduct in Florida or conspire to commit a tort in Florida so as to trigger long-arm jurisdiction); *see also Dynetech Corp. v. Leonard Fitness, Inc.*, 523 F. Supp. 2d 1344, 1348 (M.D. Fla. 2007) (dismissing action for lack of personal jurisdiction and noting that "Plaintiffs have not presented any evidence of any purposeful availment of the privilege of conducting activities in Florida.").

Here, No Labels has established that it is a Washington D.C. corporation with its principal place of business in Washington D.C. *See* Ex. E at ¶ 2. Moreover, it has no offices or employees in the State of Florida. *See id.* at ¶ 5. Most importantly, No Labels was not involved in any way in

LAW OFFICES LEGON FODIMAN, P.A.
3225 AVIATION AVENUE, SUITE 301, MIAMI, FL 33133 · TEL: 305-444-9991 · FAX: 305-444-9937

any of the conduct alleged in the Complaint concerning the subject election involving Alan Grayson. *See id.* at ¶ 8. Thus, No Labels did not commit any tortious act in the State of Florida, nor did it conspire to commit a tortious act in Florida, against Grayson or otherwise. *See id.* at ¶¶ 6-7. Accordingly, there is no basis for long-arm jurisdiction over No Labels in Florida.

Therefore, the Court should dismiss the Complaint against No Labels for lack of personal jurisdiction.

### III.    THE COMPLAINT IS IMPROPERLY PLED AS A WHOLE

Setting aside the jurisdictional issues, the Complaint, taken as a whole, has glaring defects. The Complaint at bar is very similar to the complaint considered by the United States Eleventh Circuit Court of Appeals in *Magluta v. Samples*. In that case the court directed the trial court to strike the complaint, stating that:

> The complaint is a quintessential "shotgun" pleading of the kind we have condemned repeatedly . . It names fourteen defendants, and all defendants are charged in each count. The complaint is replete with allegations that "the defendants" engaged in certain conduct, making no distinction among the fourteen defendants charged . . . Each count incorporates by reference the allegations made in a section entitled "General Factual Allegations . . . while also incorporating the allegations of any count or counts that precede it. The result is that each count is replete with factual allegations that could not possibly be material to that specific count . . . This type of pleading completely disregards Rule 10(b)'s requirement that discrete claims should be plead in separate counts, . . . and is the type of complaint that we have criticized time and again.

*Magluta v. Samples* 256 F.3d 1282, 1284 (11th Cir. 2001).

Here, as in *Magluta*, the Complaint amounts to a "shotgun pleading." It groups all defendants together in each count, making no distinction among the five defendants charged. *See* Compl. at ¶¶ 29-58. Moreover, it incorporates by reference the same "general allegations" section into each cause of action. *See* Compl. at ¶¶ 30, 41, 46, 53, 57. The Complaint thus improperly fails to put each individual defendant on notice as to the conduct and claims being alleged against them

and hamstrings Defendants' ability to respond to the Complaint.

For these reasons, the Complaint should be dismissed as a whole.

## IV.   PLAINTIFF FAILS TO STATE A CLAIM FOR DEFAMATION

Setting aside the egregious pleading deficiencies in the Complaint as a whole, each cause of action alleged fails on its own merits. In the first instance, the defamation claims are riddled with fatal defects that warrant dismissal. Specifically, (i) the defamation claims are insufficiently pled as a matter of law; (ii) plaintiff has failed to allege malice in a more than conclusory manner; (iii) the alleged defamatory statements are protected under the "fair report" privilege; and (iv) the defamation claims are at least partially barred by the statute of limitations.

Courts have long held that with respect to defamation claims, pretrial dispositions are "especially appropriate because of the chilling effect these cases have on freedom of speech." *Stewart v. Sun Sentinel Co.*, 695 So. 2d 360, 363 (Fla. 4th DCA 1997) (internal citations omitted). Thus, courts routinely dismiss defamation claims at the motion to dismiss stage. *See id.* at 363 (affirming dismissal of defamation claims by trial court at motion to dismiss stage); *Huszar v. Gross*, 468 So. 2d 512, 516 (Fla. 1st DCA 1985) (affirming trial court dismissal of defamation claims and stating "trial courts, upon motions to dismiss, routinely make decisions as to whether a privilege applies to protect an allegedly defamatory statement.").

