UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ALAN GRAYSON,

                Plaintiff,

v.                                                    Case No:  6:20-cv-1824-Orl-40LRH

NO LABELS, INC., PROGRESS
TOMORROW, INC., UNITED
TOGETHER, INC., NANCY
JACOBSON, MARK PENN and JOHN
DOES,

                Defendants.

_____/

## <u>ORDER</u>

This cause is before the Court on Defendants' Motion to Dismiss (Doc. 16 (the "**Motion**")) and Plaintiff's response in opposition (Doc. 17). Upon consideration, Defendants' Motion is due to be granted.

## I.   BACKGROUND[1]

Plaintiff Alan Grayson, a former congressional candidate, filed suit in state court against Defendants No Labels, Inc., Progress Tomorrow, Inc., United Together, Inc., Nancy Jacobson, Mark Penn, and John Does for "the vitriolic, hateful, false, and maliciously defamatory statements published about him" during his 2018 campaign. (Doc. 1-1, ¶ 1). On October 2, 2020, Defendants removed the action to this Court. (Doc. 1).

---

[1]  This account of the facts comes from the Complaint. (Doc. 1-1). The Court accepts these factual allegations as true when considering motions to dismiss. *See Williams v. Bd. of Regents*, 477 F.3d 1282, 1291 (11th Cir. 2007).

Plaintiff's Complaint asserts the following causes of action: (1) Defamation (Count I); (2) Invasion of Privacy (Count II); (3) Cyberstalking (Count III); (4) Civil Conspiracy (Count IV); and (5) Fraudulent Transfer (Count V). (Doc. 1-1, ¶¶ 29–58). Defendants moved to dismiss the Complaint, and the matter is now ripe for review. (Doc. 16).

## II.   STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(1). Thus, to survive a motion to dismiss made pursuant to Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* To assess the sufficiency of factual content and the plausibility of a claim, courts draw on their "judicial experience and common sense" in considering: (1) the exhibits attached to the complaint; (2) matters that are subject to judicial notice; and (3) documents that are undisputed and central to a plaintiff's claim. *See Iqbal*, 556 U.S. at 678; *Parham v. Seattle Serv. Bureau, Inc.*, 224 F. Supp. 3d 1268, 1271 (M.D. Fla. 2016).

Though a complaint need not contain detailed factual allegations, mere legal conclusions or recitation of the elements of a claim are not enough. *Twombly*, 550 U.S. at 555. Moreover, courts are "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "While legal conclusions can provide the framework of a complaint, they must be supported by factual

allegations." *Iqbal*, 556 U.S. at 679. Courts must also view the complaint in the light most favorable to the plaintiff and must resolve any doubts as to the sufficiency of the complaint in the plaintiff's favor. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994) (per curiam).

In sum, courts must (1) ignore conclusory allegations, bald legal assertions, and formulaic recitations of the elements of a claim; (2) accept well-pled factual allegations as true; and (3) view well-pled allegations in the light most favorable to the plaintiff. *Iqbal*, 556 U.S. at 679.

## III.   DISCUSSION

The Motion challenges all counts of the Complaint under Rule 12(b)(6).[2] The Court addresses each count seriatim.[3]

### A.    Count I: Defamation

Defendants assert four grounds for dismissal of Count I: (1) the Complaint alleges malice in a conclusory manner; (2) the fair report privilege protects the allegedly defamatory statements; (3) the statute of limitations at least partially bars the claim; and (4) the Complaint fails to identify with specificity the allegedly defamatory statements. (*Id.* at p. 14). The Court addresses each argument in turn.

---

[2]   The Motion also moves for dismissal under Rule 12(b)(2) and general pleading standards. However, there is no need for the Court to assess personal jurisdiction or shotgun pleading rules at this time because the Complaint is due to be dismissed without prejudice pursuant to Rule 12(b)(6), as discussed below. Plaintiff would be well advised to consider the principles of shotgun pleading in redrafting a Complaint.

[3]   All five counts of the Complaint assert violations of Florida law. As a federal court sitting in diversity jurisdiction, the Court applies the substantive law of the forum state—in this case, Florida law—alongside federal procedural law. *See Horowitch v. Diamond Aircraft Indus., Inc.*, 645 F.3d 1254, 1257 (11th Cir. 2011) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)).

