UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**ALAN GRAYSON,**

        **Plaintiff,**

v.　　　　　　　　　　　　　　　　Case No: 6:20-cv-1824-PGB-LRH

**NO LABELS, INC., PROGRESS TOMORROW, INC., UNITED TOGETHER, INC., NANCY JACOBSON, MARK PENN and JOHN DOES,**

        **Defendants.**
_____/

## ORDER

This cause is before the Court on Defendants' Motion to Dismiss (Doc. 30 (the "**Motion**")) and Plaintiff's response in opposition (Doc. 33). Upon consideration, Defendants' Motion is due to be granted.

### I.　　BACKGROUND

Plaintiff Alan Grayson, a former congressional candidate, filed suit in state court against Defendants No Labels, Inc. ("**No Labels**"), Progress Tomorrow, Inc. ("**Progress Tomorrow**"), United Together, Inc. ("**United Together**"), Nancy Jacobson, Mark Penn, and John Does for "the vitriolic, hateful, false, and maliciously defamatory statements published about him" during his 2018 campaign. (Doc. 29, ¶ 1). On October 2, 2020, Defendants removed the action to

this Court. (Doc. 1). On January 26, 2021, this Court dismissed the Complaint without prejudice. (Doc. 28).

On February 9, 2021, Plaintiff filed his Amended Complaint, asserting three causes of action: (1) defamation; (2) invasion of privacy; and (3) civil conspiracy. (Doc. 29). Defendants now move to dismiss the Amended Complaint, and the matter is ripe for review.

## II.   STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(1). Thus, to survive a motion to dismiss made pursuant to Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* To assess the sufficiency of factual content and the plausibility of a claim, courts draw on their "judicial experience and common sense" in considering: (1) the exhibits attached to the complaint; (2) matters that are subject to judicial notice; and (3) documents that are undisputed and central to a plaintiff's claim. *See Iqbal*, 556 U.S. at 678; *Parham v. Seattle Serv. Bureau, Inc.*, 224 F. Supp. 3d 1268, 1271 (M.D. Fla. 2016).

Though a complaint need not contain detailed factual allegations, mere legal conclusions, or recitation of the elements of a claim are not enough. *Twombly*, 550

U.S. at 555. Moreover, courts are "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Courts must also view the complaint in the light most favorable to the plaintiff and must resolve any doubts as to the sufficiency of the complaint in the plaintiff's favor. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994) (per curiam).

In sum, courts must (1) ignore conclusory allegations, bald legal assertions, and formulaic recitations of the elements of a claim; (2) accept well-pled factual allegations as true; and (3) view well-pled allegations in the light most favorable to the plaintiff. *Iqbal*, 556 U.S. at 679.

## III.   DISCUSSION

First, Defendants argue that the Amended Complaint constitutes a shotgun pleading. Next, Defendants challenge each count of the Amended Complaint. The Court addresses Defendants' arguments in turn.[1]

### A.   Shotgun Pleading

Shotgun pleadings are deficient because "they fail . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir.

---

[1] All three counts of the Amended Complaint assert violations of Florida law. As a federal court sitting in diversity jurisdiction, the Court applies the substantive law of the forum state—in this case, Florida law—alongside federal procedural law. *See Horowitch v. Diamond Aircraft Indus., Inc.*, 645 F.3d 1254, 1257 (11th Cir. 2011) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)).

2015); *see also Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996). The Eleventh Circuit has outlined four types of shotgun pleadings:

> The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type . . . is a complaint . . . replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

*Weiland*, 792 F.3d at 1321–23.[2]

First, Defendants argue that the Amended Complaint "groups" them together for each cause of action. (Doc. 30, p. 9). It is true that the Amended Complaint asserts each claim against each Defendant. (*See* Doc. 29). But Defendants ignore the Amended Complaint's allegations, which describes each Defendant's culpability as follows:

- Defendants Jacobsen and Penn primarily used Defendant No Labels to raise money for personal profit and "character assassination" of their political

---

[2] "When presented with a shotgun complaint, the district court should order repleading *sua sponte*." *Ferrell v. Durbin*, 311 F. App'x 253, 259 n.8 (11th Cir. 2009) (per curiam) (citing *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1280 (11th Cir. 2006)); *see also Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1345 n.7 (11th Cir. 2007) ("Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants.").

