## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

ALAN GRAYSON,

        Plaintiff,

v.

                             CASE NO. 6:20-cv-1824-Orl-40LRH

NO LABELS, INC.; PROGRESS TOMORROW, INC.; UNITED TOGETHER, INC.; NANCY JACOBSON, MARK PENN, and JOHN DOE(S).,

        Defendants.

_____

### SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

    Plaintiff, Alan Grayson ("Grayson"), sues Defendants, No Labels, Inc. ("No Labels"); Progress Tomorrow, Inc. ("Progress Tomorrow"); United Together, Inc. ("United Together"); Nancy Jacobson, Mark Penn, and John Doe(s) (collectively, "Defendants"), and alleges:

### INTRODUCTION

    1.    Alan Grayson—having dedicated a significant portion of his professional career to serving the public as an elected official, often with truthful "messages" to help and protect disadvantaged and underserved Americans, even if those messages were inconvenient to certain conservative political doctrine—had

come to expect opposition from his detractors, all in the name of "free speech."  But the vitriolic, hateful, false, and maliciously defamatory statements published about him by the Defendants (acting through Progress Tomorrow) leading up to Grayson's 2018 Congressional campaign crossed the line of acceptable discourse, even by the standards of modern political debate, and exceeded all bounds of decency, all with the intent to ruin Grayson.  The Defendants published repeated statements which they knew were false, or were published with reckless regard to truthfulness, and they damaged Grayson personally, professionally, and ultimately politically.  The Defendants thereby enriched themselves, under their "inside the Beltway" business model of promoting their ugly brand of malicious defamation to rich donors. Grayson brings this action seeking millions of dollars in damages.

## JURISDICTION, PARTIES, AND VENUE

2.     This is an action that includes claims for damages that exceed $30,000.00, exclusive of costs, interest, and attorney's fees.

3.     Plaintiff, Grayson, is a resident of Florida and an individual domiciled at 8419 Oak Park Road, Orlando, Florida 32819.

4.     Defendant No Labels, Inc. is a corporation with its principal place of business in Washington, D.C.

5.     Defendant Progress Tomorrow is a Delaware corporation.

6.     Defendant United Together is a Delaware corporation.

7.     Defendant Nancy Jacobson ("Jacobson") is the founder and President of No Labels.  Grayson alleges, on information and belief, that Jacobson and Mark Penn ("Penn") are married, and they are residents of, and domiciled in, Washington, D.C.  Grayson further alleges, on information and belief, that their address is or was 2131 O Street, N.W., Washington, DC 20007.

8.     Defendant(s) John Doe(s) is, or are, civil conspirators with the other Defendants or otherwise liable for the claims asserted in this Complaint, as alleged below.

9.     Defendants are subject to the jurisdiction of this Court under Section 48.193(1)(a)(2), Florida Statutes, because they committed tortious acts within this state and within this judicial district, causing damage to Grayson within this judicial district.

10.     Under Section 47.011, Florida Statutes, venue is proper in Orange County, Florida, because the causes of action accrued in Orange County.

## GENERAL ALLEGATIONS

11.     Jacobson and No Labels raise money from right-wing millionaires and billionaires that is used to denigrate, disparage, and destroy the reputations of progressive political candidates, primarily through negative advertising and "attack ads."  Grayson alleges, on information and belief, at one point, No Labels touted to such donors and potential donors that it had ended Grayson's political career.  In

2016, Jacobson—and No Labels—directed groups spent hundreds of thousands of dollars in negative advertising against Grayson's wife, Dr. Dena Grayson, in her Congressional campaign.

12.     According to a December 2018 report in *The Intercept,* No Labels "gave work" to political companies that Penn either owns or controls through Stagwell Group (where Penn is President and Managing Partner), or from which he otherwise profits.

13.     According to a Complaint filed in the Supreme Court of the State of New York by Rimylan Enterprises, LLC, Penn was "calling all the shots" regarding No Labels-related campaign activity from May 2018 onward.  Penn and Jacobson are named defendants in this action because they both were "calling the shots" in the attacks against Grayson giving rise to the specific claims herein.

