# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

ALAN GRAYSON,

          Plaintiff,

v.                                        Case No:   6:20-cv-1824-PGB-LRH

NO LABELS, INC.,
PROGRESS TOMORROW, INC.,
UNITED TOGETHER, INC.,
NANCY JACOBSON,
MARK PENN and
JOHN DOES

          Defendants.

_____

## ORDER

This cause came on for consideration without oral argument on the following motions filed herein:

> **MOTION:    PLAINTIFF'S MOTION TO COMPEL TESTIMONY OF LOLITA GRAYSON (Doc. 70)**
>
> **FILED:        December 1, 2021**
>
> _____
>
> **THEREON** it is **ORDERED** that the motion is **GRANTED in part and DENIED in part**.

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS WITHIN DEFENDANT'S CONTROL (Doc. 67)** |
| **FILED:** | **November 30, 2021** |

**THEREON** it is **ORDERED** that the motion is **DENIED**.

## I.   BACKGROUND

On the day before and the day of the December 1, 2021 discovery deadline (*see* Doc. 22), Plaintiff filed three motions to compel, and a renewed motion to extend the discovery deadline.   (Docs. 67-68, 70-71).   The motions are replete with attacks on Defendants and their counsel and claims of unethical behavior.   Each motion was hotly contested by Defendants.   (Docs. 72-75).   And each response is likewise full of attacks on the litigation tactics of Plaintiff and his counsel, along with various complaints about Plaintiff (and his counsel's) candor to the Court.[1] One of the motions to compel, which was directed towards Requests for Admission, and the motion for extension of the discovery deadline, have now been ruled on.

---

[1] To say that the parties and their counsel do not play well together would be a gross understatement.   Throughout this litigation the parties, through their counsel, have filed a multitude of motions and related documents casting aspersions on each other, and engaging in hyperbole and ad hominem attacks.   It is unfortunate to say the least, and does nothing to strengthen either side's position.   To the contrary, when the parties engage in such needless hostilities, it only demonstrates weakness in their respective arguments.

(Docs. 80-81).   The other two remaining motions to compel form the basis of this Order.

The first of these remaining motions seeks an Order compelling Defendants "to produce all responsive, non-privileged documents within their control, that are in the possession, custody, or control of non-party vendors employed by Defendants in their anti-Grayson smear campaign."   (Doc. 67, at 1).   The second motion seeks an Order compelling a non-party witness, Lolita Carson-Grayson, Plaintiff's former spouse, "to sit for another deposition and answer Plaintiff's counsel's questions and for sanctions."   (Doc. 70, at 3).   Alternatively, Plaintiff requests that Ms. Carson-Grayson's testimony be stricken.   (*Id.*).   Both motions were filed in compliance with my Standing Order on Discovery Motions.   (Doc. 5). Defendants timely filed responses in opposition to both motions, also in compliance with my Standing Order.   (Docs. 72, 74).   Upon review of the motions and responses, the Court determined that additional briefing was required, and ordered the parties to file supplemental briefing on the salient legal issues.   (Doc. 76).   Both sides filed timely supplemental briefs (Docs. 77, 82), and the motions are now ripe for disposition.

## II.    THE MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM NON-PARTIES (Doc. 67).

Plaintiff's first motion, filed the day before the close of discovery, appears to be related to two Requests for Production ("RFP"), and six non-parties. [2] Specifically, RFP 3 requests "[a]ll documents pertaining or relating to any images, screenshots, text messages, emails, or other information posted, displayed, transmitted, or communicated, on the internet or any website that you created or caused to be created, referring or relating to Grayson."   (Doc. 67-1, at 6).   And RFP 5 seeks "[a]ll documents pertaining or relating to any contracts, agreements, or business dealings between you and any third party concerning Grayson."   (*Id.*). Plaintiff contends that Defendants have hired several non-party vendors to perform work for Defendants related to this case, and that the non-party vendors may have responsive documents to these RFPs.   (Doc. 67, at 2).   Plaintiff further contends that Defendants exercise "control" over these non-party vendors, yet Defendants have "made no good faith effort to obtain the responsive documents" from these entities.   (*Id.*).

