UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**ALAN GRAYSON,**

        **Plaintiff,**

v.                                      Case No: 6:20-cv-1824-PGB-LHP

**NO LABELS, INC., PROGRESS TOMORROW, INC., UNITED TOGETHER, INC., NANCY JACOBSON, MARK PENN and JOHN DOES,**

        **Defendants.**
_____/

## **ORDER**

This cause is before the Court on Plaintiff's Amended Spoliation Motion. (Doc. 97 (the "**Motion**")). Defendants submitted a response in opposition. (Doc. 103). Upon consideration, the Motion is due to be denied.

### **I.    BACKGROUND**

This litigation began in August 2020 in state court and was removed to this Court on October 2, 2020. (Doc. 1). The operative Second Amended Complaint alleged three causes of action against Defendants: Defamation—Libel and Slander (Count I); Defamation by Implication (Count II); and Civil Conspiracy (Count III). (Doc. 35). All three causes of action are predicated on the alleged "negative advertising and 'attack ads'" targeting Plaintiff Alan Grayson, who at the time was running for Congress. (*Id.* ¶¶ 10–39). Plaintiff alleges that Defendants No Labels,

Inc., United Together, Inc., Nancy Jacobson, Mark Penn, and John Does used Defendant Progress Tomorrow, Inc., to publish the ads via mailings to households within the relevant congressional district and to publish internet ads which drove readers to www.floridadeservesbetter.org. (*Id.* ¶¶ 19–38). The allegedly defamatory information was published in August 2018, days before the election. (*Id.*).

The parties submitted a Case Management Report and asked the Court to establish September 17, 2021, as the deadline for the completion of discovery. (Doc. 21). Thereafter, the Court issued a Case Management and Scheduling Order ("**CMSO**") setting pretrial deadlines, including the December 1, 2021, deadline for the close of discovery. (Doc. 22). On December 11, 2020, the Plaintiff served separate Requests for Production on the five named Defendants. (Doc. 38-1). The following month, Defendants served responses in which they asserted objections, (Docs. 38-2, 38-3, 38-4, 38-5, 38-6), and, six months later, Plaintiff filed a Motion to Compel (Doc. 38). Because Defendants failed to respond to Plaintiff's Motion to Compel in a timely manner, the United States Magistrate Judge granted it. (Doc. 39).

On September 24, 2021, approximately nine weeks before the close of discovery, Plaintiff filed a Notice of Intent to Serve 26 subpoenas for documents to various non-party vendors. (Doc. 51-1). Each subpoena requested the same information, to wit:

    1.    All documents referring or relating to Alan Grayson.

2

  2. All documents referring or relating to No Labels, Inc. or No Labels.

  3. All documents referring or relating to Nancy Jacobson.

  4. All documents referring or relating to Mark Penn.

  5. All documents referring or relating to Progress Tomorrow, Inc.

  6. All documents referring or relating to United Together, Inc.

  7. All documents referring or relating to any Primary or General U.S. House of Representatives election in Florida in 2018.

  8. All documents referring or relating to any member or former member of Alan Grayson's family.

  9. All documents referring or relating to any entity affiliated with No Labels.

  10. All documents referring or relating to Rep. Darren Soto.

  11. All documents referring or relating to Margaret White.

(Doc. 51-2). Defendants filed a Motion for Protective Order (Doc. 51), and the Magistrate Judge held Defendants had standing to object and correctly granted the Motion for Protective Order.[1] (Docs. 55, 58). On November 24, 2021—one week before the close of discovery—Plaintiff filed a Motion to Compel Defendants to produce documents "in the possession, custody or control of non-party vendors employed by the Defendants in their anti-Grayson smear campaign."[2] (Doc. 67).

---

[1] Defendants also filed a Motion to Compel Discovery, which was granted by the Magistrate Judge and affirmed by this Court. (Docs. 50, 58).

[2] Plaintiff argued Defendants had not produced "a single document" regarding the contents and traffic statistics of floridadeservesbetter.org; the Pandora and Instagram ads; advertising on Facebook, Pandora and Instagram, including targeting information; mailing lists; and USPS

3

"Control" turns on the "right, authority, or practical ability to obtain the materials sought on demand," and the Magistrate Judge found Plaintiff failed to demonstrate Defendants exercised the requisite control and, accordingly, denied the Motion to Compel. (Doc. 86, pp. 6–7) (quoting *Desoto Health & Rehab., L.L.C. v. Philadelphia Indem. Ins. Co.*, No. 2:09-cv-599, 2010 WL 4853891, at *3 (M.D. Fla. Nov. 22, 2010)). On November 30, 2021, one day before discovery closed, Plaintiff filed a Motion for Extension of Time to Complete Discovery. (Doc. 68). The Magistrate Judge denied Plaintiff's Motion for Extension of Time to Complete Discovery, finding Plaintiff had failed to exercise diligence in pursuing discovery. (Doc. 81).

