IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No.  22-11740-AA

_____

ALAN GRAYSON,

Plaintiff-Appellant,

versus

NO LABELS, INC.,
 PROGRESS TOMORROW, INC.,
 UNITED TOGETHER, INC.,
 NANCY JACOBSON,
 MARK PENN, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

Before: WILLIAM PRYOR, Chief Judge, LAGOA and BRASHER, Circuit Judges.

BY THE COURT:

Appellees' motion for appellate attorneys' fees is TRANSFERRED to the district court for

consideration.

No. 22-11740

# United States Court of Appeals
# for the Eleventh Circuit

**ALAN GRAYSON**,

*Plaintiff-Appellant,*

**v.**

**NO LABELS, INC., PROGRESS TOMORROW, INC., UNITED TOGETHER, INC., NANCY JACOBSON, AND MARK PENN**,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Middle District of Florida
Case No. 6:20-cv-01824-PGB-LHP

## DEFENDANTS-APPELLEES' REPLY BRIEF IN SUPPORT OF APPLICATION FOR ATTORNEYS' FEES PURSUANT TO ELEVENTH CIRCUIT RULE 39-2

Abbe David Lowell
Christopher D. Man
WINSTON & STRAWN LLP
1901 L Street, NW
Washington, DC 20036
T: (202) 282-5875
T: (202) 282-5622
F: (202) 282 5100
adlowell@winston.com
cman@winston.com

Sarah Viebrock
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
T: (212) 294-6718
F: (212) 294-4700
sviebrock@winston.com

*Counsel for Defendants-Appellees No Labels, Inc., Progress Tomorrow, Inc., United Together, Inc., Nancy Jacobson, and Mark Penn*

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT

In accordance with Rule 26.1 of the Federal Rules of Appellate Procedure and Rules 26.1-1, 26.1-2, and 26.1-3 of the Eleventh Circuit Rules, counsel for Defendants-Appellees No Labels, Inc., Progress Tomorrow, Inc., United Together, Inc., Nancy Jacobson, and Mark Penn hereby certify that the following is a complete list of all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this action, including subsidiaries, conglomerates, affiliates, parent corporations, and any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party:

- Byrd Campbell, P.A.  (Attorneys for Plaintiff-Appellant)

- Byrd, Tucker H. (Attorney for Plaintiff-Appellant)

- Byron, The Honorable Paul (United States District Court Judge)

- Davies, Elizabeth Y. (Attorney for Defendants-Appellees)

- Grayson, Alan (Plaintiff-Appellant)

- Jacobson, Nancy (Defendant-Appellee)

- Johnson, Jason (Attorney for Plaintiff-Appellant)

2

- Legon Fodiman, P.A. (Attorneys for Defendants-Appellees)

- Legon, Todd R. (Attorney for Defendants-Appellees)

- Lowell, Abbe David (Attorney for Defendants-Appellees)

- Man, Christopher D. (Attorney for Defendants-Appellees)

- No Labels, Inc. (Defendant-Appellee)

- Penn, Mark (Defendant-Appellee)

- Progress Tomorrow, Inc. (Defendant-Appellee)

- Rhodes, William F. (Attorney for Defendants-Appellees)

- United Together, Inc. (Defendant-Appellee)

- Viebrock, Sarah (Attorney for Defendants-Appellees)

- Wages, Brittany M. (Attorney for Plaintiff-Appellant)

- Winston & Strawn LLP (Attorneys for Defendants-Appellees)

No publicly traded company or corporation has an interest in the outcome of this appeal.

# INTRODUCTION

Grayson's Opposition to the application for attorneys' fees is misguided at every turn.  Florida's offer of judgment statute, Section 768.79, is applicable, and the attorneys' fees sought are justified.

# ARGUMENT

## I.  GRAYSON'S CLAIMS FOR INJUNCTIVE RELIEF DO NOT RENDER FLORIDA'S OFFER OF JUDGMENT STATUTE INAPPLICABLE

Grayson mistakenly suggests that because Section 768.79 applies only to actions for damages, he can circumvent the statute by tacking on a throw-away request for "injunctive relief" after each claim.  M.D.Fla.D.E.35 ¶¶54 (defamation), 68 (defamation by implication), and 73 (civil conspiracy).[1]

---

[1] Grayson notes that he sought injunctive relief in his Original Complaint for cyberstalking, but he ignores that the statute is inapplicable because he failed to allege any of Defendants-Appellees' communications were directed to him.  Opp.Br.18–21.  Grayson incorrectly claims that he sought equitable relief through his fraudulent conveyance claim, Grayson.Opp.3, but his fraudulent conveyance claim sought "compensatory damages" with no mention of any form of equitable relief.  M.D.Fla.D.E.1 ¶58.  Moreover, Florida courts recognize that the offer of judgment statute applies to fraudulent conveyance claims because "the essential issue is clearly a dispute over money." *Burtman v. Porchester Holdings, Inc.*, 680 So.2d 631, 632 (Fla. 4th DCA 1996); *cf. Duncan v. Prudential Ins. Co.*, 690 S.2d 687, 688 (Fla 1st DCA 1997) (same for constructive trust claim); *see also In re Proceeds of Jackson Nat'l Life Ins. Co.*, 2015 WL 7272737, at *2 (M.D. Fla. Nov. 18, 2015)

4

This argument has been rejected for compelling an "absurd result," *Berman v. Kafka*, 2015 WL 12940184, at *3 (M.D. Fla. July 10, 2015), and this Court recognizes that adding a claim for equitable relief is "not always dispositive," *B&D Nut. Ingredients, Inc. v. Unique Bioingredients, LLC*, 855 F. App'x 503, 507 (11th Cir. 2021).

Grayson's reliance upon *Diamond Aircraft Industries, Inc. v. Horowitch*, 107 So.3d 362 (Fla. 2013), is misplaced. *Diamond Aircraft* did hold that Section 768.79 is inapplicable to claims for equitable relief, even where those claims lack merit. But courts applying the statute recognize that "[t]here is a fundamental difference between a claim lacking serious merit that seeks cognizable relief, and a claim that seeks relief which is not even cognizable." *Berman*, 2015 WL 12940184, at *3. An equitable claim that is not cognizable will not displace Section 768.79. *See, e.g., Acheron Portfolio Trust v. Mukamal*,

---

("The common theme in [Florida] cases is that despite the equitable nature of the action, the purpose was to obtain monetary relief."). Regardless, these claims from Grayson's Original Complaint are irrelevant because this Court already found that "Grayson abandoned his claims of cyberstalking and fraudulent transfer by failing to replead them in his amended complaint." *Grayson v. No Labels, Inc.*, 2022 WL 12144181, at *3 (11th Cir. Oct. 21, 2022). Grayson cannot rely upon claims that this Court described as "not properly before us." *Id.*

2022 WL 5205699, at *5 n.4 (S.D. Fla. July 29, 2022); *Steaminn Hub Inc. v. Gayle*, 2019 WL 8275138, at *2 (S.D. Fla. Apr. 12, 2019); *Berman*, 2015 WL 12940184, at *3.

Grayson's equitable claims are not cognizable for four reasons. First, Grayson's claims for injunctive relief were inadequately pled because he did not allege any imminent harm. *See, e.g.*, *Wreal LLC v. Amazon.com Inc.*, 840 F.3d 1244, 1248–49 (11th Cir. 2016) (injunctive relief is an "extraordinary and drastic remedy" that requires a showing of imminent harm). To the contrary, Grayson alleges that Defendants-Appellees' actions were intended to harm his 2018 campaign and their conduct ended with his electoral defeat years ago. Thus, Grayson rendered his injunctive relief claims non-cognizable by failing to allege any actual or threatened conduct had occurred in years and that Defendants-Appellees have motive to campaign against him now.

Second, Grayson never filed a motion seeking injunctive relief, focusing instead on his claim for damages. This Court recently rejected this sort of "glancing gesture toward injunctive relief" in a complaint as inadequate when it was never pursued by filing a motion for injunctive

relief. *Illuminate Media, Inc. v. CAIR Florida, Inc.*, 2022 WL 4589357, at *3 (11th Cir. Sept. 23, 2022) ("[Plaintiff] cannot dodge responsibility for its own choice to continue litigation by pointing to a single throwaway line in its complaint. To hold otherwise would defeat the entire purpose of the Florida statute—any party could upend the law by inserting a single sentence into its pleadings.").

Third, Grayson sought to enjoin defamation and defamation by implication (and conspiracy to do so), but Florida courts provide a damages remedy for such offenses—not injunctive relief. This prohibition against enjoining defamation has endured for centuries. *See, e.g.*, *Francis v. Flynn*, 118 U.S. 385, 389 (1886); *Republica v. Oswald*, 1 U.S. 319, 324–25 (Pa. 1788); Erwin Chemerinsky, *Injunctions In Defamation Cases*, 57 Syracuse L. Rev. 157, 167 (2007); *see also eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (injunctive relief generally unavailable if damages remedy exists). This has long been the law in Florida. *See, e.g.*, *Moore v. City Dry Cleaner & Laundry*, 41 So.2d 865, 873 (Fla. 1949) ("[A] court of equity will not enjoin the commission of a threatened libel or slander; for the imposition of judicial restraints in such a case would clearly amount to prior censorship, a basic

evil denounced by both the Federal and State constitutions.  An action at law will ordinarily provide a full, adequate an complete remedy in such cases. . . .");  *Reyes v. Middleton*, 17 So. 937, 939 (Fla. 1895) ("It seems to be well settled that a court of equity will never lend its aid, by injunction, to restrain the libeling or slandering . . . , but that in such cases the remedy, if any, is at law . . . .").  Not surprisingly, Florida courts have rejected as a "frivolous claim" an action to enjoin defamation because "[i]t is a 'well established rule that equity will not enjoin either an actual or a threatened defamation.'"  *Demby v. English*, 667 So.2d 350, 355 (Fla. 1st DCA 1995) (quoting *United Sanitation Servs., Inc. v. City of Tampa*, 302 So.2d 435, 439 (Fla. 2d DCA 1974)).

Fourth, enjoining defamation is prohibited by the First Amendment as a prior restraint, especially in this context which seeks to enjoin campaign-related speech concerning a public figure.  The leading case on the prohibition against prior restrains remains *Near v. Minnesota*, which explained:

> The fact that for approximately one hundred and fifty years there has been almost an entire absence of attempts to impose previous restraints upon publications relating to the malfeasance of public officers is significant of the deep-seated conviction that such restraints would violate constitutional right.  Public officers, whose character and conduct remain open to debate and free discussion in

> the press, find their remedies for false accusations in actions under libel laws providing for redress and punishment, and not in proceedings to restrain the publication of newspapers and periodicals.

283 U.S. 697, 718–19 (1931). Such "'prior restraints are 'the most serious and the least tolerable infringement on First Amendment rights.' When a prior restraint takes the form of a court-issued injunction, the risk of infringing on speech protected under the First Amendment increases." *Metropolitan Opera Ass'n, Inc. v. Local 100. Hotel Employees and Rest. Employees Int'l Union,* 239 F.3d 172, 176 (2d Cir. 2001) (quoting *Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 559 (1976)). Thus, "never in the 216 year history of the First Amendment has the Supreme Court found it necessary to uphold a prior restraint in a defamation case or any other." Chemerinsky, *supra,* at 173. Grayson never had a chance of overturning this long line of cases.

## II.   DEFENDANTS-APPELLEES COMPLIED WITH RULE 1.442

Grayson's naked claim that Defendants-Appellees' offer of judgment failed to comply with Florida Rule of Civil Procedure 1.442 because it did not address attorneys' fees or punitive damages is baffling. Paragraph 2 of the offer states that it is "inclusive of attorneys' fees" and "inclusive of all claims for punitive damages." Mot.Ex.A.

9

## III.    THE OFFER WAS MADE IN GOOD FAITH

Grayson claims Defendants-Appellees' $500 offer was not made in good faith because it is disproportionate to the $17 million that he sought, but Grayson quotes cases that recognize a nominal offer is justified when the risk of exposure is nominal.  Grayson.Opp.11.  Like the district court, this Court found that "Grayson submitted no evidence from which a jury might plausibly infer that the defendants distributed statements 'with knowledge that [the statements] were false or with reckless disregard of whether [they were] false or not.'"  *Grayson*, 2022 WL 12144181, at *2 (quoting *N.Y. Times v. Sullivan*, 376 U.S. 254, 279–80 (1964)).  For this reason, and a host of others that were briefed, Defendants-Appellees' exposure was minimal to non-existent.   Defendants-Appellees' offer was charitable under the circumstances, particularly given Grayson's exposure to attorneys' fees.

## III.    GRAYSON'S MISCELLANEOUS "OTHER" ARGUMENTS ARE FLAWED

Grayson lists a series of additional arguments challenging the motion in "other respects," but none have merit.  First, he calls on this Court to reconsider *en banc* its holding in *McMahan v. Toto*, 256 F.3d 1120 (11th Cir. 2001), that Section 768.79 is "substantive," not "procedural," for diversity

purposes.  Grayson makes no attempt to challenge *McMahon*'s reasoning, and there is no reason to do so as the Florida Supreme Court has confirmed that the statute is substantive.  *Southeast Floating Docks, Inc. v. Auto-Owners ins. Co.*, 82 So.3d 73, 80 (Fla. 2012).

Second, ignoring basic grammar, Grayson claims the offer is defective because there is no "policy of liability insurance or other contract." Grayson.Opp.14.  But Section 768.79 allows a defendant to seek attorneys' fees they incurred personally "or" fees incurred on "defendant's behalf" under such a contract.  Defendants-Appellees seek fees on their own behalf, so this clause is irrelevant.

Third, Grayson claims that Defendants-Appellees' Answer inadequately pled a claim for attorneys' fees, while admitting that the Answer placed him on notice that attorneys' fees would be sought at the conclusion of the case (once they accrued).  Grayson.Opp.15.  Such notice is all that is required.  *Stockman v. Downs*, 573 So.2d 835, 837 (Fla. 1991).

Finally, Grayson complains that Defendants-Appellees "simply assume" that Section 768.79 applies to fees in a federal appeal, but the point is well-settled.  Grayson.Opp.15.  In *Menchise v. Senterfitt*, for example, this

11

Court recognized that the statute applies to actions brought in Florida federal courts, "and section 768.79 applies to this appeal."  532 F.3d 1146, 1150 (11th Cir. 2008).  In doing so, the Court affirmed an award of attorneys' fees that included fees associated with litigating before this Court.  *Steffen v. Senterfitt*, 2007 WL 1601750, at *1 (M.D. Fla. June 1, 2007).  Grayson offers no reason to revisit the issue.

## IV.   DEFENDANTS-APPELLEES' ATTORNEYS' FEES ARE REASONABLE

Grayson claims that Defendants-Appellees' attorneys' fees are excessive, but he offers little explanation.  Grayson raised *nine* separate issues on appeal, many with subparts, and the parties separately briefed the jurisdictional question before the Court.  Consequently, it is not surprising that 171.2 total hours were spent on the appeal.

The case was staffed leanly with Mr. Lowell billing just 16 hours in a supervisory role ($1,510/hour), and the bulk of the work being conducted by Mr. Man at 68.6 hours ($1,130/hour) and Ms. Viebrock at 84.3 hours ($935/hour).  Mr. Lerner, who handled the filings and has practiced for thirty-seven years, billed just 2.3 hours ($570/hour).  None of these billing rates are out of line, particularly for a large national law firm with a

specialized practice handling appellate work (many of which charge substantially more). The Laffey Matrix, for example, finds a rate of $997/hour reasonable for an attorney with 20+ years of experience, and Mr. Lowell (46 years) and Mr. Man (28 years) are substantially more experienced. Similarly, Ms. Viebrock has practiced for seven years, and the Laffey Matrix values attorney time for those with four-seven years of experience at $508/hour. *See also* Andrew Maloney, *Inflation May Be Beating Billing Rate Increases*, The American Lawyer (Oct. 12, 2022) (explaining that the average billing rate for partners nationally is $749/hour and $546/hour for associates).

Grayson should respect Defendants-Appellees' choice of top-end counsel as this was not a legal fight of their choosing, but a legal dispute that they were dragged into by Grayson. Defendants-Appellees were well-within their right to seek the assistance of counsel at an AmLaw100 law firm (any of which would have charged similar fees), and Grayson was well-aware of defense counsel's involvement as he continued this appeal. To the extent that Grayson claims this was overkill because even less experienced

attorneys could have beat him, he further demonstrates the baselessness of his litigation and appeal.

## CONCLUSION

This Court should award Defendants-Appellees their attorneys' fees as requested.

Dated: January 11, 2023                          Respectfully submitted,

                                                 */s/ Abbe David Lowell*
                                                 _____

                                                 Abbe David Lowell
                                                 Christopher D. Man
                                                 Winston & Strawn LLP
                                                 1901 L Street, NW
                                                 Washington, DC 20036
                                                 T: (202) 282-5875
                                                 T: (202) 282-5622
                                                 F: (202) 282-5100
                                                 adlowell@winston.com
                                                 cman@winston.com

                                                 Sarah Viebrock
                                                 Winston & Strawn
                                                 200 Park Avenue
                                                 New York, NY 10166
                                                 T: (212) 294-6718
                                                 F: (212) 294-4700
                                                 sviebrock@winston.com

                                                 *Counsel for Defendants-*
                                                 *Appellees No Labels, Inc.,*
                                                 *Progress Tomorrow, Inc.,*
                                                 *United Together, Inc., Nancy*
                                                 *Jacobson, and Mark Penn*

## CERTIFICATE OF COMPLIANCE

This document complies with the typeface requirement of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Rule 32(a)(6) because this document has been prepared in a proportionally spaced typeface, 14-point Book Antiqua.

It complies with the length limit of Rule 27(d)(2)(C) because it contains 2100 words.

Dated: January 11, 2023          By:      _/s/ Abbe David Lowell_
                                           Abbe David Lowell

No. 22-11740

# United States Court of Appeals
# for the Eleventh Circuit

**ALAN GRAYSON**,

*Plaintiff-Appellant*,

**v.**

**NO LABELS, INC., PROGRESS TOMORROW, INC., UNITED
TOGETHER, INC., NANCY JACOBSON, AND MARK PENN**,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Middle District of Florida
Case No. 6:20-cv-01824-PGB-LHP

_____

**DEFENDANTS-APPELLEES' APPLICATION FOR ATTORNEYS' FEES
PURSUANT TO ELEVENTH CIRCUIT RULE 39-2**

_____

Abbe David Lowell
Christopher D. Man
WINSTON & STRAWN LLP
1901 L Street, NW
Washington, DC 20036
T: (202) 282-5875
T: (202) 282-5622
F: (202) 282 5100
adlowell@winston.com
cman@winston.com

Sarah Viebrock
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
T: (212) 294-6718
F: (212) 294-4700
sviebrock@winston.com

*Counsel for Defendants-Appellees No Labels, Inc., Progress Tomorrow, Inc.,
United Together, Inc., Nancy Jacobson, and Mark Penn*

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT

In accordance with Rule 26.1 of the Federal Rules of Appellate Procedure and Rules 26.1-1, 26.1-2, and 26.1-3 of the Eleventh Circuit Rules, counsel for Defendants-Appellees No Labels, Inc., Progress Tomorrow, Inc., United Together, Inc., Nancy Jacobson, and Mark Penn hereby certify that the following is a complete list of all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this action, including subsidiaries, conglomerates, affiliates, parent corporations, and any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party:

- Byrd Campbell, P.A.  (Attorneys for Plaintiff-Appellant)

- Byrd, Tucker H. (Attorney for Plaintiff-Appellant)

- Byron, The Honorable Paul (United States District Court Judge)

- Davies, Elizabeth Y. (Attorney for Defendants-Appellees)

- Grayson, Alan (Plaintiff-Appellant)

- Jacobson, Nancy (Defendant-Appellee)

- Johnson, Jason (Attorney for Plaintiff-Appellant)

2

- Legon Fodiman, P.A. (Attorneys for Defendants-Appellees)

- Legon, Todd R. (Attorney for Defendants-Appellees)

- Lowell, Abbe David (Attorney for Defendants-Appellees)

- Man, Christopher D. (Attorney for Defendants-Appellees)

- No Labels, Inc. (Defendant-Appellee)

- Penn, Mark (Defendant-Appellee)

- Progress Tomorrow, Inc. (Defendant-Appellee)

- Rhodes, William F. (Attorney for Defendants-Appellees)

- United Together, Inc. (Defendant-Appellee)

- Viebrock, Sarah (Attorney for Defendants-Appellees)

- Wages, Brittany M. (Attorney for Plaintiff-Appellant)

- Winston & Strawn LLP (Attorneys for Defendants-Appellees)

No publicly traded company or corporation has an interest in the outcome of this appeal.

3

# INTRODUCTION

Defendants-Appellees file this application for attorneys' fees and incorporated memorandum of law pursuant to 11th Circuit Rule 39-2.  In support of their application, Defendants-Appellees state:

1.      On August 19, 2020, Grayson filed his Complaint in Florida state court (DE.1-1), and Defendants-Appellees removed the case to federal court on October 2, 2020, based on federal diversity jurisdiction (DE.1).

2.      Grayson, a former Congressman and public figure, asserted various causes of action against Defendants-Appellees for opposing his campaign for Congress in 2018 by publishing statements about Grayson.

3.      On May 25, 2021, each of the Defendants-Appellees served a proposal for settlement upon Grayson pursuant to Section 768.79, Florida Statutes, which Grayson did not accept.  A copy of each proposal for settlement is attached to the accompanying Declaration of Abbe David Lowell ("Lowell Declaration") as Composite Exhibit A.

4.      On May 20, 2022, the District Court granted Defendants-Appellees' motions for summary judgment on all claims against them.

(DE.159).  Judgment was entered on May 23, 2022, in favor of Defendants-Appellees against Grayson.  (DE.162).

5.  The same day, Grayson filed a notice of appeal (DE.163), which he amended on June 9, 2022 (DE.167).  Grayson appealed to this Court from the District Court's order granting summary judgment and its prior orders granting Defendants-Appellees' motions to dismiss.  (*Id.*).

6.  On October 21, 2022, this Court affirmed the decisions of the District Court without oral argument.

7.  Thereafter, Grayson filed a Petition for Rehearing and Petition for Rehearing En Banc, which this Court denied on December 14, 2022.

8.  This application is filed within fourteen days of the Court's decision denying the Petitions for Rehearing, and thus is timely pursuant to 11th Circuit Rule 39-2(a).

9.  Defendants-Appellees seek to recover their attorneys' fees expended on appeal pursuant to Section 768.79, Florida Statutes, also known as Florida's offer of judgment rule, because they served proposals for settlement on Grayson, which he did not accept, final summary judgment was entered in Defendants-Appellees' favor and against Grayson, and that

decision was affirmed on appeal.[1]

10.     Defendants-Appellees apply for $182,293.50 in appellate attorneys' fees, for a total of 171.2 hours expended on the appeal.  In support of this application, Defendants-Appellees submit herewith the Lowell Declaration and all exhibits attached thereto (including a summary of work performed by each attorney and contemporaneous time records in accordance with 11th Circuit Rule 39-2(b)).

## MEMORANDUM OF LAW

### I.     DEFENDANTS-APPELLEES ARE ENTITLED TO RECOVER THEIR ATTORNEYS' FEES EXPENDED ON APPEAL

Defendants-Appellees are entitled to recover their attorneys' fees expended on appeal pursuant to Section 768.79, Florida Statutes, which provides in pertinent part as follows:

> (1) In any civil action for damages filed in the courts of this state, if a defendant files an offer of judgment which is not accepted by the plaintiff within 30 days, the defendant shall be entitled to recover reasonable costs and attorney's fees incurred by her or him . . . from the date of filing of the offer if the judgment is one of no liability . . . .