### A.  The Defamation Claims Are Insufficiently Pled

To properly plead a claim for defamation, a plaintiff "must allege that (1) [defendant] published a false statement; (2) about [plaintiff]; (3) to a third party; (4) proximately damaging [plaintiff]." *SZS Sols., Inc. v. Brother Int'l Corp.*, No.17-CV-61942, 2018 WL 3126220, at *2 (S.D. Fla. June 26, 2018) (internal citations omitted). Further, "a plaintiff 'must allege certain facts such as the identity of the speaker, a description of the statement, and provide a time frame within

which the publication occurred.' " *Five for Entm't S.A. v. Rodriguez*, 877 F. Supp. 2d 1321, 1328 (S.D. Fla. 2012) (noting that a defamation claim based on a press release and statements allegedly uttered by defendant "in the days or weeks following ... November 17, 2010 ..." and failed to include a sufficient description of the statements was conclusory and subject to dismissal) (internal citations omitted). Moreover, the allegations of defamation must be pled with specificity or face dismissal. *See Jackson v. North Broward County Hospital District*, 766 So. 2d 256, 257 (Fla. 4th DCA 2000) ("As to the defamation count, not only does Jackson's complaint fail to specifically identify the persons to whom the allegedly defamatory comments were made, the complaint also fails to link a particular remark to a particular defendant.").

Here, with respect to the Defendants' purported republication of defamatory statements allegedly made by Grayson's ex-wife Lolita Carson-Grayson, other than merely stating in a conclusory manner that the statements were false and disparaging, the Complaint does not identify what was said whatsoever. *See* Compl. at ¶¶ 20-21. Nor does the Complaint state when the statements were published or which of the Defendants published them. *See id.* Similarly, the allegations concerning statements about Grayson's Congressional Ethics Investigation provide no time frame for when the statements were published, or which particular defendant published them. *See* Compl. at ¶ 18.

Thus, the defamation claims are insufficiently pled and should be dismissed as a matter of law. *See Malhotra v. Aggarwal*, No. 1:17-CV-24407, 2019 WL 3425161, at *2 (S.D. Fla. July 30, 2019) (dismissing defamation claim that failed to identify the specific statements claimed to be defamatory and when they were uttered).

### B.  Plaintiff Has Failed to Allege Malice in a More Than Conclusory Manner

As an additional ground for dismissal, the defamation claim fails to properly allege

"malice," as required under Florida law. It is well-settled that public figure defamation plaintiffs are held to a heightened burden. *See New York Times v. Sullivan*, 376 U.S. 254, 280-282 (1964); *Silvester v. Am. Broad. Cos.*, 650 F. Supp. 766, 770 (S.D. Fla. 1986).  A public figure cannot prevail in a defamation claim unless he proves that the statement was made with "actual malice" that is, with knowledge of its falsity or with reckless disregard for the truth. *See New York Times v. Sullivan,* 376 U.S. at 280. A candidate for public office, such as Grayson, is considered a public figure subject to the "actual malice" standard. *See Monitor Patriot Co. v. Roy*, 401 U.S. 265, 277 (1971) ("we therefore hold as a matter of constitutional law that a charge of criminal conduct, no matter how remote in time or place, can never be irrelevant to an official's or a candidate's fitness for office for purposes of application of the 'knowing falsehood or reckless disregard' rule of *New York Times Co. v. Sullivan*.") Under the "actual malice" standard there must be sufficient evidence to permit the conclusion that the defendant actually had a "high degree of awareness of… probable falsity." *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964). Allegations that only contain "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to support the "actual malice requirement." *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 703–04 (11th Cir. 2016) ("Michel has not sufficiently pled facts giving rise to a reasonable inference that the defendants published the story knowing that it was false or with reckless disregard for whether it was false or not. For starters, we can disregard the portions of the complaint where Michel alleges in a purely conclusory manner that the defendants were 'reckless' in publishing the article.").

Here, Plaintiff merely states in a purely conclusory manner that the statements "were made with knowledge of their falsity, or reckless disregard of it." *See* Compl. at ¶¶ 24, 32, 33. Without any supporting factual allegations there is simply no basis to conclude that that Defendants

published statements with "actual malice" and thus the defamations claims lack an essential element.

For these additional reasons, Plaintiff's claims for defamation should be dismissed as a matter of law.