1.    *Malice Allegations*

First, Defendants assert that the Complaint fails to plead malice as required for this defamation claim. (*Id.* at pp. 15–17). The Court disagrees.

Under Florida law, the elements of a defamation claim are: (1) publication; (2) falsity; (3) the statement was made with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) the statement must be defamatory. *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018) (citing *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008)). It is undisputed that Plaintiff is a public figure, and therefore he must establish "actual malice" on behalf of the publisher in order to maintain his defamation action. *Id.* at 1273 (citing *Nodar v. Galbreath*, 462 So. 2d 803, 806 (Fla. 1984); *N.Y. Times v. Sullivan*, 376 U.S. 254, 280 (1964)); (Doc. 16, p. 16; Doc. 17, p. 11).

The Eleventh Circuit has previously held that the "plausibility pleading standard applies to the actual malice standard in defamation proceedings." *Id.* (quoting *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016)). Thus, to plead actual malice, Plaintiff must allege sufficient facts to give rise to a reasonable inference that the false statement was made with knowledge that it was false or with reckless disregard of whether it was false or not. *Id.* (internal quotations and citations omitted). "This is a subjective test, focusing on whether the defendant actually entertained serious doubts as to the veracity of the published account, or was highly aware that the account was probably false." *Id.* (internal quotations and citations omitted).

In disputing the sufficiency of the Complaint's malice-related allegations, Defendants point to three paragraphs, each of which conclusively asserts the existence

of actual malice. (Doc. 1-1, ¶¶ 24, 32–33). However, Defendants ignore the rest of the Complaint. For example, the Complaint alleges that Defendants intended "to ruin" Plaintiff's congressional campaign for "personal profit," that their business model relies on "money from right-wing millionaires and billionaires" to "denigrate, disparage, and destroy the reputations of progressive political candidates" with negative advertisements, and that they "knowingly published" recanted statements without any disclaimer as well as "edited and altered" news reports in "misleading" ways. (*Id.* ¶¶ 1, 11, 20–22). Given these allegations, the Complaint provides sufficient facts to give rise to a reasonable inference that the false statements were made with knowledge that it was false or, at the least, with reckless disregard as to its truthfulness. *See id.* Thus, the Court concludes that the Complaint adequately alleges actual malice.

### 2.   *Fair Report Privilege*

Next, Defendants contend that dismissal is appropriate because the fair report privilege bars the claims. (Doc. 16, pp. 17–18). The Court disagrees.

The fair report privilege grants journalists and news media a qualified privilege to report on information received from government officials or to publish the contents of official documents, as long as the account is "reasonably accurate and fair." To qualify as "reasonably accurate and fair," the publication must be a substantially correct account of information contained in public records or derived from a government source. *See Larreal v. Telemundo of Fla., LLC*, No. 19-22613-Civ, 2020 WL 5750099, at *7–8 (S.D. Fla. Sept.

25, 2020) (collecting cases); *Rasmussen v. Collier Cnty. Pub. Co.*, 946 So. 2d 567, 570–71 (Fla. 2d DCA 2006).[4]

Defendants' argument stumbles at the first hurdle: there are no allegations that they are news media entities and/or journalists as required for the application of the privilege, and Defendants themselves do not argue as such. It is not patently obvious that Defendants are members of the news media industry, and Defendants do not attempt to define who qualifies as a "news media entity" or a "journalist." (*See id.*).

Moreover, even if Defendants are news media entities and/or journalists, the defamation claim is not wholly premised on information received from government officials or contained in official government documents. For example, although the Complaint asserts that Defendants published certain false statements based on a 2015 Office of Congressional Ethics report,[5] it also alleges that Defendants published publicly

---

[4]   To the extent that Plaintiff seems to imply that the Court cannot rule on the fair report privilege at the motion to dismiss stage, the Court notes that the application of the fair report privilege is a question of law that can be assessed at this time. *See Larreal*, 2020 WL 5750099, at *7–8 (citing *Folta v. N.Y. Times Co.*, No. 1:17cv246, 2019 WL 1486776, at *1); *Huszar v. Gross*, 468 So. 2d 512, 515–16 (Fla. 1st DCA 1985) (stating that "when the facts and circumstances of a communication are revealed, the issue of whether a privilege has been established is a question of law for the court to decide" at the motion to dismiss stage of litigation); (Doc. 17, pp. 12–13); *see also Nix v. ESPN, Inc.*, 772 F. App'x 807 (11th Cir. 2019) (affirming an order dismissing with prejudice statements protected by the fair report privilege and holding that a trial court may determine the applicability of the fair report doctrine as a matter of law).