4

      opponents. (*Id.* ¶ 64). Defendant No Labels used Defendants United Together and Progress Tomorrow— along with various other judgment-proof shell companies—to conduct its campaign activity, thereby obscuring its funding sources. (*Id.* ¶¶ 14, 64). Defendant Penn owned, controlled, or otherwise profited from these shell companies, and Defendants Jacobsen and Penn "called the shots" regarding Defendant No Labels' campaign activity. (*Id.* ¶¶ 12–13).

- When Plaintiff announced his 2018 congressional campaign, Defendants No Labels and Jacobsen obtained a $500,000 contribution, made to Defendant United Together, to target Plaintiff. (*Id.* ¶¶ 14–16). Defendant United Together then transferred the $500,000 donation to Defendant Progress Tomorrow. (*Id.* ¶ 16). Defendant Progress Tomorrow used this money to disparage Plaintiffs to voters via mail, Internet advertisements, and a website. (*Id.* ¶¶ 5–15, 18–35). Defendants Jacobsen and Penn knew of and approved Defendant Progress Tomorrow's defamatory statements about Plaintiff. (*Id.* ¶ 64).

The Amended Complaint thus gives Defendants "adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323. The reference to all Defendants in each cause of action simply reflects the nature of a civil conspiracy claim. Such a claim makes it possible for *all* Defendants to participate in *every* act complained of because an agreement to commit a tortious act itself confers liability. *See, e.g., United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1271 (11th Cir. 2009) (delineating the elements of a civil conspiracy claim under Florida law).

      Second, Defendants cite to *Magluta v. Samples* for the proposition that the Amended Complaint is a quintessential shotgun pleading:

5

> It is fifty-eight pages long. . . . Each count incorporates by reference the allegations made in a section entitled "General Factual Allegations"—which comprises 146 numbered paragraphs—while also incorporating the allegations of any count or counts that precede it. The result is that each count is replete with factual allegations that could not possibly be material to that specific count, and that any allegations that are material are buried beneath innumerable pages of rambling irrelevancies. This type of pleading completely disregards Rule 10(b)'s requirement that discrete claims should be plead in separate counts, and is the type of complaint that we have criticized time and again.

256 F.3d 1282, 1284 (11th Cir. 2001) (internal citations omitted).

But *Magluta* is not directly on par with this case. Plaintiff's Amended Complaint is only 22 pages long, which comports with Rule 8(a)(2)'s "short and plain statement" requirement. The Court further notes that Plaintiff's Amended Complaint does not include 146 numbered paragraphs in its General Allegations section but rather contains only 32. (*Id.* ¶¶ 11–42). The Amended Complaint realleges the paragraphs contained in the General Allegations section in each count, but it does not reallege *each preceding count*, which is the defining characteristic of a shotgun pleading. (*Id.* ¶¶ 44, 56, 62). There are no "rambling irrelevancies" or "buried" materials here.

Despite the Amended Complaint's adherence to most general pleading principles, the Court recognizes that Count II impermissibly combines two distinct claims: defamation by implication and invasion of privacy based on public disclosure of private facts. *See Weiland*, 792 F.3d at 1321–23 (stating that the pleading must separate each cause of action into a distinct count). Therefore, the

6

Court dismisses the Amended Complaint and orders Plaintiff to file a Second Amended Complaint that rectifies this defect.

### B. Count I: Defamation

Although the Court dismisses the Amended Complaint without prejudice based on the pleading defect identified above, it nonetheless addresses the adequacy of the underlying claims for the parties' benefit. Defendants assert two grounds for dismissal of Count I: (1) the Amended Complaint fails to sufficiently plead a defamation claim; and (2) the Amended Complaint fails to properly allege malice. (Doc. 30, p. 10).