14.     During 2018, No Labels-related campaign activity was conducted through a series of shell companies with "Orwellian" names, including Forward Not Back, Inc.; United for Progress, Inc.; United Together, Inc.; Citizens for a Strong America, Inc.; Govern Or Go Home, Inc.; Americans Committed for Progress, Inc.; Citizens for America, Inc.; Progress Together, Inc.; Patriotic Americans PAC, Inc.; No Labels Action, Inc.; and Progress Tomorrow, Inc.  The Defendants manipulated these shell companies to strip their assets, making them judgment-proof.  Grayson

alleges, on information and belief, a substantial portion of these assets were transferred to organizations that Penn owned or controlled.

15.    In 2018, Grayson announced his candidacy for Congress.  Grayson alleges, on information and belief, that on the day after he made this announcement, Jacobson and No Labels obtained a $500,000.00 contribution from a substantial media mogul for No Label's related campaign activity.  Grayson alleges, on information and belief, that this money was targeted against Grayson.

16.    The $500,000.00 contribution was made to United Together and then transferred, along with other funds, to Progress Tomorrow.

17.    Defendants, acting through Progress Tomorrow, then publicly communicated statements that disparaged Grayson.  Grayson alleges, on information and belief, that these statements were known to and approved by both Jacobson and Penn; Jacobson and Penn caused them to be published; and they were the natural and probable consequences of Jacobson's and Penn's actions.  Progress Tomorrow targeted these comments to disparage Grayson to voters within this Judicial Circuit, *inter alia,* where Grayson was a candidate for U.S. Congress in an election held on August 28, 2018.

18.    Progress Tomorrow defamed Grayson through at least three different media forms: (a) mail addressed to households within this judicial district; (b) internet advertising on Facebook and similar websites that, Grayson alleges, on

information and belief, was targeted to persons in this judicial district; and (c) a website, FloridaDeservesBetter.org, to which the mail and the internet advertising "pointed."

### A.    <u>Defamatory Mail</u>

19.    Regarding the defamatory mail, in publishing communications to persons in this Judicial Circuit, Progress Tomorrow posted comments in which it claimed that, *inter alia*:

a.    "Congressional Ethics Investigation Found Alan Grayson Abused His Office for Financial Gain."

b.    "A Congressional Ethics Investigation found evidence that Alan Grayson Abused His Position in Congress to enrich himself."

c.    ". . . as a congressman, he . . . Hid income on his public disclosures."

d.    ". . . as a congressman, he . . . Used taxpayer resources to conduct his high-risk investor scheme."

e.    "Alan Grayson Used His Congressiotnal [*sic*] Office For His Own Financial Gain."  PT 588-91 & 596-97 [1]

20.    These statements were false.

---

[1] The PT references are to the Defendants' document production.

21.     One of the mailers featured what purported to be a 9" x 12" picture of Grayson sitting on the beach in the Cayman Islands, in a chaise lounge, mixed drink to his right.  PT597. This picture is false.  Grayson has never been to the Cayman Islands.[2]

22.     Another Progress Tomorrow mailer depicted a figure walking across an airport runway toward a jet, carrying a silver attaché case with the luggage tag "GCM."  "GCM" is a unique three-character identifier code for Owen Roberts Airport in George Town, Cayman Islands (corresponding to MCO for Orlando International Airport).  On the reverse side of the mailer, the attaché case is open. The top of attaché case shows Grayson's passport, except for dollar signs replacing Grayson's eyeballs.[3]  The bottom of the attaché case contains 15 "bricks" of $100 bills, which would be at least $150,000, assuming only one layer of "bricks."[4] PT590-91.   The "story" that Progress Tomorrow told by these pictures is that Grayson packed at least $150,000 in cash into a suitcase and flew to the Cayman Islands with it, committing the crime of money laundering.  Grayson has never done anything of the kind.  These statements and pictures are false.