---

[2] I say "appears to be" because the motion and supplemental briefing broadly request the production of all documents within Defendants' control, that are in the possession, custody, or control of non-party vendors employed by Defendants.   (Doc. 67, at 1; Doc. 77, at 2).   However, the only requests for production identified in either filing are RFPs 3, and 5, and the only non-party vendors identified are Rising Tide Interactive, Landscape Media, LLC, The Pivot Group, Inc., Lawton Connect, Anzalone Liszt Grove Research, Inc., and Blank Rome LLP.   (Doc. 67, at 2, n. 2; Doc. 77, at 4-6).   I have therefore limited Plaintiff's motion to compel to these requests and entities.

As specified in the motion and supplemental response, the non-party vendors at issue are: Rising Tide Interactive, Landscape Media, LLC, The Pivot Group, Inc., Lawton Connect, and Anzalone Liszt Grove Research, Inc. (*Id.*; Doc. 77, at 4-6). Plaintiff requests an order compelling Defendants to "request, obtain, and produce all responsive documents from all of their anti-Grayson vendors." (Doc. 67, at 3; *see also* Doc. 77, at 1-2). Plaintiff does not request an award of fees or costs or any other sanctions. (Doc. 67, at 3).

Defendants make several arguments in opposition to the request. First, Defendants state that they completed all of their production in response to these RFPs back in July 2021. (Doc. 72, at 2). Next, Defendants point out that Plaintiff has already sought these documents directly from these non-party vendors via subpoenas, which were only recently served in October 2021. (*Id.*). Last, Defendants argue that they do not control any of these non-party vendors, Plaintiff cannot establish that Defendants control any of these non-party vendors, and therefore Defendants are under no obligation to request any documents from these entities in response to the RFPs. (*Id.*, at 2-3).[3]

---

[3] Defendants also state, in their supplemental brief, that they have produced records from Blank Rome, LLP, Progress Tomorrow's attorney. (Doc. 82, at 4). It therefore appears that the motion to compel as it pertains to this non-party vendor has been resolved.

Because Plaintiff's motion is directed towards the production of documents in the possession of non-parties, Defendants' first argument – that Defendants have produced their own responsive documents – does not appear relevant to the present dispute.   And I do not read Plaintiff's motion as challenging the responses and production made by Defendants of materials they have in their own possession, nor has Plaintiff challenged any of the boilerplate objections Defendants raised.   *See also* Docs. 67-6 through 67-10 (Defendants' responses to Plaintiff's RFPs).   Rather, it appears that the argument concerning "control" over these non-party vendors is largely dispositive of Plaintiff's motion, and I will therefore address this issue first, followed by the subpoena argument, as necessary.

Federal Rule of Civil Procedure 34(a) governs the production of documents in civil matters.   Pursuant to Rule 34(a), a party must produce documents in response to a request for production where those documents are "in the responding party's possession, custody, or control [.]"   Fed. R. Civ. P. 34(a). Whether documents are in a party's control under Rule 34 is broadly construed, and "[c]ontrol is defined not only as possession, but as the legal right to obtain documents requested upon demand."   *Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984).   *See also Jans ex rel. Jans v. The GAP Stores, Inc.*, No. 05–1534-Orl-31JGG, 2006 WL 2691800, at *2 (M.D. Fla. Sept. 20, 2006) (emphasizing that the "term 'control' is broadly construed").   "Control," therefore, does not require that a party