After the close of discovery, Plaintiff filed the instant Amended Spoliation Motion. (Doc. 97). Plaintiff contends Defendants, collectively, had a duty to retain and "garner" documents relating to the content of the "anti-Grayson" website, the targeting of the subject advertisements, the postal service records showing when each piece of political mail was received and delivered, and some of their communications with vendors. (*Id.* at pp. 1–2). Plaintiff points to a "Legal Hold" letter sent by counsel which "warned the Defendants about their liability for defamation, and directed them to retain all relevant information." (*Id.* at p. 2).[3]

---

"political mail" confirmations given to Lawton. (Doc. 67, p. 2). However, Plaintiff failed to demonstrate that any of the Defendants ever possessed these materials.

[3]  The letter written by Plaintiff's counsel is not in the record. Instead, Plaintiff cites correspondence from Defendant Progress Tomorrow, Inc., to non-party vendors in which Defendant Progress Tomorrow, Inc., summarizes the letter written by Plaintiff's counsel. (Doc. 91-1). Thus, the record only demonstrates that one Defendant, Progress Tomorrow, Inc.,

4

Plaintiff contends Defendants failed to retain certain information and seeks a plethora of sanctions, including an adverse presumption that the "lost" information was unfavorable to Defendants because it was false and malicious, a directive that bars Defendants from challenging Plaintiff's damages calculation, and an instruction to the jury that "a complete evidentiary record would be unfavorable to the Defendants on the issue of malice, and to so instruct the jury." (*Id.* at pp. 8–9).

## II. LEGAL STANDARD

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Penick v. Harbor Freight Tools, USA, Inc.*, 481 F. Supp. 3d 1286, 1291 (S.D. Fla. 2020) (quoting *Graff v. Baja Marine Corp.*, 310 F. App'x 298, 301 (11th Cir. 2009) (citation omitted)). In a diversity action such as the instant case, federal law governs the imposition of spoliation sanctions. *See Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005) ("[W]e conclude that federal law governs the imposition of sanctions for failure to preserve evidence in a diversity suit."). Although federal law governs, "the Court may look to state law for guidance to the extent that it is consistent with federal law." *Wilson v. Wal-Mart Stores, Inc.,* No. 5:07-cv-394, 2008 WL 4642596, at *2 (M.D. Fla. Oct. 17, 2008) (footnote omitted).

---

received a Legal Hold letter around August 10, 2018, and that Defendant Progress Tomorrow, Inc., communicated the contents of the letter to the vendors. (*Id.*). The lawsuit was filed two years later. (Doc. 1).

The moving party, here Plaintiff, has the burden of proving "first, that the missing evidence existed at one time; second, that the alleged spoliator had a duty to preserve the evidence; and third, that the evidence was crucial to the movant being able to prove its prima facie case or defense." *Penick,* 481 F. Supp. 3d at 1291–92 (quoting *Walter v. Carnival Corp.,* No. 09-20962-CIV, 2010 WL 2927962, at *2 (S.D. Fla. July 23, 2010)). "Even when all three elements are satisfied, a party's failure to preserve evidence rises to the level of sanctionable spoliation only where the absences of that evidence is predicated on bad faith, such as where a party purposely loses or destroys relevant evidence." *Id.* at 1292 (internal quotations and citations omitted). "Mere negligence is not enough" for an adverse inference, as "it does not sustain an inference of consciousness of a weak case." *Vick v. Tex. Emp. Comm'n*, 514 F.2d 734, 737 (5th Cir. 1975); *see also In Matter of Complaint of Bos. Boat III, L.L.C.*, 310 F.R.D. 510, 516 (S.D. Fla. 2015) (noting that "even grossly negligent conduct would not justify [an adverse inference] jury instruction when it is not accompanied by bad faith").

### III.  DISCUSSION

#### A.  Overview of Evidentiary Gaps

Plaintiff's Motion rests upon several assumptions which is an inadequate foundation for a finding of spoliation and an award of sanctions. Plaintiff is forced to rely on assumptions, because Plaintiff failed to pursue non-party subpoenas in a timely fashion. It is also noteworthy that Plaintiff does not cite deposition testimony from the respective Defendants' representatives with knowledge of the

6

so-called anti-Grayson campaign, with information that each Defendant was in possession of relevant evidence when a duty to preserve arose, or with testimony regarding the timing of and reason for the alleged destruction of evidence. The Court must therefore assume no such depositions were taken. In short, because of missed opportunities, the Plaintiff is compelled to use spoliation as a substitute for discovery.

      **B.    Plaintiff's Argument**

Plaintiff contends that because none of the Defendants produced evidence identified in his requests for production, they must have (a) had the material at some time and (b) failed to preserve or destroyed the evidence in bad faith. (Doc. 97, pp. 3–4). Plaintiff attempts to justify these assumptions by pointing to a 572-page "opposition research" report produced by "the Defendants." (*Id.* at p. 4). Plaintiff notes that the cover page of the report is missing, and he assumes Defendants (presumably acting in concert) removed the cover page to impede Plaintiff's ability to identify and depose the report's author. (*Id.*).