---

[1] A similar motion addressing attorneys' fees accrued in connection with all other aspects of this matter is currently pending before the United States District Court for the Middle District of Florida.

6

(2)  An offer must:

>   (a)  Be in writing and state that it is being made pursuant to this section.
>
>   (b)  Name the party making it and the party to whom it is being made.
>
>   (c)  State with particularity the amount offered to settle a claim for punitive damages, if any.
>
>   (d)  State its total amount.
>
>   (3)  The offer shall be served upon the party to whom it is made, but it shall not be filed unless it is accepted or unless filing is necessary to enforce the provisions of this section.

Section 768.79, Florida Statutes "applies to actions filed in, or removed to, federal court in Florida." *Bostick v. State Farm Mut. Auto. Ins.*, No. 16-1400, 2018 WL 1276884, at *1 (M.D. Fla. Jan. 30, 2018), *adopted* 2018 WL 1251259, at *1 (M.D. Fla. Mar. 9, 2018) (citing *Menchise v. Senterfitt*, 532 F.3d 1146, 1150 (11th Cir. 2008)).  "The Eleventh Circuit has deemed Florida Statute § 768.79 to be substantive for *Erie* purposes" and, therefore, it is applicable to this case. *Tiara Condo. Ass'n, Inc. v. Marsh USA, Inc.*, 697 F. Supp. 2d 1349, 1356 n.3 (S.D. Fla. 2010) (citing *McMahan v. Toto*, 311 F.3d 1077 (11th Cir. 2002)); *see also Prieto v. Total Renal Care, Inc.*, No. 18-21085, 2022 WL 464908, at *6 (S.D. Fla. Jan. 10, 2022), *adopted* 2022 WL 464274, at *1 (S.D. Fla. Feb. 15, 2022) (same).

Moreover, it is well-settled that Florida's offer of judgment statute encompasses fees incurred on appeal. *Motter Roofing, Inc. v. Leibowitz*, 833 So. 2d 788, 789 (Fla. Dist. Ct. App. 2002) ("This Court, along with all district courts in Florida, has ruled that Section 768.79 also applies to fees incurred on appeal."); *see also United Auto. Ins. Co. v. Comprehensive Health Ctr.*, 173 So. 3d 1061, 1069 (Fla. Dist. Ct. App. 2015) (similar); *Muegge v. Heritage Oaks Gulf & Country Club, Inc.*, No. 05-354, 2007 WL 1099054, at *1 (M.D. Fla. Apr. 10, 2007) ("[S]ection 768.79 applies to fees incurred on appeal.").

## A.   The Proposals for Settlement Comply with the Requirements of Section 768.79

"Entitlement to attorneys' fees is mandatory when the § 768 'prerequisites have been fulfilled.'" *Bostick*, 2018 WL 1276884, at *1 (quoting *TGI Friday's, Inc. v. Dvorak*, 663 So. 2d 606, 611 (Fla. 1995)).  Defendants-Appellees' proposals for settlement comply with the requirements of Section 768.79(2) because they are in writing, name the respective parties making the offers and to whom they are being made, state with particularity the amount offered to settle any claims for punitive damages, if any, and state the total amount of the offers made.

8

Thus, the Court should grant entitlement to Defendants-Appellees for the attorneys' fees they seek because they served these proposals upon Grayson on May 25, 2021, Grayson did not accept them, final summary judgment was entered in Defendants-Appellees' favor and against Grayson, and that decision was affirmed on appeal. *See, e.g., Evans v. Ga. Pac., Inc.*, 174 F. App'x 516, 518 (11th Cir. 2006) (granting motion for appellate fees pursuant to Florida Statute § 768.79 in a defamation case).

## B.    The Proposals for Settlement Were Made in Good Faith

If, as here, an offer satisfies the requirements of Section 768.79(1)-(6) "the sole basis on which a court can disallow an entitlement to an award of fees is if it determines that [the] offer was not made in good faith." *McMahan,* 311 F.3d at 1083; *see also Bostick*, 2018 WL 1276884, at *1 (same); Fla. Stat. § 768.79(7)(a). The "burden is upon the offeree to prove that the offeror acted without good faith." *McMahan*, 311 F.3d at 1083.

There is no evidence that the Defendants-Appellees acted without good faith. And the fact that Defendants-Appellees each offered a nominal amount of $500 does not preclude a finding that they acted in good faith. *See McMahan*, 311 F.3d at 1083 (affirming district court's determination that a

9

$100.00 offer satisfied Section 768.79(7)(a)'s good faith requirement and holding that nominal offers "can be valid if the offerors have 'a reasonable basis at the time of the offer to conclude that their exposure was nominal.'").

Defendants-Appellees' respective $500 offers each were made in good faith because, as the caselaw and Courts' decisions in this case demonstrate, Defendants-Appellees' potential exposure was indeed nominal.  Indeed, four of the five Defendants-Appellees did not even publish the allegedly defamatory statements at issue in this case.  Further, as a public figure, Grayson was required to prove that that the allegedly defamatory statements against him were made with actual malice, and there was simply no evidence on this point.  As the District Court held—and as this Court affirmed—"there is not even a scintilla of evidence showing—much less clear and convincing proof of—actual malice."  (DE.159 at 17).  The requirement of good faith has thus been satisfied.

## II.   DEFENDANTS-APPELLEES' ATTORNEYS' FEES ARE REASONABLE

A reasonable attorneys' fee award is "properly calculated by multiplying the number of hours reasonably expended times a reasonable hourly rate." *Am. Civil Liberties Union v. Barnes,* 168 F.3d 423, 427 (11th Cir.

1999) (*citing Blum v. Stenson*, 465 U.S. 886, 888 (1994)); *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988).  "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation."  *Norman*, 836 F.2d at 1299.[2]

---

[2]      The Court may also consider a variety of factors to determine the reasonableness of counsel's hourly rate.  Those factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 n.2 (11th Cir. 2008).

Section 768.79(7)(b) also states that "the court shall consider, along with all other relevant criteria, the following additional factors" in determining the reasonable amount of an attorneys' fee award: (1) the then apparent merit or lack of merit in the claim; (2) the number and nature of offers made by the parties; (3) the closeness of questions of fact and law at issue; (4) whether the person making the offer had unreasonably refused to furnish information necessary to evaluate the reasonableness of such offer; (5) whether the suit was in the nature of a test case presenting questions of far-reaching importance affecting nonparties; and (6) the amount of the additional delay cost and expense that the person making the offer reasonably would be expected to incur if the litigation should be prolonged.

Defendants-Appellees seek $182,293.50 in attorneys' fees (including $481 in disbursements) for 171.2 hours of work performed in connection with the appeal.  The tasks performed were necessary aspects of defending against Grayson's appeal and generally included:  analyzing and discussing status and appeal strategy; preparing for and attending a Court-ordered mediation session; researching, analyzing and responding to the Court's jurisdictional question; researching, drafting and filing Defendants-Appellees' brief; and researching, drafting and filing a motion for fees. Lowell Declaration ¶ 10.

Time records documenting all claimed fees, as well as providing more detailed descriptions of the tasks performed by each timekeeper are attached to the Lowell Declaration.  Moreover, as detailed in the Lowell Declaration, the rates requested are appropriate based on the skill, experience, and reputation of the attorneys involved and are generally reasonable. *Id.* ¶¶ 10–16.

## CONCLUSION

For the reasons stated above, this Court should award Defendants-Appellees their attorneys' fees expended on appeal from May 23, 2022, to the

present pursuant to 11th Circuit Rule 39-2 and Florida Statutes, Section

768.79, in the amount of $182,293.50.

Dated: December 28, 2022

Respectfully submitted,

*/s/ Abbe David Lowell*

Abbe David Lowell
Christopher D. Man
Winston & Strawn LLP
1901 L Street N.W.
Washington, DC 20036
T: (202) 282-5875
T: (202) 282-5622
F: (202) 282-5100
adlowell@winston.com
cman@winston.com

Sarah Viebrock
Winston & Strawn
200 Park Avenue
New York, NY 10166
T: (212) 294-6718
F: (212) 294-4700
sviebrock@winston.com

*Counsel for Defendants-*
*Appellees No Labels, Inc.,*
*Progress Tomorrow, Inc.,*
*United Together, Inc., Nancy*
*Jacobson, and Mark Penn*

14

## CERTIFICATE OF COMPLIANCE

This document complies with the typeface requirement of Federal Rule of Appellate procedure 32(a)(5) and the type-style requirements of Rule 32(a)(6) because this document has been prepared in a proportionally spaced typeface, 14-point Book Antiqua.

It complies with the length limit of Rule 27(d)(2)(A) because it contains 1860 words.

Dated: December 28, 2022          By:     */s/ Abbe David Lowell*
                                          Abbe David Lowell

No. 22-11740

# United States Court of Appeals
# for the Eleventh Circuit

**ALAN GRAYSON**,

*Plaintiff-Appellant*,

**v.**

**NO LABELS, INC., PROGRESS TOMORROW, INC., UNITED TOGETHER, INC., NANCY JACOBSON, AND MARK PENN**,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Middle District of Florida
Case No. 6:20-cv-01824-PGB-LHP

**DECLARATION OF ABBE DAVID LOWELL IN SUPPORT OF DEFENDANTS-APPELLEES' APPLICATION FOR ATTORNEYS' FEES**

Abbe David Lowell
Christopher D. Man
WINSTON & STRAWN LLP
1901 L Street, NW
Washington, DC 20036
T: (202) 282-5875
T: (202) 282-5622
F: (202) 282 5100
adlowell@winston.com
cman@winston.com

Sarah Viebrock
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
T: (212) 294-6718
F: (212) 294-4700
sviebrock@winston.com

*Counsel for Defendants-Appellees No Labels, Inc., Progress Tomorrow, Inc., United Together, Inc., Nancy Jacobson, and Mark Penn*

1.      I am an attorney duly licensed to practice law in the District of Columbia, Maryland, and New York.  I am a partner at the law firm of Winston & Strawn LLP, counsel for Defendants-Appellees No Labels, Inc., Progress Tomorrow, Inc., United Together, Inc., Nancy Jacobson, and Mark Penn.  I make this declaration, pursuant to 28 U.S.C. § 1746, based on my personal knowledge and in support of Defendants-Appellees' Application for Attorneys' Fees.

2.      On August 19, 2020, Alan Grayson filed his Complaint in Florida state court (DE.1-1), and Defendants-Appellees removed the case to federal court on October 2, 2020, based on federal diversity jurisdiction (DE.1).

3.      Grayson, a former Congressman and public figure, asserted various causes of action against Defendants-Appellees for opposing his campaign for Congress in 2018 by publishing statements about Grayson.

4.      On May 25, 2021, each of the Defendants-Appellees served a proposal for settlement upon Grayson pursuant to Section 768.79, Florida Statutes, which Grayson did not accept.  The proposals for settlement are attached hereto in Composite Exhibit A.

5.     On May 20, 2022, the District Court granted Defendants-Appellees' motions for summary judgment on all claims against them. Judgment was entered on May 23, 2022, in favor of Defendants-Appellees and against Grayson.

6.     The same day, Grayson filed a notice of appeal (DE.163), which he amended on June 9, 2022 (DE.167).  Grayson appealed to this Court from the District Court's order granting summary judgment and its prior orders granting Defendants-Appellees' motions to dismiss. (*Id*.).

7.     On October 21, 2022, this Court affirmed the decisions of the District Court.

8.     Thereafter, Grayson filed a Petition for Rehearing and Petition for Rehearing En Banc, which this Court denied on December 14, 2022.

9.     Defendants-Appellees seek to recover $182,293.50 in attorneys' fees (including $481 in disbursements) for 171.2 hours of work spent defending against Grayson's appeal.   These hours extended and fees incurred are accurately reflected in Exhibits B (time records) and C (summary forms) attached hereto.

10.     The work performed included, but was not limited to, analyzing and discussing status and appeal strategy; preparing for and attending a

Court-ordered mediation session; researching, analyzing and responding to the Court's jurisdictional question; researching, drafting, and filing Defendants-Appellees' brief; and researching, drafting and filing a motion for fees. The type of work performed by each attorney is accurately set forth in Exhibits B and C attached hereto.

11.     The primary attorneys working on this matter included myself (applicable rate: $1510/hour), Christopher D. Man (applicable rate: $1130/hour) and Sarah Viebrock (applicable rate: $935/hour). The applicable rates reasonably reflect the experience and expertise of the attorneys involved in this case.

12.     In my wide-ranging career, I have represented numerous high-profile corporate and individual clients and provided counsel on matters of national and international impact. I have successfully tried numerous complex civil and criminal cases throughout the United States and have briefed and argued perhaps two dozen appeals before federal and state appeals courts and one before the United States Supreme Court. I have been recognized by various publications ranging from *The National Law Journal* to *Chambers USA* as one of the most influential and successful attorneys in the

United States.  A copy of my full bio from Winston & Strawn's website is attached hereto as Exhibit D.

13.    Mr. Man is also a partner in Winston & Strawn's Washington D.C. office.  He too is a highly-regarded civil litigation and trial lawyer, with significant experience in appellate practice. Mr. Man has pursued and defended against numerous appeals in various Circuits across the United States.  Mr. Man was recently recognized as a "D.C. Litigation Star," by *Benchmark Litigation*.  A copy of Mr. Man's full bio from Winston & Strawn's website is attached hereto as Exhibit E.

14.    Ms. Viebrock is an associate in Winston & Strawn's New York office.  Ms. Viebrock has diverse experience in civil litigation at both the trial court and appellate level and has over two years of experience as a federal judicial clerk.  A copy of Ms. Viebrock's full bio from Winston & Strawn's website is attached hereto as Exhibit F.

15.    In addition to the foregoing primary attorneys, counsel received assistance from Lane Lerner—an experienced docket attorney in Winston & Strawn's New York office (applicable rate: $570/hour).  Mr. Lerner assisted with review of all relevant local rules and filing matters related to the appeal.

16.   Based on my knowledge of and experience in the industry, the applicable rates are consistent with prevailing market rates for attorneys with similar experience and expertise.

17.   In performing the aforementioned tasks in connection with Grayson's appeal, counsel exercised billing judgment and did not bill excessive, redundant, or otherwise unnecessary hours.

18.   I declare under penalty of perjury of the laws of the United States of America that all of the foregoing is true and correct.

Executed on this 28th day of December, 2022 in Washington, D.C.

Abbe David Lowell

# EXHIBIT A

**William F. Rhodes**

| | |
|---|---|
| **From:** | Rosa Espinosa |
| **Sent:** | Tuesday, May 25, 2021 4:58 PM |
| **To:** | Tucker Byrd; BWages@ByrdCampbell.com |
| **Cc:** | Todd Legon; Raymond Rufat |
| **Subject:** | Service of Court Document - CASE NO.: 6:20-cv-01824-PGB-LRH |
| **Attachments:** | Progress Tomorrow Proposal for Settlement to Plaintiff.pdf; No Labels Proposal for Settlement to Plaintiff.pdf; United Together Proposal for Settlement to Plaintiff.pdf; Nancy Jacobson Proposal for Settlement to Plaintiff.pdf; Mark Penn Proposal for Settlement to Plaintiff.pdf |

**The following attached document(s) has/have been electronically served in accordance with Federal Rule of Civil Procedure 5.**

| | |
|---|---|
| **Court:** | USDC  Middle District of Florida |
| **Case Number:** | 6:20-cv-01824-PGB-LRH |
| **Case Name:** | Grayson v. No Labels, Inc., et al. |
| **Document(s) served:** | **Defendant Progress Tomorrow, Inc.'s Proposal  for Settlement to Plaintiff;** <br> **Defendant No Labels, Inc.'s Proposal  for Settlement to Plaintiff;** <br> **Defendant United Together, Inc.'s Proposal  for Settlement to Plaintiff;** <br> **Defendant Nancy Jacobson's Proposal  for Settlement to Plaintiff; and** <br> **Defendant Mark Penn's Proposal  for Settlement to Plaintiff** |
| **Serving Attorney:** | Todd R. Legon, Esq. |
| **Primary E-Mail:** | tlegon@lpflaw.com |
| **Secondary E-Mail:** | rrufat@lpflaw.com <br> respinosa@lpflaw.com <br> eservice@lpflaw.com |

*Rosa Espinosa, FRP*

Legal Assistant/Paralegal to Todd R. Legon, Esq.
LEGON FODIMAN & SUDDUTH, P.A.
3225 Aviation Avenue – Suite 301
Miami, Florida  33133
Telephone: (305) 444-9991 | Fax: (305) 444-9937
Email: respinosa@lpflaw.com

*CONFIDENTIALITY NOTICE - This electronic mail transmission and any accompanying documents contain information belonging to the sender which may be confidential and legally privileged. This information is intended only for the use of the individual or entity to whom this electronic mail transmission was sent as indicated above. If you are not the intended recipient, any disclosure, copying, distribution, or action taken in reliance on the contents of the information contained in this transmission is strictly prohibited. If you have received this transmission in error, please call me at 305-444-9991 to let me know and delete this message.*

*IMPORTANT NOTICE: NEVER TRUST WIRING INSTRUCTIONS SENT VIA EMAIL. Cyber criminals are hacking email accounts and sending emails with fake wiring instructions. These emails are convincing and sophisticated. Always independently confirm wiring instructions in person or via a telephone call to a trusted and verified phone number. Never wire money without confirming that the wiring instructions are correct.*

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ALAN GRAYSON,

     Plaintiff,

                              CASE NO.: 6:20-cv-01824-PGB-LRH

v.

NO LABELS, INC.; PROGRESS TOMORROW,
INC.; UNITED TOGETHER, INC.; NANCY
JACOBSON, MARK PENN, and JOHN DOE(S)

     Defendants.

_____/

## DEFENDANT PROGRESS TOMORROW, INC.'S PROPOSAL
## FOR SETTLEMENT TO PLAINTIFF

Defendant Progress Tomorrow, Inc. ("Defendant") by and through its undersigned counsel,

pursuant to Rule 1.442 of the Florida Rules of Civil Procedure and Florida Statutes § 768.79,

hereby makes the following Proposal for Settlement to Plaintiff Alan Grayson ("Plaintiff"), as

follows:

    1.    Defendant Progress Tomorrow, Inc. makes this proposal to Plaintiff and hereby

proposes to resolve all claims against it that are or may be brought in this action.

    2.    The total monetary and non-monetary terms of this Proposal for Settlement are as

follows:

        a.    The total monetary amount of this Proposal for Settlement is five-hundred

           dollars ($500.00), which is to be paid by or on behalf of Defendant Progress

           Tomorrow, Inc. to Plaintiff, and which is inclusive of all damages, interest,

           costs, attorneys' fees and punitive damages;

        b.    If this Proposal for Settlement is accepted, then within fifteen (15) days of the

date of written acceptance, Defendant Progress Tomorrow, Inc. shall pay to Plaintiff the total sum of five-hundred dollars ($500.00);

c. Also, within fifteen (15) days of the date of written acceptance, Plaintiff shall execute a general release forever discharging Defendant Progress Tomorrow, Inc., and its representatives, agents, affiliates, attorneys, heirs, successors and assigns, of and from any and all manner of action and actions, cause and causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, third party claims, cross claims and demands whatsoever, in law or in equity, which Plaintiff ever had, now has, or which he hereafter can, shall or may have, against Defendant Progress Tomorrow, Inc. for, upon or by reason of any matter, cause or thing, from the beginning of the world to the day of these presents, including but not limited to matters that were raised, or that could have been raised, in the above-styled action;

d. This proposal is inclusive of attorneys' fees. Both Plaintiff and Defendant Progress Tomorrow, Inc. have raised a legal claim for attorneys' fees.

e. This proposal is inclusive of all claims for punitive damages. Neither Plaintiff nor Defendant Progress Tomorrow, Inc. have raised a legal claim for punitive damages.

3.    Within ten (10) days of payment by or on behalf of Defendant Progress Tomorrow, Inc. to Plaintiff and upon Plaintiff's execution of the general release described above, Plaintiff and Defendant Progress Tomorrow, Inc. shall file a Stipulation of Dismissal with Prejudice, dismissing all claims raised in the action against Defendant Progress Tomorrow, Inc., with each party to bear

its own attorneys' fees and costs.

      4.      Plaintiff shall have thirty (30) days within which to accept this Proposal for Settlement, and acceptance of this proposal must be in writing in order to constitute a valid and enforceable contract between the parties hereto.

      5.      This Proposal for Settlement shall remain open as provided by the rule and statute set forth above, after which time it shall be deemed automatically rejected.

      6.      This Proposal for Settlement is being served on Plaintiff but has not been filed as of the date of such service.  This Proposal for Settlement shall not be filed with the Court unless authorized or necessary to enforce the provisions of FLA. STAT. § 768.79 or FLA. R. CIV. P. 1.442.

      Dated: May 25, 2021

                    Respectfully submitted,

                    **LEGON FODIMAN, P.A.**
                    *Counsel for Defendants No Labels, Inc.,*
                    *Progress Tomorrow, Inc., United Together,*
                    *Inc., Nancy Jacobson, and Mark Penn*
                    3225 Aviation Avenue, Suite 301
                    Miami, Florida 33133
                    Telephone:  (305) 444-9991
                    Facsimile:  (305) 444-9937
                    Primary e-mail:  tlegon@lpflaw.com
                    Secondary e-mail:  respinosa@lpflaw.com
                    Secondary e-mail:  eservice@lpflaw.com

                    By:_____ */s/ Todd R. Legon*
                        TODD R. LEGON
                        Florida Bar No. 814415

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 25th day of May, 2021, I served the foregoing upon the

following:

Tucker H. Byrd
Brittany M. Wages
Byrd Campbell, P.A.
180 Park Avenue North, Suite 2A
Winter Park, Florida 32789
TByrd@ByrdCampbell.com
BWages@ByrdCampbell.com
*Counsel for Plaintiff*

                                        /s/ Todd R. Legon
                                        TODD R. LEGON

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ALAN GRAYSON,

     Plaintiff,

                           CASE NO.: 6:20-cv-01824-PGB-LRH

v.

NO LABELS, INC.; PROGRESS TOMORROW,
INC.; UNITED TOGETHER, INC.; NANCY
JACOBSON, MARK PENN, and JOHN DOE(S)

     Defendants.

_____/

**DEFENDANT NO LABELS, INC.'S PROPOSAL
FOR SETTLEMENT TO PLAINTIFF**

     Defendant No Labels, Inc. ("Defendant") by and through its undersigned counsel, pursuant to Rule 1.442 of the Florida Rules of Civil Procedure and Florida Statutes § 768.79, hereby makes the following Proposal for Settlement to Plaintiff Alan Grayson ("Plaintiff"), as follows:

     1.     Defendant No Labels, Inc. makes this proposal to Plaintiff and hereby proposes to resolve all claims that are or may be brought against it in this action.