### C. The Alleged Defamatory Statements Concerning the Congressional Ethics Investigation are Protected Under the "Fair Report" Privilege

If the above issues were not sufficiently fatal to Plaintiff's defamation claims, the claims would still be barred by the "fair report" privilege. Under the "fair report" privilege, publishers have a "qualified privilege to report accurately on information received from government officials [which] extends to the publication of the contents of official documents, as long as the account is reasonably accurate and fair." *Rasmussen v. Collier Cty. Pub. Co.*, 946 So. 2d 567, 570 (Fla. 2d DCA 2006). The reporting need not "be exact in every immaterial detail or conform to the precision demanded in technical or scientific reporting." *See Woodard v. Sunbeam Television Corp.*, 616 So. 2d 501, 502–03 (Fla. 3d DCA 1993) (internal citations omitted). The "statement does not have to be perfectly accurate if the 'gist' or the 'sting' of the statement is true.... A statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Marder v. TEGNA Inc.*, No. 19-81283-CIV, 2020 WL 3496447, at *5 (S.D. Fla. June 29, 2020) (internal quotations omitted).

Here, Plaintiff's defamations claims are based, at least in part, on allegations that Defendants published communications concerning a Congressional Ethics Investigation lodged against Grayson. *See* Compl. at ¶ 18. Plaintiff takes issue with comments allegedly posted by Defendants stating: "Congressional Ethics Investigation Found Alan Grayson Abused His Position in Congress to enrich himself;" "A Congressional Ethics Investigation found evidence that Alan

Grayson Abused his Position in Congress to enrich himself;" ". . . as a congressman, he . . . Hid income on his public disclosures;" "as a congressman, he . . . Used taxpayer resources to conduct his high risk investor scheme;" "Alan Grayson Used his Congressional [sic] Office for His Own Financial Gain." *See id.* All of this information is derived from the December 18, 2015 Report adopted by the Office of Congressional Ethics of the United States House of Representatives. *See* Ex. B. For example, the Report states in its "Conclusion" that:

> there is substantial reason to believe that Representative Grayson permitted the use of his name by four entities connected to Representative Grayson's hedge fund and Grayson Consulting, Inc. of Virginia that provided professional services involving a fiduciary responsibility, and received compensation through management fees from the Grayson Fund Management Company, LLC . . . there is substantial reason to believe that during his congressional service, Representative Grayson maintained a contingent fee interest in legal proceedings in which the United States government had a direct and substantial interest and therefore agreed to receive compensation, for representational services performed by others, while he was a Member of Congress, in proceedings involving the government . . . there is substantial reason to believe that Representative Grayson omitted required information from his annual financial disclosure statements related to reportable assets, income, agreements, and positions . . . there is substantial reason to believe that Representative Grayson's congressional staffer used official resources for unofficial purposes, including the use of staff time and resources to perform work for Representative Grayson's hedge fund . . .there is substantial reason to believe that Representative Grayson held contracts or agreements with the federal government, through his membership in limited partnerships, while serving in Congress.

*See* Ex. C. at ¶¶ 251-255.

Thus, it is clear that Defendants' publication of a fair report of the December 18, 2015 Report adopted by the Office of Congressional Ethics of the United States House of Representatives concerning its investigation into Grayson, is privileged under the "fair report" privilege and cannot form the basis for Plaintiff's defamation claims. *See Marder*, 2020 WL 3496447, at *4 (dismissing defamation claim based on statements constituting substantially accurate accounts of court proceedings).

LAW OFFICES LEGON FODIMAN, P.A.
3225 AVIATION AVENUE, SUITE 301, MIAMI, FL 33133 · TEL: 305-444-9991 · FAX: 305-444-9937

For this additional reason, the Plaintiff's defamation claims should be dismissed as a matter of law.

### D. The Defamation Claims Are At Least Partially Barred by the Two-Year Statute of Limitations

Even assuming, *arguendo*, that Plaintiff's claims for defamation were not fatally flawed for the reasons set forth above, they are, in any case, time-barred to the extent they rely on statements made more than two years before Plaintiff filed his Complaint.

Florida has a two-year statute of limitations for libel or slander. *See* Fla. Stat. § 95.11(4)(g). "Defamation encompasses both libel and slander[.]" *Klayman v. Judicial Watch, Inc.*, 22 F.Supp.3d 1240, 1247 n. 2 (S.D. Fla. 2014) (internal citations omitted). The limitations period begins running from the time the cause of action accrues. Fla. Stat. § 95.031. A cause of action for defamation accrues on the date of publication, not the date of discovery. *Wagner, Nugent, Johnson, Roth, Romano, Erikson & Kupfer, P.A. v. Flanagan*, 629 So.2d 113 (Fla. 1993); *see also* Fla. Stat. § 770.07 ("The cause of action for damages founded upon a single publication or exhibition or utterance, as described in s. 770.05, shall be deemed to have accrued at the time of the first publication or exhibition or utterance thereof in this state."). Moreover, where an alleged defamatory statement was continuously published multiple times by mere virtue of being on an internet website, the first publication date starts the statute of limitations clock. *See Norkin v. The Fla. Bar*, 311 F. Supp. 3d 1299, 1303–04 (S.D. Fla. 2018) (recognizing first publication rule as applicable to material posted on the internet).