[5]   Plaintiff argues that the report is not properly before the Court as "the Court is limited to the four corners of the Complaint." (Doc. 17, p. 3). However, the Court notes that it may consider an extrinsic document when ruling on a motion to dismiss where the document is central to the plaintiff's claim and its authenticity is not challenged. *SFM Holdings, Ltd. v. Banc of Am. Secs., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010); *Legacy Ent. Grp., LLC v. Endemol USA Inc.*, No. 3:15-cv-0252, 2015 WL 12838795, at *3 (M.D. Fla. 2015) (quoting *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005)) ("In ruling on a motion to dismiss under Rule 12(b)(6), a court may only consider

recanted statements made by Plaintiff's ex-spouse, Lolita Carson-Gray, and altered news reports in misleading ways.[6] (*See* Doc. 1-1, ¶¶ 20–21, 34). Thus, the Court holds that the fair report privilege is not a basis for dismissal of the defamation claim.

### 3.   Statute of Limitations and Failure to Identify with Specificity

Finally, Defendants argue that Florida's two-year statute of limitations for defamation claims at least partially bars this action. (Doc. 16, pp. 19–20). Florida's two-year statute of limitations period begins running and the defamation claim accrues when the last element constituting the cause of action occurs. FLA. STAT. §§ 95.031, 95.11. The last cause of action necessary for the accrual of a defamation claim is publication, and therefore the date of publication—not the date of discovery—triggers the statute of limitations. *Wagner, Nugent, Johnson, Roth, Romano, Erikson & Kupfer, P.A. v. Flanagan*, 629 So. 2d 113, 114–15 (Fla. 1993); *see also* § 770.07 ("The cause of action for damages founded upon a single publication or exhibit or utterance . . . shall be deemed

---

extrinsic evidence attached to the motion when that evidence has been 'incorporated by reference' into the pleading.").

Additionally, Plaintiff argues that "Defendants' statements were not accurate or fair" and that they "completely mischaracterize[]" the report. (*Id.* at p. 3 n.13–14). The Court does not reach the question of whether Defendants' statements were "reasonably fair and accurate" for the reasons provided above. But the Court notes that this is a fairly low bar, resulting in certain practical ramifications such as editorial style and selective focus. *See Larreal*, 2020 WL 5750099, at *8.

6   Provided that Defendants address the scope of the fair report privilege, the Court does not preclude the possibility of applying it to the alleged defamatory statements based on the 2015 Office of Congressional Ethics report at a later time, such as on a motion to strike or at summary judgment. However, dismissal of the defamation claim in its entirety is improper because the claim is not solely premised on government sources, as stated above.

to have accrued at the time of the first publication or exhibition or utterance thereof in this state.").

Defendants argue that Plaintiff filed his Complaint on August 19, 2020, and therefore the statute of limitations bars any defamation claims based on allegedly false statements made before August 19, 2018. (*Id.* at pp. 19–20). Confusingly, Defendants simultaneously argue that the Complaint lacks specificity regarding the time period in which the allegedly defamatory statements were made, and they do not identify which statements are supposedly time-barred in their Motion. (*See id.*).

In fact, it is unclear whether Defendants published any of the allegedly false statements before August 19, 2018. The Complaint does not specify the exact dates on which Defendants published the allegedly defamatory statements, instead broadly stating that publication occurred in 2018. (*See* Doc. 1-1). Because it is not facially apparent from the Complaint that the statute of limitations bars the defamation claim, it is logically improper to grant the Motion on this basis. *Cali. Fin., LLC v. Perdido Land Dev. Co.*, 303 F. Supp. 3d 1306, 1311 (M.D. Fla. 2017) (quoting *Rigby v. Liles*, 505 So. 2d 598, 601 (Fla. 1st DCA 1987)).