#### *1.  Insufficient Pleading*

Under Florida law, the elements of a defamation claim are: (1) publication; (2) falsity; (3) the statement was made with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) the statement must be defamatory. *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018) (citing *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008)). "In a defamation case, a plaintiff must allege certain facts such as the identity of the speaker, a description of the statement, and provide a time frame within which the publication occurred." *Five for Ent. S.A. v. Rodriguez*, 877 F. Supp. 2d 1321, 1328 (S.D. Fla. 2012) (internal quotations and citations omitted).

Defendants appear to take issue with the specificity of the facts alleged in the Amended Complaint. Defendants argue that the Amended Complaint "provides no

context for the allegedly defamatory statements and cherry-picks language from the publications, characterizing the statements as he sees fit instead of including the entire statements verbatim." (*Id.* at p. 11). They further argue that the Amended Complaint "omits, disregards, and/or only vaguely alludes to relevant citations provided in the purported publications, which would provide context to the statements." (*Id.*).

Defendants offer no authority for these arguments, and they completely ignore the Amended Complaint's allegations, which identify Defendant Progress Tomorrow as the speaker, describe the statements in detail, and provide a time frame of August 1, 2018 to August 23, 2018. (Doc. 29, ¶¶ 18–42); *see Five for Ent. S.A.*, 877 F. Supp. 2d at 1328; *cf. Jackson v. N. Broward Cnty. Hosp. Dist.*, 766 So. 2d 256, 257 (Fla. 4th DCA 2000) (finding that the defamation count failed to state a cause of action because it failed to specifically identify the persons to whom the allegedly defamatory comments were made and to link a particular remark to a particular defendant). Accordingly, the Court finds that these allegations are sufficiently pled.

### 2.  *Malice Allegations*

It is undisputed that Plaintiff is a public figure, and therefore he must allege that Defendants acted with "actual malice." *Turner*, 879 F.3d at 1273. That is, the Amended Complaint must allege sufficient facts to give rise to a reasonable inference that Defendants made the false statements with knowledge that they were false or with reckless disregard for whether they were false or not. *Id.*

Ignoring the Court's prior Order, which found adequate pleading of actual malice, Defendants assert that Plaintiff cannot *prove* actual malice because Defendants based their statements on "reputable sources" such as news reports and a 2015 Office of Congressional Ethics Report. (Doc. 28, pp. 3–4; Doc. 30, p. 12–14). They rely on *Berisha v. Lawson*, wherein the Southern District of Florida granted *summary judgment* in favor of the defendant because the plaintiff failed to establish actual malice, noting the defendant's reliance on "the multitude of previous reports implicating [the plaintiff] in arms-related scandals." 378 F. Supp. 3d 1145, 1161–62 (S.D. Fla. 2018) (internal quotations omitted).

But the procedural posture of this case is the *pleading stage*. The Court reiterates that the following alleged facts are sufficient to give rise to a reasonable inference that Defendants made the false statements with knowledge that they were false or with reckless disregard for whether they were false or not: Defendants profited by using donations from wealthy conservatives to denigrate liberal political candidates through negative advertisements; Defendants targeted Plaintiff with the intent to ruin his 2018 congressional campaign; and Defendants issued false statements that Plaintiff misused his public office and published Lolita Carson-Grayson's publicly recanted statements to tarnish Plaintiff's reputation. In fact, the Amended Complaint supplies more allegations that lend additional support to the Court's conclusion: Defendants edited images to portray Plaintiff lounging on the beach in the Cayman Islands (Plaintiff has never been to the Cayman Islands); Defendants edited images to show Plaintiff walking to a plane

9

bound for the Cayman Islands with a silver attaché case full of "bricks" of cash (Plaintiff has never boarded a jet in the commission of money laundering); and Defendants edited Plaintiff's passport photograph to replace his eyes with dollar signs. (Doc. 29, ¶¶ 11–42).

Although Defendants' reliance on other sources may be a valid defense, the Amended Complaint adequately pleads actual malice.