---

[2] A different mailer published by Progress Tomorrow depicts a Cayman Islands beach as the place "WHERE ALAN GRAYSON MADE CONGRESS WORK FOR HIM."  PT588.  Here again, Grayson has never been to the Cayman Islands, much less "made Congress work for him" there.

[3] The image is not Grayson's actual passport; it is a "photoshopped" version deceptively meant to look like Grayson's passport.

[4] A "brick" is 100 bills with a piece of paper wrapped around them.

23.     In other defamatory mail, publishing communications to persons in this Judicial Circuit, Progress Tomorrow published statements regarding Lolita Carson-Grayson's allegations of abuse by Grayson.  *See generally* PT599-611.[5]  Although it is true that Lolita Carson-Grayson made such allegations, it is also true that:

a.     She publicly recanted them, twice, within 48 hours;

b.     She agreed to a statement that such abuse had never occurred;

c.     Their daughter, who lived with them, issued a public statement that they had never occurred;

d.     A widely reported video from the same date shows Lolita Carson-Grayson punching Grayson twice in the face, and Grayson backing away; and

e.     The divorce court adjudicated Lolita Carson-Grayson's statements as false and ordered her to pay Grayson more than $200,000 in legal fees. Therefore, although it is true that Lolita Carson-Grayson made such statements, Progress Tomorrow published them to create or imply a false impression of Grayson (in essence, by knowingly, willfully, and maliciously republishing Lolita Carson-Grayson's own defamation), and therefore they are defamatory.[6]

---

[5] Although most of these Progress Tomorrow mailers refer to "reported abuser" Alan Grayson, one of them drops that nuance, and states simply: "ALAN GRAYSON. SERIAL ABUSER." PT603.

[6] To feign credibility, one of these mailers is in the form of a fake newspaper called "The Florida Citizen" (conceded "not a newspaper," but supposedly "the reflection

24.     The Defendants knew that these statements, as presented by Defendants, were false, or they acted in reckless disregard of whether the statements were false.   For instance, in an "opposition research" report on Grayson that the Defendants commissioned, the report notes that Lolita Carson-Grayson recanted her allegations of abuse and that Grayson's daughter issued a public statement that they had never occurred.   Furthermore, the five media sources that these mailers cite provide the very information from which the Defendants either knew that the allegations were false or acted in reckless disregard of whether they were true or false.   Therefore, Grayson alleges, on information and belief, the Defendants knew these statements were false, they entertained serious doubts as to the veracity of these statements, or they were highly aware that the statements were likely false.[7]

25.     Progress Tomorrow's Federal Election Commission ("FEC") reports refer to Progress Tomorrow expenditures between August 1, 2018, and August 23, 2018, for "DIRECT MAIL PRINTING AND POSTAGE" attacking Grayson.[8]   The normal "publication" schedule for political direct mail is:

---

of how we feel.")  PT603.  None of the defendants are citizens of Florida.  Another mailer feigns excerpts from a 911 call (PT593).   The Defendants' profound indifference to accuracy is reflected in their statement that "Grayson pushed [a] reporter" (PT600, 603, 605 & 609), citing to articles–including videos–showing the reporter pushing Grayson.

[7] Ironically, in these mailers, the media sources are headlined "CHECK THE FACTS" – something that the Defendants themselves may have never done.

[8] These references to the Defendants' FEC reports should not be taken as agreement regarding the accuracy or completeness of those reports.

a.      Payment;

b.      Printing;

c.      Labeling;

d.      Transportation from printer to post office;

e.      Delivery from post office to mailbox; and then

f.      Removal from mailbox and reading.

Therefore, it is clear from Progress Tomorrow's own FEC reports that at least some of this defamatory mail was published within the two years before this action was filed, especially considering that some of the defamatory attack ads were paid for within the two-year period, and payment precedes publication, often substantially. Also, consistent with standard political messaging strategy, Progress Tomorrow would have arranged the direct mail to be disseminated and read shortly before the August 28, 2018 election, well within two years of filing of this action.[9, 10]

### B.   Defamatory Internet Ads

26.      The Progress Tomorrow FEC report states that Progress Tomorrow spent more than $83,000 in "DIGITAL ADVERTISING" against Grayson on

---

[9] As explained below, Progress Tomorrow did exactly that with its Facebook ads, all of which ran either on Election Day or the day before.