have legal ownership or actual physical possession of the documents at issue; indeed, documents have been considered to be under a party's control (for discovery purposes) when that party has the "right, authority, or practical ability to obtain the materials sought on demand."   *Desoto Health & Rehab, L.L.C. v. Philadelphia Indem. Ins. Co.*, No. 2:09–599-FtM-99SPC, 2010 WL 4853891, at *3 (M.D. Fla. Nov. 22, 2010) (internal quotations and citations omitted).   *See also Anz Advanced Techs. v. Bush Hog, LLC*, No. 09–00228-KD-N, 2011 WL 814663, at *9 (S.D. Ala. Jan. 26, 2011) (" '[C]ontrol' has been 'construed broadly by the courts' to include not just a legal right, but also a 'practical ability to obtain the materials' on demand.") (internal citations omitted); *Selectica, Inc. v. Novatus, Inc.*, No. 6:13-cv-1708-Orl-40TBS, 2015 WL 1125051, at *4 (M.D. Fla. Mar. 12, 2015) ("[A] party might control a non-party based upon their relationship.   The attorney-client relationship and the corporate parent-subsidiary relationship are examples.   A party may control a non-party if there is a contract empowering the party to obtain information from the non-party.   Control may also exist if it is customary in the industry for the non-party to furnish the information to the party.   On the other hand, if extraordinary, unethical, or illegal means are required, then there is no practical ability to obtain the information.").

Here, Defendants argue that they do not have any further documents in their possession, custody, or control, and do not have the "right, authority, or practical

ability" to obtain the documents from these six non-party vendors.  "Although a good faith averment that documents are not within a party's possession is usually sufficient to resolve the issue of a party's failure to produce, a discovering party may overcome such an averment by making an adequate showing that the other party has possession, custody, or control of the requested documents." *Supreme Fuels Trading FZE v. Sargeant*, No. 08-81215-Civ-Hurley/Hopkins, 2011 WL 13172599, at \*3 (S.D. Fla. Sept. 15, 2011) (first citing *Zervos v. S. S. Sam Houston*, 79 F.R.D. 593, 595-96 (S.D.N.Y. 1978), then citing *Golden Trade, S.r.L. v. Lee Apparel Co.*, 143 F.R.D. 514, 525 n.7 (S.D.N.Y. 1992)).  "The Plaintiff, as the party seeking production of the documents, bears the burden of proving that [Defendants] have such control." *Siegmund v. Xuelian*, No. 12-62539-CIV-GAYLES/TURNOFF, 2016 WL 1359595, at \*2 (S.D. Fla. Apr. 6, 2016).[4]  Further, "[a] court cannot grant a motion to compel upon a "mere hunch" that documents exist; rather, there must be a "reasonable deduction" that the documents exist." *Supreme Fuels Trading FZE*,

---

[4] Plaintiff concedes that he has the initial burden to establish "control," but argues that his burden is merely to prove a "*prima facie* case," citing *Societe Internationale Pour Participations Industrielles et Commerciales, S A. v. Rogers*, 357 U.S. 197, 200 (1958).  (Doc. 77, at 7).  Plaintiff reads too much into this decision.  The Supreme Court nowhere holds that a party's burden is merely that of a "*prima facie* case;" to the contrary, the Supreme Court's mention of "*prima facie* case" is limited to a recitation of the procedural history and rulings from the lower courts.  That is all.  357 U.S. at 200.  Instead, the Supreme Court expressly states that it is not "intimating any view upon the merits of the litigation" but simply "accept[s] as amply supported by the evidence the findings of the two courts below. . . ."  *Id.* at 204.

2011 WL 13172599, at *3 (citing *Harris v. Koenig*, 271 F.R.D. 356, 370 (D.D.C. 2010) ("If plaintiffs are speculating that documents responsive to these requests do exist, there must be a reasonable deduction that is true, and not a mere hunch.")).

Upon review of the relevant filings, Plaintiff has not met its burden of establishing that Defendants have "control" – *i.e.,* the "right, authority, or practical ability" to demand documents from these non-party vendors.   In his original motion, Plaintiff discusses at length the relationship between the Defendants themselves—accusing them of being "shell companies"—the lack of document production to date, and the general law defining the term "control."   (Doc. 67, at 1-3).   However, as to the "control" Defendants have with respect to the non-party vendors, Plaintiffs merely state that "[t]he vendors here did 'work for hire.'   The Defendants have *both* the legal right to obtain such documents, and the 'practical ability' to obtain them."   (*Id.*, at 3) (emphasis in original).   This is the extent of Plaintiff's argument on the issue of control.