The problems inherent in Plaintiff's argument are obvious. First, the fact that a party fails to produce a document identified in a request for production is not evidence the witness was ever in possession of the document. Absent evidence that each Defendant possessed the requested documents, one cannot make the analytical leap that each Defendant also had a duty to retain or preserve the

record.[4] Similarly, the fact that an opposition research report was produced by "the Defendants" does not mean they altered it.[5] Plaintiff assumes Defendants removed the cover page and asks the Court to join in that assumption, which it will not do.

Next, Plaintiff observes that "the Defendants" obtained and produced hundreds of pages of emails from Spiros Consulting, one of the non-party vendors. (*Id.* at p. 5). Plaintiff uses the voluntary document production by Spiros Consulting to argue that Defendants' failure to produce documents in the possession of other vendors had not been "similarly cured." (*Id.*). That said, the Magistrate Judge found, and this Court agreed,[6] that Plaintiff failed to establish Defendants had control over the vendors and, therefore, that Defendants could not be compelled to obtain documents from the vendors. (Docs. 86, 117). Simply put, Defendants had nothing to cure, assuming the requested documents resided with non-party vendors.

Plaintiff further argues that the production of emails between Spiros Consulting and "the Defendants" which were not produced by Defendants proves Defendants used auto-delete in their email system. (Doc. 97, pp. 5–6). Again,

---

[4] Plaintiff suggests Defendants had a duty to garner documents—not just preserve them. (Doc. 97, pp. 3–4). The doctrine of spoliation does not impose a duty to "garner" evidence. The doctrine addresses the consequences of failing to preserve evidence which one possessed, had a duty to preserve, and destroyed or altered in bad faith. Even assuming each Defendant had a duty to preserve evidence, they must have possessed the evidence to preserve it.

[5] While the Plaintiff seeks sanctions against every Defendant for spoliation, he fails to specify what each Defendant supposedly did to warrant sanctions, choosing to lump them together in the collective "Defendants."

[6] In fairness to Plaintiff, this Court's Order overruling Plaintiff's Objection to the Magistrate Judge's ruling was entered after the Motion for Spoliation.

8

Plaintiff's liberal practice of lumping the individual Defendants together is unhelpful. Plaintiff relies on a transcript of a hearing held in New York state court on December 6, 2018, where Defendant No Labels, Inc., was a named defendant. (Doc. 97-7, p. 14). During the hearing, an attorney argued that Defendant No Labels, Inc., has an email address used in connection with its business and that emails are automatically deleted after six months. (*Id.* at 13:1–6). The attorney's proffer is hearsay, and it is unclear if the email address referred to in that hearing is the same email address used by Defendant No Labels, Inc., in this litigation. What is clear, however, is the attorney's hearsay statement is limited to Defendant No Labels, Inc., and not "the Defendants."

Assuming Defendant No Labels, Inc., had an auto-delete setting that deleted emails after six months, and further assuming Defendant No Labels, Inc., anticipated litigation as of August 8, 2018, when bulldog compliance forwarded Plaintiff's cease and desist letter, the duty to preserve evidence would not apply to emails deleted prior to that date. The focus of this analysis must be limited to documents deleted—hypothetically—after August 8, 2018. Plaintiff does not specify any crucial email destroyed by Defendant No Labels, Inc., after this date, preferring to couch the issue in generalities.[7] Nor has Plaintiff demonstrated that Defendant No Labels, Inc., acted in bad faith by destroying (auto-deleting) the unspecified emails. Regardless, if Plaintiff has obtained the desired evidence from

---

[7] In fact, the Plaintiff characterizes the Spiros Consulting emails as being helpful to the defense. (Doc. 97, p. 5).

9

a third party (Spiros Consulting), there is no impediment to proving his case and no reason for sanctions.[8] *See Miles v. United States*, No. 3:14CV360, 2016 WL 3556845, at *3 (N.D. Fla. Mar. 30, 2016) ("[T]he fact that plaintiff cannot obtain the information from the source she deems—albeit without a persuasive fact showing—most advantageous does not give rise to a spoliation claim.")

Here, Plaintiff has failed to demonstrate that each Defendant was in possession of evidence, had a duty to preserve the evidence at the time of possession, that the evidence was crucial to Plaintiff's claims, or that it was destroyed or altered in bad faith. The Court cannot impose severe sanctions with hardly a showing of smoke, let alone fire.

## IV. CONCLUSION

For these reasons, the Plaintiff's Amended Spoliation Motion (Doc. 97) is **DENIED.**

**DONE AND ORDERED** in Orlando, Florida on April 11, 2022.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

---

[8] Plaintiff suggests that if Defendant No Labels, Inc., failed to produce emails from Spiros Consulting, they may have similarly failed to produce emails from other vendors. (Doc. 97, p. 6). Had Plaintiff deposed the vendors, or Defendants, he could have inquired about the nature and timing of email communications, rather than speculating that emails were sent to Defendant No Labels, Inc., from the vendors after August 8, 2018.

Counsel of Record
Unrepresented Parties