     2.     The total monetary and non-monetary terms of this Proposal for Settlement are as follows:

          a.   The total monetary amount of this Proposal for Settlement is five-hundred dollars ($500.00), which is to be paid by or on behalf of Defendant No Labels, Inc. to Plaintiff, and which is inclusive of all damages, interest, costs, attorneys' fees and punitive damages;

          b.  If this Proposal for Settlement is accepted, then within fifteen (15) days of the date of written acceptance, Defendant No Labels, Inc. shall pay to Plaintiff the

total sum of five-hundred dollars ($500.00);

   c.   Also, within fifteen (15) days of the date of written acceptance, Plaintiff shall execute a general release forever discharging Defendant No Labels, Inc., and its representatives, agents, affiliates, attorneys, heirs, successors and assigns, of and from any and all manner of action and actions, cause and causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, third party claims, cross claims and demands whatsoever, in law or in equity, which Plaintiff ever had, now has, or which he hereafter can, shall or may have, against Defendant No Labels, Inc. for, upon or by reason of any matter, cause or thing, from the beginning of the world to the day of these presents, including but not limited to matters that were raised, or that could have been raised, in the above-styled action;

   d.   This proposal is inclusive of attorneys' fees.  Both Plaintiff and Defendant No Labels, Inc. have raised a legal claim for attorneys' fees.

   e.   This proposal is inclusive of all claims for punitive damages.  Neither Plaintiff nor Defendant No Labels, Inc. have raised a legal claim for punitive damages.

   3.   Within ten (10) days of payment by or on behalf of Defendant No Labels, Inc. to Plaintiff and upon Plaintiff's execution of the general release described above, Plaintiff and Defendant No Labels, Inc. shall file a Stipulation of Dismissal with Prejudice, dismissing all claims raised in the action against Defendant No Labels, Inc., with each party to bear its own attorneys' fees and costs.

   4.   Plaintiff shall have thirty (30) days within which to accept this Proposal for Settlement, and acceptance of this proposal must be in writing in order to constitute a valid and

enforceable contract between the parties hereto.

5.      This Proposal for Settlement shall remain open as provided by the rule and statute

set forth above, after which time it shall be deemed automatically rejected.

6.      This Proposal for Settlement is being served on Plaintiff but has not been filed as

of the date of such service.  This Proposal for Settlement shall not be filed with the Court unless

authorized or necessary to enforce the provisions of FLA. STAT. § 768.79 or FLA. R. CIV. P. 1.442.

        Dated: May 25, 2021

                                Respectfully submitted,

                                **LEGON FODIMAN, P.A.**
                                *Counsel for Defendants No Labels, Inc.,*
                                *Progress Tomorrow, Inc., United Together,*
                                *Inc., Nancy Jacobson, and Mark Penn*
                                3225 Aviation Avenue, Suite 301
                                Miami, Florida 33133
                                Telephone:  (305) 444-9991
                                Facsimile:  (305) 444-9937
                                Primary e-mail:  tlegon@lpflaw.com
                                Secondary e-mail:  respinosa@lpflaw.com
                                Secondary e-mail:  eservice@lpflaw.com

                                By:_____/s/ *Todd R. Legon*
                                        TODD R. LEGON
                                        Florida Bar No. 814415

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 25th day of May, 2021, I served the foregoing upon the

following:

Tucker H. Byrd
Brittany M. Wages
Byrd Campbell, P.A.
180 Park Avenue North, Suite 2A
Winter Park, Florida 32789
TByrd@ByrdCampbell.com
BWages@ByrdCampbell.com
*Counsel for Plaintiff*

/s/ Todd R. Legon
TODD R. LEGON

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ALAN GRAYSON,

     Plaintiff,

                                   CASE NO.: 6:20-cv-01824-PGB-LRH

v.

NO LABELS, INC.; PROGRESS TOMORROW,
INC.; UNITED TOGETHER, INC.; NANCY
JACOBSON, MARK PENN, and JOHN DOE(S)

     Defendants.

_____/

## DEFENDANT UNITED TOGETHER, INC.'S PROPOSAL
## FOR SETTLEMENT TO PLAINTIFF

Defendant United Together, Inc. ("Defendant") by and through its undersigned counsel, pursuant to Rule 1.442 of the Florida Rules of Civil Procedure and Florida Statutes § 768.79, hereby makes the following Proposal for Settlement to Plaintiff Alan Grayson ("Plaintiff"), as follows:

    1.    Defendant United Together, Inc. makes this proposal to Plaintiff and hereby proposes to resolve all claims against it that are or may be brought in this action.

    2.    The total monetary and non-monetary terms of this Proposal for Settlement are as follows:

        a.    The total monetary amount of this Proposal for Settlement is five-hundred dollars ($500.00), which is to be paid by or on behalf of Defendant United Together, Inc. to Plaintiff, and which is inclusive of all damages, interest, costs, attorneys' fees and punitive damages;

        b.    If this Proposal for Settlement is accepted, then within fifteen (15) days of the

date of written acceptance, Defendant United Together, Inc. shall pay to Plaintiff the total sum of five-hundred dollars ($500.00);

c.   Also, within fifteen (15) days of the date of written acceptance, Plaintiff shall execute a general release forever discharging Defendant United Together, Inc., and its representatives, agents, affiliates, attorneys, heirs, successors and assigns, of and from any and all manner of action and actions, cause and causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, third party claims, cross claims and demands whatsoever, in law or in equity, which Plaintiff ever had, now has, or which he hereafter can, shall or may have, against Defendant United Together, Inc.  for, upon or by reason of any matter, cause or thing, from the beginning of the world to the day of these presents, including but not limited to matters that were raised, or that could have been raised, in the above-styled action;

d.   This proposal is inclusive of attorneys' fees.  Both Plaintiff and Defendant United Together, Inc. have raised a legal claim for attorneys' fees.

e.   This proposal is inclusive of all claims for punitive damages.  Neither Plaintiff nor Defendant United Together, Inc. have raised a legal claim for punitive damages.

3.   Within ten (10) days of payment by or on behalf of Defendant United Together, Inc. to Plaintiff and upon Plaintiff's execution of the general release described above, Plaintiff and Defendant United Together, Inc. shall file a Stipulation of Dismissal with Prejudice, dismissing all claims raised in the action against Defendant United Together, Inc., with each party to bear its own

attorneys' fees and costs.

4.     Plaintiff shall have thirty (30) days within which to accept this Proposal for Settlement, and acceptance of this proposal must be in writing in order to constitute a valid and enforceable contract between the parties hereto.

5.     This Proposal for Settlement shall remain open as provided by the rule and statute set forth above, after which time it shall be deemed automatically rejected.

6.     This Proposal for Settlement is being served on Plaintiff but has not been filed as of the date of such service.  This Proposal for Settlement shall not be filed with the Court unless authorized or necessary to enforce the provisions of FLA. STAT. § 768.79 or FLA. R. CIV. P. 1.442.

Dated: May 25, 2021

Respectfully submitted,

**LEGON FODIMAN, P.A.**
*Counsel for Defendants No Labels, Inc., Progress Tomorrow, Inc., United Together, Inc., Nancy Jacobson, and Mark Penn*
3225 Aviation Avenue, Suite 301
Miami, Florida 33133
Telephone:  (305) 444-9991
Facsimile:  (305) 444-9937
Primary e-mail:  tlegon@lpflaw.com
Secondary e-mail:  respinosa@lpflaw.com
Secondary e-mail:  eservice@lpflaw.com

By:_____/s/ *Todd R. Legon*
         TODD R. LEGON
         Florida Bar No. 814415

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 25th day of May, 2021, I served the foregoing upon the

following:

Tucker H. Byrd
Brittany M. Wages
Byrd Campbell, P.A.
180 Park Avenue North, Suite 2A
Winter Park, Florida 32789
TByrd@ByrdCampbell.com
BWages@ByrdCampbell.com
*Counsel for Plaintiff*

/s/ Todd R. Legon
TODD R. LEGON

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ALAN GRAYSON,

      Plaintiff,

                                 CASE NO.: 6:20-cv-01824-PGB-LRH

v.

NO LABELS, INC.; PROGRESS TOMORROW,
INC.; UNITED TOGETHER, INC.; NANCY
JACOBSON, MARK PENN, and JOHN DOE(S)

      Defendants.

_____/

### DEFENDANT NANCY JACOBSON'S PROPOSAL
### FOR SETTLEMENT TO PLAINTIFF

Defendant Nancy Jacobson ("Defendant") by and through her undersigned counsel, pursuant to Rule 1.442 of the Florida Rules of Civil Procedure and Florida Statutes § 768.79, hereby makes the following Proposal for Settlement to Plaintiff Alan Grayson ("Plaintiff"), as follows:

1.     Defendant Nancy Jacobson makes this proposal to Plaintiff and hereby proposes to resolve all claims against her that are or may be brought in this action.

2.     The total monetary and non-monetary terms of this Proposal for Settlement are as follows:

     a.   The total monetary amount of this Proposal for Settlement is five-hundred dollars ($500.00), which is to be paid by or on behalf of Defendant Nancy Jacobson to Plaintiff, and which is inclusive of all damages, interest, costs, attorneys' fees and punitive damages;

     b.   If this Proposal for Settlement is accepted, then within fifteen (15) days of the

date of written acceptance, Defendant Nancy Jacobson shall pay to Plaintiff the total sum of five-hundred dollars ($500.00);

c.  Also, within fifteen (15) days of the date of written acceptance, Plaintiff shall execute a general release forever discharging Defendant Nancy Jacobson, and her representatives, agents, affiliates, attorneys, heirs, successors and assigns, of and from any and all manner of action and actions, cause and causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, third party claims, cross claims and demands whatsoever, in law or in equity, which Plaintiff ever had, now has, or which he hereafter can, shall or may have, against Defendant Nancy Jacobson for, upon or by reason of any matter, cause or thing, from the beginning of the world to the day of these presents, including but not limited to matters that were raised, or that could have been raised, in the above-styled action;

d.  This proposal is inclusive of attorneys' fees.  Both Plaintiff and Defendant Nancy Jacobson have raised a legal claim for attorneys' fees.

e.  This proposal is inclusive of all claims for punitive damages.  Neither Plaintiff nor Defendant Nancy Jacobson have raised a legal claim for punitive damages.

3.  Within ten (10) days of payment by or on behalf of Defendant Nancy Jacobson to Plaintiff and upon Plaintiff's execution of the general release described above, Plaintiff and Defendant Nancy Jacobson shall file a Stipulation of Dismissal with Prejudice, dismissing all claims raised in the action against Defendant Nancy Jacobson, with each party to bear its own attorneys' fees and costs.

4.      Plaintiff shall have thirty (30) days within which to accept this Proposal for Settlement, and acceptance of this proposal must be in writing in order to constitute a valid and enforceable contract between the parties hereto.

5.      This Proposal for Settlement shall remain open as provided by the rule and statute set forth above, after which time it shall be deemed automatically rejected.

6.      This Proposal for Settlement is being served on Plaintiff but has not been filed as of the date of such service.  This Proposal for Settlement shall not be filed with the Court unless authorized or necessary to enforce the provisions of FLA. STAT. § 768.79 or FLA. R. CIV. P. 1.442.

Dated: May 25, 2021

Respectfully submitted,

**LEGON FODIMAN, P.A.**
*Counsel for Defendants No Labels, Inc.,*
*Progress Tomorrow, Inc., United Together,*
*Inc., Nancy Jacobson, and Mark Penn*
3225 Aviation Avenue, Suite 301
Miami, Florida 33133
Telephone:  (305) 444-9991
Facsimile:  (305) 444-9937
Primary e-mail:  tlegon@lpflaw.com
Secondary e-mail:  respinosa@lpflaw.com
Secondary e-mail:  eservice@lpflaw.com

By:____/s/ *Todd R. Legon*
      TODD R. LEGON
      Florida Bar No. 814415

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 25th day of May, 2021, I served the foregoing upon the

following:

Tucker H. Byrd
Brittany M. Wages
Byrd Campbell, P.A.
180 Park Avenue North, Suite 2A
Winter Park, Florida 32789
TByrd@ByrdCampbell.com
BWages@ByrdCampbell.com
*Counsel for Plaintiff*

_/s/ Todd R. Legon_
TODD R. LEGON

LAW OFFICES LEGON FODIMAN, P.A.
3225 AVIATION AVENUE, SUITE 301, MIAMI, FL 33133 ·TEL: 305-444-9991 ·FAX: 305-444-9937

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ALAN GRAYSON,

     Plaintiff,

                              CASE NO.: 6:20-cv-01824-PGB-LRH

v.

NO LABELS, INC.; PROGRESS TOMORROW,
INC.; UNITED TOGETHER, INC.; NANCY
JACOBSON, MARK PENN, and JOHN DOE(S)

     Defendants.

_____/

## DEFENDANT MARK PENN'S PROPOSAL FOR SETTLEMENT TO PLAINTIFF

     Defendant Mark Penn ("Defendant") by and through his undersigned counsel, pursuant to Rule 1.442 of the Florida Rules of Civil Procedure and Florida Statutes § 768.79, hereby makes the following Proposal for Settlement to Plaintiff Alan Grayson ("Plaintiff"), as follows:

     1.     Defendant Mark Penn makes this proposal to Plaintiff and hereby proposes to resolve all claims against him that are or may be brought in this action.

     2.     The total monetary and non-monetary terms of this Proposal for Settlement are as follows:

          a.     The total monetary amount of this Proposal for Settlement is five-hundred dollars ($500.00), which is to be paid by or on behalf of Defendant Mark Penn to Plaintiff, and which is inclusive of all damages, interest, costs, attorneys' fees and punitive damages;

b.  If this Proposal for Settlement is accepted, then within fifteen (15) days of the date of written acceptance, Defendant Mark Penn shall pay to Plaintiff the total sum of five-hundred dollars ($500.00);

c.  Also, within fifteen (15) days of the date of written acceptance, Plaintiff shall execute a general release forever discharging Defendant Mark Penn, and his representatives, agents, affiliates, attorneys, heirs, successors and assigns, of and from any and all manner of action and actions, cause and causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, third party claims, cross claims and demands whatsoever, in law or in equity, which Plaintiff ever had, now has, or which he hereafter can, shall or may have, against Defendant Mark Penn for, upon or by reason of any matter, cause or thing, from the beginning of the world to the day of these presents, including but not limited to matters that were raised, or that could have been raised, in the above-styled action;

d.  This proposal is inclusive of attorneys' fees. Both Plaintiff and Defendant Mark Penn have raised a legal claim for attorneys' fees.

e.  This proposal is inclusive of all claims for punitive damages. Neither Plaintiff nor Defendant Mark Penn have raised a legal claim for punitive damages.

3.  Within ten (10) days of payment by or on behalf of Defendant Mark Penn to Plaintiff and upon Plaintiff's execution of the general release described above, Plaintiff and Defendant Mark Penn shall file a Stipulation of Dismissal with Prejudice, dismissing all claims raised in the action against Defendant Mark Penn, with each party to bear its own attorneys' fees and costs.

LAW OFFICES LEGON FODIMAN, P.A.
3225 AVIATION AVENUE, SUITE 301, MIAMI, FL 33133 ·TEL: 305-444-9991 ·FAX: 305-444-9937

4.      Plaintiff shall have thirty (30) days within which to accept this Proposal for Settlement, and acceptance of this proposal must be in writing in order to constitute a valid and enforceable contract between the parties hereto.

5.      This Proposal for Settlement shall remain open as provided by the rule and statute set forth above, after which time it shall be deemed automatically rejected.

6.      This Proposal for Settlement is being served on Plaintiff but has not been filed as of the date of such service.  This Proposal for Settlement shall not be filed with the Court unless authorized or necessary to enforce the provisions of FLA. STAT. § 768.79 or FLA. R. CIV. P. 1.442.

Dated: May 25, 2021

Respectfully submitted,

**LEGON FODIMAN, P.A.**
*Counsel for Defendants No Labels, Inc., Progress Tomorrow, Inc., United Together, Inc., Nancy Jacobson, and Mark Penn*
3225 Aviation Avenue, Suite 301
Miami, Florida 33133
Telephone:  (305) 444-9991
Facsimile:  (305) 444-9937
Primary e-mail:  tlegon@lpflaw.com
Secondary e-mail:  respinosa@lpflaw.com
Secondary e-mail:  eservice@lpflaw.com

By:____ /s/ *Todd R. Legon*
        TODD R. LEGON
        Florida Bar No. 814415

## CERTIFICATE OF SERVICE

  I HEREBY CERTIFY that on the 25th day of May, 2021, I served the foregoing upon the

following:

    Tucker H. Byrd
    Brittany M. Wages
    Byrd Campbell, P.A.
    180 Park Avenue North, Suite 2A
    Winter Park, Florida 32789
    TByrd@ByrdCampbell.com
    BWages@ByrdCampbell.com
    *Counsel for Plaintiff*

            */s/ Todd R. Legon*
            TODD R. LEGON
            TODD R. LEGON

LAW OFFICES LEGON FODIMAN, P.A.
3225 AVIATION AVENUE, SUITE 301, MIAMI, FL 33133 ·TEL: 305-444-9991 ·FAX: 305-444-9937

# EXHIBIT B

Winston & Strawn LLP

Client Detailed Time And Expense Report

Date Range (Time): 5/23/2022 to 12/27/2022  (Disb): 5/23/2022 to
12/27/2022

Currency: USD

Value Type: Billed

| Client: | 106892 | | No Labels, Inc. et al. |
|---|---|---|---|
| Matter: | 00001 | | Defamation Litigation |

**Detailed Time Section (Matter)**

| Tkpr | Date | Hours | Amoun | Rate | Description of Services Rendered |
|---|---|---|---|---|---|
| Lerner, Lane | 6/8/2022 | 1.00 | $570.00 | 570.00 | Edit and electronically submit admission applications for A. Lowell, S. Viebrock at Court of Appeals for the Eleventh Circuit |
| Lerner, Lane | 8/17/2022 | 1.30 | $741.00 | 570.00 | Edit form; telephone conferences with clerk of court for Eleventh Circuit Court of Appeals; electronically file appellee brief and coordinate assembly and transmission by courier of four paper copies of same to Eleventh Circuit Court of Appeals |
| Viebrock, Sarah | 6/6/2022 | 1.80 | $1,683.00 | 935.00 | Review appellate docket and applicable rules for entering appearances; correspondence with L. Lerner and team re same |
| Viebrock, Sarah | 6/7/2022 | 0.90 | $841.50 | 935.00 | Coordinate drafting of Eleventh Circuit admission materials; correspondence re the same |
| Viebrock, Sarah | 6/8/2022 | 1.10 | $1,028.50 | 935.00 | Review appellate rules; coordinate filing of Eleventh Circuit admission materials for myself and A. Lowell |
| Viebrock, Sarah | 6/9/2022 | 1.00 | $935.00 | 935.00 | Finalize notice of appearance for C. Man; coordinate filing of the same; conduct research on timeliness of appeal and related issues |
| Viebrock, Sarah | 6/14/2022 | 0.50 | $467.50 | 935.00 | Attention to correspondence re additional filings in Eleventh Circuit and notice of mediation; review notice of mediation and mediation rules |
| Viebrock, Sarah | 6/15/2022 | 3.70 | $3,459.50 | 935.00 | Review jurisdictional question issued by Eleventh Circuit; correspondence re same; meet with A. Lowell and C. Man re jurisdictional question; research issues re diversity jurisdiction and notice of removal |
| Viebrock, Sarah | 6/19/2022 | 1.00 | $935.00 | 935.00 | Draft corporate disclosure statement; review rules re same |
| Viebrock, Sarah | 6/20/2022 | 2.50 | $2,337.50 | 935.00 | Review Eleventh Circuit local rules re certificate of interested persons and draft same; conduct research re jurisdictional issue presented by the court |
| Viebrock, Sarah | 6/20/2022 | 1.00 | $935.00 | 935.00 | Conduct research re jurisdictional issue presented by the court |
| Viebrock, Sarah | 6/21/2022 | 3.50 | $3,272.50 | 935.00 | Review district court docket for jurisdictional evidence; conduct research for jurisdictional issue issued by the court |
| Viebrock, Sarah | 6/22/2022 | 4.00 | $3,740.00 | 935.00 | Conduct research for and draft response to jurisdictional question |
| Viebrock, Sarah | 6/23/2022 | 3.00 | $2,805.00 | 935.00 | Coordinate filing of certificate of interested persons; incorporate edits from C. Man into response to jurisdictional question; conduct additional docket research for factual support for jurisdictional allegations; incorporate findings into draft; call clerk re formatting for response and review relevant rules re same |
| Viebrock, Sarah | 6/26/2022 | 2.00 | $1,870.00 | 935.00 | Incorporate edits from A. Lowell into response to jurisdictional question; conduct review and cite check re the same |
| Viebrock, Sarah | 6/29/2022 | 3.00 | $2,805.00 | 935.00 | Conduct final review of response to jurisdictional question and incorporate edits; review Grayson's response to jurisdictional question; coordinate filing of response |

| Client: | 106892 | | No Labels, Inc. et al. |
|---|---|---|---|
| Matter: | 00001 | | Defamation Litigation |

**Detailed Time Section (Matter)**

| Tkpr | Date | Hours | Amoun | Rate | Description of Services Rendered |
|---|---|---|---|---|---|
| Viebrock, Sarah | 7/12/2022 | 1.50 | $1,402.50 | 935.00 | Review rules of mediation and begin drafting mediation statement |
| Viebrock, Sarah | 7/13/2022 | 2.60 | $2,431.00 | 935.00 | Draft media ion statement |
| Viebrock, Sarah | 7/14/2022 | 2.80 | $2,618.00 | 935.00 | Draft media ion statement |
| Viebrock, Sarah | 7/15/2022 | 2.70 | $2,524.50 | 935.00 | Revise mediation statement based on edits from A. Lowell and C. Man and send to client for review |
| Viebrock, Sarah | 7/19/2022 | 1.20 | $1,122.00 | 935.00 | Revise mediation statement based on feedback |
| Viebrock, Sarah | 7/20/2022 | 5.00 | $4,675.00 | 935.00 | Review Grayson's appellate brief; conduct research in connection with appeal and mediation statement; review and cite check mediation statement |
| Viebrock, Sarah | 7/21/2022 | 1.50 | $1,402.50 | 935.00 | Finalize mediation statement and send to mediator in advance of media ion |
| Viebrock, Sarah | 7/27/2022 | 1.10 | $1,028.50 | 935.00 | Review appellate brief in advance of mediation and attention to  correspondence in advance of mediation |
| Viebrock, Sarah | 7/28/2022 | 1.50 | $1,402.50 | 935.00 | Prepare for and attend mediation session |
| Viebrock, Sarah | 8/9/2022 | 1.90 | $1,776.50 | 935.00 | Review Grayson's appendix to confirm compliance with local rules and completeness; review Eleventh Circuit rules re briefing and filing; correspondence with L. Lerner re local rules and filing |
| Viebrock, Sarah | 8/12/2022 | 2.00 | $1,870.00 | 935.00 | Review and edit draft of appellate brief |
| Viebrock, Sarah | 8/14/2022 | 5.00 | $4,675.00 | 935.00 | Review and edit draft of appellate brief; review sources and samples and conform brief to local rules |
| Viebrock, Sarah | 8/15/2022 | 1.50 | $1,402.50 | 935.00 | Review edits to appellate brief; edit brief for filing |
| Viebrock, Sarah | 8/16/2022 | 4.50 | $4,207.50 | 935.00 | Review appellate brief, incorporate edits and prepare for filing |
| Viebrock, Sarah | 8/17/2022 | 3.60 | $3,366.00 | 935.00 | Review and prepare brief for filing; coordinate filing of appellate brief and sending of hard copies to court |
| Viebrock, Sarah | 9/22/2022 | 1.60 | $1,496.00 | 935.00 | Review Grayson's reply brief; draft summary of same |
| Viebrock, Sarah | 11/21/2022 | 1.00 | $935.00 | 935.00 | Correspondence with C. Man re deadlines for asserting fees in circuit court; research re grounds for asserting fees in circuit court |
| Viebrock, Sarah | 12/19/2022 | 1.00 | $935.00 | 935.00 | Attention to correspondence re motion for attorneys fees; conduct  additional research re same |
| Viebrock, Sarah | 12/20/2022 | 3.30 | $3,085.50 | 935.00 | Call with A. Lowell to discuss potential fee motion; draft summary email re same; conduct additional research re potential fee motion |