Here, Plaintiff alleges that the purported defamatory statements were published online by the Defendants during some unspecified period during 2018. *See* Compl. at ¶¶ 15-25. Because the Complaint was filed on August 19, 2020, any defamation claims based on statements that were

LAW OFFICES LEGON FODIMAN, P.A.
3225 AVIATION AVENUE, SUITE 301, MIAMI, FL 33133 · TEL: 305-444-9991 · FAX: 305-444-9937

published prior to August 19, 2018 are time-barred under Florida's two-year statute of limitations. *See generally* Compl. Further, because the subject statements were alleged to have been made in the lead up to Grayson's election held on August 28, 2018, it is likely that most, if not all statements forming the basis of this Complaint are not actionable. *See* Compl. at ¶¶ 15-25. Thus, the Court should dismiss as time-barred any claims of defamation based on statements published prior to August 19, 2018.

For all of these reasons, Plaintiff's defamation claims fail as a matter of law.

## V.   THE "SINGLE PUBLICATION/SINGLE ACTION" RULE BARS PLAINTIFF'S CLAIMS FOR CYBERSTALKING AND INVASION OF PRIVACY

Even assuming that Plaintiff's claims for cyberstalking and invasion of privacy did not fail in their own right for the reasons set forth *infra* Points VI and VII, they are, in any case barred by Florida's "single publication/single action rule." Florida follows the "single publication/single action rule," which prohibits a party from basing additional torts on the same essential facts as a failed defamation claim. *See Callaway Land & Cattle Co. v. Banyon Lakes C. Corp.*, 831 So. 2d 204, 208 (Fla. 4th DCA 2002).

In this case, the same essential set of facts used to support the Plaintiff's failed defamation claim are also used to support his causes of action for invasion of privacy and cyberstalking. *Compare* Compl. ¶ 29-39 *with* ¶¶ 40-51. In fact, no separate facts are alleged under either cause of action as each claim refers to the "General Allegations" section of the Complaint. *Compare* Compl. ¶ 30 *with* ¶¶ 41, 46.

Accordingly, the Plaintiff's claims for invasion of privacy and cyberstalking should be dismissed under the "single publication/single action" rule. *See, e.g., Ovadia v. Bloom*, 756 So.2d 137, 141 (Fla. 3d DCA 2000) (invasion of privacy count barred by single publication/single action

LAW OFFICES LEGON FODIMAN, P.A.
3225 AVIATION AVENUE, SUITE 301, MIAMI, FL 33133 · TEL: 305-444-9991 · FAX: 305-444-9937

rule); *Daly v. Morris Pub. Group, LLC*, No. 16-2005-CA-005096, 2009 WL 5876239 (Fla. Cir. Ct., Duval Cty. Mar. 17, 2009) (invasion of privacy, intentional infliction of emotional distress, and negligent supervision and hiring claims based on same facts as defamation claim were dismissed).

## VI.     PLAINTIFF FAILS TO STATE A CLAIM FOR CYBERSTALKING

Even if Plaintiff's claims for cyberstalking were not barred for the above reasons, they fail on their own merits. A claim for cyberstalking arises under Florida Statute 784.048, which provides a cause of action where a defendant engages "in a course of conduct to communicate, or to cause to be communicated, words, images, or language by or through the use of electronic mail or electronic communication, directed at a specific person . . .causing substantial emotional distress to that person and serving no legitimate purpose." *See* Florida Statute 784.048. However, where comments are made on an electronic medium to be read by others, they cannot be said to be directed to a specific person for purposes of the statute. *See Chevaldina v. R.K./FL Mgmt., Inc.*, 133 So.3d 1086, 1091–92 (Fla. 3d DCA 2014); *Scott v. Blum*, 191 So. 3d 502, 504–05 (Fla. 2d DCA 2016)("The emails sent to … members do not constitute words 'directed at a specific person' for purposes of the cyberstalking statute simply because they are about Mr. Blum").