However, Defendants validly dispute this ambiguity. "In a defamation case, a plaintiff must allege certain facts such as the identity of the speaker, a description of the statement, and provide a time frame within which the publication occurred." *Five for Ent. S.A. v. Rodriguez*, 877 F. Supp. 2d 1321, 1328 (S.D. Fla. 2012) (internal quotations omitted) (dismissing the defamation claim for failure to plead when the allegedly defamatory statements were made and a sufficient description of those statements); *see Jackson v. N. Broward Cnty. Hosp. Dist.*, 766 So. 2d 256, 257 (Fla. 4th DCA 2000) (finding

that the defamation count failed to state a cause of action because it failed to specifically identify the persons to whom the allegedly defamatory comments were made and to link a particular remark to a particular defendant).

Here, the Complaint asserts that Carson-Grayson made "a handwritten statement . . . in which she made false allegations against [Plaintiff]" and that "Defendants knowingly published this false information, without noting that it had been recanted and demonstrated to be false." (Doc. 1-1, ¶ 20). The Complaint fails to answer two important questions: (1) *when* were the allegedly defamatory statements made, and (2) *what* did they say?[7] (*Id.*). Similarly, the allegations concerning Plaintiff's congressional ethics investigation fails to provide a time frame in which the listed statements were made.[8] (*Id.* ¶¶ 17–19). The Complaint's repeated reference to the year 2018 is too vague; Plaintiff must provide a more definite date of publication. Thus, the Court dismisses Count I

---

[7]   The Complaint later states that "One or more of these statements charged that Grayson had committed a crime; or that Grayson possesses characteristics that make him unfit as a lawyer or an elected official; or tended to subject Grayson to hatred, distrust, ridicule, contempt or disgrace; or was meant to injure Grayson in the political and legal arenas." (*Id.* ¶ 34). However, this is a general allegation that summarizes all of the allegedly defamatory statements made by Defendants—the substance of Carson-Grayson's handwritten statement is still unknown.

[8]   The Court notes that the Complaint sufficiently describes content of the allegedly defamatory statements made in relation to Plaintiff's congressional ethics investigation. It lists the following published communications: "Congressional Ethics Investigation Found Alan Grayson Abused His Office for Financial Gain"; "A Congressional Ethics Investigation found evidence that Alan Grayson Abused His Position in Congress to enrich himself"; ". . . as a congressman, he . . . Hid income on his public disclosures"; ". . . as a congressman, he . . . Used taxpayer resources to conduct his high-risk investor scheme"; "Alan Grayson Used His Congressiotnal [sic] Office For His Own Financial Gain." (*Id.* ¶ 18).

without prejudice and directs Plaintiff, in repleading, to specify the contents and dates of the allegedly defamatory statements made by Defendants.[9]

### B.   Count II: Invasion of Privacy

Defendants challenge Plaintiff's invasion of privacy cause of action on two grounds: (1) it cannot proceed under Florida's single publication rule; and (2) the Complaint fails to allege the essential elements of the claim. (Doc. 16, pp. 20–22). The Court finds that Count II is due to be dismissed without prejudice under either theory.

First, Defendants contend that because the invasion of privacy claim is premised on the same facts as the supposedly defective defamation claim, the former must be dismissed with the latter. (*Id.* at p. 20). Florida law provides that "a single publication gives rise to a single cause of action," and, consequently, the "various injuries resulting from it are merely items of damage arising from the same wrong." *Callaway Land & Cattle Co. v. Banyon Lakes C. Corp.*, 831 So. 2d 204, 208 (Fla. 4th DCA 2002) (citing *Orlando Sports Stadium, Inc. v. Sentinel Star Co.*, 316 So. 2d 607, 609 (Fla. 4th DCA 1975)). For example, in *Callaway* the trial court dismissed claims for tortious interference with a contractual relationship and abuse of process as based on the same facts and circumstances as a time-barred disparagement of title claim. *Id.* at 205–10 (citing FLA. STAT. § 95.11(4)(g)). In affirming this decision, the Fourth District Court of Appeal reasoned:

> The single publication/single action rule [] does not permit
> multiple actions when they arise from the same publication

---

[9]   The Court realizes that the Complaint alleges all Defendants published the allegedly tortious statements rather than articulating exactly which Defendant made what statement. However, the Court does not address the merits of Defendants' shotgun pleading argument at this time because the Complaint is due to be dismissed on Rule 12(b)(6) grounds.

upon which a failed defamation claim is based. The rule is designed to prevent plaintiffs from circumventing a valid defense to defamation by recasting essentially the same facts into several causes of action all meant to compensate for the same harm. Thus, if the defamation count fails, the other counts based on the same publication must fail as well because the same privileges and defenses apply.

*Id.* at 205 (internal citations and quotations omitted).

Here, Defendants assume that the defamation claim is defective, and, as previously discussed, the Court indeed dismissed Count I. But the Court also gave Plaintiff leave to amend his defamation claim to allege, with specificity, the contents of and the dates on which Defendants published the allegedly defamatory statements. Thus, the Court acknowledges that it must dismiss Count II with Count I at this time but notes that Count I—and, accordingly, Count II—is not necessarily *permanently* defective. *Cf. Callaway*, 831 So. 2d at 208; *Ovadia v. Bloom*, 756 So. 2d 137, 141 (Fla. 3d DCA 2000); *Daly v. Morris Pub. Grp., LLC*, No. 16-2005-CA-005096, 2009 WL 5876239 (Fla. 4th DCA Mar. 17, 2009).

Regardless of Count I's legitimacy, Count II still fails to state a claim. To state a claim for invasion of privacy based on public disclosure of private facts, a plaintiff must allege that the defendant: (1) published, (2) private facts, (3) that are offensive, (4) are not of public concern, and (5) are true. *Tyne ex rel. Tyne v. Time Warner Ent. Co.*, 204 F. Supp. 2d 1338, 1344 (M.D. Fla. 2002). Here, the Complaint expressly alleges that the publications at issue are *false*. (*See* Doc. 1-1). The Complaint therefore fails to allege all the elements necessary to support an invasion of privacy claim based on public disclosure of private facts, and Plaintiff does not argue that it does.

Instead, Plaintiff states that there are three types of wrongful conduct that can be remedied with an invasion of privacy claim under Florida law, and an invasion of privacy claim based on the public disclosure of private facts is only one of the three. (Doc. 17, p. 16); *see Jews for Jesus*, 997 So. 2d at 1100; *Agency for Health Care v. Associated Indus. of Fla., Inc.*, 678 So. 2d 1239, 1252 n.20 (Fla. 1996).[10] But Plaintiff goes no further—he does not argue that the Complaint satisfies the elements required to state a claim under another type of invasion of privacy claim.[11]

Plaintiff also emphasizes that he has a right to plead in the alternative under Rule 8. (*Id.*). This is true. *See Allstate Ins. Co. v. James*, 779 F.2d 1536, 1540–41 (11th Cir. 1986); FED. R. CIV. P. 8(d)(2). But Plaintiff misconstrues Defendants' argument. They do not argue that Plaintiff cannot plead alternative theories of liability (*i.e.*, defamation and invasion of privacy). Rather, they assert that the Complaint fails to allege that the

---

[10] In *Jews for Jesus*, the Supreme Court of Florida ruled that Florida law does not recognize the tort of false light as largely duplicative of existing torts. 997 So. 2d at 1115. The remaining three types of wrongful conduct that can be remedied with an invasion of privacy claim are: (1) appropriation; (2) intrusion; and (3) public disclosure of private facts. *Agency for Health Care*, 678 So. 2d at 1252 n.20.