### C. Count II: Invasion of Privacy

Defendants contend that Count II amounts to a false light invasion of privacy claim, which is not a cognizable tort. (Doc. 30, pp. 14–15). It is true that Florida law does not recognize the tort of false light because it is largely duplicative of existing torts. (Doc. 28, p. 12 n.10). However, there are still three types of wrongful conduct that can be remedied with an invasion of privacy claim: (1) appropriation; (2) intrusion; and (3) public disclosure of private facts. (*Id.*). Count II asserts an invasion of privacy claim based on the public disclosure of private facts. (*See* Doc. 29). To the extent that Count II also alleges that Defendants conveyed literally true statements in such a way as to create a false impression, this is a defamation by implication claim, not a false light claim. *See Jews for Jesus*, 997 So. 2d at 1105–08.

As stated in subsection A, invasion of privacy based on public disclosure of private facts and defamation by implication are distinct claims that require separation into distinct counts under general pleading rules. *See Weiland*, 792

F.3d at 1321–23. Thus, Plaintiff must replead his defamation by implication claim into a separate count.³ *See Wagner*, 464 F.3d at 1280.

However, Plaintiff may not replead his invasion of privacy claim because he cannot sustain this cause of action. To state a claim for invasion of privacy based on public disclosure of private facts, a plaintiff must allege that the defendant: (1) published, (2) private facts, (3) that are offensive, (4) are not of public concern, and (5) are true. *Tyne ex rel. Tyne v. Time Warner Ent. Co.*, 204 F. Supp. 2d 1338, 1344 (M.D. Fla. 2002). "Matters of public concern" are at the heart of the First Amendment's protection:

> Speech deals with matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public. The arguably inappropriate or controversial character of a statement is irrelevant to the question whether it deals with a matter of public concern.

*Gawker Media, LLC v. Bollea*, 129 So. 3d 1196, 1200–01 (Fla. 2d DCA 2014) (citing *Snyder v. Phelps*, 562 U.S. 443, 453 (2011)) (finding that professional wrestler Hulk Hogan's sex tape constituted a matter of public concern due to the public controversy surrounding his extramarital affair).

---

³ The Court notes that defamation and defamation by implication are also distinct claims and that the Court will not engage in the "onerous task of sifting through the [Second] Amended Complaint" to determine which statements constitute defamation or defamation by implication. *See Mangel v. Daza*, No. 2:19-cv-525, 2019 WL 5068580, at *2 (M.D. Fla. Oct. 9, 2019) (dismissing the amended complaint without prejudice because it pled two separate causes of action—defamation and defamation by implication—into one count).

Here, the true facts alleged in the Amended Complaint—including Carson-Grayson's recanted statements, Plaintiff's employment of a congressional staffer at his hedge fund, and Plaintiff's call for the arrest of a reporter—are matters of public concern. (*Id.* ¶¶ 23–24, 31 n.11, 33 n.13). A political candidate's domestic turmoil, congressional activities, and interactions with the media are undoubtedly subjects of "legitimate news interest." *See id.* And, clearly, the manner in which a political candidate conducts his life—including his professional life and his personal life—is of value and concern to the voting public, who desires the best representation of their interests in Congress. *See id.*[4]

### D.  Count III: Civil Conspiracy

To state a claim for civil conspiracy, the plaintiff must allege: (1) an agreement between two or more parties; (2) to do an unlawful act or to do a lawful act by unlawful means; (3) the doing of some overt act in pursuance of the conspiracy; and (4) damage to the plaintiff as a result of the acts done under the conspiracy. *United Techs. Corp.*, 556 F.3d at 1271 (citing *Charles v. Fla. Foreclosure Placement Ctr., LLC*, 988 So. 2d 1157, 1159–60 (Fla. 3d DCA 2008)). Florida law does not recognize an independent cause of action for civil conspiracy; "the plaintiff must allege an underlying illegal act or tort on which the conspiracy

---

[4]  Defendants also argue that they based their statements on facts previously published by other sources, citing appellate cases that affirmed the lower courts' grants of summary judgment. (Doc. 30, p. 17). The Court already addressed this argument above, and it sees no reason to regurgitate its analysis again.

Furthermore, Defendants assert that the single publication rule bars the invasion of privacy claim. Because the invasion of privacy claim is dismissed for the reasons provided, the Court does not address this argument.

is based." *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1316 (S.D. Fla. 2014) (citing *Kee v. Nat'l Rsrv. Life Ins.*, 918 F.2d 1538, 1541–42 (11th Cir. 1990); *Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. 3d DCA 1997)); *see also Liappas v. Augoustis*, 47 So. 2d 582 (Fla. 1950). Here, the Amended Complaint alleges a viable underlying tort: defamation.