[10] In their limited document production to date, the Defendants have improperly withheld all information on payment, printing, labeling and transportation of their direct mail, for which the date of publication could be easily ascertained since the U.S. Postal Service independently tracks political mail.

August 24 and 27, 2018.  It is the general practice of digital advertising companies to require payment before publication.  Therefore, the publication of these internet ads took place on or after August 24, 2018, *i.e.,* within two years of filing this action.

27.     Facebook maintains a library that includes 13 entries for the Progress Tomorrow anti-Grayson ads.  This library indicates that all these entries ran only on August 27-28, 2018, within two years of filing this action.

28.     Facebook ads may be geographically targeted, which means that Progress Tomorrow could, and did, target these ads to persons within this judicial district.

29.     According to Facebook statistics for one of these 13 Facebook ads, Progress Tomorrow spent between $3,500.00 and $4,000.00 on that ad, and it was seen on a screen 150,000 to 175,000 times within that two-day period.  Grayson alleges, on information and belief, virtually all of those "impressions" were to persons within this judicial district.

30.     In many respects, the internet ads repeated the content of the direct mail.  Therefore, Grayson repeats and incorporates by reference the allegations of Paragraphs 19-24 above, with respect to the content of these internet ads.

31.     Many of the Facebook ads stated that Grayson "used international government travel to drum up business for his hedge fund."  As with the printed ads,

this too was false, and the Defendants knew it was false or acted in reckless disregard of its truth or falsity.[11]

32.    In the Facebook ads, moreover, Progress Tomorrow also, *inter alia,* published images of, and quoted from, a handwritten statement by Lolita Carson-Grayson in which she made false allegations against Alan Grayson regarding him allegedly striking her.  As noted above, she publicly recanted those allegations less than 48 hours later, a video and 911 call were widely disseminated demonstrating that they were false, and Carson-Grayson was subsequently held liable for Grayson's attorney's fees.[12]  Any investigation of the Lolita allegations would have likewise revealed their recantation and refutation.  Indeed, Defendants' "opposition research" report demonstrates that the Defendants learned about—but then ignored—their recantation and refutation.  Yet, Progress Tomorrow knowingly published this false information, without noting that it had been recanted and demonstrated to be false. The information also was posted on Instagram, as well as Facebook, *inter alia.*

---

[11] The Facebook ads also stated that Grayson "used Congressional staff to work for the fund."  It is true that Grayson employed one Congressional staffer for the fund *when Grayson was not in Congress.*  Therefore, this statement was used, knowingly, willfully, and maliciously, to create a false impression of Grayson, and hence is defamatory.

[12] Lolita said, in a contemporaneous 911 call, that Grayson had not hit her, *and that she had hit him.*  This was amply reported in the media coverage at the time, to which the Progress Tomorrow Facebook ads refer.  Therefore, for this reason and for other reasons, Progress Tomorrow knew that the statement was false, or acted in reckless disregard of whether it was true or false.

33.    In the Facebook ads, Progress Tomorrow also published what were depicted as news reports disparaging Grayson.  The "news reports" were edited and altered in false and misleading manners.  For instance, it appears that they would begin with a brief clip of a news report, and then would continue with false and defamatory statements spoken by someone else, in a voice like the reporter's voice.[13]

34.    By running these internet ads only on (or about) August 27, 2018, the day before the election, and on August 28, 2018, the day of the election, Progress Tomorrow employed a common tactic in negative political advertising and in defamatory political advertising, *i.e.,* strike "at the last minute" so that the victim does not have any opportunity to respond, and the media does not have any time to "fact-check" the ads.  This indicates that the Defendants knew that these attacks were false or acted in reckless disregard of their truth or falsity.