Plaintiff expands on these points in his supplemental brief, but it is still not enough.   The entirety of Plaintiff's "proof" on the issue of control is as follows:

> Here, the Defendants have *both* the legal right *and* the practical ability to obtain and produce the vendor documents from their anti-Grayson smear campaign.   Yet the Defendants ask the Court to ignore the term "control" from Rule 34.   They maintain that such documents are not within their actual possession or custody, even though others possessing the documents act on the Defendants' command---- the Court has no authority to compel production.   This division of

responsibility to achieve the same objective—mount the anti-Grayson smear campaign--artificial separation structured, should not be allowed to thwart the Court's authority to compel discovery, helping Defendants evade their responsibility.

Discovery has established that during the 2018 election cycle, Defendant No Labels, set up a constellation of shell-company 'Super PACs,' with Orwellian names like:   Forward Not Back, Inc.; United for Progress, Inc.; United Together, Inc.; Citizens for a Strong America, Inc.; Govern Or Go Home, Inc.; Americans Committed for Progress, Inc.; Citizens for America, Inc.; Progress Together, Inc.; Patriotic Americans PAC, Inc.; No Labels Action, Inc.; and Progress Tomorrow, Inc.   No Labels and Jacobson then enticed millionaires and billionaires to contribute millions of dollars to these shell-company Super PACs. They shifted money back and forth between these entities, with no consideration whatever. The Super PACs operated simply as checkbooks with money doled out at No Labels' discretion.   No Labels directed that most of the money be spent on vendors conducting smear campaigns against progressive candidates like Grayson. The anti-Grayson campaign was conducted through funds in the shell companies United Together, Inc.; and Progress Tomorrow, Inc. ("PT"). At the end of the 2018 election cycle, the remaining funds were swept together into the shell company "No Labels Action, Inc.," and the remaining $2.1 million was simply appropriated by Defendant No Labels, which (according to public records) had never provided any documented goods or services to "No Labels Action, Inc."   No Labels staffers appear to have taken hundreds of thousands of dollars in hidden kickbacks along the way.

The Federal Election Commission ("FEC") requires that campaign expenditures against a federal candidate be reported to the FEC. Therefore, it is undisputed that PT *paid for* hundreds of thousands of dollars in anti-Grayson expenditures, through August 2018.   FEC regulations require the identification of who pays for campaign ads. More than a million anti-Grayson mail and online ads bore the legend: **"Paid for by Progress Tomorrow, Inc."**

As noted, this legend is required by law, and it appears in all the anti-Grayson ads.   Therefore, it is beyond dispute that PT actually

paid for the anti-Grayson ads.   According to PT's FEC reports, PT paid Landscape Media, LLC ("Landscape") and The Pivot Group, Inc. ("Pivot"), for the anti-Grayson ads.   Pivot designed the anti-Grayson mail and paid for its printing and distribution in Central Florida.   According to discovery, Landscape actually did nothing, but Landscape is owned by Eli Kaplan, who also owns Rising Tide Interactive ("Rising Tide").   Rising Tide created and disseminated the anti-Grayson online ads and website.   No Labels selected both and oversaw their attacks on Grayson.

PT also paid Anzalone Liszt Grove Research, Inc. ("ALG") for anti-Grayson polling, Spiros Consulting ("Spiros") for anti-Grayson opposition research, and Blank Rome LLP for ("Blank Rome") for legal review of the anti-Grayson ads.   Collectively, these are the primary "vendors."   The Defendants identified them all as relevant witnesses in their Rule 26 disclosures.

According to discovery, No Labels—most notably, Nancy Jacobson and Margaret White—exercised day-to-day control over the anti-Grayson campaign.   For instance, during August 2018 alone, there are nearly 100 e-mails to or from Nancy Jacobson, regarding the design, content, and dissemination of the anti-Grayson smear campaign.   Essentially, Pivot and Rising Tide checked with No Labels on every significant decision in the anti-Grayson smear campaign.   In short, the Defendants not only exercise "control" over the documents at issue, but they also controlled the anti-Grayson campaign: PT by paying for it, and No Labels by micromanaging it.