12/27/2022

3:37 PM

Winston & Strawn LLP

Client Detailed Time And Expense Report

Report: WTIME12

Case 6:20-cv-01824-PGB-LHP   Document 183   Filed 01/24/23   Page 65 of 137 PageID 11978

Date Range (Time): 5/23/2022 to 12/27/2022  (Disb): 5/23/2022 to 12/27/2022

Currency: USD

Value Type: Billed

| Client: | 106892 | | No Labels, Inc. et al. |
|---|---|---|---|
| Matter: | 00001 | | Defamation Litigation |

Detailed Time Section (Matter)

| Tkpr | Date | Hours | Amoun | Rate | Description of Services Rendered |
|---|---|---|---|---|---|
| Viebrock, Sarah | 12/21/2022 | 3.20 | $2,992.00 | 935.00 | Conduct research on motion for attorneys fees and draft motion re same |
| Viebrock, Sarah | 12/22/2022 | 6.20 | $5,797.00 | 935.00 | Conduct research on application for attorneys fees and draft motion re same; correspondence with C. Man re application for fees; incorporate edits from C. Man into same |
| Viebrock, Sarah | 12/23/2022 | 0.60 | $561.00 | 935.00 | Review and incorporate edits from A. Lowell into motion for attorneys fees |
| Lowell, Abbe | 5/23/2022 | 0.40 | $604.00 | 1,510.00 | Review notice of appeal, co-counsel correspondence re strategy |
| Lowell, Abbe | 5/27/2022 | 0.50 | $755.00 | 1,510.00 | Conference call with co-counsel, N. Jacobson, M. White re status, strategy |
| Lowell, Abbe | 6/14/2022 | 0.30 | $453.00 | 1,510.00 | Review court order re mediation |
| Lowell, Abbe | 6/15/2022 | 0.70 | $1,057.00 | 1,510.00 | Review court order re jurisdiction; conference call with W&S team re same |
| Lowell, Abbe | 6/21/2022 | 0.60 | $906.00 | 1,510.00 | Conference call with co-counsel re Eleventh Circuit issues |
| Lowell, Abbe | 6/22/2022 | 0.50 | $755.00 | 1,510.00 | Review court rules and draft for Eleventh Circuit |
| Lowell, Abbe | 6/23/2022 | 0.50 | $755.00 | 1,510.00 | Review and revise jurisdictional response |
| Lowell, Abbe | 6/28/2022 | 0.80 | $1,208.00 | 1,510.00 | Review fee filing; review and revise jurisdiction filing |
| Lowell, Abbe | 6/29/2022 | 0.50 | $755.00 | 1,510.00 | Review and revise jurisdictional filing |
| Lowell, Abbe | 7/15/2022 | 0 50 | $755.00 | 1,510.00 | Review and revise mediation statement |
| Lowell, Abbe | 7/20/2022 | 1.40 | $2,114.00 | 1,510.00 | Review appellant brief; review jurisdiction letter; correspondence with N. Jacobson, W&S team re pending issues |
| Lowell, Abbe | 7/21/2022 | 1 00 | $1,510.00 | 1,510.00 | Review appellant brief; review mediation filing |
| Lowell, Abbe | 7/27/2022 | 0.40 | $604.00 | 1,510.00 | Prepare for mediation session |
| Lowell, Abbe | 7/28/2022 | 0.60 | $906.00 | 1,510.00 | Attend Eleventh Circuit mediation conference |

Winston & Strawn LLP

Client Detailed Time And Expense Report

Date Range (Time): 5/23/2022 to 12/27/2022  (Disb): 5/23/2022 to 12/27/2022

Currency: USD

Value Type: Billed

| Client: | 106892 | | No Labels, Inc. et al. |
|---|---|---|---|
| Matter: | 00001 | | Defamation Litigation |

Detailed Time Section (Matter)

| Tkpr | Date | Hours | Amoun | Rate | Description of Services Rendered |
|---|---|---|---|---|---|
| Lowell, Abbe | 8/9/2022 | 0.40 | $604.00 | 1,510.00 | Correspondence with C. Man re appellate brief |
| Lowell, Abbe | 8/12/2022 | 0.80 | $1,208.00 | 1,510.00 | Review appellate brief |
| Lowell, Abbe | 8/15/2022 | 1.70 | $2,567.00 | 1,510.00 | Review and revise appellate brief |
| Lowell, Abbe | 8/16/2022 | 0.50 | $755.00 | 1,510.00 | Review appellate brief |
| Lowell, Abbe | 8/17/2022 | 0.40 | $604.00 | 1,510.00 | Correspondence with No Labels, W&S team re appellate brief |
| Lowell, Abbe | 9/22/2022 | 0.50 | $755.00 | 1,510.00 | Review appellant reply brief |
| Lowell, Abbe | 10/28/2022 | 0.30 | $453.00 | 1,510.00 | Telephone conference with Eleventh Circuit clerk |
| Lowell, Abbe | 10/31/2022 | 0.70 | $1,057.00 | 1,510.00 | Telephone conference with Eleventh Circuit clerk; correspondence with N. Jacobson, M. Penn re status |
| Lowell, Abbe | 11/7/2022 | 0.50 | $755.00 | 1,510.00 | Review motion for reconsideration |
| Lowell, Abbe | 12/7/2022 | 0.30 | $453.00 | 1,510.00 | Correspondence with co-counsel re Eleventh Circuit status |
| Lowell, Abbe | 12/19/2022 | 0.40 | $607.00 | 1,510.00 | Review fee motion issues |
| Lowell, Abbe | 12/20/2022 | 0.80 | $1,208.00 | 1,510.00 | Review fee application rules, correspondence re same |
| Man, Christopher | 6/9/2022 | 0.50 | $565.00 | 1,130.00 | Review and discuss plaintiff's appeal filings with team |
| Man, Christopher | 6/15/2022 | 1.00 | $1,130.00 | 1,130.00 | Review and discuss jurisdictional order with team |
| Man, Christopher | 6/22/2022 | 1.50 | $1,695.00 | 1,130.00 | Review and discuss appellate filings with team |
| Man, Christopher | 6/23/2022 | 0.80 | $904.00 | 1,130.00 | Review and discuss Eleventh Circuit filings with team |
| Man, Christopher | 6/24/2022 | 0.50 | $565.00 | 1,130.00 | Discuss and edit jurisdictional questions with team |

12/27/2022
3:37 PM

Winston & Strawn LLP

Report: WTIME12

Case 6:20-cv-01824-PGB-LHP   Document 183   Filed 01/24/23   Page 67 of 137 PageID 11980

Client Detailed Time And Expense Report

Date Range (Time): 5/23/2022 to 12/27/2022  (Disb): 5/23/2022 to 12/27/2022

Currency: USD

Value Type: Billed

| Client: | 106892 | No Labels, Inc. et al. |
| Matter: | 00001 | Defamation Litigation |

**Detailed Time Section (Matter)**

| Tkpr | Date | Hours | Amoun | Rate | Description of Services Rendered |
|---|---|---|---|---|---|
| Man, Christopher | 6/29/2022 | 0.80 | $904.00 | 1,130.00 | Edit and discuss jurisdictional statement wi h team |
| Man, Christopher | 7/7/2022 | 0.40 | $452.00 | 1,130.00 | Review and discuss mediation statement with team |
| Man, Christopher | 7/15/2022 | 1.00 | $1,130.00 | 1,130.00 | Review, edit and discuss mediation statement with team |
| Man, Christopher | 7/20/2022 | 3.00 | $3,390.00 | 1,130.00 | Review and discuss Grayson brief with team; prepare mediation statement |
| Man, Christopher | 7/21/2022 | 1.30 | $1,469.00 | 1,130.00 | Arrange filing of mediation statement; prepare brief |
| Man, Christopher | 7/27/2022 | 0.40 | $452.00 | 1,130.00 | Discuss mediation with team; review mediation materials |
| Man, Christopher | 7/31/2022 | 0.10 | $113.00 | 1,130.00 | Discuss status with team |
| Man, Christopher | 8/2/2022 | 1.80 | $2,034.00 | 1,130.00 | Research and draft brief |
| Man, Christopher | 8/3/2022 | 4.00 | $4,520.00 | 1,130.00 | Research and draft brief |
| Man, Christopher | 8/4/2022 | 4.20 | $4,746.00 | 1,130.00 | Research and draft brief |
| Man, Christopher | 8/5/2022 | 4.50 | $5,085.00 | 1,130.00 | Research and draft brief |
| Man, Christopher | 8/6/2022 | 2.00 | $2,260.00 | 1,130.00 | Draft brief |
| Man, Christopher | 8/7/2022 | 2.00 | $2,260.00 | 1,130.00 | Research and draft brief |
| Man, Christopher | 8/8/2022 | 4.50 | $5,085.00 | 1,130.00 | Prepare brief |
| Man, Christopher | 8/9/2022 | 5.00 | $5,650.00 | 1,130.00 | Prepare brief; discuss same with team |
| Man, Christopher | 8/10/2022 | 3.50 | $3,955.00 | 1,130.00 | Prepare brief |
| Man, Christopher | 8/11/2022 | 3.50 | $3,955.00 | 1,130.00 | Research and draft brief |
| Man, Christopher | 8/12/2022 | 3.40 | $3,842.00 | 1,130.00 | Draft and discuss brief with team |
| | 8/14/2022 | 2.00 | $2,260.00 | 1,130.00 | Edit and discuss brief with team |

Date Range (Time): 5/23/2022 to 12/27/2022  (Disb): 5/23/2022 to 12/27/2022          Currency: USD

Value Type: Billed

| Client: | 106892 | No Labels, Inc. et al. |
| Matter: | 00001 | Defamation Litigation |

**Detailed Time Section (Matter)**

| Tkpr | Date | Hours | Amoun | Rate | Description of Services Rendered |
|------|------|-------|-------|------|----------------------------------|
| Man, Christopher | 8/15/2022 | 4.50 | $5,085.00 | 1,130.00 | Prepare brief; discuss same with team |
| Man, Christopher | 8/16/2022 | 4.00 | $4,520.00 | 1,130.00 | Edit brief; discuss same with team |
| Man, Christopher | 8/17/2022 | 3.00 | $3,390.00 | 1,130.00 | Finalize and file brief |
| Man, Christopher | 9/2/2022 | 0.10 | $113.00 | 1,130.00 | Review extension by Grayson |
| Man, Christopher | 9/22/2022 | 1.80 | $2,034.00 | 1,130.00 | Review and discuss Grayson's reply with team |
| Man, Christopher | 10/21/2022 | 0.60 | $678.00 | 1,130.00 | Review Eleventh Circuit decision; discuss same with clients and team |
| Man, Christopher | 10/31/2022 | 0.20 | $226.00 | 1,130.00 | Discuss mediation issues with clients and team |
| Man, Christopher | 11/4/2022 | 1.30 | $1,469.00 | 1,130.00 | Review and discuss petition with team; check rules |
| Man, Christopher | 12/14/2022 | 0.10 | $113.00 | $1,130.00 | Review Eleventh Circuit denial of rehearing; discuss same with team |
| Man, Christopher | 12/20/2022 | 0.20 | $226.00 | $1,130.00 | Review and discuss fee research with team |
| Man, Christopher | 12/21/2022 | 0.20 | $226.00 | $1,130.00 | Review fee research and discuss next steps with team |
| Man, Christopher | 12/22/2022 | 0.40 | $452.00 | $1,130.00 | Edit and discuss fee motion and declaration with team |
| Man, Christopher | 12/23/2022 | 0.30 | $339.00 | $1,130.00 | Review and discuss fee application with team |
| Man, Christopher | 12/24/2022 | 0.10 | $113.00 | $1,130.00 | Review fee application |
| Man, Christopher | 12/26/2022 | 0.10 | $113.00 | $1,130.00 | Review fee application and discuss with team |
| | | 171.20 | $181,812.50 | $1,061.99 | |

12/27/2022
3:37 PM

Winston & Strawn LLP

Report: WTIME12

Case 6:20-cv-01824-PGB-LHP   Document 183   Filed 01/24/23   Page 69 of 137 PageID 11982

Client Detailed Time And Expense Report

Date Range (Time): 5/23/2022 to 12/27/2022  (Disb): 5/23/2022 to 12/27/2022

Currency: USD

Value Type: Billed

| Client: | 106892 | No Labels, Inc. et al. |
|---|---|---|
| Matter: | 00001 | Defamation Litigation |

Detailed Disbursements Section (Matter)

| Date | Check | Disb Code | Amount | Disbursement Description |
|---|---|---|---|---|
| 6/15/2022 | | 124 | $228.00 | VENDOR: Diners Club Commercial INVOICE#: 55282800682457370622 DATE: 6/15/2022<br>FEE TO FILE ADMISSION APPLICATION IN THE USCA 11TH CIRCUIT FOR S. VIEBROCK |
| 6/15/2022 | | 124 | $228.00 | VENDOR: Diners Club Commercial INVOICE#: 55282800682457370622 DATE: 6/15/2022<br>FEE TO FILE ADMISSION APPLICATION IN THE USCA 11TH CIRCUIT FOR A. LOWELL |
| 6/7/2022 | | 124 | $25.00 | VENDOR: Lowell, Abbe D. INVOICE#: 5207452606071609 DATE: 6/7/2022<br>Certificate of Good Standing; 06/07/2022 - 06/07/2022; DC Bar Certificate of Good Standing for Eleventh Circuit admission application |
| Disbursements Total | | | $481.00 | |

Case 6:20-cv-01824-PGB-LHP   Document 183   Filed 01/24/23   Page 70 of 137 PageID 11983

Date Range (Time): 5/23/2022 to 12/27/2022  (Disb): 5/23/2022 to
12/27/2022

Currency: USD

Value Type: Billed

Client:      106892

Matter:    00001                        Defamation Litigation

Working Timekeeper Summary Section (Matter)

| Timekeeper | Hours | Amount | Rate |
|---|---|---|---|
| Lowell, Abbe | 16.00 | $24,163.00 | 1,510.00 |
| Partner Total | 16.00 | $24,163.00 | 1,510.00 |
| Man, Christopher | 68.60 | $77,518.00 | 1,130.00 |
| Total | 68.60 | $77,518.00 | 1,130.00 |
| Viebrock, Sarah | 84.30 | $78,820.50 | 935.00 |
| Total | 84.30 | $78,820.50 | 935.00 |
| Lerner, Lane | 2.30 | $1,331.00 | 570.00 |
| Total | 2.30 | $1,331.00 | 570.00 |
| Working Timekeeper Matter Summary Total | 171.20 | $181,812.50 | 1,061.99 |

| Code | Description | Amount |
|---|---|---|
| 124 | Court Costs and Fees | $481.00 |
| Disbursement Code Summary Total | | $481.00 |

| Matter: | 00001 | Defamation Litigation | Fees | $181,812.50 |
|---|---|---|---|---|
| | | | Disb | $481.00 |
| | | | Total | $182,293.50 |

Client Summary For:      106892            No Labels, Inc. et al.

| Matter | | Hours | Amount | Rate |
|---|---|---|---|---|
| 00001 | Defamation Litigation | 171.20 | $181,812 50 | 1,061.99 |
| Matter Time Client Summary Total | | 171.20 | $181,812 50 | 1,061.99 |

12/27/2022
3:37 PM

Winston & Strawn LLP
Client Detailed Time And Expense Report

Date Range (Time): 5/23/2022 to 12/27/2022  (Disb): 5/23/2022 to
12/27/2022

Report: WTIME12
Req'd By: DBuskus
Currency: USD

Case 6:20-cv-01824-PGB-LHP   Document 183   Filed 01/24/23   Page 71 of 137 PageID 11984

Value Type: Billed

## Working Timekeeper Summary Section (Client)

| Timekeeper | Hours | Amount | Rate |
|---|---|---|---|
| Lerner, Lane | 2.30 | $1,331.00 | 570.00 |
| Viebrock, Sarah | 84.30 | $78,820.50 | 935.00 |
| Lowell, Abbe | 16.00 | $24,163.00 | 1,510.00 |
| Man, Christopher | 68.60 | $77,518.00 | 1,130.00 |
| Working Timekeeper Client SummaryTotal | 171.20 | $181,812.50 | $1,061.99 |

## Disbursement Code Summary Section (Client)

| Code | Descrip ion | Amount |
|---|---|---|
| 124 | Court Costs and Fees | $481.00 |
| Disbursement Code Client Summary Total | | $481.00 |

| Client: | 106892 | No Labels, Inc. et al. | Fees | $181,812.50 |
|---|---|---|---|---|
| | | | Disb | $481.00 |
| | | | Total | $182,293.50 |

# EXHIBIT C

**UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT**
**Form to Accompany Application for Attorney's Fees**

Summary of work performed by (name): Abbe David Lowell

Total compensation requested for this person: $24,163.00

Hourly rate of compensation requested for this person: $1,510.00

This person is an:

☒ attorney   ☐ law student/graduate   ☐ certified paralegal   ☐ other:_____

| Category | Total Hours |
|---|---|
| Interviews and conferences | 3.9 |
| Obtaining and reviewing records | |
| Legal research | |
| Brief writing | 3 |
| Preparing for and attending oral argument | |
| Other (specify on additional sheets if necessary): | 9.1<br>Jurisdictional Statement: 2.8<br>Mediation Statement/Mediation: 2.3<br>Fee Motion: 1.2<br>Review Filings: 2.8 |
| Total hours claimed for this person | 16.00 |

*Instructions: on the applicable lines, enter the total time spent in each category. A separate form must be completed for each person for whom time is claimed. Attach contemporaneous time records reflecting all hours listed and indicating the dates on which the work was performed. An affidavit attesting to the truthfulness of the information contained in the application and demonstrating the basis for the hourly rate(s) requested must also accompany the application.*

Rev.: 1/03

**UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT**
**Form to Accompany Application for Attorney's Fees**

Summary of work performed by (name): Christopher D. Man

Total compensation requested for this person: $77,518.00

Hourly rate of compensation requested for this person: $1,130.00

This person is an:

☒ attorney    ☐ law student/graduate    ☐ certified paralegal    ☐ other:_____

| Category | Total Hours |
|---|---|
| Interviews and conferences | |
| Obtaining and reviewing records | |
| Legal research | 20 |
| Brief writing | 31.9 |
| Preparing for and attending oral argument | |
| Other (specify on additional sheets if necessary): | 16.7 <br><br> Jurisdictional Statement: 2.3 <br> Mediation Statement:3.3 <br> Fee Motion:2.6    Review Filings: 8.5 |
| Total hours claimed for this person | 68.60 |

*Instructions: on the applicable lines, enter the total time spent in each category. A separate form must be completed for each person for whom time is claimed. Attach contemporaneous time records reflecting all hours listed and indicating the dates on which the work was performed. An affidavit attesting to the truthfulness of the information contained in the application and demonstrating the basis for the hourly rate(s) requested must also accompany the application.*

Rev.: 1/03

**UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT**
**Form to Accompany Application for Attorney's Fees**

Summary of work performed by (name): Sarah Viebrock _____

Total compensation requested for this person: $78,820.50 _____

Hourly rate of compensation requested for this person: $935.00 _____

This person is an:

☒ attorney    ☐ law student/graduate    ☐ certified paralegal    ☐ other: _____

| Category | Total Hours |
|---|---|
| Interviews and conferences | |
| Obtaining and reviewing records | |
| Legal research | 24.5 |
| Brief writing | 16.6 |
| Preparing for and attending oral argument | |
| Other (specify on additional sheets if necessary): | 43.2<br>Prepare necessary 11th circuit filings: 5.8<br>Jurisdictional Statement:11.7<br>Mediation: 14.9        Fee Application: 6.8<br>Review Filings: 4 |
| Total hours claimed for this person | 84.30 |

*Instructions: on the applicable lines, enter the total time spent in each category. A separate form must be completed for each person for whom time is claimed. Attach contemporaneous time records reflecting all hours listed and indicating the dates on which the work was performed. An affidavit attesting to the truthfulness of the information contained in the application and demonstrating the basis for the hourly rate(s) requested must also accompany the application.*

Rev.: 1/03

**UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT**
**Form to Accompany Application for Attorney's Fees**

Summary of work performed by (name): <u>Lane Lerner</u>

Total compensation requested for this person: <u>$1,331.00</u>

Hourly rate of compensation requested for this person: <u>$570.00</u>

This person is an:

☒ attorney    ☐ law student/graduate    ☐ certified paralegal    ☐ other:_____

| Category | Total Hours |
|---|---|
| Interviews and conferences | |
| Obtaining and reviewing records | |
| Legal research | |
| Brief writing | |
| Preparing for and attending oral argument | |
| Other (specify on additional sheets if necessary): | 2.3<br><br>Preparing necessary documents for filing |
| Total hours claimed for this person | 2.3 |

*Instructions: on the applicable lines, enter the total time spent in each category. A separate form must be completed for each person for whom time is claimed. Attach contemporaneous time records reflecting all hours listed and indicating the dates on which the work was performed. An affidavit attesting to the truthfulness of the information contained in the application and demonstrating the basis for the hourly rate(s) requested must also accompany the application.*

Rev.: 1/03

# EXHIBIT D

# Abbe Lowell

Partner in Washington, DC and New York
Co-Chair, White Collar, Regulatory Defense and Investigations Practice
adlowell@winston.com
+1 202-282-5000 (Washington, DC) +1 212-294-6700 (New York)



**Abbe David Lowell is one of the country's foremost white collar defense and trial lawyers. He has tried civil and criminal cases before judges and juries in more than a dozen states, argued numerous appeals before courts that include the U.S. Supreme Court, led complex international investigations, and navigated clients through congressional and administrative proceedings, often under the glare of media scrutiny. Abbe served as Chief Minority Counsel to the House of Representatives during the impeachment proceedings against President Bill Clinton. He also previously served as Special Assistant to the U.S. Attorney General and Special Counselor to the United Nations High Commissioner for Human Rights.**

| | |
|---|---|
| **Services** | White Collar, Regulatory Defense & Investigations, Complex Commercial Litigation, Securities Litigation, Appellate & Critical Motions, Compliance & Counseling, Government Program Fraud, False Claims Act, and Qui Tam Litigation |
| **Sectors** | Financial Services & Banking, Technology, New Media & Telecommunications, Sports, Health Care & Life Sciences, Consumer Products, Pharmaceuticals & Medical Devices |
| **Admissions** | District of Columbia, Maryland, New York |
| **Education** | Columbia University, JD, 1977 |
| | Columbia College, BA, 1974 |

Abbe David Lowell is one of the nation's leading white collar defense and trial lawyers. His practice focuses on litigation, complex investigations, and regulatory enforcement. In his wide-ranging career, Abbe has represented numerous high-profile corporate and individual clients and provided counsel in matters of national and international importance. He has successfully tried numerous complex civil and criminal cases throughout the United States, and has briefed and argued dozens of appeals before federal and state appeals courts and before the United States Supreme Court.