Here, Plaintiff alleges that Defendants posted disparaging statements ***about him to be read by others*** on various social medial platforms and websites, not that these statements were ***directed to him*** as required to be actionable under Florida law. *See* Compl. at ¶¶ 17-22.

Accordingly, Plaintiff's claims for cyberstalking should be dismissed as a matter of law.

## VII.    PLAINTIFF FAILS TO STATE A CLAIM FOR INVASION OF PRIVACY

Even if Plaintiff's claims for invasion of privacy were not barred by the "single publication/single action" doctrine they nonetheless fail on their own merits as well. It is well-

settled that in order to plead a claim for invasion of privacy based on public disclosure of private facts, the Plaintiff must allege that the facts at issue are true. *See Tyne ex rel. Tyne v. Time Warner Enter. Co., L.P.*, 204 F. Supp. 2d 1338, 1344 (M.D. Fla. 2002) (*citing Leidholdt v. L.F.P., Inc.*, 860 F.2d 890, 895 (9th Cir. 1988)) ("The *Restatement (Second) of Torts* has recognized that an essential element of the tort of public disclosure of private facts is that the facts at issue be true.").

Here, Plaintiff does not allege anywhere in the Complaint that the purported published facts are true. *See* Compl. at ¶¶ 17-21. In fact, the "general allegations" of the Complaint repeatedly emphasize that the statements allegedly published by Defendants were false. *See id.* Accordingly, the invasion of privacy claims are fatally defective. *See Morrison v. Univ. of Miami*, No. 1:15-CV-23856-UU, 2016 WL 3128604, at *7 (S.D. Fla. Mar. 21, 2016) (finding no actionable tort for invasion of privacy by publication of private facts where the plaintiff failed to plead that the alleged facts were true).

For these reasons, Plaintiff's claims for invasion of privacy fail as a matter of law and should be dismissed.[7]

## VIII.   PLAINTIFF FAILS TO STATE A CLAIM FOR FRAUDULENT TRANSFER

Plaintiff's fraudulent transfer claims arise under the Florida Uniform Fraudulent Transfers Act ("FUFTA"), codified at Fla. Stat. 726.105. Aside from merely alleging the statutory buzzwords in a conclusory manner, the Complaint contains no actual factual allegations to support these claims. *See* Compl. at ¶¶ 14, 58. Plaintiff has simply restated the badges of fraud as they are

---

[7]     To the extent Plaintiff intends to argue that his invasion of privacy claims are based on a theory of "false light invasion of privacy" it is well-established by the Florida Supreme Court that no such tort exists under Florida law. *See Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1114 (Fla. 2008) ("we decline to recognize a cause of action for false light invasion of privacy.").

written in the statute. *See id.* This is simply insufficient to state a claim for fraudulent transfer as a matter of law. *See Court-Appointed Receiver of Lancer Offshore, Inc. v. Citco Grp. Ltd.*, Case No. 05-60055-civ, 2011 WL 1232986, at *2 (S.D. Fla. Mar. 30, 2011) (granting motion to dismiss FUFTA claim where "no factual allegations as to the nature of the transfer [were] made"). In fact, other than an allegation that United Together transferred $500,000.00 to Progress Tomorrow, there are no concrete allegations of transfers whatsoever. *See* Compl. at ¶ 16. By Plaintiff's own admission, "Progress Tomorrow spent at least $544,480.00 in Grayson's race" (*id.* at ¶ 23) thus negating any inference that the $500,000.00 sum was transferred to defraud creditors or become judgment proof. Surely, this cannot serve as a basis for a fraudulent transfer claim.

Additionally, Plaintiff lumps all of the Defendants together in his allegations and alleges no facts specific to any defendant. *See* Compl. at ¶¶ 14, 56-58. This is, likewise, a fatal defect to Plaintiff's claims for fraudulent transfer. *See Lan Li v. Walsh*, Case No. 16-81871-civ, 2017 WL 3130388, at *7 (S.D. Fla. July 24, 2017) (dismissing fraudulent conveyance claims because the claims "impermissibly lump[ed] together Defendants and fail[ed] to identify any specific transfer of assets, funds or property").

For these reasons, the Plaintiff's fraudulent transfer claims should be dismissed.

## IX.    PLAINTIFF FAILS TO STATE A CLAIM FOR CIVIL CONSPIRACY

Plaintiff's civil conspiracy claims are fatally defective because they fail to allege a legally cognizable underlying tort to support the claims and because the claims are simply too general and vague to survive dismissal as a matter of law.