[11] Plaintiff states that the case cited by Defendants is inapplicable because the court dismissed the complaint for its failure to plead the *proper type* of invasion of privacy claim rather than its failure to state a claim. (*Id.* at p. 16 n.18). This characterization of the case is inaccurate. In that case, the court granted summary judgment in favor of the defendants because the plaintiffs argued that the facts at issue were false, and therefore failed to support their invasion of privacy based on public disclosure of private facts claim. The court merely noted that the plaintiffs failed to assert a defamation claim, which would have constituted a valid cause of action. *See Tyne*, 204 F. Supp. 2d at 1344 ("The *Restatement (Second) of Torts* has recognized that an essential element of the tort of public disclosure of private facts is that the facts at issue be true. . . . In a situation where the 'facts' disclosed in a publication are, in actuality, false, 'the interest invaded is that protected by the defamation . . . the interest in being represented truthfully to the world.'" (internal citations omitted)).

published statements were *true*, an "essential element" of an invasion of privacy claim based on public disclosure of private facts. *Tyne*, 204 F. Supp. 2d at 1344. Consequently, the Court dismisses Count II without prejudice.[12]

### C.  Count III: Cyberstalking

Defendants further argue that the Complaint fails to allege the essential elements of a cyberstalking claim. Specifically, Defendants contend that the Complaint merely alleges that they published the purportedly defamatory statements about Plaintiff for third parties to read, and therefore they did not "direct" the statements to Plaintiff. (Doc. 16, p. 21). The Court agrees.

Under FLA. STAT. § 784.048(1)(d)1, "cyberstalk" means to "engage in a course of conduct to communicate, or to cause to be communicated, words, images, or language by or through the use of electronic mail or electronic communication, directed at a specific person . . . causing substantial emotional distress to that person and serving no legitimate purpose." Section 784.048(1)(d)1 and Florida courts require the communications to be *directed at* the plaintiff. *See Chevaldina v. R.K./FL Mgmt., Inc.*, 133 So. 3d 1086, 1091–

---

[12] Plaintiff's response includes a footnote which states that "Whether the statements are true or false, the Defendants may also be liable for 'defamation by implication.'" (*Id.* at p. 16 n.19). The Supreme Court of Florida has held that "defamation by implication is a well-recognized species of defamation that is subsumed within the tort of defamation." *Jews for Jesus*, 997 So. 2d at 1108. But it also noted that "defamation by implication applies in circumstances where *literally true* statements are conveyed in such a way as to create a false impression." *Id.* (emphasis added). Again, there are no explicit allegations that Defendants published true statements at all—much less true statements conveyed in such a way as to create a false impression. (*See* Doc. 1-1). Furthermore, while there may be some allegations in the Complaint that could implicitly support a defamation by implication claim, it is inappropriate for the Court to act as counsel for Plaintiff by formulating an argument that he briefly raised in a footnote. Regardless, a defamation by implication claim is a subset of a defamation tort claim and therefore would not save Plaintiff's invasion of privacy claim.

92 (Fla. 3d DCA 2014) (finding that the record did not support a cyberstalking claim because "the appellees failed to introduce evidence that specific blog posts were being used 'to communicate, or to cause to be communicated, words, images, or language . . . directed at a specific person'").

For instance, in *Scott v. Blum* the Second District Court of Appeal held that the appellee failed to satisfy his evidentiary burden for an order enjoining the appellant from cyberstalking because the appellant "did not communicate words, images, or language via email or electronic communication directly to [the appellee]." 191 So. 3d 502, 503–05 (Fla. 2d DCA 2016). Although the appellant sent derogatory emails about the appellee to over 2,000 third parties, none of the emails were sent directly to the appellee. *Id.* The court stated, "'[W]here comments are made on an electronic medium to be read by others, they cannot be said to be directed to a particular person.'" *Id.* at 504 (quoting *David v. Textor*, 189 So. 3d 871, 875 (Fla. 4th DCA 2016)). Moreover, the appellee's distress related to his personal and professional reputation among his colleagues, which the court found did not constitute "substantial emotional distress" under the statute. *Id.* at 505.