Defendants argue that the intra-corporate conspiracy doctrine—which negates a civil conspiracy claim where the only members of the alleged conspiracy are a corporation and/or its officers—bars this cause this of action. *Grider v. City of Auburn*, 618 F.3d 1240, 1261 (11th Cir. 2010); *Mancinelli v. Davis*, 217 So. 3d 1034, 1036–37 (Fla. 4th DCA 2017); (Doc. 30, pp. 20–21). Notably, Florida courts recognize the "personal stake" exception to this doctrine, which makes an agent liable for civil conspiracy where the agent has a personal stake in the activities separate from the principal's interest. *Mancinelli*, 217 So. 3d at 1037.

As to the corporate Defendants, the Amended Complaint alleges that Defendants United Together and Progress Tomorrow conducted "[Defendant] No Labels-related campaign activity" and "worked together" to disparage Plaintiff and shield their donors from scrutiny. (Doc. 29, ¶¶ 14, 64). But, viewing the Amended Complaint in the light most favorable to Plaintiff, these allegations do not necessarily equate to an agency relationship. *See Hunnings*, 29 F.3d at 1483; *Am. Home Assur. Co. v. Weaver Aggregate Transp., Inc.*, 990 F. Supp. 2d 1254, 1275 (M.D. Fla. 2013) ("By definition, a conspiracy involves a combination in which

13

every member of the scheme becomes the agent of every other member for purposes of carrying out the object of the agreement.").

As to the individual Defendants, the Amended Complaint alleges that Defendant Jacobsen is the president and founder of Defendant No Labels, that Defendant Penn owns or controls the various shell companies involved in Defendant No Labels' campaign work, and that Defendants Jacobsen and Penn "called all the shots" in the smear campaign against Plaintiff. (*Id.* ¶¶ 1, 7, 12–13, 64). It also alleges that Defendants Jacobsen and Penn personally solicited funds to disparage Plaintiff and personally profited from the conspiracy. (*Id.* ¶ 64). Therefore, it is unclear whether Defendants Jacobsen and Penn acted purely in their corporate capacities and whether their alleged personal profit constituted an interest distinct from those of the corporate Defendants. *See Am. Home Assur. Co.*, 990 F. Supp. 2d at 1275 ("To come within [the intra-corporate conspiracy] doctrine the agency relationship must be one in which the 'agent' is joining the conspiracy or making the conspiratorial agreement *for the corporation*, not for himself or on behalf of a separate corporation."). Cognizant to resolve any doubts as to the sufficiency of the Amended Complaint in Plaintiff's favor, the Court finds that it is possible that the personal stake exception applies to Defendants Jacobsen and Penn. *See Mancinelli*, 217 So. 3d at 1037.

Lastly, contrary to Defendants' assertion, it is difficult to imagine more "clear, positive, and specific allegations of civil conspiracy" than those set forth in the Amended Complaint. *World Class Yachts, Inc. v. Murphy*, 731 So. 2d 798, 799

14

(Fla. 4th DCA 1999). The Amended Complaint describes, in detail, each member's role in the conspiracy, the purpose of the conspiracy, and the maneuvers and actions taken to further the conspiracy. (*See id.*). The fact that the Amended Complaint alleges these facts "on information and belief" is inapposite—in fact, such a qualifier is expected in the instant action, a complex civil conspiracy case where Plaintiff has not yet had the opportunity to conduct extensive discovery.

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion to Dismiss (Doc. 30) is **GRANTED**;

2. Plaintiff's Amended Complaint (Doc. 29) is **DISMISSED WITHOUT PREJUDICE**; and

3. On or before April 21, 2021, Plaintiff must file a Second Amended Complaint consistent with the directives of this Order.[5]

**DONE AND ORDERED** in Orlando, Florida on April 7, 2021.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

---

[5] Other than as expressly provided by this Order, Plaintiff is prohibited from alleging new causes of action or legal theories in the Second Amended Complaint.