### C.    Website

35.    Both Progress Tomorrow's direct mail and its internet ads "drove traffic" to a defamatory website created at the URL www.floridadeservesbetter.org

---

[13] One of these Progress Tomorrow Facebook ads claimed that Grayson called for the arrest of a reporter "after" the reporter asked Grayson some questions.  In a strict temporal sense, that might be true, but Grayson called for the reporter's arrest *because* the reporter repeatedly chest-bumped Grayson in an "ambush interview," while the reporter's colleague videotaped the incident.  Here again, the video to which Progress Tomorrow cites, and which it uses, makes this clear, and Progress Tomorrow edited the video to give a false impression.  The Defendants knew of this falsity or acted in reckless disregard of it.

(the "website").  This URL was reserved on or about July 18, 2017, and then renewed for one year on or before July 18, 2018. Grayson alleges, on information and belief, it was reserved by one or more of the Defendants.  Grayson further alleges, on information and belief, the website remained empty until approximately August 2018.  At that time, the website was "populated" with the plethora of attack ads, other information in Progress Tomorrow's direct mail and internet ads, and some related information (the "website content").  The specific date on which this occurred is unknown at this time.  The specific dates upon which the website was modified with additional content also is unknown at this time.[14, 15]  In any event, all or substantially all of Progress Tomorrow's direct mail and internet ads pointed to this website by name, with the internet ads providing "one click" embedded links. The website remained intact, with its website content, until after the election on August 28, 2018.  The specific date on which the website was "taken down" is unknown at this time, but it was after that date.  In any event, the website contained the offending website content within two years of when this action was brought, it

---

[14] Although it is known that the website ultimately contained Progress Tomorrow's Facebook ads, which did not come into being until August 27, 2018, less than two years before this action was brought.

[15] In their limited document production to date, the Defendants have improperly withheld all information that would identify the dates of population and modification.

was modified within two years of when this action was brought, and the Defendants "drove traffic" to the website within two years of when this action was brought.[16]

36.     The Defendants, acting through Progress Tomorrow, therefore, as alleged above, publicly communicated numerous statements disparaging Grayson, including but not limited to, those enumerated above, in direct mail and internet advertising, *inter alia*.  The statements were collected and repeated at the website that the Defendants created and Progress Tomorrow hosted.  These statements were made for the purpose of harming Grayson's 2018 Congressional campaign and Grayson's reputation.

37.     According to reports to the Federal Election Commission ("FEC"), Progress Tomorrow spent at least $544,480.00 in Grayson's race, primarily in negative advertising against Grayson.  Grayson was defeated.

38.     All these statements: (a) were made by Defendants, through Progress Tomorrow; (b) were publicly communicated, and (c) disparaged Grayson.  They were made with knowledge of their falsity, or reckless disregard of it.

---

[16] Given, as Grayson alleges on information and belief, that Progress Tomorrow made material changes to the website within two years of when this action was brought, and that Progress Tomorrow "drove traffic" to the website with (*inter alia*) hundreds of thousands of internet ad impressions within two years of when this action was brought, and that all of this activity was orchestrated to influence a decision (*i.e.,* voting) that took place within two years of when this action was brought, Grayson alleges that the defamations that were perpetrated at the website are redressable under the applicable statute of limitations.

39.     Grayson alleges, on information and belief, that Defendants conspired with others [John Doe(s)] to disseminate the disparaging statements.  These Progress Tomorrow statements have been repeated, disseminated, and published by others, causing Grayson further injury.  Defendants not only intended this, they actively sought this result.  Such offending statements continue to violate Grayson's rights.  For instance, the above-mentioned website, www.floridadeservesbetter.org, was sustained online even after the election.

40.     As a result, Grayson has suffered injury in an amount to be determined at trial, exceeding $10 Million.

41.     Persons to be identified [John Doe(s)] are liable for each of the claims asserted below.

42.     All general and statutory conditions precedent to bringing this action have been performed, have occurred, have been waived, or have otherwise been excused by the Defendants' actions.

## COUNT I
## DEFAMATION—LIBEL AND SLANDER

43.     Grayson sues Defendants for damages that exceed $75,000.00 and equitable relief for defamation.

44.     Grayson realleges, incorporates, and asserts by reference the allegations set forth above in Paragraphs 1 through 42.