Grayson first heard about the anti-Grayson smear campaign when ALG did a "push poll" against Grayson.   Grayson's attorney sent a "cease and desist" and a record retention letter to the PT Trustee, *which was circulated to the vendors*.   This indicates that the Defendants understood that they had control over vendor records.

(Doc. 77, at 2-5) (emphasis in original).

I included the entirety of Plaintiff's argument to prove a crucial point:

although Plaintiff explains, in detail, his allegations that Defendants are mere "shell

companies" and that Defendants were involved in the creation of the advertising campaigns at issue in this case, Plaintiff does not explain how this equates to any of the Defendants having control over any of the identified non-party vendors, such that Defendants have the "right, authority, or practical ability" to demand any responsive documents from the non-party vendors.   Notably, Plaintiff does not contend that Defendants own or are affiliated with any of these non-party vendors; rather, they are independent, separate companies from Defendants.

Instead, all Plaintiffs have done is further expand on the fact that Defendants hired these separate non-party vendors to perform work for Defendants.   And simply showing that Defendants hired non-parties to perform work is not sufficient to establish – even under this Circuit's broad definition of "control" – that Defendants have the "right, authority, or practical ability" to demand any documents from these vendors.[5]   *See Searock*, 736 F.2d at 653-54 (defendant did not have control over documents in possession of various repair shops and vendors that defendant engaged in transactions with, even though defendant volunteered to

---

[5] I am also not persuaded by Plaintiff's unsupported contention that Defendants forwarded document retention letters to any of these third-party vendors.   *See* Doc. 77, at 5.   Plaintiff has presented no authority even suggesting that forwarding such a letter equates to control and the practical ability to request documents from these vendors, much less enforce compliance with that request.   To the contrary, Defendants have presented evidence in the form of deposition testimony showing that Defendants were not affiliated with or controlled the non-party vendors.   *See* Docs. 82-3, 82-4.

obtain the documents during discovery); *Bodo v. GeoVera Specialty Ins. Co.*, No. 8:18-cv-678-T-30AAS, 2018 WL 6019200, at *2 (M.D. Fla. Nov. 16, 2018) (denying motion to compel defendant to produce documents in the possession of independent adjusters and vendors hired by defendant because those third-parties are independent from defendant, and thus defendant did not have possession, custody, or control over those documents; also noting that plaintiff could obtain these documents via subpoenas to the third-parties); *Mey v. Enterprise Fin. Grp., Inc.*, No. 2:15-cv-463-JES-MRM (Doc. 35, at 20) (July 27, 2016) (denying motion to compel defendant to produce documents in the possession of a co-defendant where plaintiff alleged a business relationship existed between the two entities; "the allegation of a business relationship does not rise to the level of demonstrating control – *i.e.*, a legal right to obtain the documents upon demand.  Plaintiff's recourse is to seek the documents directly from [the co-defendant].").  *See also Siegmund*, 2016 WL 1359595, at *3 ("But even under the most expansive interpretation of control, the practical ability to demand production must be accompanied by a similar ability to enforce compliance with that demand.  A possibility that a request **might** be complied with is not the same as control under Rule 34.") (citations and quotation marks omitted) (emphasis in original).[6]

_____

[6] Plaintiff cites to several other decisions in support of his control argument.   However, a

In sum, Plaintiff has not met his burden of showing that Defendants have "control" over any responsive documents that are in the possession and custody of the identified non-party vendors.   As such, Plaintiff's motion (Doc. 67) shall be **DENIED.**[7]