In addition to trying cases and arguing appeals, Abbe advises clients in their dealings with the U.S. Congress and its committees, other legislative bodies, and numerous federal and state regulatory agencies. He also works with clients on internal investigations, voluntary disclosure decisions, and developing compliance programs to prevent issues from arising with law enforcement agencies. His matters and cases often require him to navigate all of these legal issues under the glare of media scrutiny.

In criminal matters, Abbe has successfully avoided charges or defended clients against a wide array of charges, including conspiracy, election law violations, bank fraud, insurance fraud, bankruptcy fraud, Foreign Corrupt Practices Act (FCPA) violations, mail and wire fraud, securities fraud, money laundering, public corruption, honest services fraud, False Claims Act, obstruction of justice and false information charges and violations of the Racketeer Influenced, and Corrupt Organizations Act (RICO) and the Espionage Act.  In civil cases, he has helped clients win in cases of breach of contract and fiduciary duty, FCPA violations, False

© 2022 Winston & Strawn LLP

Claims Act, civil rights violations, conspiracy, employment discrimination, negligence, RICO violations, securities fraud, tortious interference with business, breach of fiduciary, and unfair trade practices. He has conducted internal investigations responding to government, whistleblower, or other allegations of FCPA, money laundering, securities, and other law violations.

Abbe has been counsel to the U.S. House of Representatives twice, including when he was Chief Minority Counsel during impeachment proceedings against President Clinton and before that, as special ethics counsel to the House Committee of Standards of Official Conduct (Ethics Committee).

From 1994 to 1996, he was appointed as Special Counselor to the United Nations High Commissioner for Human Rights in the investigation and prosecution of human rights violations, war crimes, and other human rights projects in Rwanda and the former Yugoslavia. Abbe has also served at the U.S. Department of Justice from 1977 to 1981 as a Special Assistant US Attorney, Special Assistant to the Deputy Attorney General, and Special Assistant to the Attorney General.

His high-profile clients have included national and international companies (Goldman Sachs, Intuit, GNC, Star Scientific, Bank Hapoalim), public officials (Governors Jim Gibbons and George Pataki, Senators Robert Torricelli, John Ensign, John Edwards, and Robert Menendez; Reps. Gary Condit, Charlie Wilson, Walter Fauntroy, Harold Ford, Bill Boner, Jim Weaver, Austin Murphy, and Joe McDade, NY Majority Leader Joe Bruno and Puerto Rico Senator Hector Martinez), international organizations (U.N. High Commissioner for Human Rights), state and local governments (City of Alexandria, Virginia), government lobbyists (Jack Abramoff; former AIPAC official Steve Rosen), businessmen (Victor Restis, Gene Phillips, Aubrey McClendon, and Sam Waksal), actors (Steven Seagal, Sean Combs) and others.

Abbe has been recognized by various publications ranging from *The National Law Journal* to *Chambers USA* as one of the most influential and most successful attorneys in the United States. He has written articles on legal issues and current political events that have been widely published. He has also written op-ed pieces for newspapers, including *The Wall Street Journal*, *The New York Times*, *The Washington Post*, *USA Today*, and *Roll Call*, as well as articles for legal publications and websites, such as *Business Crimes Bulletin*, *American Criminal Law Review*, Law.com, *The National Law Journal,* and *Legal Times*. Abbe wrote the chapter "The Penal System Is Broken" for *Beyond a Reasonable Doubt*, a book edited by Larry King.

## Experience

### Criminal Cases

*United States v. Robert Menendez* (sitting U.S. Senator on corruption and false filing charges)

*United States v. John Edwards* (former presidential candidate on election law charges)

*United States v. Hector Martinez* (Puerto Rico Senator charged with bribery)

*United States v. Ousama Naaman* (businessman charged with Foreign Corrupt Practices Act)

*United States v. Joseph Bruno* (former New York Senate leader charged with honest services violations)

*United States v. Paul Minor, et al.* (trial attorney charged with bribery and racketeering)

*United States v. Gene Phillips* (real estate developer/stock investor indicted for securities fraud)

*United States v. Henry Espy* (Mississippi public official indicted for election law and bank fraud)

*United States v. Loren Mintz* (bank president indicted for bank fraud)

*United States v. Jack Harvard* (bank president/local mayor charged with bank fraud)

*United States v. Phil Palmer* (leading attorney indicted for bankruptcy fraud)

© 2022 Winston & Strawn LLP

*United States v. Thomas Gaubert* (real estate developer indicted for bank and other fraud)

*United States v. Erwin Friedman* (real estate developer indicted for bank and other fraud)

*United States v. Peter Gill* (bank CEO indicted for bank and other fraud)

*United States v. Sam McKerall* (real estate developer indicted for bank and other fraud)

*State of Maryland v. Stephen Edwards* (16-year-old charged with murder)

*United States v. Clarence Mitchell* (state official charged with bribery)

*United States v. Steven Rosen* (AIPAC lobbyist charged under the Espionage Act with disclosing classified information)

*United States v. Henry Cisneros and Sylvia Arce-Garcia* (public officials indicted for perjury and obstruction)

*United States v. Behzad Cohen* (chemical company indicted by California U.S. Attorney for violation of drug distribution laws)

*United States v. Jack Abramoff* (D.C. lobbyist charged with gratuities, wire fraud and tax evasion)

*United States v. Roya Rahmani* (political asylum grantee indicted by California U.S. Attorney for illegally providing aid to foreign groups—case later reinstated)

*United States v. Judy Wischer* (bank CEO charged with securities and bank fraud)

*United States v. Toussie* (real estate developer indicted for tax violations)

**Civil Cases**

*Bailey, et al. v. George Pataki, et al.* (former New York Governor case involving federal civil rights claims)

*Victor Restis v. UANI* (international shipping businessman defamation suit)

*Gaubert v. United States* (Supreme Court of the United States, U.S. Court of Appeals for the Fifth Circuit and U.S. District Court for the Northern District of Texas case involving claims of U.S. violations of civil rights and tort claims)

*Toussie v. Suffolk County* (federal civil rights claims)

*Abramson v. JCC* (Maryland highest court case establishing charitable immunity)

*Lawrence v. A.S. Abell Co.* (Maryland highest court case defending newspaper from invasion of privacy)

*SCAD v. SVA* (Georgia highest court case affirming client's claims of civil liability for co-conspirators)

*McCarthy v. City of Alexandria* (federal civil rights defense)

*G-I Holdings v. Baron & Budd* (federal civil RICO and fraud case)

*City of Alexandria, VA v. FAA* (lawsuit challenging flight patterns via Endangered Species Act)

*Joan Baez v. CIA* (FOIA appeal)

**Representative Administrative/Congressional Proceedings**

*In re: Impeachment Proceedings of President William Jefferson Clinton* (Chief Minority Investigative Counsel)

*In re: Rep. Charles Wilson* (Congressman's ethics counsel)

© 2022 Winston & Strawn LLP

*In re: Rep. Mario Biaggi* (Congressman's ethics counsel)

*In re: Rep. Austin J. Murphy* (Congressman's ethics counsel)

*In re: Rep. William H. Boner* (Congressman's ethics counsel)

*In re: Rep. Walter Fauntroy* (Congressman's ethics counsel)

*In re: Rep. Roy Dyson* (Congressman's ethics counsel)

*In re: Rep. Dan Daniels* (Congressman's ethics counsel)

*In re: Rep. James Weaver* (Congressman's ethics counsel)

*In re: Rep. Charles G. Rose III* (Congressman's ethics counsel)

*In re: Lincoln Savings and Loan Association* (OTS cease and desist proceeding)

*Some of the experience represented here may have been handled at a previous firm.*

## Honors & Awards

Abbe has received numerous accolades from his peers and prominent legal publications, and he is consistently ranked among top Washington, DC, and national lawyers. Publications in which he has been recognized include:

- *Benchmark Litigation,* "National Practice Area Star" for White Collar Crime, Securities, Professional Liability and Commercial Litigation, 2023
- *Benchmark Litigation*, "Top 100 Trial Lawyers in America," 2015, 2018–2020, 2022-2023
- *Benchmark Litigation,* "D.C. Litigation Star," 2023
- *Lawdragon Magazine, "*500 Leading Litigators in America" for White Collar, Investigation,  2022–2023
- Lawyer Lifetime Achievement Member, *Washingtonian Magazine, 2022*
- Hall of Fame, *The Legal 500 US*, 2021-2022
- Criminal Law Trailblazers List, *The National Law Journal*, 2020
- Winning Litigator, *The National Law Journal*, 2018, 2020
- White Collar Litigation Trailblazer, *The National Law Journal*, 2018
- *Chambers USA* "Band 1" for White Collar Defense & Government Investigations in Washington, D.C., 2018–2022
- *Chambers USA* "Recognized Practitioner" for Nationwide Litigation: Trial Lawyers, 2018–2019
- *The Best Lawyers in America*®, Criminal Defense- White Collar, 2005–2012, 2018-2023
- *The Legal 500 US* – Leading Trial Lawyer for Corporate Investigations and Dispute Resolution, 2012–2019
- *The Legal 500 Latin America:* International Firms – Recognized Lawyer for Compliance & Investigations 2022
- One of the top 30 Leading White Collar Crime Lawyers, *Expert Guide's Best of the Best USA*, 2015
- One of the Top 38 Criminal Defense Attorneys in America, LawNewz.com, 2016
- Law360 White Collar MVP, Law360, 2013
- Most Influential Lawyer in America, *The National Law Journal*, 2013
- White Collar Criminal Defense Attorney of the Year, National Association of Criminal Defense Lawyers, 2013
- *Benchmark Litigation*: The Definitive Guide to America's Leading Litigation Firms & Attorneys, 2008–2016
- Top 30 Lawyers in Washington, D.C., *Washingtonian Magazine*, 2011
- Most Influential Lawyers in America, *The National Law Journal*, 2011
- Washington, DC *Super Lawyers*, White Collar Criminal Defense, Thomson Reuters, 2007–2018

© 2022 Winston & Strawn LLP

- *Who's Who Legal,* recognized as a "Thought Leader" for Business Crime Defence - Corporates and Individuals, 2022
- *Who's Who Legal,* recommended *as a* "Global Leader" for Business Crime Defence - Corporates and Individuals and Investigations, 2022
- *Who's Who Legal: The International Who's Who of Business Lawyers*, 2000–2012
- *Who's Who Legal: The International Who's Who of Business Crime Defense Lawyers*, 2012
- Appellate Hot List, *The National Law Journal*, 2010
- *Lawdragon 500*, 2006–2009
- 100 Most Influential Attorneys in America, *The National Law Journa*l, 2006
- *Marquis Who's Who in America*, 2006–2009
- *Marquis Who's Who in American Law*, 2005–2009
- Top 10 Leading White-Collar Criminal Defense Lawyers in Washington, D.C., *Legal Times*, 2006
- Top Attorney, *Washingtonian Magazine*, in every survey conducted since 1986
- Top 10 Trial Lawyers in America, *The National Law Journal*, July 2002
- Appellate Hot List, *The National Law Journal*, 2010
- Top Lawyers in Washington and the Washington Universe, *Vanity Fair*, October 1997
- D.C. Lawyers to Call List, *Roll Call*, 1993
- Washington Power 100, Regardie's magazine, November 1991

## Activities

- Member, American Bar Association (ABA) (prior chair of the ABA Committee on Rules, White Collar Crime Section)
- Member and Conference Chair, National Association of Criminal Defense Lawyers
- Member, International Academy of Trial Lawyers
- Adjunct professor, Georgetown Law Center in Washington, D.C., teaching trial practice, evidence, and advanced criminal procedure, 1984–present
- Adjunct professor, Columbia Law School in New York, teaching trial practice, evidence, and advanced criminal procedure, 2006–present
- Trustee, The Shakespeare Theatre Company (Chair of Development, Chair of the lawyers' Bard Association)
- Vice president and general counsel, Jewish Community Center of Greater Washington

## Publications & Speaking Engagements

### Publications

- Opinion: Congress has the power to subpoena its own members, *The Washington Post*, January 12, 2022
- The Major Fraud Statute May Apply to Borrowers of Funds Under the CARES Act, Winston & Strawn Client Briefing, June 10, 2020
- Federal Program Bribery Law May Reach Paycheck Protection Program Loan Recipients, *Law360*, May 2020
- Problems with Federal Courts Tolling Statutes of Limitations, *Law360,* May 2020
- Problems with Tolling the Speedy Trial Act During Pandemic, *Law360,* May 2020
- An Early Look At DOJ's Increased Focus On COVID-19 Fraud, *Law360*, April 6, 2020
- DOJ And States Creatively Respond To Fraud Amid COVID-19, *Law360*, March 25, 2020
- 6 more leading trial lawyers share secrets of effective opening statements, *ABA Journal*, March 2017
- The Broken System of Classifying Government Documents, *New York Times,* February 29, 2016
- Devil's Advocate: Defending Angelo in Measure for Measure, *Asides*, September 4, 2013
- Abbe Lowell: Prosecutors' bad decisions should have real costs, *The Washington Post*, June 21, 2012

- Co-author, Federalizing Corporate Internal Investigations and the erosion of employees' fifth amendment rights, *Georgetown Law Journal* – 40 Geo. L.J. Ann. Rev. Crim. Proc., June 2011
- Co-author, Knock, Knock, Who's There? The Government, American Bar Association, April 2011
- Not Every Wrong is a Crime: The Legal and Practical Problems with the Federal Honest Services Statute," Rev. En Benc. 11, 2010
- Don't Overstate Crimes, *The National Law Journal*, October 27, 2008
- Crossing Borders, *National Law Journal*, June 2008
- Supreme Sentence Snafu, *Legal Times*, August 2007
- The Right Way to Manage U.S. Attorneys, *The Washington Post*, March 10, 2007
- Ironies of the U.S. Attorney Firings, *The Washington Post*, March 2007
- Is the DOJ's New Policy of Prosecuting Corporations Real Reform or Business as Usual?, Law.com, January 31, 2007
- The Penal System Is Broken, Beyond a Reasonable Doubt, Phoenix Books, December 2006
- Overseeing Oversight, *National Law Journal* (reprinted in the *New Jersey Law Journal*), November 2006
- Independent Positions: Joe Stands on Principles, *The Hartford Courant*, October 29, 2006
- The Presumption of Innocence Should Not Be Taken Lightly, *Roll Call*, July 19, 2006
- Real Reform Must Scrutinize Lobbying and Lawmakers, *USA Today*, June 21, 2006
- Co-author, Whose Truth Is It, Anyway? Commentary: A Case for Judicial Grants of Defense Witness Immunity, Law.com, April 19, 2006
- Memorandum of Law in Support of Defendants Steven J. Rosen's and Keith Weissman's Motion to Dismiss the Superseding Indictment, February 2006
- Don't Scapegoat My Client, *USA Today*, May 23, 2005
- Don't Release [Rwandan] Killers, *National Law Journal*, April 12, 2004
- Corporate Crime After 2000: A New Law Enforcement Challenge or Déjà Vu?, *American Criminal Law Review*, April 2003
- Conscious Avoidance: A Head in the Sand Puts a Target on Your Back, *Business Crimes Bulletin*, October 2002
- Impeachment Was Never the Objective, *National Law Journal*, January 17, 2000
- A Permanent Special Prosecutor, *Legal Times*, February 23, 1998
- The First Lady's Privilege, *National Law Journal*, May 19, 1997
- Starr Flap Shows Need for Reform, *National Law Journal*, May 13, 1996
- The O.J. Case—Post Verdict Lessons, *Legal Times*, October 16, 1995
- Congress Robs Its Own of Due Process, *National Law Journal*, October 9, 1995
- UN Human Rights Getting Lost In Peacekeeping Debate, June 6, 1995
- International War Crimes Tribunals: A Good Start, But Not Enough, *Legal Times*, April 3, 1995
- Presumption of Innocence [More Than a Catchy Phrase], *Legal Times*, February 21, 1994
- Bush's Violent Crime Policy is Soft on Sense, *The Wall Street Journal*, October 1, 1992
- When Barks Exceeds Bites [Prosecutors Seeking Publicity], *National Law Journal*, September 16, 1991
- The Sting That Got Away [Entrapment], *The Washington Post*, August 24, 1990
- The Barry Jury [Mayor Barry's Trial], *The Washington Post*, June 29, 1990
- Setting the Trap [Mayor Barry's Arrest],"*National Law Journal*, February 26, 1990
- Ed Meese's Revenge [Special Prosecutors for Congress], *National Law Journal*, April 3, 1989
- Choosing the Next Attorney General, *National Law Journal*, July 11, 1988
- Prosecutors Targeting Black Officials, *The Sun* and other newspapers including *Legal Times*, March 28, 1988
- Politicians' Ethics No Worse Than Before, *Legal Times*, July 27, 1987
- The FHLBB's Smokescreen Of Congressional Interference, *National Thrift News*, July 13, 1987
- Money Laundering Legislation, *American Banker*, October 6, 1986
- Privacy, Tough Money Laws Do Mix, *National Law Journal*, September 15, 1986
- The Administration That Cried Wolf [Executive Privilege], *Legal Times*, August 11, 1986

© 2022 Winston & Strawn LLP

- Real Story: Oversight by Congress [of FHLBB] Works, *Dallas Times Herald*, August 3, 1986
- Bhopal Tragedy Breeds Legal Disaster, [Legal Ethics], *Legal Times*, December 24, 1984
- Safeguards Offered for Officials Under Probe, *New York Law Journal*, September 8, 1983
- The Birth of Electronic Publishing, Chapters on First Amendment and Defamation (Knowledge Ind. 1982)
- The *Mandate*, *The New York Times*, September 25, 1981

**Speaking Engagements**

- The Mueller Investigation: What Have We Learned and What Can We Learn? National Association of Criminal Defense Lawyers White Collar Crime Conference, Santa Monica, California, June 21, 2019
- Enforcement Abroad: The Extraterritorial Jurisdiction of the United States, *The Legal 500* Middle East Dispute Resolution Summit, Dubai, United Arab Emirates, May 1, 2019
- Prosecutorial Discretion, Neutrality & Ethics in an Age of Increasing Politicization, American University Washington College of Law, March 14, 2019
- District of Columbia Court of Appeals Distinguished Speaker Series, February 21, 2019
- Read the Menu Carefully—Charging Decisions & Defense Strategies in Public Corruption Cases, ABA Southeastern White Collar Crime Institute, Braselton, Georgia, September 7, 2018
- The Trial of Hamlet, Shakespeare Theater Company, C-SPAN, Washington, DC., 1997, 2007, 2018
- Classified Information Litigation Course [Military Branches] – Navy Yard, Ft. Meyer, 2016–Present
- Trial of Edward Snowden, Legally Speaking, Washington, D.C. January 2014
- Navigating the Storm–Crisis Management Techniques for In-House and Outside Counsel, The Voice of the Defense Bar Conference, Washington, D.C., June 27-28, 2013
- War on Whistleblowers: Free Press and the National Security State, Newseum, Washington, DC, April 16, 2013
- Recent Trials, The 27th Annual National Institute on White Collar Crime, Las Vegas, NV, March 7, 2013
- 2012 NACD Board Leadership Conference, National Harbor, MD, October 14-16, 2012
- Keynote Address, The Cardozo Society, Minneapolis, MN, 2011
- 13th Annual Freedom of Information Day, Washington, DC, March 16, 2011
- WikiLeaks, the Espionage Act, and the First Amendment: The Law, Politics, and Policy of Prosecuting Julian Assange, American University Washington College of Law, Washington, D.C., January 11, 2011
- House Judiciary Testimony (The Espionage Act), Washington, D.C., December 16, 2010
- Criminal Law, National Security and the First Amendment, Washington, D.C., October 29, 2010
- Assessing the Impact and Outcomes of Recent Insurance Investigations, 19th International Reinsurance Congress, Bermuda, October 19-21, 2005

© 2022 Winston & Strawn LLP

# EXHIBIT E

# Christopher Man

Partner in Washington, DC
cman@winston.com
+1 202-282-5622 (Washington, DC)



**Christopher Man is a highly regarded white collar defense and trial lawyer who has successfully represented numerous companies, as well as governors, members of Congress, senior White House officials, and U.S. presidential candidates. His practice focuses on civil and criminal litigation, appeals, internal investigations, investigations by Congress and the Executive branch, and compliance with anti-corruption laws.**

| | |
|---|---|
| **Services** | White Collar, Regulatory Defense & Investigations, Complex Commercial Litigation, Compliance & Counseling, Government Investigations, Corporate Governance, Energy Industry Investigations & Litigation, Appellate & Critical Motions |
| **Sectors** | Financial Services & Banking, Consumer Products |
| **Admissions** | District of Columbia, Missouri |
| **Court Admissions** | District of Columbia Court of Appeals, Northern District of Oklahoma, U.S. Supreme Court, USCA - 10th Circuit, USCA - 1st Circuit, USCA – 2nd Circuit, USCA - 3rd Circuit, USCA - 4th Circuit, USCA - 5th Circuit, USCA - 6th Circuit, USCA - 7th Circuit, USCA - 8th Circuit, USCA - Federal Circuit, Western District of Oklahoma |
| **Education** | George Washington University, LLM, 1997 |
| | University of Kansas, BA, 1992 |
| | Washington University - Saint Louis, JD, 1995 |

Christopher Man's practice focuses on civil litigation, white collar criminal litigation, appeals, internal investigations, and investigations conducted by Congress and the Executive Branch. He has significant experience defending clients accused of violating the Foreign Corrupt Practices Act, money laundering laws, trade sanctions, securities laws, the Racketeer Influenced and Corrupt Organizations Act (RICO) and federal election laws. Mr. Man also advises companies on compliance with anti-bribery laws, federal ethics laws, and trade sanctions.

A frequent author, Mr. Man has written numerous articles for legal publications, including *The National Law Journal, New York Law Journal, Legal Times, law.com, Business Crimes Bulletin* and several prominent law reviews.

## Experience

- Brought a precedent setting case against the US military pro bono on behalf of current and former members of the military and their same-sex spouses to invalidate the Defense of Marriage Act (DOMA) and similar restrictions in the military titles of the US Code that unconstitutionally prevented the military

© 2022 Winston & Strawn LLP

from paying spousal benefits to legally married spouses of the same sex. The President, Attorney General and military advised the Court they agreed these laws were unconstitutional, and a judgment declaring those laws unconstitutional was entered.