### A.  There Are No Viable Underlying Torts to Support the Civil Conspiracy Claim

The gist of a civil conspiracy is not the conspiracy itself but the civil wrong which is done through the conspiracy which results in injury to the plaintiff. *Liappas v. Augoustis*, 47 So.2d 582

LAW OFFICES LEGON FODIMAN, P.A.
3225 AVIATION AVENUE, SUITE 301, MIAMI, FL 33133 · TEL: 305-444-9991 · FAX: 305-444-9937

(Fla. 1950). An act which does not constitute a basis for an action against one person cannot be made the basis of a civil action for conspiracy. *See id.*

Here, for the reasons set forth *supra* Points II through XIII, there are no legally viable underlying claims to support the Plaintiff's civil conspiracy claim. *See e.g., Buckner v. Lower Fla. Keys Hosp. Dist.*, 403 So. 2d 1025, 1027 (Fla. 3d DCA 1981) ("The civil conspiracy count is also dismissed due to the failure of the complaint to support the underlying tort of libel and slander against defendant Ruiz."). Accordingly, the civil conspiracy claims fail as a matter of law.

### B.  Plaintiff's Civil Conspiracy Claim Is Insufficiently Pled

Moreover, a civil-conspiracy claim must "set forth clear, positive, and specific allegations of civil conspiracy." *World Class Yachts, Inc. v. Murphy*, 731 So.2d 798, 799 (Fla. 4th DCA 1999). "General allegations of conspiracy are inadequate." *See id.*

Here, Plaintiff merely parrots the elements of a civil conspiracy claim without providing any factual details whatsoever to support his claims. *See* Compl. at ¶¶ 52-55. He merely states that "Defendants made an agreement to work together to cause Grayson injury. . . The agreement was to do one or more unlawful acts, by unlawful means. . . Grayson alleges on information and belief that Defendants . . . committed over acts in furtherance of the conspiracy." *See id.* at ¶ 54. This is simply insufficient as a matter of law and warrants dismissal of the civil conspiracy claims.  *See Corbett v. Transportation Sec. Admin.*, 968 F. Supp. 2d 1171, 1190–91 (S.D. Fla. 2012) (dismissal of civil conspiracy was warranted where allegations were too nonspecific and insufficient to sustain any inference that defendants reached an agreement to act unlawfully).

For these reasons, Plaintiff's civil conspiracy claim should be dismissed as a matter of law.

LAW OFFICES LEGON FODIMAN, P.A.
3225 AVIATION AVENUE, SUITE 301, MIAMI, FL 33133 · TEL: 305-444-9991 · FAX: 305-444-9937

## **CONCLUSION**

Plaintiff's Complaint should be seen for what it really is – an inappropriate and unlawful attempt to intimidate his political opponents and deter them from engaging in protected speech. This case is frivolous and legally meritless and should therefore be dismissed

WHEREFORE, Defendants No Labels, Inc., Progress Tomorrow, Inc., United Together, Inc., Nancy Jacobson, and Mark Penn respectfully request that this Court enter an order dismissing Plaintiff's Complaint with prejudice and granting Defendants any other relief it deems just and proper.

Dated:  October 19th, 2020

Respectfully submitted,

**LEGON FODIMAN, P.A.**
*Counsel for Defendants No Labels, Inc., Progress Tomorrow, Inc., United Together, Inc., Nancy Jacobson, and Mark Penn*
3225 Aviation Avenue, Suite 301
Miami, Florida 33133
Telephone:  (305) 444-9991
Facsimile:  (305) 444-9937
Primary e-mail:  tlegon@lpflaw.com
Secondary e-mail:  respinosa@lpflaw.com
Secondary e-mail:  eservice@lpflaw.com

By:____/s/ *Todd R. Legon*_____
        TODD R. LEGON
        Florida Bar No. 814415

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 19th day of October, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to the following:

> Tucker H. Byrd
> Brittany M. Wages
> Byrd Campbell, P.A.
> 180 Park Avenue North, Suite 2A
> Winter Park, Florida 32789
> TByrd@ByrdCampbell.com
> BWages@ByrdCampbell.com
> *Counsel for Plaintiff*

                                */s/ Todd R. Legon* _
                                TODD R. LEGON

LAW OFFICES LEGON FODIMAN, P.A.
3225 AVIATION AVENUE, SUITE 301, MIAMI, FL 33133 · TEL: 305-444-9991 · FAX: 305-444-9937