Likewise, the Complaint only asserts that Defendants' allegedly defamatory statements were directed to Florida voters. *See id.* There are no allegations that Plaintiff directly received these derogatory communications from Defendants, and the Complaint asserts that Defendants publicly posted comments on an electronic medium to influence Florida residents and thereby harm Plaintiff's campaign. (*See* Doc. 1-1, ¶¶ 17–25, 47). Furthermore, the Complaint only alleges harm to Plaintiff's personal and professional reputation—there are no allegations that Plaintiff received threats from Defendants or

experienced some other form of severe electronic harassment by them. (S*ee id.*). Thus, the Court dismisses Count III without prejudice.[13]

### D.     Count IV: Civil Conspiracy

Defendants also oppose Plaintiff's civil conspiracy claim, contending that it is defective because it lacks a legally cognizable tort. (Doc. 16, pp. 23–24). To state a claim for civil conspiracy, the plaintiff must allege: (1) an agreement between two or more parties; (2) to do an unlawful act or to do a lawful act by unlawful means; (3) the doing of some overt act in pursuance of the conspiracy; and (4) damage to the plaintiff as a result of the acts done under the conspiracy. *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1271 (11th Cir. 2009) (quoting *Charles v. Fla. Foreclosure Placement Ctr., LLC*, 988 So. 2d 1157, 1159–60 (Fla. 3d DCA 2008)). Florida law does not recognize an independent cause of action for civil conspiracy; "the plaintiff must allege an underlying illegal act or tort on which the conspiracy is based." *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1316 (S.D. Fla. 2014) (citing *Kee v. Nat'l Rsrv. Life Ins. Co.*, 918 F.2d 1538, 1541–42 (11th Cir. 1990); *Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. 3d DCA 1997)); *see Liappas v. Augoustis*, 47 So. 2d 582 (Fla. 1950) ("The gist of a civil action for conspiracy is not the conspiracy itself, but the civil wrong which is done pursuant to the conspiracy

---

[13] Plaintiff cites to *Thoma v. O'Neal*, stating that "the court ruled that handing out a threatening flier in the plaintiff's neighborhood was a violation of [§ 784.048(1)(d)1]." (Doc. 17, p. 17); *see* 180 So. 3d 1157 (Fla. 4th DCA 2015). Plaintiff misreads this case. The flier at issue in *Thoma* was not an *electronic* communication as required for a cyberstalking claim, and therefore the court held that the flier constituted "stalking" rather than "cyberstalking." 280 So. 3d at 1159–62. Furthermore, even if *Thoma* could apply to a cyberstalking case, the facts at issue here are distinguishable. First, the *Thoma* court determined that the appellee produced "substantial and competent evidence" of the appellant's harassing behavior because he followed her home more than once in order to obtain her residence address. *Id.* at 1160. Second, the flier was sent directly to the appellee's home, unlike the present case. *Id.* at 1159–60.

and which results in damage to the plaintiff. Thus, it is generally held that an act which constitutes no ground of action against one person cannot be made the basis of a civil action for conspiracy." (internal citations omitted)). Accordingly, if the alleged underlying tortious claims fail to survive a motion to dismiss, then the civil conspiracy claim likewise fails. *See Alhassid*, 60 F. Supp. 3d at 1317.

For the reasons provided above, Plaintiff's claims for defamation, invasion of privacy, and cyberstalking fail to survive the instant Motion. Furthermore, Plaintiff's claim for fraudulent transfer fails because he is not a creditor—as discussed in detail below—and therefore it likewise fails to support the civil conspiracy claim. Thus, the Complaint fails to allege underlying tortious conduct or acts to form the basis of its civil conspiracy cause of action.

Plaintiff mentions—without analysis—the "force of numbers" exception, which permits a civil conspiracy to exist without an underlying tort or wrong if the plaintiff can show some "peculiar power of coercion of the plaintiff possessed by the defendants in combination which any individual standing in a like relation to the plaintiff would not have had." *Liappas*, 47 So. 2d at 583 (internal quotations and citations omitted). Notably, the exception only applies where "'the result of the defendants' concerted action [is] different from anything that could have been accomplished separately.'" *Alhassid*, 60 F. Supp. 3d at 1319 (quoting *Kee*, 918 F.2d at 1542). "While the combined actions of two or more persons might exert more pressure on the person affected," the exception does not apply when "the nature of the individual act is not altered, nor its character affected or changed, by the combination." *Liappas*, 47 So. 2d at 583.