45.     Defendants have made false statements of fact regarding Grayson. Defendants raised the funds necessary, planned, orchestrated, and ultimately, through Progress Tomorrow, published the defamatory statements through mailers, internet ads, and the publication of a website dedicated to housing the defamatory statements.[17]

46.     Defendants published these defamatory statements within the two years preceding the filing of this suit, as alleged herein.

47.     Defendants had knowledge of the falsity, or reckless disregard of it.

48.     The statements were made with actual malice to harm Grayson.

49.     One or more of these statements charged that Grayson had committed a crime; or that Grayson possesses characteristics that make him unfit as a lawyer or an elected official; or tended to subject Grayson to hatred, distrust, ridicule, contempt, or disgrace; or was meant to injure Grayson in the political and legal arenas.

50.     These statements were communicated, directly or indirectly, to one or more third parties.

51.     The statements were accessed by third parties in this jurisdiction and venue.

---

[17] (True statements that were defamatory by implication, rather than defamatory by false statement, are excluded from this count and enumerated under the separate claim for Defamation by Implication, below.)

52.    Defendants intended them to injure Grayson's reputation and economic well-being, *inter alia,* and they did so.   As a direct and proximate result of Defendants' actions, Grayson has suffered and will continue to suffer direct and consequential damages.   The injury to Grayson included, but was not limited to, economic injury and loss of income.

53.    Defendants made such statements in writing, *i.e.*, libelous statements. Grayson alleges, on information and belief, that they also made such statements orally, *i.e.,* slanderous statements.

54.    Given the likelihood of irreparable harm, unavailability of an adequate remedy at law, the substantial likelihood of success on the merits, and the benefit to the public, preliminary and permanent injunctions are necessary to prevent the further defamation of Grayson.

WHEREFORE, Grayson demands judgment against the Defendants for compensatory damages, reserving the right to seek punitive damages upon a proper proffer, preliminary and injunctive relief, prejudgment interest, costs, and attorneys' fees as permitted by law.

## COUNT II
## DEFAMATION BY IMPLICATION

55.    Grayson sues Defendants for damages that exceed $75,000.00 for defamation by implication.

56.     Grayson realleges, incorporates, and asserts by reference the allegations set forth above in Paragraphs 1 through 42.

57.     Defendants have made statements of fact regarding Grayson that created a false and defamatory impression:

        a.      For instance, the Defendants published statements regarding Lolita Carson-Grayson's false allegations of abuse, omitting all of the information demonstrating that they were false, including (but not limited to) her recanting of those statements (as alleged *supra*, at ¶¶ 23-24 & 32);

        b.      The Defendants published a statement that Grayson "used Congressional staff to work for the fund," omitting the fact that a Congressional staffer worked for the fund when Grayson was not in Congress (¶ 31 n.11); and

        c.      The Defendants published a statement that Grayson had called for the arrest of a reporter "after" the reporter had asked Grayson some questions, omitting the fact that Grayson had called for the reporter's arrest because the reporter repeatedly chest-bumped Grayson (¶ 33 n.13).

58.     Defendants made statements intended to defame Grayson by implication by:

        a.      Making literally true statements which created a false impression;

b. Making statements which omitted facts in order to create a false impression; or

c. Making statements which juxtaposed facts in order to imply a defamatory connection, and thus a false impression; and

d. All of which Defendants made to be reasonably read to impart the false innuendo or impression, which the Defendants intended or endorsed.

59. Defendants raised the funds necessary, planned, orchestrated, and ultimately, through Progress Tomorrow, published the statements that were false and defamatory by implication through mailers, internet ads, and the publication of a website dedicated to housing these statements.

60. Defendants published these defamatory-by-implication statements within the two years preceding the filing of this suit, as alleged herein.

61. Defendants had knowledge of the falsity of the implications, or reckless disregard of that falsity.

62. The statements were made with actual malice to harm Grayson.

63. One or more of these statements that were false by implication implied that Grayson had committed a crime; or that Grayson possesses characteristics that make him unfit as a lawyer or an elected official; or tended to subject Grayson to hatred, distrust, ridicule, contempt, or disgrace; or was meant to injure Grayson in the political and legal arenas.

64.     These statements were communicated, directly or indirectly, to one or more third parties.

65.     The statements were accessed by third parties in this jurisdiction and venue.

66.     Defendants intended them to injure Grayson's reputation and economic well-being, *inter alia,* and they did so.   As a direct and proximate result of Defendants' actions, Grayson has suffered and will continue to suffer direct and consequential damages.   The injury to Grayson included, but was not limited to, economic injury and loss of income.

67.     Defendants made such defamatory-by-implication statements in writing, *i.e.*, libelous statements.   Grayson alleges, on information and belief, that they also made such statements orally, *i.e.,* slanderous statements.

68.     Given the likelihood of irreparable harm, unavailability of an adequate remedy at law, the substantial likelihood of success on the merits, and the benefit to the public, preliminary and permanent injunctions are necessary to prevent the further defamation of Grayson by implication.

WHEREFORE, Grayson demands judgment against the Defendants for damages, prejudgment interest, injunctive relief, reserving the right to seek punitive damages upon a proper proffer, costs, and attorneys' fees as permitted by law.

## COUNT III
## CIVIL CONSPIRACY

69.     Grayson sues Defendants for damages that exceed $75,000.00 for civil conspiracy.

70.     Grayson realleges, incorporates, and asserts by reference the allegations set forth above in Paragraphs 1 through 42.

71.     As set forth in detail above, Defendants made an agreement to work together to cause Grayson injury.  Grayson alleges, on information and belief, that other person(s), John Does(s) (*i.e.,* natural persons or legal entities), agreed with Defendants to cause Grayson such injury.  The agreement was to do one or more unlawful acts, by unlawful means, *i.e.,* torts or wrongs as alleged in the counts above. Grayson further alleges, on information and belief, that Defendants, including John Doe(s), committed overt acts in furtherance of the conspiracy, including the aforementioned defamatory actions of Progress Tomorrow.

72.     As to the named defendants other than Progress Tomorrow:  United Together raised the money that was deployed against Grayson and helped to obscure the source of the funds.  Grayson alleges, on information and belief, that all the Defendants worked together in this manner to try to shield donors from scrutiny, thus facilitating fundraising.  Grayson further alleges, on information and belief, that No Labels is the primary vehicle that Jacobson and Penn employ to raise money from donors, some of which they spend on character assassination and the rest of

22

which they keep for themselves.  Grayson also alleges, on information and belief, that Jacobson and Penn were personally involved in soliciting the source of funds for these attacks on Grayson, just as they were personally involved in soliciting the source of funds for their earlier attack on Grayson's wife.  As noted above, Penn was personally "calling the shots" for all the defamatory campaigns orchestrated by No Labels and Jacobson during this period.   As alleged above, the anti-Grayson statements were known to and approved by both Jacobson and Penn, and Jacobson and Penn caused them to be published.  Grayson alleges, on information and belief, conforming to their longstanding *modus operandi,* Jacobson and Penn benefited financially, and substantially, from this conspiracy.

73.   As a direct and proximate result of Defendants' actions, Grayson suffered direct and consequential damages.

WHEREFORE, Grayson demands judgment against the Defendants for compensatory damages, reserving the right to seek punitive damages upon a proper proffer, prejudgment interest, injunctive relief, costs, and attorneys' fees as permitted by law.

**<Demand for Jury Trial and Signature on Following Page>**

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands a trial by jury for all issues so triable.

**Dated: April 21, 2021.**

*s/Tucker H. Byrd*

**Tucker H. Byrd**
Florida Bar No. 381632
**BYRD CAMPBELL, P.A.**
180 Park Avenue North, Suite 2A
Winter Park, Florida 32789
Telephone: (407) 392-2285
Facsimile:  (407) 392-2286
Primary Email: TByrd@ByrdCampbell.com
Primary Email: RMicale@ByrdCampbell.com
*Attorney for Plaintiff*