---

review of these decisions merely emphasizes the fact-specific nature of the inquiry to determine whether "control" exists, and in each of the cases cited, the facts show a relationship where control existed, beyond simply a "work for hire" relationship.   For example, *Sergeeva v. Tripleton Int'l Ltd.*, 834 F.3d 1194 (11th Cir. 2016) and *Costa v. Kerzner Int'l Resorts, Inc.*, 277 F.R.D. 468 (S.D. Fla. 2011) both involve affiliated corporate entities and discuss how the related corporate structures establish control.   *Selectica*, 2015 WL 1125051, involved an employer-employee relationship, as well as contracts between the parties governing the use and dissemination of information.   *DeSoto Health*, 2010 WL 4853891, involved entities where a showing was made of some common ownership and related parties managed the day-to-day operations of the two entities.   *Ghost Controls, LLC v. Gate1Access LLC*, No. 5:20-cv-288-RBD-PRL (Sept. 3, 2021), involved a motion to compel a party to obtain bank records and canceled checks from the party's financial institutions, where there is clearly the legal right to request such documents and enforce compliance with any requests. Similarly, *Santiago v. J & J Casework, Inc.*, No. 6:08-cv-1569-Orl-35DAB, 2009 WL 756142 (M.D. Fla. Mar. 18, 2009), involved a party that contracted with a third-party to prepare tax returns and payroll records, and the party clearly had the authority to request those documents, and enforce that request if necessary.   *Mendez v. Land Investors, Corp.*, No. 2:12-cv-158-FtM-29SPC (Feb. 19, 2013) involved a third-party that was admittedly an "authorized agent" and representative of the defendant, and documents within the agent's possession would be within the defendant's control. And both *Pesaplastic, C A. v. Cincinnati Milacron Co.*, 799 F.2d 1510 (11th Cir. 1986) and *Cherestal v. Sears & Roebuck & Co.*, No. 6:12-cv-1681-Orl-28TBS, 2013 WL 5305671 (M.D. Fla. Sept. 20, 2013) involved the attorney-client relationship and a client's ability to control documents in the possession of the client's current and/or former attorneys.   I note that Defendants have represented that they have produced documents in the possession of their former counsel, Blank Rome LLP.   The only decision that comes somewhat close to the present dispute is *Mayan v. Mayan*, No. 6:15-cv-2183-GKS-TBS (Apr. 21, 2017); however in that case, control was limited to specific documents, such as leases, contracts, or transactions that the plaintiff was a party to, as well as the plaintiff's own tax returns.   Here, however, Plaintiff broadly requests any and all documents related to himself, and Plaintiff has made no showing that such broadly defined categories of information would be within the Defendants' control as it pertains to third-party vendors under a "work for hire" relationship.   *See, e.g.*, Doc. 67-1, at 6.

[7] Because Defendant failed to show "control," there is no need to address Defendants' final argument that these documents are available by subpoenas to the non-party vendors.   Moreover, Defendant served subpoenas on these non-party vendors shortly before the close of discovery; however it appears that the non-parties are challenging the subpoenas.   Given that discovery is

### III.   THE MOTION TO COMPEL ADDITIONAL DEPOSITION OF A NON-PARTY WITNESS OR TO STRIKE THE WITNESSES' DEPOSITION (Doc. 70).

Plaintiff's second motion, which was filed on the discovery deadline, involves the deposition of his former spouse, Lolita Carson-Grayson.   According to Plaintiff, Defendants noticed Ms. Carson-Grayson's deposition for November 10, 2021 (Doc. 70-1), and Ms. Carson-Grayson answered Defendants' questions on direct without issue.   However, on cross-examination by Plaintiff, Ms. Carson-Grayson refused to answer numerous questions, specifically stating that she "cannot swear to the question," or "was not going to swear to the question" approximately 122 times.   *See* Doc. 70-2.    Because Ms. Carson-Grayson refused to answer Plaintiff's questions, Plaintiff requests "an order compelling Lolita Carson-Grayson to sit for another deposition and answer Plaintiff's counsel's questions and for sanctions." (Doc. 70, at 3).   Alternatively, Plaintiff requests that all of her testimony be stricken.[8]   (*Id.*; *see also* Doc. 77, at 13-15).

───────────────────

now closed, Defendant no longer has the ability to compel compliance with those subpoenas (at least in this Court), and the undersigned questions whether the timing of the present motion was a last-minute effort to cure the problem Defendant now faces.   *See* Docs. 55, 58, 68, 81.

[8] In his supplemental briefing, Plaintiff seeks to add an additional request, that Ms. Carson-Grayson be held in civil contempt for her failure to answer questions on cross-examination.   Doc. 77, at 14-15.   Because Plaintiff did not make this request in his original briefing, and because the Order requiring supplemental briefing did not authorize Plaintiff to make new request for relief, *see* Doc. 76, I will not give this new request any further consideration.

In response, Defendants argue that Plaintiff has not provided any persuasive or binding authority suggesting that striking Ms. Carson-Grayson's testimony, or sanctioning her, would be appropriate.   (Docs. 74, 82).   As to Plaintiff's request to conduct an additional deposition of Ms. Carson-Grayson, Defendants again claim that Plaintiff has presented no authority in support, contend that Plaintiff has not suffered any prejudice because he can elicit testimony from Ms. Carson-Grayson at trial, and argue that if Plaintiff's request is granted, it would improperly extend the discovery period beyond the already expired deadline.   (Doc. 82, at 13-14).

A review of the deposition transcript, which Plaintiff attached to his motion, shows that on numerous occasions, Ms. Carson-Grayson refused to answer Plaintiff's counsel's questions, using the "I cannot swear to the question" response (or some variation thereof).   *See* Doc. 70-2, pp. 26-57.   The deposition transcript further establishes that Plaintiff reserved his right to continue Ms. Carson-Grayson's deposition, and that Plaintiff's counsel noted for the record her repeated refusal to answer questions.   And while Defendants seek to couch this refusal as an inability to understand the deposition process, I find it notable that Ms. Carson-Grayson had no such difficulties answering any of Defendants' counsel's questions. *See id.*, pp. 1-21.

Federal Rule of Civil Procedure 26(b)(1) provides that parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim

or defense and proportional to the needs of the case, and information need not be admissible to be discoverable.   Fed. R. Civ. P. 26(b)(1).   "Indeed, even when questions which are not relevant are asked at a deposition, absent bad faith or unreasonable behavior by the examiner, the proper procedure is for the deponent to answer the question, and the burden of demonstrating the lack of relevancy is on the person making the objection."   *Davey v. Baptist Health Care Corp.*, No. 3:06cv31/RV/EMT, 2007 WL 9735104, at *1 (N.D. Fla. Feb. 9, 2007) (citing *GEICO Cas. Co. v. Beauford*, No. 8:05-cv-697-24EAJ, 2006 WL 2789013, at *3-4 (M.D. Fla. Sept. 26, 2006)).   Here, Ms. Carson-Grayson, who admittedly was not represented by counsel, did not follow this procedure, but instead simply refused to answer a majority of Plaintiff's counsel's questions.[9]

Under these circumstances, Plaintiff was authorized to seek relief through the filing of the present motion to compel.   Specifically, Rule 37(a)(3)(B)(i) authorizes a party to move for an order compelling a deponent to answer a question asked under Rule 30 or 31, and the party making the motion may complete or adjourn the deposition before moving for an order.   Fed. R. Civ. P. 37(a)(3)(B)(i), (a)(3)(C).[10]

---

[9] While not dispositive, I note that Defendants nowhere argue that the questions posed by Plaintiff's counsel were not relevant, or otherwise fell outside the bounds of Fed. R. Civ. P. 26(b)(1).

[10] There is no dispute that the questions posed by Plaintiff's counsel during cross-examination fall under Federal Rule of Civil Procedure 30.

Upon review, it is clear that Plaintiff has complied with Rule 37, and that Ms. Carson-Grayson improperly refused to answer questions on cross-examination. The proper relief, however, is not to strike her testimony in its entirety,[11] but rather to order Mr. Carson-Grayson to appear for a second deposition, within a narrow time limit established in this order, and for a limited period of time, and to order Ms. Carson-Grayson to answer the non-objectionable questions of Plaintiff's counsel.

On the question of sanctions, Rule 30(d) provides the court with the discretion to "impose an appropriate sanction – including the reasonable expenses and attorney's fees incurred by any party – on a person who impedes, delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d). Further, Rule 37(a)(5) provides that where a motion to compel is granted, the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P.

---

[11] As Defendants properly note, "striking the testimony of a witness is a drastic remedy," and "[i]t is not to be lightly done." *United States v. Watkins*, No. 17-80222-CR-Marra/Matthewman, 2018 WL 2382013, at * 1 (S.D. Fla. May 25, 2018). Because any potential harm to Plaintiff can be cured via an additional deposition, and because Plaintiff has not cited to any authority where a deponent's testimony in a *civil action* was stricken, (*see* Doc. 70, at 3, Doc. 77, at 15), I find that the appropriate remedy is to simply provide Plaintiff with a second deposition.

37(a)(5)(A). However, sanctions are not to be awarded if the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action, the opposing party's response was substantially justified, or other circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(a)(5)(A)(i)-(iii).

While a close case, I find that there are circumstances that make an award of expenses unjust. Ms. Carson-Grayson is not here to defend herself, she was not represented by counsel at the deposition, and while doubtful, it is at least possible that she did not understand that her answers to the effect that she "will not swear to the question" were nonresponsive and inappropriate. Moreover, I do question Plaintiff's timing in waiting until the discovery deadline to file his motion to compel, thereby extending discovery, albeit for a very limited purpose, despite the Court's denials of his request to extend case management deadlines. (Docs. 59, 63, 68, 81). For these reasons, I will exercise my discretion and decline to award sanctions at this time.

However, Ms. Carson-Grayson is warned that going forward, she is now under a Court order to appear for and answer questions at deposition, and any further failure to do so "may be treated as contempt of court." Fed. R. Civ. P. 37(b)(1). Thus, if Ms. Carson-Grayson does not answer counsel's questions to the best of her ability and in accordance with the applicable rules of civil procedure, she

may be subjecting herself to sanctions in the future.   *See Davey*, 2007 WL 9735104,

at *2 (and cases cited therein).

## IV.   CONCLUSION.

For the reasons discussed above, it is hereby **ORDERED** as follows:

(1)   Plaintiff's Motion to Compel Production of Documents Within Defendants' Control (Doc. 67) is **DENIED.**

(2)   Plaintiff's Motion to Compel Testimony of Lolita Grayson (Doc. 70) is **GRANTED IN PART AND DENIED IN PART.**   Ms. Carson-Grayson is **ORDERED** to appear for a second deposition at a date, time, and location to be agreed upon by counsel for Plaintiff and Defendants.   The deposition must take place on or before **January 31, 2022.**   Because the original deposition lasted a total of one hour and six minutes (*see* Doc. 70-2, at 1), the second deposition, which will be limited to cross-examination by Plaintiff's counsel and re-direct by Defendants' counsel (and re-direct shall be limited solely to the subject matter raised by Plaintiff's counsel during cross-examination at this second deposition) shall last no longer than **two hours in total.**   Ms. Carson-Grayson is further **ORDERED** to answer all unobjectionable questions of counsel to the best of her ability, and in accordance with all applicable Federal Rules of Civil Procedure.   In all other respects the motion (Doc. 70) is **DENIED.**

(3)     The December 1, 2021 discovery deadline is reopened and extended for the sole and exclusive purpose of conducting the second deposition of Ms. Carson-Grayson.   In all other respects, including the filing of any further motions to compel, the December 1, 2021 discovery deadline remains in full force and effect.

(4)     No party may utilize the testimony of Ms. Carson-Grayson that is elicited at this second deposition for summary judgment purposes (this includes any motions, responses, or replies).

(5)     This Order does not extend any other deadlines, and no party may rely upon this Order as the basis for seeking an extension of any remaining case management deadlines.

(6)     Counsel for Defendants is directed to immediately provide a copy of this Order to Ms. Carson-Grayson, and to file a notice of compliance with the Court on or before **January 3, 2022.**

     **DONE** and **ORDERED** in Orlando, Florida on December 29, 2021.

LESLIE R. HOFFMAN
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record