- Represented Senator Robert Menendez at his criminal public corruption trial. The jury trial ended in a mistrial, when the jurors could not agree on a verdict, and the trial court granted our post-trial motions for acquittal on several charges.
- Served as alternating first chair at trial in the successful defense of former New York Governor George Pataki in defense of claims that he violated the civil rights of plaintiffs who were hospitalized under the Sexually Violent Predators Initiative. The jury found Governor Pataki not liable.
- Represented former Senator and Presidential candidate John Edwards at trial for violating the federal election laws. The jury acquitted Senator Edwards on all charges.
- Serves as ethics counsel to Assistant to the President and Senior Advisor to the President Jared Kushner and Advisor to the President Ivanka Trump, assisting them with making required financial disclosures and complying with federal ethics laws.
- Represented several Iranian expatriates in an investigation by the Treasury Department's Office of Foreign Asset Control (OFAC) into allegations they had funded a foreign terrorist organization, which ended in no action being taken by OFAC beyond issuing a cautionary letter to the clients.
- Represented a Puerto Rican Senator Hector Martinez at a criminal trial that ended in a conviction of only one of the four charges, and he successfully overturned the remaining count of conviction on appeal to the United States Court of Appeals for the First Circuit.
- Represented a transgender inmate pro bono on appeal to the United States Court of Appeals for the First Circuit that established an important precedent requiring prisons to respect the medical needs of transgender inmates.
- Represented Paul Minor on appeal to the United States Court of Appeals for the Fifth Circuit in a case that overturned his conviction for federal programs bribery (Section 666) and that set an important precedent limiting the reach of the statute.
- Represented Ousama Naaman, a Lebanese-Canadian citizen under investigation by the US Department of Justice, the US Securities & Exchange Commission, and the UK's Serious Fraud Office, on allegations he violated the United Nation's Oil-for-Food Program and the FCPA by paying bribes to the Iraqi government and its officials. A favorable plea agreement was negotiated in exchange for his cooperation, and Mr. Naaman was transferred to Canada to serve his sentence in record time where he was quickly paroled.
- Represented Wal-Mart in civil and criminal proceedings concerning allegations it used contractors who employed undocumented workers as floor cleaners in 22 states.
- Represented ConocoPhillips in civil and criminal proceedings concerning allegations of a conspiracy between corporate officers and Australian government officials to bribe East Timorese government officials in exchange for rights to develop US$50 billion worth of oil and gas in the Timor Sea.
- Represented Scott Sullivan, former Chief Financial Officer of WorldCom, in criminal proceedings.
- Assisted in preparing successful presidential pardon applications for Marc Rich and Pincus Green.
- Represented a major tobacco company in litigation brought by the European Community and various European and Latin American governments seeking billions of dollars in damages for alleged RICO violations concerning smuggling and money laundering on behalf of Colombian drug lords.

## Honors & Awards

- "D.C. Litigation Star," *Benchmark Litigation,* 2023
- "Key Lawyer," *The Legal 500 U.S.,* Dispute Resolution: International Litigation, 2022
- Second place, National Environmental Moot Court, 1995
- First place and high oralist, Washington University Environmental Moot Court, 1994

© 2022 Winston & Strawn LLP

While in law school, Christopher was the articles editor for *The Washington University Journal of Urban & Contemporary Law*.

## Publications & Speaking Engagements

- Co-author, "The Major Fraud Statute May Apply to Borrowers of Funds Under the CARES Act," Winston & Strawn Client Briefing, June 2020
- Co-author, "Federal Program Bribery Law May Reach Paycheck Protection Program Loan Recipients," *Law360,* May 2020
- Co-author, "Problems with Federal Courts Tolling Statutes of Limitations," *Law360,* May 2020
- Co-author, "Problems with Tolling the Speedy Trial Act During Pandemic," *Law360,* May 2020
- "Applying The Presidential Pardon Power In The Context of An Executive Branch investigation," 33 Criminal Justice (ABA publication scheduled for Summer 2018)
- Co-author, "Federalizing Corporate Internal Investigations and The Erosion of Employees' Fifth Amendment Rights," *Georgetown Law Journal* – 40 Geo. L.J. Ann. Rev. Crim. Proc., June 2011
- "'Not Every Wrong is a Crime': The Legal and Practical Problems with the Federal 'Honest-Services' Statute," 63 Vand. L. Rev. En Banc 11, 2010
- "US Trade Sanctions Are a Trap for the Unwary," *Project Finance NewsWire*, April 2007
- "Is the DOJ's New Policy of Prosecuting Corporations Real Reform or Business as Usual?", law.com, January 31, 2007
- "The Supreme Court's Decision in United States v. Booker Opens the Door to Fairer Sentences in White Collar Cases," *Securities Litigation and Enforcement NewsWire*, April 2005
- "Revenue Rule to Get Spotlight," *National Law Journal*, July 19, 2004
- "High Court is Set to Consider 'Revenue Rule' in Criminal Context," *New York Law Journal*, July 19, 2004
- "The USA Patriot Act of 2001 Poses a New Threat to Grand Jury Secrecy," *9 Business Crimes Bulletin* February 2002
- "Coordinated Criminal Investigations Between the United States and Foreign Governments and Their Implications for Constitutional Rights," *42 Virginia Journal of International Law 821*, 2002
- "Extradition and Article III: A Historical Examination of the Judicial Power of the United States," *10 Tulane Journal of International and Comparative Law*, 2002
- "Preventing Disclosure of Grand Jury Materials to Foreign Governments Pursuant to MLATs," *8 Business Crimes Bulletin 1*, June 2001
- "Restoring Effective Judicial Review of Environmental Regulations in Civil and Criminal Enforcement Proceedings," *5 Environmental Lawyer 665*, 1999
- "The Constitutional Rights of Non-Settling Potentially Responsible Parties in the Allocation of CERCLA Liability," *27 Environmental Law 375*, 1997
- "The Scope of Intellectual Property's Protection of Stylistic Rights," *47 Journal of Urban and Contemporary Law 250*, 1995
- "Forecasting Sexual Abuse in Prison: The Prison Subculture of Masculinity as a Backdrop for Deliberate Indifference," *92 Journal of Criminal Law and Criminology 1*, 1992

© 2022 Winston & Strawn LLP

# EXHIBIT F

# Sarah L. Viebrock

Associate in New York
sviebrock@winston.com
+1 212-294-6718 (New York)



**Sarah focuses her practice on antitrust and sports litigation matters. As a former federal law clerk, Sarah leverages her inside understanding of the judicial process to bring creativity and effective solutions to her cases.**

| | |
|---|---|
| **Services** | Litigation, Antitrust Litigation, Sports Litigation, Complex Commercial Litigation |
| **Sectors** | Sports |
| **Admissions** | New York |
| **Clerkships** | USDC - District of New Jersey for the Honorable Esther Salas |
| **Education** | St. John's University, JD, 2016 |
| | Quinnipiac University, BA, 2013 |

Sarah Viebrock is a litigation associate in the firm's New York office, and focuses her practice on antitrust and sports law. Sarah also has additional experience in complex commercial litigation. She has represented plaintiffs and defendants through various phases of litigation including case initiation, discovery, class certification, and dispositive motion practice.

Sarah has over two years of experience as a federal judicial clerk to the Honorable Esther Salas, United States District Judge (District of New Jersey). She draws upon her judicial clerkship experience in her representation of clients in federal court.

## Publications & Speaking Engagements

- "Important Is Not Important Enough: Forcibly Medicating Defendants For Sentencing Using The Important Interest Standard," St. John's Law Review Vol. 90: No.1, Article 6.

© 2022 Winston & Strawn LLP

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ALAN GRAYSON,

       Plaintiff-Appellant,

vs.

                               APPEAL No. 22-11740

NO LABELS, INC.; PROGRESS
TOMORROW, INC.; UNITED
TOGETHER, INC.; NANCY
JACOBSON, MARK PENN, and
JOHN DOE(S),

       MD Fla. No.: 6:20-cv-1824-Orl-22LRH

       Defendants-Appellees.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
HONORABLE PAUL BYRON PRESIDING

---

## APPELLANT'S OPPOSITION TO APPELLEES' PETITION FOR ATTORNEY'S FEES

---

**Tucker H. Byrd, Esq.**
**Jason W. Johnson, Esq.**
**BYRD CAMPBELL, P.A.**
180 Park Avenue North, Suite 2A
Winter Park, Florida 32789
Tel: (407) 392-2285; Fax: (407) 392-2286
E-mails: TByrd@ByrdCampbell.com
JJohnson@ByrdCampbell.com
Attorneys for Appellant

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT OF APPELLANT

In compliance with Federal Rule of Appellate Procedure 26.1, and Eleventh Circuit Rule 26.1-1, Appellant, Alan Grayson, hereby certifies that the following is a complete list of the trial judge(s), all attorneys, persons, associations of persons, firms, partnerships or corporations that have an interest in the outcome of the case or appeal, including subsidiaries, conglomerates, affiliates and parent corporations, including any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party:

**1.      The name of each person, attorney, association of persons, firm, law firm, partnership, and corporation that has or may have an interest in the outcome of this action – including subsidiaries, conglomerates, affiliates, parent corporations, publicly-traded companies that own 10% or more of a party's stock, and all other identifiable legal entities related to any party in the case:**

- Grayson, Alan (Appellant)

- Byrd Campbell, P.A (Appellant's counsel)

- Byrd, Tucker (Appellant's counsel)

- Johnson, Jason (Appellant's counsel)

- No Labels, Inc. (Appellee)

- Progress Tomorrow, Inc. (Appellee)

2

- United Together, Inc. (Appellee)

- Jacobson, Nancy (Appellee)

- Penn, Mark (Appellee)

- Winston & Strawn LLP (Appellee's counsel)

- Man, Christopher (Appellee's counsel)

- Legon, Todd (Appellee's counsel)

- Lowell, Abbe (Appellee's counsel)

- Viebrock, Sarah (Appellee's counsel)

- Wallace Bauman Legon Fodiman Ponce & Shannon, PA (Appellee's counsel)

- Byron, The Honorable Paul (United States District Judge)

**2.    The name of every other entity whose publicly traded stock, equity, or debt may be substantially affected by the outcome of the proceedings:**

- None known.

**3.    The name of every other entity which is likely to be an active participant in the proceedings, including the debtor and members of the creditors' committee (or twenty largest unsecured creditors) in bankruptcy cases:**

- None known.

4.      The name of each victim (individual or corporate) of civil and criminal conduct alleged to be wrongful, including every person who may be entitled to restitution:

- Grayson, Alan (Appellant).

# <u>TABLE OF CONTENTS</u>

This Action Seeks Injunctive Relief, and Section 768.79 Does Not Apply to Any Action Seeking Injunctive Relief…………………………………………………..3

The Defendants' Offers Are Barred for Non-Compliance with Florida Rule 1.442…………………………………………………………………………..6

If the Offers Were Valid, They Would Fail the "Good Faith" Test Under Section 768.79…………………………………………………………………………..10

The Motion for Attorney's Fees is Fatally Flawed in Several Other Respects…...14

The Claimed Attorney's Fees are Unreasonable in the Extreme…………………16

CONCLUSION……………………………………………………………………...20

## TABLE OF AUTHORITIES

**Cases**

*Allstate Ins. Co. v. Manasse*, 715 So.2d 1079, 1082 (Fla. 4th DCA 1998)............13

*Arcambel v. Wiseman,* 3 Dall. 306 (1796)...............................................................1

*Baranowski v. Geico*, No. 8:17-cv-301-T-27TGW, slip op. (M.D.Fla. Aug. 5, 2020) ...............................................................................................................14

*Cadavid v. Saporta,* 344 So.3d 478, 481 (Fla. 4th DCA 2022)...............................20

*Campbell v. Goldman*, 959 So.2d 223, 227 (Fla.2007) .......................................2, 15

*Chastain v. Chastain,* 119 So.3d 547, 551 (Fla. 1st DCA 2013) .............................8

*Dade County v. Peña*, 664 So.2d 959, 960 (Fla.1995) ..............................................2

*Diamond Aircraft Industries, Inc. v. Horowitch,* 107 So.3d 362, 372 (Fla.2013).....2

*Eagleman v. Eagleman*, 673 So.2d 946, 947-48 (Fla. 4th DCA 1996) ...................12

*Estate of Jackson v. Schron*, No. 8:16-cv-22-T-17, slip op. (M.D.Fla. Sept. 8, 2016) ..............................................................................................................15

*Evans v. Piotraczk*, 724 So.2d 1210, 1211 (Fla. 5th DCA 1998)...........................11

*Event Servs. Am., Inc. v. Ragusa,* 917 So.2d 882, 884 (Fla. 3d DCA 2005)...........11

*Finkelstein v. North Broward Hospital District,* 484 So.2d 1241, 1243 (Fla.1986).2

*Fleischmann Distilling Corp. v. Maier Brewing Co*., 386 U.S. 714, 718 (1967)......2

*Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533 (1994) ...................................................1

*General Mechanical Corp. v. Williams,* 103 So.3d 974 (Fla. 1st DCA 2012)........11

*Gershuny v. Messenger Anesthesia P.A.,* 539 So.2d 1131, 1132 (Fla.1989) ...........2

*Great American Indemnity Co. v. Williams*, 85 So.2d 619, 623 (Fla. 1956).............2

*Hayes Robertson v. Cherry*, 260 So.3d 1126, 1133 (Fla. 3d DCA 2018) ...............13

*Isaias v. H.T. Hackney Co.*, 159 So.3d 1002, 1004-05 (Fla. 3d DCA 2015) ..........11

*McMahan v. Toto,* 256 F.3d 1120, 1132 (11th Cir. 2001).......................................14

*Palm Beach Polo v. Equestrian Club Estates,* 22 So.3d 140, 143-45 (Fla. 4th DCA
      2009) ................................................................................................................6

*Powers v. Lockheed Martin Corp.* No. 6:21-cv-1290-CEM-EJK, slip op. (M.D.Fla.
      Jan. 3, 2023)....................................................................................................18

*Roberts v. Carter*, 350 So.2d 78, 78-79 (Fla.1977) ..................................................2

*Southern Specialties v. Farmhouse Tomatoes,* 259 So.3d 869, 871-72 (Fla. 4th
      DCA 2018)........................................................................................................5

*Starboard Cruise Services, Inc., v. DePrince*, 259 So.3d 295, 302 (Fla. 3d DCA
      2018) ................................................................................................................6

*State Farm v. Lightfoot*, No. 1D20-2285, slip op. at 4 (Fla. 1st DCA May 25, 2022)
      ........................................................................................................................12

*Stockman v. Downs*, 573 So.2d 835 (1991) ............................................................15

*Sunbeam Enterprises, Inc. v. Upthegrove,* 316 So.2d 34, 37 (Fla.1975) .................2
*Weathers v. Cauthen*, 152 Fla. 420, 12 So.2d 294 (1943).........................................2
*Willis Shaw v. Hilyer Sod Inc.,* 849 So.2d 276 (Fla. 2003) ......................................8
*Winter Park Imports v. JM Family Enters.*, 66 So.3d 336, 339-42 (Fla. 5th DCA 2011) ..............................................................................................................................6
*Yacht Club v. Lexington Ins. Co.,* 599 Fed.Appx. 875, 883 (11th Cir.2015) ...........3

## Statutes

Fla.Stat. §768.79 ................................................................................... 2, 11, 15, 16

## Rules

Fed.R.App.P. 38 .........................................................................................................16
Fla. Bar Rule 4-1.5 ....................................................................................................17
Fla.R.Prof.Conduct 4-3.3(3) ......................................................................................6
Florida Rule of Civil Procedure 1.442 .......................................................................6
*In re Amendments to the Fla. Rules of Civil Procedure,* 257 So.3d 66, 74-75 (Fla. 2018). ..........................................................................................................................8
Rule 11 ......................................................................................................................10

## APPELLANT'S OPPOSITION TO APPELLEES' PETITION FOR ATTORNEY'S FEES

Plaintiff/Appellant Alan Grayson respectfully opposes the Appellee's petition for attorney's fees on appeal.  The Defendants/Appellees do not qualify for the recovery of attorney's fees and, even if they did, their claimed fees are unreasonable.

As the U.S. Supreme Court has held, the "American Rule" provides the "strong background" of common law on this issue:

> Unlike Britain where counsel fees are regularly awarded to the prevailing party, it is the general rule in this country that unless Congress provides otherwise, parties are to bear their own attorney's fees. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247-262 (1975) (tracing the origins and development of the American Rule)….

*Fogerty v. Fantasy, Inc*., 510 U.S. 517, 533 (1994).  When a party claims that a statute reverses the American Rule, "[s]uch a bold departure from traditional practice" must be grounded on:

> statutory language and legislative comment. *Cf. Isbrandtsen Co. v. Johnson*, 343 U.S. 779, 783 (1952) ("Statutes which invade the common law . . . are to be read with a presumption favoring the retention of long-established and familiar principles, except when a statutory purpose to the contrary is evident").

*Id.* at 534; *accord Arcambel v. Wiseman,* 3 Dall. 306 (1796).

> [L]itigation is at best uncertain[;] one should not be penalized for merely defending or prosecuting a lawsuit…. Also, the time, expense, and difficulties of proof inherent in litigating the question of what constitutes reasonable attorney's fees would pose substantial burdens for judicial administration.

*Fleischmann Distilling Corp. v. Maier Brewing Co*., 386 U.S. 714, 718 (1967).

Under the strong background of the American Rule in common law, both the

Florida Supreme Court and the 11th Circuit have held that any attorney's fees

provision (including the one at issue here) must be strictly construed:

> The language of section 768.79, as well as Florida Rule of Civil Procedure
> 1.442, must be strictly construed because those provisions are in derogation
> of the common law rule that a party is responsible for its own attorney's fees,
> and because they are penal in nature. *See Campbell v. Goldman*, 959 So.2d
> 223, 226 (Fla.2007); *TGI Friday's, Inc. v. Dvorak*, 663 So.2d 606, 615
> (Fla.1995).

*Diamond Aircraft Industries, Inc. v. Horowitch,* 107 So.3d 362, 372 (Fla.2013)

("*Diamond*"); *accord Campbell v. Goldman*, 959 So.2d 223, 227 (Fla.2007) ("all

portions" of both Section 768.79 and Rule 1.442 must be strictly construed);[1]

*Norelus v. Denny's, Inc.,* 628 F.3d 1270, 1281 (11th Cir.2010).[2]

The Defendants' motion is based on a plain misreading and misapplication of

a Florida statute, Fla.Stat. §768.79. *Diamond,* I107 So.3d at 372. There are multiple

reasons why Section 768.79 simply doesn't apply here, as both Florida state courts

and federal courts have held.

---

[1] This Florida rule requiring strict construction of all attorney's fee provisions goes
back at least to 1943. *See, e.g., Dade County v. Peña*, 664 So.2d 959, 960
(Fla.1995); *Gershuny v. Messenger Anesthesia P.A.,* 539 So.2d 1131, 1132
(Fla.1989); *Finkelstein v. North Broward Hospital District,* 484 So.2d 1241, 1243
(Fla.1986); *Roberts v. Carter,* 350 So.2d 78, 78-79 (Fla.1977); *Sunbeam
Enterprises, Inc. v. Upthegrove,* 316 So.2d 34, 37 (Fla.1975); *Great American
Indemnity Co. v. Williams*, 85 So.2d 619, 623 (Fla. 1956), citing *Weathers v.
Cauthen*, 152 Fla. 420, 12 So.2d 294 (1943).

[2] The statute itself refers to the award of attorney's fees under it as "sanctions," so
it is penal. Fla.Stat. §768.79(8).

2

## I.   This Action Seeks Injunctive Relief, and Section 768.79 Does Not Apply to Any Action Seeking Injunctive Relief.

It is undisputed that in this action, Plaintiff sought, and tenaciously sought, injunctive relief.  Paragraph 39 of the Complaint clearly stated:

> Given the likelihood of irreparable harm, unavailability of an adequate remedy at law, the substantial likelihood of success on the merits, and the benefit to the public, preliminary and permanent injunctions are necessary to prevent the further defamation of Grayson.   WHEREFORE, Grayson demands judgment against the Defendant for . . . preliminary and injunctive relief.

Florida Circuit Court Complaint at 8 (Count I), M.D.Fla.D.E. 1.  The Complaint reiterated the allegations of irreparable harm and no adequate remedy at law, and again requested preliminary and injunctive relief, as to Count III (cyberstalking).  *Id.* at 9.  Furthermore, Count V (fraudulent transfer) is equitable in nature and remedies, involving disgorgement.  *Id.* at 10-11.

Plaintiff sustained injunctive allegations and prayers for relief through every amendment to the Complaint.   M.D.Fla.D.E. 29 & 35.   After the lower court dismissed Count III, Plaintiff attempted to revive it on appeal.  Therefore, Plaintiff has pursued such relief throughout the litigation.[3]

---

[3] Note that this is *not* a case where only money damages and declaratory relief were sought.  *Cf. Yacht Club v. Lexington Ins. Co.,* 599 Fed.Appx. 875, 883 (11th Cir.2015).

3

This Honorable Court already has certified the two central questions raised by this motion to the Florida Supreme Court, and the Florida Supreme Court ruled, for both reasons, that attorney's fees are not recoverable.

The first certified question was as follows:

DOES FLA. STAT. §768.79 APPLY TO CASES THAT SEEK EQUITABLE RELIEF IN THE ALTERNATIVE TO MONEY DAMAGES; AND, EVEN IF IT DOES NOT GENERALLY APPLY TO SUCH CASES, IS THERE ANY EXCEPTION FOR CIRCUMSTANCES IN WHICH THE CLAIM FOR EQUITABLE RELIEF IS SERIOUSLY LACKING IN MERIT?

*Diamond,* 107 So.3d at 365.  The Florida Supreme Court held:

We answer both parts of this certified question in the negative and conclude that section 768.79 does not apply to cases that seek both equitable relief and damages, and that section 768.79 does not provide an exception to this rule for equitable claims that lack serious merit.

*Id.* at 372.  The Florida Supreme Court explained:

**when a plaintiff seeks both monetary and nonmonetary relief, and a party makes a general offer of settlement, section 768.79 is not applicable.** *See Winter Park Imports, Inc. v. JM Family Enters.,* 66 So.3d 336, 340 (Fla. 5th DCA 2011); *Palm Beach[] v. Equestrian Club[],* 22 So.3d 140, 143-44 (Fla. 4th DCA 2009). The reasoning adopted in those decisions is that strict construction of the phrase "any civil action for damages" in the offer of judgment statute does not include a claim for equitable relief, or one that involves claims for both monetary and nonmonetary relief. *See Winter Park*, 66 So.3d at 338-42; *Palm Beach Polo*, 22 So.3d at 143-45. . . .

[374] In *Palm Beach Polo*, . . . the district court concluded that in a civil action for both monetary and nonmonetary relief, in which a party has made a general offer to settle "all claims," the fact that a party sought damages in addition to nonmonetary relief does not bring the claim within the parameters of the offer of judgment statute. . . .
We hold that **section 768.79 does not apply to an action in which a plaintiff seeks both damages and equitable relief**, and in which the defendant has

served a general offer of judgment that seeks release of all claims. We further conclude that there is no basis to establish an exception for instances in which the equitable claim lacks serious merit. As exemplified in *Palm Beach Polo* and *Winter Park*, [375] strict construction of section 768.79 compels this result. More specifically, section 768.79(1) explicitly states that the offer of judgment statute applies to "any civil action for *damages*." (Emphasis added.) The statute does not state that it applies to actions in equity, or in an action, such as in this case, where a plaintiff seeks both monetary and nonmonetary relief. If the Legislature intended to authorize the recovery of attorney's fees under those circumstances, it could have and would have explicitly provided for them in section 768.79.

Furthermore, *Winter Park* demonstrates that the statutory framework of section 768.79 supports this result…. [S]ection 768.79 does not provide a method by which this or any other court is to evaluate the amount of a nonmonetary judgment obtained against the amount provided in an offer of judgment. This further reflects a legislative intent that section 768.79 does not apply to nonmonetary claims….

In addition, we reject a possible exception under section 768.79 for equitable claims that lack serious merit…. [I]f the Legislature had intended that section 768.79 contain an exception where an equitable claim lacks serious merit, it would have explicitly provided for such an exception. Thus, section 768.79 does not contain an exception and upon strict construction of that section, we reject the assertion that an exception exists.

[376] **We hold that section 768.79 does not apply to an action for both damages and equitable relief and no exception for a meritless equitable claim exists**. Accordingly, we answer both parts of this certified question in the negative.

*Id.* at 373-76 (emphasis added); *accord Southern Specialties v. Farmhouse Tomatoes,* 259 So.3d 869, 871-72 (Fla. 4th DCA 2018) ("the offer of judgment statute does not apply if the plaintiff seeks both damages and equitable relief"); *Starboard Cruise Services, Inc., v. DePrince,* 259 So.3d 295, 302 (Fla. 3d DCA 2018) ("Because DePrince was seeking both monetary and nonmonetary relief,

Starboard's proposal for settlement under section 768.79 was invalid."); *Winter Park Imports v. JM Family Enters.*, 66 So.3d 336, 339-42 (Fla. 5th DCA 2011); *Palm Beach Polo v. Equestrian Club Estates,* 22 So.3d 140, 143-45 (Fla. 4th DCA 2009).

This issue is dispositive.  On this basis alone, the motion must be denied.[4]

## II.     The Defendants' Offers Are Barred for Non-Compliance with Florida Rule 1.442.

In the second question that this Honorable Court referred to the Florida Supreme Court in *Diamond,* the Florida Supreme Court held that an offer of judgment under Section 768.79 must comply, *in every respect*, with Florida Rule of Civil Procedure 1.442, which governs settlement offers in general.   That Rule mandates, *inter alia,* that all settlement offers specify whether attorney's fees are included and whether they are part of the legal claim.  The certified question was:

> UNDER FLA. STAT. § 768.79 AND RULE 1.442, IS A DEFENDANT'S OFFER OF JUDGMENT VALID IF, IN A CASE IN WHICH THE PLAINTIFF DEMANDS ATTORNEY'S FEES, THE OFFER PURPORTS TO SATISFY ALL CLAIMS BUT FAILS TO SPECIFY WHETHER ATTORNEY'S FEES ARE INCLUDED AND FAILS TO SPECIFY WHETHER ATTORNEY'S FEES ARE PART OF THE LEGAL CLAIM?

*Diamond,* 107 So.3d at 378.  The Florida Supreme Court held:

> Rule 1.442 and Section 768.79
>
> Florida Rule of Civil Procedure 1.442 implements section 768.79. *See Willis Shaw Express*, 849 So.2d at 278. In 1996, we amended rule 1.442 to require greater detail in an offer of settlement under section 768.79. *See id.*…

---

[4] It is puzzling why the Defendants did not disclose this directly adverse controlling legal authority.  *See* Fla.R.Prof.Conduct 4-3.3(3).

….

Both section 768.79 and rule 1.442 are in derogation of the common law rule that each party is responsible for its own attorney's fees which requires that we strictly construe both the statute and the rule. *See Willis Shaw Express*, 849 So.2d at 278. For example, in *Campbell v. Goldman*, 959 So.2d 223, 225-26 (Fla.2007), we decided whether an offer of settlement under rule 1.442 must explicitly provide a citation to section 768.79….

[377] The Instant Case

We conclude that, even if section 768.79 applied in this case, Diamond Aircraft would not be entitled to attorney's fees under that section because Diamond Aircraft's offer of settlement did not strictly comply with rule 1.442, as it did not state that the proposal included attorney's fees and attorney's fees are part of the legal claim….

In *Campbell*, this Court stated that "all portions" of both section 768.79 and rule 1.442 must be strictly construed,…  *See Campbell*, 959 So.2d at 227. Furthermore, if the elements of rule 1.442(c)(2) were not mandatory, we would have stated at the beginning of rule 1.442(c)(2) that the proposal "may" contain the requirements listed in that subsection. That subdivision of rule 1.442 explicitly states that a proposal "shall" contain the following requirements, which includes the requirement of a statement directed to the attorney's fees at issue. *See* Fla. R. Civ. P. 1.442(c)(2)….

[I]n *Campbell* we emphasized the necessity of strict construction of rule 1.442. *Campbell* dictates our answer with regard to the certified question. Strict construction of rule 1.442 required that Diamond Aircraft's offer of settlement include a provision [378] with regard to attorney's fees….
The offer of settlement here failed to include such a statement, and the offer would be invalid and unenforceable even if section 768.79 applied….

Accordingly, we answer the fourth certified question in the negative.

*Id.* at 376-378; *accord Willis Shaw v. Hilyer Sod Inc.,* 849 So.2d 276 (Fla. 2003)

(rejecting offer as noncompliant under Rule 1.442 because the offer was not

apportioned among the parties); *Chastain v. Chastain,* 119 So.3d 547, 551 (Fla. 1st

DCA 2013).

Rule 1.442(c), as amended in 2018, provides as follows:

RULE 1.442. PROPOSALS FOR SETTLEMENT
(a)—(b) [No change]
(c) Form and Content of Proposal for Settlement.
(1) A proposal shall be in writing and shall identify the applicable Florida law under which it is being made.
(2) A proposal shall:
(A) name the party or parties making the proposal and the party or parties to whom the proposal is being made;
(B) state that the proposal resolves all damages that would otherwise be awarded in a final judgment in the action in which the proposal is served, subject to subdivision (F);
(C) state with particularity any relevant conditions;
(D) state the total amount of the proposal and state with particularity all nonmonetary terms of the proposal;
(E) state with particularity the amount proposed to settle a claim for punitive damages, if any;
(F) state whether the proposal includes attorneys' fees and whether attorneys' fee are part of the legal claim; and
(G) include a certificate of service in the form required by rule 1.080 Florida Rule of Judicial Administration 2.516.
(3)—(4) [No change]

*In re Amendments to the Fla. Rules of Civil Procedure,* 257 So.3d 66, 74-75 (Fla.

2018).

Applying the rule of strict construction, the offers of judgment issued here

(Motion Ex. A) fail to comply with Rule 1.442 in multiple respects (any one of which

is fatal):

- The offers do not "state that the proposal resolves all damages that would otherwise be awarded in a final judgment in the action in which the proposal is served, subject to subdivision (F)"; and

- "state with particularity the amount proposed to settle a claim for punitive damages."[5]

Note that each Defendant offer refers, twice, to Rule 1.442, so these fundamental errors are truly inexcusable.  Motion Ex. A, Offers at 1 & 3.  Therefore, the motion must be denied for this reason as well.

### III.   If the Offers Were Valid, They Would Fail the "Good Faith" Test Under Section 768.79

The claims in this case survived two motions to dismiss.  M.D.Fla.D.E. 16, 28, 30 & 34.  As to Count Four, the lower court ruled:

> contrary to Defendants' assertion, it is difficult to imagine more "clear, positive, and specific allegations of civil conspiracy" than those set forth in

---

[5] It is also dubious whether the offers comply with these mandatory requirements:

- (C) state with particularity any relevant conditions;
- (D) … state with particularity all nonmonetary terms of the proposal; … [and]
- (F) state whether attorneys' fee[s] are part of the legal claim;

The proper way to comply with Requirements (C) and (D) is to state, in the offers, "there are no other relevant conditions or nonmonetary terms of the proposal."  This is what "particularity" requires.  There is no such statement in any of the offers.

Regarding Requirement (F), each offer states that *that defendant* has a legal claim for attorney's fees, but: (i) such a claim was never asserted in any counterclaim by any Defendant; and (ii) none of the offers addresses the purported claims of the other defendants for attorney's fees.

9

the Amended Complaint. *World Class Yachts, Inc. v. Murphy*, 731 So.2d 798, 799 (Fla. 4th DCA 1999).

M.D.Fla.D.E. 34 at 14-15.    Plaintiff submitted an expert report assessing compensatory damages at $17 million.  M.D.Fla.D.E. 89 Ex. 1.[6]  The case was set for trial and the lower court had ruled on multiple pretrial motions before the Defendants' 3000-page motion for summary judgment was granted, shortly before trial was to begin.  The lower court subsequently denied the Defendants' motion for attorney's fees under Rule 11, noting that the lower court had permitted the case to proceed past two motions to dismiss, and ruling: "On this record, Rule 11 sanctions are not warranted."  M.D.Fla.D.E. 134 at 9.[7]  The Defendants claim to have incurred more than $1 million in legal fees since their offers of judgment, defending the case.

Nevertheless, despite all this, the Defendants' offer of judgment to the Plaintiff was for only $500, *i.e.,* less than 1/10 of 1% of the legal fees they claim to have incurred since then.

> If a party is entitled to costs and fees pursuant to the provisions of this section, the court may, in its discretion, determine that an offer was not made in good faith. In such case, the court may disallow an award of costs and attorney's fees.

---

[6] Subsequently, the lower granted a *Daubert* motion against that report, M.D.Fla.D.E. 142, but there was no way for the Defendants to anticipate that, the Defendants offered no evidence of any lower amount, and Plaintiff would have testified to the same damages at trial, anyway.  M.D.Fla.D.E. 110 Ex. 1.

[7] Defendant Progress Tomorrow, Inc., did not seek attorney's fees under Rule 11.

Fla.Stat. §768.79(7)(a). Under applicable controlling precedent, the $500 "nominal" offers here were not made in good faith.

"[T]he question to be considered by the court in determining good or bad faith is whether the offer bears a reasonable relationship to the amount of damages suffered and a realistic assessment of liability." *Evans v. Piotraczk*, 724 So.2d 1210, 1211 (Fla. 5th DCA 1998). When determining whether a nominal offer was made in good or bad faith, a trial court must consider "whether the offeror had a reasonable basis to conclude, at the time of making the offer, that its exposure was nominal." *Isaias v. H.T. Hackney Co.*, 159 So.3d 1002, 1004-05 (Fla. 3d DCA 2015). A reasonable basis for a nominal offer exists "where `the undisputed record strongly indicate[s] that [the defendant] had no exposure' in the case." *Event Servs. Am., Inc. v. Ragusa,* 917 So.2d 882, 884 (Fla. 3d DCA 2005); *accord General Mechanical Corp. v. Williams,* 103 So.3d 974 (Fla. 1st DCA 2012).

One Florida court has explained the "good faith" provision as follows:

The spirit of the offer of judgment statute is to encourage litigants to resolve cases early to avoid incurring substantial amounts of court costs and attorney's fees. *See Schmidt*, 629 So.2d at 1039….

[948] [D]efendant's nominal offer of judgment "was not based on any reasonable foundation, but was made merely to lay the predicate for a future award of attorney's fees and costs."[8]

The offer bore no reasonable relationship to the amount of damages or realistic assessment of liability….

---

[8] Defendants' counsel actually stated this, to both Plaintiff and Plaintiff's counsel.

In cases where liability is reasonably and realistically disputed, **the offer … should bear a reasonable relationship both to the amount of damages and a realistic assessment of liability**. For example, if the damages in a case have the potential for a verdict of $100,000 and the defendant has realistically and reasonably assessed the chances of the plaintiff prevailing at 25%, then a $25,000 offer might very well be a good faith offer….

[C]ourts should view with considerable skepticism nominal offers which bear no reasonable relationship to damages and which are not founded upon a reasonable and realistic assessment of liability. Such nominal offers cannot advance the statutory purpose of encouraging settlement, but instead serve no purpose other than to lay a predicate for a subsequent award of attorney's fees as occurred here.

*Eagleman v. Eagleman*, 673 So.2d 946, 947-48 (Fla. 4th DCA 1996) (emphasis added).  In short, these offers were "designed to fail."  *State Farm v. Lightfoot*, No. 1D20-2285, slip op. at 4 (Fla. 1st DCA May 25, 2022).

On this record, the absence of good faith is palpable: the undisputed record strongly indicates that the Defendants had *substantial* potential liability.  There was no "reasonable relationship" between the offer ($500) and "the amount of damages suffered" ($17 million), nor was there any indication (much less a "strong indication") that the Defendants had "no exposure" in this case.  Attorney's fees should be denied because, here, as in *Hayes Robertson v. Cherry*, 260 So.3d 1126, 1133 (Fla. 3d DCA 2018), "the order of magnitude of those damages, if the jury had found liability on either or both of the plaintiffs' causes of action, is obvious from the record."

Apart from the undisputed facts and circumstances at the time, there is the further evidence that the Defendants have *made no such argument in their motion.* The Defendants have not "come forward with a reasonable explanation for [their nominal] offer." *Allstate Ins. Co. v. Manasse*, 715 So.2d 1079, 1082 (Fla. 4th DCA 1998).

On a similar record, Judge Whittemore of the Middle District of Florida ruled:

Baranowski reasons that because Geico faced potential liability of $3,524,070.50 (the state court judgment plus interest), Geico's nominal $1,000 offer did not bear a "reasonable relationship to the amount of damages or a realistic assessment of liability." (Dkt. 114 at 4). While Geico acknowledges that the amount of its proposed settlement was "relatively small when compared to the underlying final judgment entered against [Baranowski]," it contends "the offer was commensurate with [its] good-faith and reasonable evaluation of the merits of [Baranowski's] claims and likelihood of success at the time the offer was made." (Dkt. 126 at 8).... Notwithstanding, Geico does not explain its basis for determining that its exposure was "minimal."

Baranowski is correct that Geico's nominal proposal for settlement was not made in good faith because it did not bear a reasonable relationship to the amount of potential damages and was not a realistic assessment of liability. This was not a frivolous bad faith claim, and Geico faced a significant potential exposure....

Considering the instructive Florida cases and the undisputed facts considered on summary judgment, there was not a "reasonable basis" for Geico to have concluded that "its exposure was nominal" such that a $1,000 proposal for settlement was justified. *See JES Properties, Inc. v. USA Equestrian, Inc*., 432 F. Supp. 2d 1283, 1294-95 (M.D. Fla. 2006).[4] I therefore find that Geico's proposal for settlement was not made in good faith. Geico's motions for attorney's fees under section 768.79 (Dkts. 97, 126) are accordingly DENIED.

*Baranowski v. Geico*, No. 8:17-cv-301-T-27TGW, slip op. (M.D.Fla. Aug. 5, 2020).

Under the same reasoning, the motion must be denied for this reason as well.

## IV.   The Motion for Attorney's Fees is Fatally Flawed in Several Other Respects

If the three bases for denial somehow were not enough, there would be others:

*First,* the circumstances of this case would require the Court to revisit its holding in *McMahan v. Toto,* 256 F.3d 1120, 1132 (11th Cir. 2001), that Fla. Stat. § 768.79 is "substantive," not "procedural," for diversity purposes.  As the Court held, "state law" is applicable when it "does not run counter to a valid federal statute or rule of court."  *Id.*  The question here is whether Plaintiff should be "sanction[ed]" by paying attorney's fees.  Fla.Stat. §768.79(8).  The lower court already has ruled that, under the applicable federal rule of court, he should not be sanctioned.  M.D.Fla.D.E. 134.[9]  The award of attorney's fees under Section 768.79 would "run counter" to the denial of attorney's fees "under the applicable "federal rule of court."  The Defendants "cannot have their cake and eat it too."  *Estate of Jackson v. Schron*, No. 8:16-cv-22-T-17, slip op. (M.D.Fla. Sept. 8, 2016).

*Second,* the sanction under Section 768.79 is that:

> the defendant shall be entitled to recover reasonable costs and attorney's fees incurred by her or him or on the defendant's behalf **pursuant to a policy of liability insurance or other contract** from the date of filing of the offer if the judgment is one of no liability or the judgment obtained by the plaintiff is at least 25 percent less than such offer, and the court shall set off such costs and attorney's fees against the award.

---

[9] *See also* 28 U.S.C. §§ 1912 & 1927; 42 U.S.C. § 1988; Fed.R.App.P. 38.  The Defendants have not sought attorney's fees under any of these federal statutes, nor the federal rule of court, and they would have no basis to do so.

Fla.Stat. §768.79(1). There is no "policy of liability insurance or other contract" applicable in this case. As noted above, "all portions" of the statute must be "strictly construed." *Campbell v. Goldman*, 959 So.2d 223, 227 (Fla.2007).

*Third,* under Florida law, a request for attorney's fees must be *pled*, or they are barred by lack of notice. *Stockman v. Downs*, 573 So.2d 835 (1991). The Defendants' Answer does not assert any affirmative claims against the Plaintiff, including any claim for attorney's fees. M.D.Fla.D.E. 36. It merely alludes to attorney's fees, under the heading "Reservation." *Id.* at 14. This is not sufficient.

*Fourth,* the Defendants simply assume that Fla.Stat. §768.79 applies to attorney's fees in a *federal* appeal.[10] The recovery of attorney's fees in a federal appeal is a matter separate and apart from the recovery of attorney's fees below. *See, e.g.,* Fed.R.App.P. 38. In disregard of this Court's Rules, the motion makes no effort to establish that they are "legally entitled to them." 11th Cir. R. 39-2(b).

Hence there are numerous reasons to deny Defendants' motion in its entirety.

## V.   The Claimed Attorney's Fees are Unreasonable in the Extreme.

The Defendant's motion seeks $189,293.50 for 171.2 hours of work on this appeal. This work consisted of writing one legal brief, which was itself a light rewrite of a brief filed below. M.D.Fla.D.E. 94.[11] This is patently unreasonable.

---

[10] The motion cites only state law cases on this issue.
[11] Which works out to $24 *per word*. $189,293.50/7899=$23.96.

Under Section 768.79:

- Attorney's fees must be "reasonable," *id.* §768.79(1), (6) & (7); and

- "calculated in accordance with the guidelines promulgated by the Supreme Court," *id.* §768.79(6); and

- "When determining the reasonableness … the court shall consider, along with all other relevant criteria, the following additional factors:

   1.   The then apparent merit or lack of merit in the claim.
   2.   The number and nature of offers made by the parties.
   3.   The closeness of questions of fact and law at issue.
   4.   Whether the person making the offer had unreasonably refused to furnish information necessary to evaluate the reasonableness of such offer.
   5.   Whether the suit was in the nature of a test case presenting questions of far-reaching importance affecting nonparties.
   6.   The amount of the additional delay cost and expense that the person making the offer reasonably would be expected to incur if the litigation should be prolonged. *Id.* §768.79(7).

Notably, the Defendants make no effort whatever to establish compliance with these mandatory rules, because they cannot.

The "guideline" promulgated by the Florida Supreme Court is Fla. Bar Rule 4-1.5. The most pertinent parts of this Rule state:

[a] A fee or cost is clearly excessive when:
(1) after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee or the cost exceeds a reasonable fee or cost for services provided to such a degree as to constitute clear overreaching or an unconscionable demand by the lawyer;…
[b][1] Factors to be considered as guides in determining a reasonable fee include: … (C) the fee, or rate of fee, customarily charged in the locality for legal services of a comparable or similar nature;

The relevance of the first provision is self-evident; the fees sought here are clearly excessive.  Regarding the second provision, according to the Florida Bar, the median hourly rate for attorneys is $300.[12]  According to Clio, the average hourly rate for a civil litigation attorney in Florida is $287.[13]  Contracts Counsel puts average hourly rates in Florida between $195 and $400.[14]  In one very recent Orlando federal litigation case, the court ruled that an hourly rate of $473.70 was "reasonable" primarily because it was *unopposed*.  *Powers v. Lockheed Martin Corp.* No. 6:21-cv-1290-CEM-EJK, slip op. (M.D.Fla. Jan. 3, 2023).  By contrast, the Defendants are positing an average hourly rate of more than $1000.

Regarding the claimed 171.2 hours of legal work, for writing one legal brief, Plaintiff respectfully submits that a reasonable number of hours would have been 30 (which is how many hours Plaintiff's primary brief consumed).

Regarding the "additional factors" set forth in Section 748.79, they all weigh in favor of a conclusion that the attorney's fees sought by the Defendants on appeal are unreasonable:

- The district court already ruled, in the denial of the Defendants' Rule 11 motion, that Plaintiff's claims had apparent merit.  M.D.Fla.D.E. 134.

---

[12] https://www.floridabar.org/the-florida-bar-news/bar-survey-looks-at-law-firm-economics/
[13] https://www.clio.com/resources/legal-trends/compare-lawyer-rates/fl/
[14] https://www.contractscounsel.com/b/how-much-do-lawyers-cost

- The Defendant made only one offer, and it was a nominal one (*i.e.,* $500).

- It is up to the Court to decide the closeness of the questions of law and fact, but we note again that the case survived two motions to dismiss, and it was decided shortly before trial based on a motion of nearly 3000 pages, with 45 exhibits.  M.D.Fla.D.E. 94.

- As to "unreasonably withholding information," the Defendants withheld all discovery from the Plaintiff for eight months, and the lower court sanctioned them for that.  M.D.Fla.D.E. 39 & 45.

- As to whether this case "present[s] questions of far-reaching importance affecting nonparties," the Defendants made that argument, and the lower court did not accept it.

- Regarding "[t]he amount of the additional delay cost and expense that the person making the offer reasonably would be expected to incur if the litigation should be prolonged," the Defendants are, frankly, in flagrant denial.  If they had given any consideration whatever to this key factor, they would have offered at least as much as they are now claiming to have incurred in attorney's fees since their offer (instead of 1/1000[th] as much).  Given "[t]he amount of the additional … expense that the[y] … reasonably would be expected to incur if the litigation" continued, their reasonable attorney's fees should be limited to the amount that they offered, *i.e.,* $500.

Apart from Section 748.79 "additional factors," Plaintiff reiterates that the asserted effort substantially exceeds any effort reasonably necessary to prepare and file one appellate brief (on issues already briefed to the district court in full), and that the time records submitted are replete with prohibited "block billing."[15]

## CONCLUSION

For the reasons stated above, the Defendants are not entitled to attorney's fees under Section 748.79, and their request should be denied.  In the alternative, the amount of their request is so extremely unreasonable that it should be denied in full, or the Defendants should be limited to 30 hours at $300 per hour, and Plaintiff requests a hearing in which to challenge the particulars of the request.

/s/ Jason Ward Johnson
**Tucker H. Byrd**
Florida Bar No. 381632
**Jason Ward Johnson**
Florida Bar No. 186538
**BYRD CAMPBELL, P.A.**
180 Park Avenue North, Suite 2A
Winter Park, Florida 32789
Telephone: (407) 392-2285
Primary Email: TByrd@ByrdCampbell.com
Primary Email: JJohnson@ByrdCampbell.com
Secondary Email: mmanley@ByrdCampbell.com
*Attorneys for Plaintiff*

Date: January 9, 2023

---

[15] Under Florida law, a request for attorney's fees should be based on substantial competent evidence presented to the court at a hearing.  *See, e.g., Cadavid v. Saporta,* 344 So.3d 478, 481 (Fla. 4th DCA 2022).  In the unlikely event that the Court reaches the issue of quantum here, Plaintiff requests such a hearing.

## <u>CERTIFICATE OF COMPLIANCE</u>

This document complies with the typeface requirement of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Rule 32(a)(6) because this document has been prepared in a proportionally spaced typeface, 14-point Times New Roman.  It complies with the length limit of Rule 32(a)(7)(B) because it contains 5,182 words.


Dated: January 9, 2023                          By: <u>/s/ Jason Johnson</u>
                                                      Jason Johnson, Esq.

## CERTIFICATE OF SERVICE

I hereby certify that on January 9, 2023, I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of Court by using the Court's ECF system, which will automatically send a notice of electronic filing to all counsel of record.

Dated: January 9, 2023                    By: /s/ Jason Johnson
                                              Jason Johnson, Esq.

# EXHIBIT "1"

casetext

Search all cases and statutes...                                    JX

Sign In    |    Get a Demo    |    Free Trial

**Opinion**    **Case details**

From Casetext: Smarter Legal Research

# State Farm Auto. Ins. Co. v. Lightfoot

Florida Court of Appeals, First District

May 25, 2022

No. 1D20-2285 (Fla. Dist. Ct. App. May. 25, 2022)    Copy Citation

⬇ Download PDF    🚩 Check Treatment



**Search all case law on Casetext. Get red flags, copy-with-cite, case summaries, and more.**

**Try Casetext free ›**

1D20-2285 1D20-2303

05-25-2022

State Farm Automobile Insurance Company, Appellant, v. James Lightfoot and Marilyn Roseanne Hunt, Appellees. Marilyn Roseanne Hunt, Appellant, v. James Lightfoot and State Farm Automobile Insurance Company, Appellees.

Michael B. Wedner and Brian Bellavia of Quintairos, Prieto, Wood & Boyer, P.A., Jacksonville; Dennis P. Dore and Samantha D. Dunlap-Smart of Dutton Law Group, Jacksonville; Warren B. Kwavnick of Cooney Trybus Kwavnick Peets PLC, Fort Lauderdale; Brent G. Steinberg and Daniel L. Greene of Swope, Rodante P.A., Tampa, for Marilyn Roseanne Hunt. Howard C. Coker of Coker Law, Jacksonville; Rebecca B. Creed and Dimitrios A. Peteves of Creed & Gowdy, P.A., Jacksonville; Joseph V. Camerlengo of The Truck

Opinion    Case details

Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.

On appeal from the Circuit Court for Duval County. Katie L. Dearing, Judge.

Michael B. Wedner and Brian Bellavia of Quintairos, Prieto, Wood & Boyer, P.A., Jacksonville; Dennis P. Dore and Samantha D. Dunlap-Smart of Dutton Law Group, Jacksonville; Warren B. Kwavnick of Cooney Trybus Kwavnick Peets PLC, Fort Lauderdale; Brent G. Steinberg and Daniel L. Greene of Swope, Rodante P.A., Tampa, for Marilyn Roseanne Hunt.

Howard C. Coker of Coker Law, Jacksonville; Rebecca B. Creed and Dimitrios A. Peteves of Creed & Gowdy, P.A., Jacksonville; Joseph V. Camerlengo of The Truck Accident Law Firm, Jacksonville, for James Lightfoot.

Anthony J. Russo, John Walter Weihmuller, and James Michael Shaw of Butler Weihmuller Katz Craig LLP, Tampa, for State Farm Automobile Insurance Company.

1          *1

Roberts, J.

Marilyn Hunt, defendant in an automobile negligence action, seeks to reverse a final judgment awarding over $1 million in attorney's fees and taxable costs to plaintiff, James Lightfoot, under section 768.79, Florida Statutes. Ms. Hunt asserts the rejected proposal for settlement (PFS), the basis for the award, was not made in good faith because it required her to pay $1.3 million in cash within thirty days to accept it. We agree and reverse the fee award.

I.

In 2011, Ms. Hunt rear-ended Mr. Lightfoot. Mr. Lightfoot walked away from the accident with minor knee and neck pain, believing he was "going to be

Opinion   Case details

claims against her if she paid him $1.3 million in cash. Ms. Hunt did not accept the PFS within thirty days, rendering it rejected. *See* § 768.79(1), Fla. Stat.; Fla. R. Civ. P. 1.442(f)(1). After multiple continuances, the case proceeded to trial in 2019, wherein the jury found Ms. Hunt solely negligent and awarded Mr. Lightfoot over $11 million in damages - $10 million of which represented non-economic damages. Ms. Hunt unsuccessfully appealed the final judgment, which was affirmed by this Court in *Hunt v. Lightfoot*, 313 So.3d 142 (Fla. 1st DCA 2020).

Mr. Lightfoot then sought attorney's fees and costs pursuant to section 768.79 and Florida Rule of Civil Procedure 1.442. Ms. Hunt initially conceded entitlement, but later moved for reconsideration, arguing the PFS was invalid and unenforceable because it was impossible to accept and illusory because it was not *2 made in good faith. The trial court held a hearing in which Mr. Lightfoot's counsel argued Ms. Hunt's inability to pay $1.3 million was irrelevant and unknowable, conjecturing Ms. Hunt could have won the Powerball recently. In reality, no one at the hearing doubted Ms. Hunt's inability to produce $1.3 million cash within thirty days to accept the PFS. Nonetheless, the trial court upheld the PFS, concluding Ms. Hunt's inability to pay was not determinative of the offer's validity.[1] The court entered a final judgment assessing $1,415,254.55 in attorney's fees and taxable costs against Ms. Hunt.[2] Ms. Hunt does not challenge the award of costs, which we affirm. The appeal of the fee award follows.

[1]   The court implicitly found the offer was made in good faith. *See Stofman v. World Marine Underwriters, Inc.*, 729 So.2d 959, 960 (Fla. 4th DCA 1999) (recognizing an express finding is only required when a court finds an offer was not made in good faith).

[2]   The court joined State Farm in the final judgment on attorney's fees and costs. In case number 1D20-2285, State Farm argued it was improperly joined, its policy did not provide indemnity for Ms. Hunt's attorney fee liability, and the PFS was unenforceable.

II.

casetext

Case 6:20-cv-01824-PGB-LHP    Document 183    Filed 01/24/23    Page 124 of 137 PageID 12037
USCA11 Case: 22-11740    Document: 343    Date Filed: 01/04/2023    Page: 334 of 447

Sign In    |    Get a Demo    |    Free Trial

Opinion    Case details

law rule that each party pays its own fees. *Attorneys' Title Ins. Fund, Inc. v. Gorka*, 36 So.3d 646, 649 (Fla. 2010). The penal nature of this type of fee award also means strict construction is applied in favor of the party against whom the penalty is imposed. *Tierra Holdings, Ltd. v. Mercantile Bank*, 78 So.3d 558, 563 (Fla. 1st DCA 2011).

3    Section 768.79(1) provides in relevant part: *3

> If a plaintiff files a demand for judgment which is not accepted by the defendant within 30 days and the plaintiff recovers a judgment in an amount at least 25 percent greater than the offer, she or he shall be entitled to recover reasonable costs and attorney's fees incurred from the date of the filing of the demand.

The statute automatically creates an entitlement or "mandatory right" to attorney's fees when a PFS satisfies the statutory and procedural requirements. *See Anderson v. Hilton Hotels Corp., Inc.*, 202 So.3d 846, 856 (Fla. 2016). The entitlement translates to a fee award so long as the plaintiff recovers a judgment that is 25% greater than the offer amount. Mr. Lightfoot satisfied all these conditions.

III.

Ms. Hunt argues the fee award should be reversed because the PFS was not made in good faith. Section 768.79(7)(a) and rule 1.442(h)(1) allow a trial court to reject fees if it determines that a proposal was not made in good faith. We review the trial court's decision on good faith for an abuse of discretion. *Hayes Robertson Grp., Inc. v. Cherry*, 260 So.3d 1126, 1133 (Fla. 3d DCA 2018).

The offeree has the burden of showing a PFS was not made in good faith. *Gawtrey v. Hayward*, 50 So.3d 739, 743 (Fla. 2d DCA 2010) (citing *TGI Friday's, Inc. v. Dvorak*, 663 So.2d 606, 613 (Fla. 1995)). The reasonableness of an offeree's decision to reject a proposal is irrelevant to the issue of good faith. *TGI Friday's*, 743 So.2d at 611. Good faith turns on whether the offeror

casetext

Case 6:20-cv-01824-PGB-LHP    Document 183    Filed 01/24/23    Page 125 of 137 PageID 12038
USCA11 Case: 22-11740    Document: 43    Date Filed: 01/24/2023    Page: 335 of 447

Sign In    |    Get a Demo    |    Free Trial

Opinion    Case details

upon payment of $1.3 million in cash, the offer was illusory as there was no real possibility Ms. Hunt could accept. Mr. Lightfoot did not have to require actual payment and could have allowed for acceptance followed by a judgment entered against Ms. Hunt. *See Alexandre v. Meyer*, 732 So.2d 44, 45 (Fla. 4th DCA 1999). *4 By requiring Ms. Hunt to tender $1.3 million in cash within thirty days to accept, Mr. Lightfoot chose to include an impossible condition that was designed to fail.

4

We understand the trial court's hesitance to consider Ms. Hunt's particular finances and ability to pay. *See id.* ("Section 768.79 does not require either ability to pay or payment in order to accept a demand for judgment."). But this case does not require an evaluation specific to Ms. Hunt. We are confident very few Americans could come up with $1.3 million cash within thirty days. Even very wealthy individuals diversify their assets, and very few would have that amount of expeditiously accessible liquidity.

To be clear, we are not holding an offeror must consider an offeree's finances and ability to pay before tendering a PFS. Nor do we take issue with the amount alone or the condition of actual payment alone. Rather, it is the specific combination of $1.3 million "cash on the barrelhead" that renders this PFS illusory. If, for instance, the PFS could have been accepted by signing a promissory note for $1.3 million or by agreeing to have a judgment entered for $1.3 million, it would be perfectly valid.

It is contrary to the purpose of section 768.79 to sanction Ms. Hunt with over $1 million in attorney's fees for an offer she could not have possibly accepted. *Cf. Gorka*, 36 So.3d at 651 ("A party wishing to accept an offer should not be prohibited from doing so and then subjected to costly litigation and possible sanctions under rule 1.442 merely because a condition cannot occur[.]"). The PFS was an illusory offer made without intent to fully settle the case. The trial court abused its discretion in awarding fees where the PFS was not made in good faith.

*IV.*

Opinion     Case details

6     B.L Thomas and MK Thomas, JJ, concur *6

---

Make your practice more
effective and efficient with
Casetext's legal research
suite.

Get a Demo

---

**Casetext research**

**Parallel Search**

**Compose**

**AllSearch**

---

Pricing

Switch

Big firm

Coverage

SmartCite

---

Public records search

Partnerships and Resources

Law school access

USCA11 Case: 22-11740   Document: 343   Date Filed: 01/04/2023   Page: 337 of 447

Sign In | Get a Demo | Free Trial

**Opinion**   Case details

Blog

News

Twitter

Facebook

LinkedIn

Instagram

Help articles

Customer support

Contact sales

Privacy

Terms

© 2021 Casetext Inc.

Casetext, Inc. and Casetext are not a law firm and do not provide legal advice.

# EXHIBIT "2"

Search all cases and statutes...                                    JX

**Opinion**    Case details

From Casetext: Smarter Legal Research

# Baranowski v. GEICO Gen. Ins. Co.

UNITED STATES DISTRICT COURT MIDDLE DISTRICT OF FLORIDA TAMPA DIVISION

Aug 5, 2020

Case No: 8:17-cv-301-T-27TGW (M.D. Fla. Aug. 5, 2020)        Copy Citation

⬇ Download PDF     🚩 Check Treatment



**Casetext: The secret research weapon for attorneys.**

Try Casetext For Free ›

Case No: 8:17-cv-301-T-27TGW

08-05-2020

WALDEMAR BARANOWSKI, Plaintiff, v. GEICO GENERAL INSURANCE
COMPANY, Defendant.

JAMES D. WHITTEMORE United States District Judge

**ORDER**

**BEFORE THE COURT** are Geico's Motion for Attorney's Fees and Motion
for Appellate Attorney's Fees (Dkts. 97,126). Upon consideration, Geico's
motions are **DENIED**.

This case history is outlined in the order granting summary judgment in Geico's favor. (Dkt. 93 at 2–6.) In short, Baranowski and his passenger suffered injuries in a motor vehicle accident. Baranowski's policy with Geico included bodily injury liability coverage of $10,000 per person and $20,000 per occurrence. When presented with the passenger's medical bills, Geico tendered the policy limit of $10,000. The passenger rejected the tender because he had not received insurance information that had been requested and did not agree to Geico's proposed release. The passenger eventually obtained a $2,686,383.50 state court judgment against Baranowski. As a result, Baranowski filed suit against Geico asserting a Florida third-party bad faith claim.[1] *2

[1]   The inquiry in a third-party bad faith action is "whether the insurer diligently, and with the same haste and precision as if it were in the insured's shoes, worked on the insured's behalf to avoid an excess judgment." *Harvey v. GEICO Gen. Ins. Co.*, 259 So. 3d 1, 7 (Fla. 2018); *QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n, Inc.*, 94 So. 3d 541, 545 (Fla. 2012). The issue "is whether, under all of the circumstances, the insurer could and should have settled the claim within the policy limits had it acted fairly and honestly toward its insured and with due regard for his interests." *Berges v. Infinity Ins. Co.*, 896 So. 2d 665, 679 (Fla. 2004).

After Geico filed its summary judgment motion, it served Baranowski with a $1,000 proposal for settlement under section 768.79, Florida Statutes and Rule 1.442, Fla.R.Civ.P. (Dkt. 126 at 1-2).[2] After summary judgment was entered in its favor, Geico filed its motion for attorney's fees. (Dkts. 97, 120). After summary judgment was affirmed, Geico filed its motion for appellate attorney's fees. (Dkts. 123, 125, 126).

[2]   Section 768.79 provides:

In any civil action for damages filed in the courts of this state, if a defendant files an offer of judgment which is not accepted by the plaintiff within 30 days, the defendant shall be entitled to recover reasonable costs and attorney's fees incurred by her or him or on the defendant's behalf pursuant to a policy of liability insurance or other contract from the date of filing of the offer if the judgment is one of no liability . . . .

Fla. Stat. § 768.79(1). And Rule 1.442 "provides procedural guidelines for making a proposal pursuant to Fla. Stat. § 768.79." *Primo v. State Farm Mut. Auto. Ins. Co.*, 661 F. App'x 661, 663 (11th Cir. 2016) (citations and brackets

In support of its motions, Geico reasons that because judgment was entered in its favor and Baranowski rejected the proposal for settlement, it is entitled to attorney's fees. (Dkt. 126 at 2-3). Baranowski counters that Geico's "nominal" proposal for settlement was not made in good faith as required by section 768.79 and therefore Geico is not entitled to attorney's fees. (Dkt. 127 at 2; Dkt. 114 at 2-6).[3]

> 3   Baranowski does not dispute that the proposal for settlement otherwise complied with statutory requirements. He raised several objections to Geico's calculation of pre-appeal attorney's fees, but not the appellate attorney's fees. (Dkt. 114 at 6-10; Dkt. 127 at 3). Because Geico is not entitled to attorney's fees, it is unnecessary to resolve the contested issues.

Federal courts resolving claims under Florida law can award attorney's fees to a prevailing party under section 768.79. *See Menchise v. Akerman Senterfitt*, 532 F.3d 1146, 1150 (11th Cir. 2008); *Horowitch v. Diamond Aircraft Indus., Inc.*, 645 F.3d 1254, 1258 (11th Cir. 2011). However, even "[i]f a party is entitled to costs and fees pursuant to the provisions of this section, *3 the court may, in its discretion, determine that an offer was not made in good faith. In such case, the court may disallow an award of costs and attorney's fees." Fla. Stat. § 768.79(7)(a). Notably,

> [o]ffers are not suspect merely because they are nominal. Offers, nominal or otherwise, must bear a reasonable relationship to the amount of damages or a realistic assessment of liability. The rule is that a minimal offer can be made in good faith if the evidence demonstrates that, at the time it was made, the offeror had a reasonable basis to conclude that its exposure was nominal.

*State Farm Mut. Auto. Ins. Co. v. Sharkey*, 928 So. 2d 1263, 1264 (Fla. 4th DCA 2006) (internal citations and quotation marks omitted).

Baranowski reasons that because Geico faced potential liability of $3,524,070.50 (the state court judgment plus interest), Geico's nominal $1,000 offer did not bear a "reasonable relationship to the amount of damages or a realistic assessment of liability." (Dkt. 114 at 4). While Geico acknowledges that the amount of its proposed settlement was "relatively small when compared to the underlying final judgment entered against [Baranowski]," it contends "the offer was commensurate with [its] good-

3

faith and reasonable evaluation of the merits of [Baranowski's] claims and likelihood of success at the time the offer was made." Dkt. 126 at 8. Geico contends that when it proposed settlement, "the parties had completed discovery and Geico had spent hundreds of hours analyzing [Baranowski's] allegations, reviewing documents, conducting depositions, and researching case law before determining its minimal exposure and calculating its offer." (Id. at 8-9; Dkt. 97 at 8). Notwithstanding, Geico does not explain its basis for determining that its exposure was "minimal."

Baranowski is correct that Geico's nominal proposal for settlement was not made in good faith because it did not bear a reasonable relationship to the amount of potential damages and was not a realistic assessment of liability. This was not a frivolous bad faith claim, and Geico faced a *4 significant potential exposure. Indeed, as noted by the undersigned, the case presented a "close call." (Dkt. 117 at 4). As for Geico's potential liability, Baranowski points to the facts he contended supported his bad faith claim: Geico's adjuster addressed a fax tendering the policy limit to the wrong attorney; the adjuster represented to the passenger's attorney that an agreement to settle the claim had been reached when it had not been; and although Geico was aware that the passenger had agreed to a general release, it did not modify the terms of its proposed release to which the passenger objected. (Dkt. 114 at 4-5).

Considering the instructive Florida cases and the undisputed facts considered on summary judgment, there was not a "reasonable basis" for Geico to have concluded that "its exposure was nominal" such that a $1,000 proposal for settlement was justified. *See JES Properties, Inc. v. USA Equestrian, Inc.*, 432 F. Supp. 2d 1283, 1294-95 (M.D. Fla. 2006).[4] I therefore find that Geico's proposal for settlement was not made in good faith. Geico's motions for attorney's fees under section 768.79 (Dkts. 97, 126) are accordingly **DENIED**.

---

[4] *See also Hayes Robertson Grp., Inc. v. Cherry*, 260 So. 3d 1126, 1133 (Fla. 3d DCA 2018) (affirming denial of attorney's fees where offer was nominal, "magnitude of [possible] damages . . . [wa]s obvious from the record," and defendant "had at least some exposure"); *see also Event Services America, Inc. v. Ragusa*, 917 So. 2d 882, 884-85 (Fla. 3d DCA 2005) (affirming denial where, although there were disputed facts, "there was still a sufficient basis at the time of the offers to indicate that [the defendant] would reasonably face liability" and trial court noted its "gut response" that entitlement to

attorney's fees was "not fair . . . because the issue really needed to be litigated").

**DONE AND ORDERED** this 5th day of August, 2020.

_/s/_ _____

**JAMES D. WHITTEMORE**

**United States District Judge** Copies to: Counsel of Record

---

Make your practice more effective and efficient with Casetext's legal research suite.

Get a Demo

---

Casetext research

Parallel Search

Compose

AllSearch

---

Pricing

Switch

Big firm

Coverage

SmartCite

---

Public records search

USCA11 Case: 22-11740   Document: 3743   Date Filed: 01/09/2023   Page: 444 of 447

Partnerships and Resources

Law school access

Bar associations

---

About us

Jobs

Blog

News

---

Twitter

Facebook

LinkedIn

Instagram

Help articles

Customer support

Contact sales

Privacy

Terms

© 2021 Casetext Inc.

Casetext, Inc. and Casetext are not a law firm and do not provide legal advice.

# EXHIBIT "3"

DALE POWERS, Plaintiff,

v.

**LOCKHEED MARTIN CORPORATION, Defendant.**

Case No. 6:21-cv-1290-CEM-EJK.

**United States District Court, M.D. Florida, Orlando Division.**

January 3, 2023.

# ORDER

EMBRY J. KIDD, Magistrate Judge.

This cause comes before the Court on Defendant's Short-Form Discovery Motion for Reasonable Expenses, Including Attorneys' Fees (the "Motion"), filed November 9, 2022. (Doc. 37.) Plaintiff, Dale Powers, has failed to respond to the Motion, and the time to do so has expired. Accordingly, the undersigned considers the Motion as unopposed. *See* Local Rule 3.01(c). For the reasons set forth herein, the Motion is due to be granted.

# I. BACKGROUND

On October 18, 2022, Defendant filed a motion to compel Plaintiff to produce responses, and documents responsive to, Defendant's interrogatories and requests for production. (Doc. 33.) The Court granted the motion to compel, ordering Plaintiff to produce responses and documents and to reimburse Defendant its reasonable attorney's fees. (Doc. 36.) Further, the Court granted Defendant leave to file a motion for attorney's fees if the parties were not able to agree as to the amount of fees. (*Id.*)

# II. STANDARD

Under Federal Rule of Civil Procedure 37, attorney's fees must be paid, subject to limited exceptions, if a motion to compel discovery responses is granted. Fed. R. Civ. P. 37(a)(5)(A). In determining reasonable attorney's fees, federal courts apply the "lodestar" method, which is calculated by multiplying counsel's reasonable hourly rate by the number of hours counsel reasonably expended. *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983). The movant bears the burden of demonstrating that its counsel's requested hourly rate and the number of hours its counsel expended are reasonable. *Norman v. Hous. Auth. of City of Montgomery,* 836 F.2d 1292, 1303 (11th Cir. 1988). Once the Court has determined the lodestar, it may adjust the amount based on several factors, including the results obtained. *Id.* at 1302. Additionally, the Court is "itself an expert on the question [of attorney's fees] and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Id.* at 1303 (internal quotation marks omitted).

# III. DISCUSSION

## A. Entitlement to Attorney's Fees

Attorney's fees must be paid if a motion to compel discovery responses is granted, unless one of three exceptions applies. Fed. R. Civ. P. 37(a)(5)(A). The first exception is when a party "files the motion before attempting in good faith to obtain the disclosure or discovery without court action." *Id.* Defendant certifies that prior to filing the Motion, Defendant conferred with Plaintiff both via telephone and email. (Doc. 37 ¶ 4.) Therefore, the first exception does not apply.

The second exception is "if the opposing party's nondisclosure, response, or objection was substantially justified[,] [attorneys'] fees should not be awarded." Fed. R. Civ. P. 37(a)(5)(A). "The burden of establishing substantial justification is on the party being sanctioned." *Sigurdsson v. Dicarlantonio,* No. 6:12-cv-920-Orl-TBS, 2013 U.S. Dist. LEXIS 159623 at *2 (M.D. Fla. Nov. 7, 2013). Plaintiff failed to respond; therefore, it has not established substantial justification for its non-compliance.

The final exception is that attorney's fees should not be awarded if "other circumstances make an award of expenses unjust." *Id.* Again, Plaintiff failed to respond, and the undersigned is unaware of any "other circumstances" that would "make an award of expenses unjust." *Id.* In conclusion, none of the exceptions in Rule 37(a)(5)(A) apply and Defendant is entitled to attorney's fees.

**B. Reasonableness of Hourly Rate and Hours Expended**

Defendant's counsel seeks compensation for 5.3 hours related to the Motion to Compel. (Doc. 37 at 2.) Here, the Court finds that the number of hours requested by Defendant is reasonable under the circumstances. *See Poschmann v. Unified Enterprises, LLC,* No. 5:20-cv-227-Oc-JSM-PRL, 2021 WL 3036306, at *2 (M.D. Fla. Apr. 21, 2021) (finding 5.6 hours reasonable for a motion to compel). In sum, Defendant's counsel seeks an award of $2,511.00 in attorneys' fees (Doc. 37 at 2), which is unopposed by Plaintiff. This amounts to an hourly rate of approximately $473.77. Notably, Defendant's counsel fails to provide an exact hourly rate for the attorneys on file in an attempt to preserve work product or attorney client privilege. The Court does not find attorney rates to be privileged information, but the undersigned ultimately uses his own knowledge of local rates to find that the implied hourly rate is reasonable in this context, especially since the Motion is unopposed. This finding should not be used to justify the reasonableness of any future fee request.

## IV. CONCLUSION

Accordingly, it is hereby ORDERED that Defendant's Motion for Reasonable Expenses (Doc. 37) is GRANTED. Defendant is awarded $2,511.00 in reasonable attorneys' fees.

DONE and ORDERED.

Save trees - read court opinions online on Google Scholar.