Here, neither the Complaint nor Plaintiff's response maintains that the purported conspiracy between Defendants was *necessary* to accomplish the alleged tortious conduct. *See Alhassid*, 60 F. Supp. 3d at 1319. Plaintiff does not discuss—and the Court cannot surmise—any circumstances in which Defendants' combined actions "would assume a new and different character and thus amount to an independent tort." *Liappas*, 47 So. 2d at 583. In other words, while Defendants' combined actions might have increased the damage to Plaintiff's reputation, the nature of the defamatory acts themselves are not altered by the combination. *See id.* One person with internet access can destroy an individual's reputation alone—multiple people with Internet access, acting in concert, simply increases the volume of defamatory online content, not its effect. Thus, the Court finds this exception inapplicable and dismisses the civil conspiracy claim without prejudice.[14]

### E.   Count V: Fraudulent Transfer

Finally, Defendants assert that the Complaint fails to state a claim for fraudulent transfer. The Court agrees.

Florida's fraudulent transfer statute provides:

> (1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> > (a) With actual intent to hinder, delay, or defraud any creditor of the debtor; or

---

[14]   Additionally, Defendants argue that the Complaint's allegations are too imprecise to support a civil conspiracy claim. However, the Court does not need to address this argument because Count IV is dismissed for the above reasons.

> (b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>
>> 1. Was engaged or about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>>
>> 2. Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

FLA. STAT. § 726.105(1).

Although Defendants argue that the Complaint simply regurgitates components of the statute, they concede that it alleges that Defendant United Together transferred $500,000 to Defendant Progress Tomorrow. (*Id.* at p. 23). These allegations appear to sufficiently describe the nature of the allegedly fraudulent transaction, and Defendants do not identify any other deficiencies with the fraudulent transfer claim. (*See* Doc. 1-1, ¶¶ 15–17).

Nevertheless, the Court finds that the Complaint fails to state a claim for fraudulent transfer. *Cf. Smith v. Psychiatric Sols., Inc.*, 750 F.3d 1253, 1262 (11th Cir. 2014) ("District courts have unquestionable authority to control their own dockets. This authority includes broad discretion in deciding how best to manage the cases before them." (internal citations and quotations omitted)); *BankWest, Inc. v. Baker*, 446 F.3d 1358, 1364 (11th Cir. 2006) (stating that Article III's case or controversy requirement demands that the case be viable at all stages of the litigation). The plain language of the statute clearly states that "A transfer made or obligation incurred by a debtor is fraudulent *as to a creditor*" and includes the words "*creditor's* claim." § 726.105(1) (emphasis added). Thus, Florida's

fraudulent transfer statute pertains to debtor-creditor relations. *Cf. In re Rollaguard Sec., LLC*, 591 B.R. 895, 907 (S.D. Fla. 2018) (stating that the Bankruptcy Code's fraudulent transfer provisions "are analogous 'in form and substance'" to Florida's fraudulent transfer counterparts); *Berman v. Smith*, 510 B.R. 387, 394 (S.D. Fla. 2014) (stating that Florida's fraudulent transfer statute applies to present and future creditors).

Here, the Complaint alleges that Defendants defrauded their creditors by transferring assets among each other to "mak[e] them[selves] judgment-proof" and that they used these assets to disparage Plaintiff, ultimately harming his political career. (*Id.* ¶¶ 13–18). But it never alleges that *Plaintiff himself* is one of Defendants' creditors. (*See id.*). The gravamen of the Complaint is Defendants' alleged defamation of Plaintiff's character, and their allegedly fraudulent transfers only tenuously relate to Plaintiff, a non-creditor. (*See id.*). Section 726.105 does not seem to address Plaintiff's injury, and therefore Count V is dismissed without prejudice.

## IV.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.    Defendants' Motion to Dismiss (Doc. 3) is **GRANTED**;

2.    Plaintiff's Complaint (Doc. 1-1) is **DISMISSED WITHOUT PREJUDICE**; and

3.    On or before Tuesday, February 9, 2021, Plaintiff may file an Amended Complaint consistent with the directives of this Order, if it believes it can do so in accordance with Rule 11. Failure to timely file an Amended Complaint will result in dismissal of this action without further notice.

**DONE AND ORDERED** in Orlando, Florida on January 26, 2021.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties