# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

ALAN GRAYSON,

        Plaintiff,

v.                                                      Case No:   6:20-cv-1824-PGB-LHP

NO LABELS, INC., PROGRESS
TOMORROW, INC., UNITED
TOGETHER, INC., NANCY
JACOBSON, MARK PENN and JOHN
DOES,

        Defendants

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

      This cause came on for consideration without oral argument on the following

motions filed herein:

| |
|---|
| **MOTION:   DEFENDANTS-APPELLEES' APPLICATION FOR ATTORNEYS' FEES PURSUANT TO ELEVENTH CIRCUIT RULE 39-2 (Doc. No. 186)** |
| **FILED:   March 30, 2023** |
| _____ |
| **THEREON** it is **RECOMMENDED** that the motion be **GRANTED IN PART AND DENIED IN PART**. |

| | |
|---|---|
| **MOTION:** | **DEFENDANTS' SUPPLEMENTAL MOTION FOR ATTORNEYS' FEES ON AMOUNT WITH INCORPORATED MEMORANDUM OF LAW (Doc. No. 196)** |
| **FILED:** | **May 26, 2023** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED IN PART AND DENIED IN PART**.

| | |
|---|---|
| **MOTION:** | **DEFENDANTS' SUPPLEMENTAL MOTION FOR APPELLATE ATTORNEYS' FEES (Doc. No. 197)** |
| **FILED:** | **May 26, 2023** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED IN PART AND DENIED IN PART**.

## I.    BACKGROUND

This case stems from Plaintiff Alan Grayson's ("Plaintiff's") unsuccessful 2018 campaign for Congress.   On August 19, 2020, Plaintiff filed suit in state court against Defendants No Labels, Inc., Progress Tomorrow, Inc., United Together, Inc., Nancy Jacobson, and Mark Penn (collectively, "Defendants") for "the vitriolic, hateful, false, and maliciously defamatory statements published about him" during his 2018 campaign.   Doc. No. 1-1, at 4 ¶ 1.   On October 2, 2020, Defendants removed the action to this Court based on diversity jurisdiction.   Doc. No. 1. After two rounds of motions to dismiss, the operative complaint was Plaintiff's

second amended complaint, filed on April 21, 2021. Doc. No. 35. The second amended complaint contained the following claims: (1) defamation—libel and slander (count I); (2) defamation by implication (count II); and (3) civil conspiracy (count III). *Id.* Plaintiff sought compensatory damages, prejudgment interest, and injunctive relief, and he reserved his right to seek punitive damages and attorneys' fees. *Id.* at 18, 21, 23. Defendants answered the second amended complaint and asserted affirmative defenses. Doc. No. 36.

On May 20, 2022, the Court granted Defendants' motions for summary judgment in their entirety. Doc. No. 159. *See* Doc. Nos. 94–95. Judgment was entered in favor of Defendants and against Plaintiff on May 23, 2022. Doc. No. 162. Plaintiff appealed (Doc. Nos. 163, 167), and on October 21, 2022, the Eleventh Circuit Court of Appeals issued a decision affirming the judgment in all respects. Doc. No. 175. The mandate issued on December 27, 2022. Doc. No. 176. And on May 22, 2023, the United States Supreme Court denied Plaintiff's petition for a writ of certiorari. Doc. No. 195.

While the appeal was pending, Defendants filed a Motion for Entitlement to Attorneys' Fees Pursuant to Section 768.79, Florida Statutes. Doc. No. 165. In sum, Defendants argued that they were entitled to recover from Plaintiff their attorneys' fees incurred in this matter from May 25, 2021 onward, based upon Fla. Stat. § 768.79 and proposals for settlement that they each served on Plaintiff, and

which Plaintiff did not accept.   *Id.*   Plaintiff opposed.   Doc. No. 178.   And while this motion was pending, the parties were simultaneously litigating the issue of appellate attorneys' fees before the Eleventh Circuit.   *See, e.g.*, Doc. No. 179; *Grayson v. No Labels, et al.*, No. 22-11740, Doc. No. 35 (11th Cir. Jan. 11, 2023).   The Court of Appeals transferred Defendants' motion for appellate attorneys' fees to this Court on January 24, 2023.   Doc. No. 183.

On March 30, 2023, Presiding United States District Judge Paul G. Byron granted Defendants' motion for entitlement, and found Defendants entitled to attorneys' fees pursuant to the May 25, 2021 proposals of settlement and Fla. Stat. § 768.79.   Doc. No. 184; *see also* Doc. No. 180.   Judge Byron also directed Defendants to file a supplemental motion on the amount of attorneys' fees in compliance with Local Rule 7.01(c).   *Id.*

That same day, pursuant to the Court of Appeals prior transfer of Defendants' motion for appellate attorneys' fees to this Court (Doc. No. 183), Judge Byron directed the parties to file on this Court's docket their respective documents relating to the request for appellate fees exactly as there were filed with the Court of Appeals.   Doc. No. 185.   Specifically, Judge Byron directed Defendants to file an identical motion for appellate attorneys' fees, directed Plaintiff to file an identical response in opposition, and directed Defendants to file an identical reply brief.   *Id.*

The parties complied with both of Judge Byron's orders, and the identical motions and related filings on the issue of appellate attorneys' fees were filed on March 30, 2023 and April 10, 2023.   *See* Doc. Nos. 186, 188-89.   These filings combine both the issues of entitlement and amount.   *See id.*   Defendants also filed a supplemental motion for appellate attorneys' fees.   Doc. No. 197.   In addition, Defendants timely-filed their supplemental motion on the amount of attorneys' fees incurred in litigation before this Court since May 25, 2021.   Doc. No 196.   Plaintiff timely-filed his response in opposition to both supplemental motions.   Doc. Nos. 200, 203.   The motions are now fully briefed and have been referred to the undersigned.

In the meantime, on April 21, 2023, Plaintiff filed a notice of appeal challenging Judge Byron's order on entitlement to attorneys' fees.   Doc. No. 190. While that appeal was pending, the undersigned refrained from considering the supplemental motions for fees, as a ruling from the Court of Appeals would directly impact the motions.   However, on September 29, 2023 the Court of Appeals dismissed the appeal for lack of jurisdiction, finding that Judge Byron's order on entitlement was not a final or immediately appealable order given that the amount of fees had not yet been determined.   Doc. No. 204.   The mandate issued on October 30, 2023.   Doc. No. 205.

Accordingly, the motions are now ripe for consideration. And for the reasons set forth below, the undersigned will **RESPECTFULLY RECOMMEND** that Defendants' motions (Doc. Nos. 186, 196, 197) each be **GRANTED IN PART AND DENIED IN PART** and that Defendants be awarded attorneys' fees in the total amount of **$740,710.00**.

## II.     THE MOTIONS FOR ATTORNEYS' FEES

In their motions, Defendants seek $900,101.00 in attorneys' fees for work performed in this Court from May 25, 2021 forward, $182,293.50 in appellate attorneys' fees, and an additional $90,951.50 in attorneys' fees for time spent litigating Plaintiff's Petition for Writ of Certiorari before the United States Supreme Court, for a grand total of $1,173,346.00. Doc. Nos. 186, 196, 197. These fees were incurred by ten (10) different attorneys and one (1) paralegal, and cover 2,115.90 hours of attorney and paralegal time, with hourly rates ranging from $350.00 to $1,585.00 per attorney, and $150.00 per hour for paralegal time. *See id.* In support of these requests, Defendants have submitted the Declarations of Todd R. Legon and Abbe David Lowell, both of whom are counsel for Defendants, along with copies of firm biographies for nine (9) of Defendants' attorneys, and copies of attorney billing records. *See* Doc. Nos. 186-1, 196-1, 196-2, 197-1. Defendants have not, however, submitted any expert testimony on the reasonableness of their requested fees, nor have they submitted a copy of their fee agreements.

In response, Plaintiff raises a host of challenges to both the hourly rates and the hours requested.   Doc. No. 200; *see also* Doc. No. 188.   Plaintiff also argues that the total fees requested are not reasonable under the factors listed in Fla. Stat. § 768.89(8)(b) and other applicable precedent, and that the fees are so exorbitantly high as to constitute a violation of the Fourteenth Amendment's prohibition on excessive penalties.   Doc. No. 200; *see also* Doc. No. 188, at 23-27.[1]   With respect to the requested appellate attorneys' fees, Plaintiff also argues that Defendants are not entitled to such fees, relying in large part on the same arguments previously raised in this Court concerning entitlement under Fla. Stat. § 768.79.   Doc. No. 188; Doc. No. 200, at 1, n.1.   In support of these arguments, Plaintiff has submitted the Declaration of Robert J. Stovash, along with a 144-page exhibit detailing the objections Plaintiff asserts with respect to the reasonableness of the hours requested. Doc. Nos. 200-1; 203-1.

## III.   LEGAL STANDARDS

"'Just as a federal court must apply state law to determine whether a party is entitled to fees,' it must also apply state law to determine the reasonableness of the fees."   *SB Holdings I, LLC v. Indian Harbor Ins. Co.*, No. 6:19-cv-668-PGB-DCI, 2022 WL 3711770, at *6 (M.D. Fla. Aug. 15, 2022), *appeal dismissed*, 2023 WL 2465940 (11th

---

[1] Page numbers reference the pagination from the CM/ECF docketing system.

Cir. Jan. 3, 2023) (quoting *Kearney v. Auto-Owners Ins. Co.*, 713 F. Supp. 2d 1369, 1373 (M.D. Fla. 2010)).   Florida follows the federal lodestar approach to calculating the amount of fees to be awarded.   *Resol. Tr. Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1148 (11th Cir. 1993) (citing *Standard Guar. Ins. Co. v. Quanstrom*, 555 So. 2d 828 (Fla. 1990), and *Fla. Patient's Compensation Fund v. Rowe*, 472 So. 2d 1145 (Fla. 1985)). This includes applying the lodestar method to calculating fees awarded under Florida's offer-of-judgment statute, Fla. Stat. § 768.79.   *See Jalosinski v. Dorel Juvenile Grp., Inc.*, No. 2:13-CV-371, 2015 WL 4395406, at *3 (M.D. Fla. July 16, 2015) ("When examining the reasonableness of a request for attorney's fees under the offer-of-judgment statute, the Court uses the lodestar method." (citing *Rowe*, 472 So. 2d at 1150)); *Kearney*, 713 F. Supp. 2d at 1373 ("The Florida Supreme Court, however, has turned the law full circle by adopting the federal lodestar method, rather than a state rule, to determine what constitutes 'reasonable' attorney's fees.").

"The starting point in fashioning an award of attorney's fees is to multiply the number of hours reasonably expended by a reasonable hourly rate."   *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (per curiam) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).   In applying the lodestar analysis, the party seeking fees has the burden of establishing that the hourly rate and hours expended are reasonable.   *See Norman v. Housing Auth. of the City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988).   The fee applicant must produce satisfactory evidence that

the requested rate is within the prevailing market rates and support the number of hours worked and the rate sought. *See, e.g., Hensley*, 461 U.S. at 433. In addition, "fee counsel should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity." *Norman*, 836 F.2d at 1303 (citations omitted). Moreover, fee applicants must provide "fairly definite information" concerning activities performed by each attorney. *See Mallory v. Harkness*, 923 F. Supp. 1546, 1556 (S.D. Fla. 1996) (quoting *FMC Corp. v. Varonos*, 892 F.2d 1308, 1317 (7th Cir. 1990)).

In addition to these standards, the Florida Supreme Court has held that attorneys' fees awarded pursuant to section 768.79 "are sanctions . . . for unreasonable rejections of offers of judgment." *Sarkis v. Allstate Ins. Co.*, 863 So. 2d 210, 218 (Fla. 2003). "Because the fees operate as a sanction, the statute 'must be strictly construed in favor of the one against whom the penalty is imposed and is never extended by construction.'" *Kearney*, 713 F. Supp. 2d at 1374–75 (quoting *Sarkis*, 863 So. 2d at 223). Thus, in addition to considering the lodestar factors, a court awarding fees under Fla. Stat. § 768.79, shall also consider the following subjective factors:

1. The then apparent merit or lack of merit in the claim.

2. The number and nature of offers made by the parties.

3. The closeness of questions of fact and law at issue.

4. Whether the person making the offer had unreasonably refused to furnish information necessary to evaluate the reasonableness of such offer.

5. Whether the suit was in the nature of a test case presenting questions of far-reaching importance affecting nonparties.

6. The amount of the additional delay cost and expense that the person making the offer reasonably would be expected to incur if the litigation should be prolonged.

Fla. Stat. § 768.79(8)(b); *see also* Fla. Rule Civ. P. 1.442(h)(2) (listing identical factors);

*SB Holdings I, LLC*, 2022 WL 3711770, at *6; *Kearney*, 713 F. Supp. 2d at 1374.[2]

With these legal standards in mind, the undersigned will first briefly address Defendants' entitlement to appellate attorneys' fees.   The undersigned will then address the requested hourly rates, followed by the requested attorney hours, and conclude with Plaintiff's remaining arguments.

---

[2] Courts may also consider similar factors set forth in the Florida Rules of Professional Conduct:  "(A) the time and labor required, the novelty, complexity, and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (B) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; (C) the fee, or rate of fee, customarily charged in the locality for legal services of a comparable or similar nature; (D) the significance of, or amount involved in, the subject matter of the representation, the responsibility involved in the representation, and the results obtained; . . . (G) the experience, reputation, diligence, and ability of the lawyer or lawyers performing the service and the skill, expertise, or efficiency of effort reflected in the actual providing of such services."   Rule 4-1.5(b), Florida Rules of Professional Conduct; *see also SB Holdings I, LLC*, 2022 WL 3711770, at *6, n.7.   The undersigned has considered all of these factors.

## IV.   DEFENDANTS' ENTITLEMENT TO APPELLATE ATTORNEYS' FEES

As previously noted, the attorneys' fees motions papers that were initially filed before the Court of Appeals combined both the issues of entitlement and amount.   Doc. Nos. 186, 188-89.   On the question of entitlement, the sole issue raised is whether Defendants are entitled to appellate attorneys' fees based on Florida's offer of judgment statute, Fla. Stat. § 768.79.   *See id.*   And in his opposition brief to Defendants' supplemental motions for fees, Plaintiff reiterates that he opposes Defendants' entitlement to appellate attorneys' fees "with the prior arguments as to pre-appeal fees incorporated herein and applied to the appellate fees . . . ."   Doc. No. 200, at 1, n.1.   The question of entitlement under § 768.79 and Plaintiff's arguments in opposition were previously raised in this Court and ruled upon in Defendants' favor.   *See* Doc. Nos. 165, 178, 184; *see also* Doc. No. 180. Therefore, in the absence of any new legal authority to the contrary, the undersigned finds these arguments unpersuasive here for the same reasons set forth in the Court's March 30, 2023 Order.   *See* Doc. No. 184.

Plaintiff also represents that he has raised "further entitlement arguments" in his opposition brief, *see* Doc. No. 200, at 1, n.1, however the undersigned has been unable to locate any.   At most, Plaintiff makes a lone conclusory statement embedded in a footnote that "there is no authority that Section 768.79, Florida Statutes, attorneys' fees applies to an appeal as a matter of right," and that it would

be an "undue burden on the federal statutory right of appeal," as well as a "violation of due process and equal protection" to hold otherwise.   Doc. No. 200, at 1, n.1.   Not only is this argument perfunctory and unsupported, and therefore due to be denied on that basis, *see N.L.R.B. v. McClain of Georgia, Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998), but it runs contrary to applicable precedent.   *See Frosti v. Creel*, 979 So. 2d 912, 917 (Fla. 2008) ("The right to attorney fees pursuant to section 768.79 applies to fees incurred on appeal." (citations omitted)); *Motter Roofing, Inc. v. Leibowitz*, 833 So. 2d 788, 789 (Fla. Dist. Ct. App. 2002) ("This Court, along with all district courts in Florida, has ruled that Section 768.79 also applies to fees incurred on appeal."); *see also Wickboldt v. Massachusetts Mut. Life Ins. Co.*, No. 6:17-cv-2208-JA-EJK, 2021 WL 4438374, at *11 (M.D. Fla. Sept. 28, 2021) (awarding appellate fees based on Fla. Stat. § 768.79); *Muegge v. Heritage Oaks Gulf & Country Club, Inc.*, No. 8:05-cv-354-T-24MAP, 2007 WL 1099054, at *1 (M.D. Fla. Apr. 10, 2007) ("[S]ection 768.79 applies to fees incurred on appeal."); *Steffen v. Akerman Senterfitt*, No. 8:04-cv-1693-T-24MSS, 2007 WL 9723389, at *9 (M.D. Fla. Mar. 20, 2007) (finding defendants entitled to reasonable appellate attorneys' fees under Fla. Stat. § 768.79).

For these reasons, the undersigned will therefore recommend that the Court find Defendants are entitled to appellate attorneys' fees pursuant to Fla. Stat. §768.79.   And in the interests of judicial efficiency, given the procedural posture of this case, the undersigned has considered the issue of quantification of appellate

fees in this report and recommendation, rather than require the parties to file additional supplemental motions pursuant to Local Rule 7.01. The undersigned will therefore further recommend that the Court suspend the application of Local Rule 7.01's bifurcated process with respect to the motions practice related to appellate fees, and consider the question of quantification contemporaneously with the issue of entitlement. *See* Local Rule 1.01(b).

## V.   THE REASONABLENESS OF THE REQUESTED HOURLY RATES

Under the lodestar method, a reasonable hourly rate for an attorney is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299; *see also Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996). The "relevant market" is "the place where the case is filed." *Am. Civil Liberties Union of Georgia v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999) (quoting *Cullens v. Ga. Dep't. of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994)). To establish that the requested hourly rate is consistent with the prevailing market rate, the fee applicant must produce "satisfactory evidence" that "speak[s] to rates actually billed and paid in similar lawsuits." *Norman*, 836 F.2d at 1299. This requires "more than the affidavit of the attorney performing the work," and generally includes evidence of the rates charged by lawyers in similar circumstances, or opinion evidence of reasonable rates. *Id.*

In determining an appropriate hourly rate, the Florida Supreme Court has held that courts should look to the following factors (the "*Rowe* factors"):   (1) the skill requisite to perform the legal service properly; (2) the likelihood that undertaking the case would preclude other employment; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; and   (7) the experience, reputation, and ability of the lawyers performing the services.   *Joyce v. Federated Nat'l Ins. Co.*, 228 So. 3d 1122, 1126 (Fla. 2017) (citing *Rowe*, 472 So. 2d at 1150).[3]   The Court may also rely on its own knowledge and experience of the prevailing market rate.   *See Norman*, 836 F.2d at 1299-1300, 1303.   However, "[t]he going rate in the community is the most critical factor in setting the fee rate."   *Taylor Newman Cabinetry, Inc. v. Classic Soft Trim, Inc.*, No. 6:10-cv-1445-Orl-22DAB, 2012 WL 695670, at *5 (M.D. Fla. Feb. 14, 2012), *report and recommendation adopted*, 2012 WL 695843 (M.D. Fla. Mar. 1, 2012) (citing *Martin v. Univ. of S. Ala.*, 911 F.2d 604, 610 (11th Cir. 1990)); *see also Diagnostic Leasing, Inc. v. Associated Indem. Corp.*, No. 8:16-cv-958-T-36TGW, 2020 WL 4582729, at *4 (M.D. Fla. Aug. 10, 2020) ("A reasonable

---

[3] There are four other *Rowe* factors that are considered when determining an appropriate lodestar amount as a whole:  the time and labor required, the novelty and difficulty of the question involved, the results obtained, and whether the fee is fixed or contingent.   These factors are not considered, however, when determining the appropriate hourly rate.   *See Joyce*, 228 So. 3d at 1126 & n.1.

hourly rate must incorporate considerations of the relevant market and the practice area.").

Defendants retained two law firms to represent them in this case: Legon Fodiman & Sudduth, P.A., located in Miami, Florida ("Legon"), and Winston & Strawn LLP ("W&S"), an international law firm with offices in numerous cities, including Washington D.C. and New York. Doc. Nos. 186, 196-97. From the Legon firm, two (2) partners, three (3) associates, and one (1) paralegal performed work on this case, and from W&S, two (2) partners, two (2) associates, and one (1) docket attorney performed work on this case – including work at the appellate level. *Id.* The undersigned discusses the hourly rates for each law firm separately.

A.    *The Legon Attorneys' Hourly Rates*

Defendants seek the following hourly rates for the Legon attorneys who performed work on this case before this Court:[4]

| Todd R. Legon (Partner) | $475.00 |
| William F. Rhodes (Partner) | $400.00 |
| Elizabeth Y. Slagle (Associate) | $375.00 |
| Raymond M. Rufat (Associate) | $350.00 |
| Wendy Polit Karp (Associate) | $350.00 |

---

[4] The Legon attorneys did not perform any work at the appellate level.

Rosa Espinosa (Paralegal)                    $150.00

*See* Doc. No. 196, at 16; Doc. No. 196-1, at 7; Doc. No. 196-2, at 3.

In support of these hourly rates, Defendants first submit the Declaration of Todd R. Legon, partner at the Legon Firm, and lead counsel for Defendants for all proceedings in this Court.   Doc. No. 196-1, at 2-7.   Attorney Legon provides the years of experience for the attorneys at the Legon Firm:   Legon (nearly 35 years); Rhodes (24 years); Slagle (22 years); Rufat (9 years); Polit Karp (15 years).   *Id.*, at 3-6.   Attorney Legon also lists each attorney's educational background, areas of practice, and bar admissions.   *Id.*   He further avers that Rosa Espinosa has been a Florida Registered Paralegal since 2011 and has over 30 years' experience as both a legal secretary and paralegal.   *Id.*, at 6.   With respect to the hourly rates sought, Attorney Legon opines that "the hourly rates charged by the attorneys in my firm to the Defendants in this matter are fair and reasonable as compared to rates changed by other law firms of like size, skill, and practice in the Middle District of Florida."   *Id.*, at 7.

Defendants also submit copies of the firm biographies for these attorneys. *See* Doc. No. 196-1, at 59-68.   These biographies again provide information concerning each attorney's educational background and areas of expertise.   *Id.* For example, the biographies of Attorney Legon and Attorney Rhodes show that they both have extensive experience in complex commercial and business litigation

in both state and federal courts, with substantial experience in the areas of technology, telecommunications, heath care, aviation, class actions, insurance, employment, banking, antitrust, construction, real estate, franchise, and shareholder/partnership disputes. *Id.*, at 59-62. The biographies of Attorneys Slagle, Rufat, and Polit Karp state that they have experience in similar areas of litigation, including contract disputes, business torts, shareholder/partnership disputes, real estate, employment, non-compete and trade secret disputes, entertainment, professional liability defense, medical malpractice, and general liability. *Id.*, at 64-68. Defendants also cite to several decisions throughout the Middle District of Florida where hourly rates similar to those requested here were awarded in other types of civil litigation. *See* Doc. No. 196, at 10-11, n.6-8.

Upon review, with the exception of the reference to other cases within this District, the undersigned finds the materials provided by Defendants to be largely self-serving, as they were created by the very same attorneys who performed the work at issue. As such, they are, by themselves, insufficient to establish the reasonableness of the rates requested. *See Norman*, 836 F.2d at 1299; *Pollock v. Move4All, Inc.*, No. 6:19-cv-130-Orl-31DCI, 2020 WL 5505389, at *3 (M.D. Fla. Aug. 21, 2020), *report and recommendation adopted*, 2020 WL 5500213 (M.D. Fla. Sept. 11, 2020) ("[T]he affidavit of the attorney performing the work is generally not sufficient to carry the applicant's burden of establishing that the requested rate is in

line with the prevailing market rates. . . ." (citing *Norman*, 836 F.2d at 1299)); *Feniger v. Aroma Lemay*, No. 2:05-cv-319-TAW-SPC, 2007 WL 9718688, at *3 (M.D. Fla. May 16, 2007) ("[T]he only evidence presented to the Court is the self-serving affidavit of . . . the attorney performing the work, which cannot by itself support the $300.00 and $250.00 hourly rates sought by Plaintiff.").   The undersigned therefore only considers these materials for establishing the years of experience and qualifications for each attorney, in concert with the undersigned's own experience and expertise and the rates traditionally charged in the relevant market.

On the other hand, Plaintiff also has not provided evidentiary support to challenge the Legon attorneys' hourly rates.   Plaintiff has submitted the expert Declaration of Robert J. Stovash, an attorney who has been practicing in the Orlando, Florida legal community for over 34 years.   Doc. No. 200-1.   Attorney Stovash has been accepted as an expert on the issue of reasonable attorneys' fees in various state courts in Orange and Osceola Counties.   *Id.*, ¶ 11.   While Attorney Stovash speaks in detail about the litigation, and focuses on the *Rowe* factors, he saves the majority of his criticism for the hourly rates sought for the W&S attorneys. *Id.*, ¶¶ 12-34.   But as it pertains to the hourly rates for the Legon attorneys, Attorney Stovash's declaration is notably silent.   *Id.*

Plaintiff's only other challenge to the Legon attorneys' hourly rates focuses on an argument that the only relevant market rates that should be considered are

those from cases within the Orlando Division that involved fee shifting under Fla. Stat. § 768.79, and that such cases mandate a substantially lower hourly rate.   Doc. No. 200, at 12.   But other than citing to a few decisions where fees were awarded under that statute, *see id.*, Plaintiff provides no legal authority to support this argument.[5]   Moreover, Fla. Stat. § 768.79(8)(b) itself nowhere mandates a lower hourly rate, but rather speaks to the reasonableness of the fee award as a whole, and directs the court to consider "all other relevant criteria."   Plaintiff provides no authority for any different interpretation, nor does Plaintiff persuasively argue that the type of litigation, the qualifications and experience of the attorneys, or any of the factors set forth in *Rowe* or Rule 4-1.5(b), Florida Rules of Professional Conduct, should be ignored when addressing an award of fees under Fla. Stat. § 768.79.   *Cf. SB Holdings I*, LLC, 2022 WL 3711770, at *6-7 (applying both the *Rowe* factors and

---

[5] The undersigned also finds the cases Plaintiff cites to be distinguishable and thus unpersuasive.  For example, in *Eckhaus v. Drury Hotels Co., LLC*, No. 6:20-cv-2363-GAP-LHP, 2023 WL 2898183, at *4 (M.D. Fla. Mar. 27, 2023), *report and recommendation adopted*, 2023 WL 2894358 (M.D. Fla. Apr. 11, 2023), the court found the hourly rates to be reasonable based on the court's own experience and taking into account the *Rowe* factors, and recognized that the requested hourly rates were actually lower than those typically awarded in a standard negligence and/or slip and fall case in the Middle District of Florida.   And in *Sanford v. Omni Hotels Management Corp.*, No. 3:16-cv-1578-J-34PDB, 2020 WL 5260191, at *16 (M.D. Fla. Aug. 19, 2020), *report and recommendation adopted as modified*, 2020 WL 5255122 (M.D. Fla. Sept. 3, 2020), the court considered both the *Rowe* factors and the § 768.79(8)(b) factors to determine an appropriate fee award, but did not focus on the hourly rates, because the opposing party did not contest their reasonableness.   Neither case held that when awarding fees under Fla. Stat. § 768.79 a lower hourly rate is mandated.

the § 768.79(8)(b) factors to determine an appropriate fee award).   As such, the undersigned finds Plaintiff's argument in this regard unpersuasive.

In sum, neither Defendants nor Plaintiff have provided competent, persuasive evidence as to the hourly rates charged by the Legon attorneys.   Thus, the undersigned focuses on the rates customarily awarded for similar types of litigation to attorneys of similar levels of experience by courts in the Middle District of Florida, Orlando Division, as well as the undersigned's own experience and expertise.   *See Norman*, 836 F.2d at 1303 ("The court, either trial or appellate, is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees . . . ." (quoting *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940))).   And based on those factors, the undersigned will recommend that the Court find the hourly rates listed for the Legon attorneys to be reasonable.

Turning to the most important factor first, similar rates are customarily awarded for attorneys and paralegals with similar levels of experience who perform similar types of work in civil litigation matters within the Middle District of Florida. *See Anderson v. Coupons in the News*, No. 5:20-cv-41-Oc-30PRL, 2020 WL 13119067, at *2 (M.D. Fla. Nov. 6, 2020) (finding hourly rate of $450.00 reasonable in a First Amendment case); *Blake v. Carter*, No. 6:15-cv-2085-Orl-37KRS, 2017 WL 11017902, at *2 (M.D. Fla. Feb. 7, 2017) (concluding that $450 and $375 per hour are reasonable

hourly rates for attorneys who work in the area of First Amendment rights and defamation), *report and recommendation adopted*, 2017 WL 11017910 (M.D. Fla. Feb. 28, 2017); *see also Centennial Bank v. Felipe Vazquez,* No. 6:20-cv-2237-ACC-EJK, 2021 WL 5055032, at *2 (M.D. Fla. Oct. 14, 2021), *report and recommendation adopted*, 2021 WL 5051980 (M.D. Fla. Nov. 1, 2021) (finding hourly rates of $505.00 for partners and $350.00-$345.00 for associates reasonable in a commercial breach of contract case); *Lombard v. Another S. Holding Co., LLC*, No. 6:17-cv-1952-Orl-31DCI, 2019 WL 2423612, at *1 (M.D. Fla. June 10, 2019) (awarding hourly rate of $400.00 to an experienced civil rights attorney in FHA case); *Inlet Marina Villas Condo. Ass'n, Inc. v. United Specialty Ins. Co.*, No. 6:17-cv-1337-Orl-40DCI, 2019 WL 2720219, at *3-4 (M.D. Fla. June 13, 2019), *report and recommendation adopted*, 2019 WL 2717196 (M.D. Fla. June 28, 2019) (awarding hourly rates of $450.00, $350.00, and $250.00 for attorneys litigating insurance disputes in the Orlando Division); *Diperna v. GEICO Gen. Ins. Co.*, No. 6:12-cv-687-Orl-36KRS, 2016 WL 7246094, at *4 (M.D. Fla. June 27, 2016), *report and recommendation adopted by* 6:12-cv-687-Orl-36-KRS, Doc. No. 218 (M.D. Fla. Aug. 4, 2016) (awarding hourly rates of $550, $450, $400, and $225 for attorneys litigating an insurance dispute); *Sanchez v. M&F, Inc., LLC*, No. 6:17-cv-1752-Orl-22LRH, 2020 WL 4671144, at *5 (M.D. Fla. Aug. 12, 2020) (awarding $150.00 per hour under the lodestar for a paralegal in Orlando); *Rabco Corp. v. Steel Plaza, LLC*, No. 6:16-cv-1858-Orl-40LRH, 2019 WL 5188601, at *10 (M.D. Fla. July 29,

2019), *report and recommendation adopted*, 2019 WL 5176284 (M.D. Fla. Aug. 13, 2019) (awarding $150.00 per hour rate for paralegal in complex commercial litigation case).

As it pertains to the factors set forth in *Rowe* and in Rule 4-1.5(b) of the Florida Rules of Professional Conduct, neither side has presented much evidence.   The only factors Defendants address are the time and labor required (which is not one of the *Rowe* factors for purposes of assessing hourly rates), the fee customarily charged, the amount involved, and the experience, reputation, and ability of the lawyers performing the services.   Doc. No. 196, at 6, 9-14.   And Plaintiff only addresses the fee customarily charged factor.   Doc. No. 200, at 11-13.   As discussed above, the rates typically awarded in the Orlando Division market – the most important factor – support the rates for the Legon attorneys.   And the experience, reputation and ability of the Legon attorneys – as set forth in the firm biographies and which are not contested in any way by Plaintiff – also support these rates.   Moreover, the amount involved was high – Plaintiff's own expert assessed his compensatory damages at $17 million.   *See* Doc. No. 200, at 9.[6]

For these reasons, the undersigned will respectfully recommend an hourly rate of $475.00 for Attorney Legon, $400.00 for Attorney Rhodes, $375.00 for

---

[6] Given the lack of evidence by either side on the remaining *Rowe* factors, the undersigned finds these factors neutral in the calculation of a reasonable hourly rate.

Attorney Slagle; $350.00 for Attorney Rufat, $350.00 for Attorney Polit Karp, and $150.00 for Paralegal Espinosa.

B.    *The W&S Attorneys' Hourly Rates*

Defendants seek the following hourly rates for the W&S attorneys who performed work in this case at both the district and appellate levels:

| | |
|---|---|
| Abbe Lowell (Partner) | $1,510.00 (until March 2023)<br>$1,585.00 (after March 2023) |
| Christopher Man (Partner) | $1,130.00 (until March 2023)<br>$1,265.00 (after March 2023) |
| Sarah Viebrock (Associate) | $935.00 (until March 2023)<br>$1,095.00 (after March 2023) |
| Lauren Gailey (Associate) | $1,120.00 |
| Lane Lerner (Docket Attorney) | $570.00 (until March 2023)<br>$580.00 (after March 2023) |

Doc. No. 186-1, at 4 & 41-44; Doc. No. 196, at 16; Doc. No. 197-1, at 3 & 8.

As it pertains to the W&S hourly rates, Defendants first submit the Declaration of Abbe David Lowell, partner at W&S and one of Defendants' attorneys at both the District Court and Appellate Court levels.   Doc. No. 196-2, at 2-5.   Attorney Lowell briefly speaks to each attorney's experience, but does not provide many details beyond their respective roles at W&S.   *Id.; see also* Doc. No. 186-1, at 4-5; Doc. No. 197-1, at 3-4.   However, in the supplemental motion itself, Defendants state that Attorney Lowell has over 45 years' experience, Attorney Man

has over 25 years' experience, and Attorney Viebrock has been practicing law for 7 years.   Doc. No. 196, at 15.   Attorney Lowell concludes his declaration with the conclusory statement that "[b]ased on my knowledge of and experience in the industry, the applicable rates are consistent with prevailing market rates for attorneys with similar experience and expertise."   Doc. No. 186-1, at 6; Doc. No. 196-2, at 5; Doc. No. 197-1, at 4.

Next, Defendants submit the firm biographies of four of their attorneys, which again provide information about their years of experience and other qualifications.[7]   For example, the biography of Attorney Lowell establishes that he has extensive experience in white collar defense, litigation, complex investigations, and regulatory enforcement, and has litigated numerous high-profile cases and Congressional investigations.   Doc. No. 186-1, at 46-52; Doc. No. 196-2, at 11-18. Attorney Man is listed as a "highly regarded white collar defense and trial lawyer," with a practice focusing on civil and criminal litigation, appeals, internal investigations, Congressional and Executive branch investigations, and compliance with anti-corruption laws.   Doc. No. 186-1, at 54-56; Doc. No. 196-2, at 20-23. Attorney Gailey is a former federal law clerk who has an appellate and critical motions practice that crosses a variety of subject matters, *see* Doc. No. 197-1, at 10,

---

[7] Defendants provide no information as to Lane Lerner, nor explain the title "Docket Attorney."

and Attorney Viebrock focuses her practice on antitrust and sports litigation, and is also a former federal law clerk.   Doc. No. 186-1, at 58; Doc. No. 196-2, at 25.

Notably, neither Attorney Lowell's declaration nor these firm biographies suggest that any of these attorneys have any particularized experience or specialized skills in the areas of first amendment or defamation litigation – the very claims at issue in this case.   And again, Defendants provide no expert testimony as to the reasonableness of these rates.   Defendants also cite no decisional authority suggesting that the rates they request for the W&S attorneys are reasonable and customary in the Middle District of Florida, Orlando Division, for either trial level or appellate level work.   *See* Doc. No. 186, at 10-12; Doc. No. 196, at 11-15.[8]

---

[8]   Defendants cite to one decision, *Leblanc v. USG7, LLC*, No. 6:12-cv-1235-Orl-41TBS, 2015 WL 13741547, at *2 (M.D. Fla. Sept. 22, 2015), *report and recommendation adopted as modified*, 2016 WL 1358529 (M.D. Fla. Apr. 6, 2016) for the proposition that "what an attorney charges his clients is powerful, and perhaps the best, evidence of his market rate." Doc. No. 196, at 12.   However, Defendants neglect to quote the remainder of *Leblanc* where the court further noted that "[p]rior awards are also relevant," and that the decision is ultimately "an exercise of judgment," as there is "no precise rule or formula."   *Leblanc*, 2015 WL 13741547, at *2, *report and recommendation adopted as modified*, 2016 WL 1358529 (M.D. Fla. Apr. 6, 2016) (citations omitted).   Moreover, Defendants provide no evidence on this issue beyond a conclusory statement that "these are the hourly rates Defendants agreed to pay."   Doc. No. 196, at 12.   Defendants have not submitted copies of any of their fee agreements, thus making it impossible for the Court to assess the fee arrangements between Defendants and their counsel, such as whether Defendants were provided a blended rate, if there was some sort of contingency arrangement, if there was a maximum fee ceiling, or the like.   *See also First Baptist Church of Cape Coral, Fla., Inc. v. Compass Const., Inc.*, 115 So. 3d 978, 980 (Fla. 2013) (noting that in cases involving statutory fee-shifting provisions a court-awarded fee cannot exceed the fee agreement reached by the attorney and his client and that such a limitation applies to both contingency and hourly fee agreements).   Thus, the undersigned is not persuaded by Defendants' citation to *Leblanc.*

In response, Plaintiff points to the Declaration of Attorney Stovash who, after considering the history of this litigation and the *Rowe* factors, opines that the fees Defendants seek are excessive and unreasonable.   Doc. No. 200-1 ¶ 32.   As to the W&S attorney hourly rates, Attorney Stovash opines "[i]n short, the hourly charged by the attorneys of Winston & Strawn LLP, are clearly excessive in light of the market rates charged for similar services in the Central Florida area.   I also note that the engagement of Winston & Strawn LLP, was discretionary."   *Id.*, ¶ 31. Attorney Stovash does not, however, suggest any alternative reasonable hourly rates.

---

Defendants also reference The Laffey Matrix as support for the hourly rates for the W&S attorneys.   Doc. No. 196, at 12 n.9.   The Laffey Matrix provides hourly rates for attorneys of varying experience levels nationwide, it does not provide relevant market rates for the Orlando Division area.   As such, courts in this District have repeatedly found that the Laffey Matrix is not persuasive for purposes of determining a reasonable hourly rate.   *See Taylor v. C&L Towing & Transport, LLC*, No. 6:17-cv-1929-Orl-40GJK, 2019 WL 10984161, at *3 (M.D. Fla. Oct. 17, 2019) (declining to rely upon the Laffey Matrix as competent evidence of a reasonable hourly rate for counsel in the Middle District of Florida), *report and recommendation adopted*, 2020 WL 6393850 (M.D. Fla. Jan. 15, 2020); *Rumreich v. Good Shepherd Day Sch. of Charlotte, Inc.*, No. 2:17-cv-292-FtM-38MRM, 2019 WL 2078730, at *2 (M.D. Fla. Apr. 23, 2019) (collecting cases in the Middle District finding that the Laffey Matrix is not relevant evidence of the prevailing market rate).   The undersigned therefore does not find it persuasive here.

For these same reasons, the undersigned also does not find persuasive Plaintiff's reference to a Florida Bar survey, Clio, or Contracts Counsel, as these resources only provide statewide average attorney rates, and do not speak to the rates customarily awarded within the relevant market.   *See* Doc. No. 200, at 12, n.21.   Moreover, these surveys provide median average rates, and the rates the undersigned is recommending are not outside the realm of reasonableness and in some instances are within those average rates.

Thus, the undersigned is again faced with a lack of competent, persuasive evidence on the part of Defendants to support the reasonableness of the W&S hourly rates.   On the other hand, Plaintiff has provided an unrebutted expert opinion that the hourly rates sought are excessive and not in line with those charged in the Middle District of Florida.   When the undersigned takes Attorney Stovash's opinion into consideration, considers the rates customarily awarded in the relevant market, and applies her own experience and expertise, the undersigned finds that the W&S hourly rates are clearly excessive and unreasonable.   *See Martinez v. Hernando Cty. Sheriff's Off.*, 579 F. App'x 710, 714 (11th Cir. 2014) (finding no clear error in the district court's finding that evidence submitted to support hourly rates was unpersuasive because the evidence failed to address the rates "actually billed and paid in similar lawsuits" in the relevant community).[9]

Applying the same analysis utilized above, the undersigned finds that the rates applicable to the Legon attorneys are also reasonable for the W&S attorneys. While the undersigned recognizes the qualifications of the W&S attorneys – particularly with respect to Attorneys Lowell and Man – Defendants have wholly failed to explain why these attorneys were necessary for the success of this litigation.   There is no evidence that the W&S attorneys possessed any

---

[9] Unpublished decisions of the Eleventh Circuit are cited as persuasive authority. *See* 11th Cir. R. 36–2.

particularized expertise or skills in the areas of defamation law, there is no explanation as to why Defendants required ten (10) attorneys to litigate this case or why local counsel was unable to litigate this case to the same result, there is no expert testimony, the self-serving declaration is itself conclusory and unsupported, and there is nary a citation to any cases where the W&S hourly rates were awarded in the Middle District of Florida for either trial level or appellate level work.

It is ultimately Defendants' burden to establish the reasonableness of the requested hourly rates, *see Duckworth*, 97 F.3d at 1396; *Norman*, 836 F.2d at 1303, and beyond conclusory statements, Defendants have failed to do so.   As such, the undersigned finds that the same analysis set forth in detail above with respect to the lodestar, the *Rowe* factors, and Florida Rule of Professionalism 4-1.5, applies equally to the W&S attorneys for work performed in this case.   The undersigned therefore recommends the following hourly rates:  $475.00 for Attorney Lowell, $400.00 for Attorney Man, $375.00 for Attorney Viebrock, and $350.00 for Attorney Gailey.[10]   *See Barnes*, 168 F.3d at 437 ("If a fee applicant desires to recover the non-local rates of an attorney who is not from the place in which the case was filed, he

---

[10] Defendants do not distinguish between the hourly rates requested for work performed before this Court and worked performed at the appellate level.   And Defendants make no argument or evidentiary showing that would suggest any of the W&S attorneys would be entitled to a different hourly rate for their appellate work.   As such, the undersigned finds that the same hourly rates should be applied to the W&S attorneys for their work throughout this litigation at all court levels.

must show a lack of attorneys practicing in that place who are willing and able to handle his claims.").

With respect to Attorney Lerner, however, the only information provided is in Attorney Lowell's declaration before the Court of Appeals, which simply states that Attorney Lerner is "an experienced docket attorney in Winston & Strawn's New York office (applicable rate $570/hour).   Mr. Lerner assisted with review of all relevant local rules and filing matters related to the appeal."   Doc. No. 186-1, at 5, ¶ 15.   The billing records Defendants submitted show that Attorney Lerner electronically filed briefs and admissions applications, and prepared documents for filing.   Doc. No. 186-1, at 31-39, 44; Doc. No. 197-1, at 6-8.   Without any other information from Defendants, it appears that Attorney Lerner was performing tasks typically performed by a paralegal or law clerk, and there is no information provided as to why an attorney was required to perform this work, nor anything before the undersigned that would suggest Attorney Lerner's rates would be reasonable and customary in this District.   Therefore, to the extent Attorney Lerner's time is recoverable (a discussion had below), and applying the undersigned's own experience and expertise, a reasonable hourly rate for Attorney Lerner is the $150.00 paralegal rate.   *Norman*, 836 F.2d at 1306 ("[A] fee applicant is not entitled to compensation at an attorney's rate simply because an attorney undertook tasks which were mundane, clerical or which did not require the full

exercise of an attorney's education and judgment."); *see also Truesdell v. Thomas*, No. 5:13-cv-552-Oc-10PRL, 2018 WL 6983508, at *3 (M.D. Fla. Nov. 8, 2018), *report and recommendation adopted*, No. 5:13-cv-552-Oc-10PRL, 2018 WL 6620486, at *10 (M.D. Fla. Dec. 3, 2018) (awarding hourly rate of $140.00 for law clerk).[11]

## VI.   THE REASONABLENESS OF THE REQUESTED BILLABLE HOURS

The second half of the lodestar analysis requires the Court to calculate the number of hours reasonably expended on the litigation.   Counsel must exercise proper "billing judgment" and exclude hours that are "excessive, redundant, or otherwise unnecessary."   *Hensley*, 461 U.S. at 434.   In demonstrating that the requested hours are reasonable, counsel "should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity."   *Norman*, 836 F.2d at 1303.

---

[11]   In their motions papers related to appellate fees, Defendants argue that Plaintiff (and consequently the Court) should respect Defendants' "choice of top-end counsel as this was not a legal fight of their choosing, but a legal dispute they were dragged into by [Plaintiff]."   Doc. No. 189, at 13.   Defendants further state that they were well within their right to hire an AmLaw100 law firm to defend this action on appeal.   *Id.*   The undersigned does not disagree with Defendants' position, and nothing in this report and recommendation should be interpreted to say otherwise.   However, what Defendants ignore is that while they can retain counsel of their choosing, they do not have the right to pass those higher fees onto the opposing side where there is a complete absence of any evidence or argument that such rates are reasonable within the relevant legal market, or that attorneys within the relevant legal market would not have been able to successfully litigate this matter to the same result.

Inadequate documentation may reduce the fees requested.   *Hensley*, 461 U.S. at 433; *Rowe*, 472 So. 2d at 1150.   The court may also reduce hours it finds excessive or unnecessary.   *Rowe*, 472 So. 2d at 1150.

After the moving party provides sufficient documentation to support an attorney's fees award, the burden shifts to the opposing party to submit objections and proof that are specific and reasonably precise.   *Barnes*, 168 F.3d at 428 (citing *Norman*, 836 F.2d at 1301).   A fee opponent's failure to explain with specificity the particular hours he or she views as "excessive, redundant, or otherwise unnecessary" is generally fatal.   *Scelta v. Delicatessen Support Servs., Inc.*, 203 F. Supp. 2d 1328, 1333 (M.D. Fla. 2002) (citing *Gray v. Lockheed Aeronautical Sys. Co.*, 125 F.3d 1387 (11th Cir. 1997)).   Conclusory objections and generalized statements are not given much weight.   *Gray*, 125 F.3d at 1389.   Nevertheless, "[i]f fee applicants do not exercise billing judgment, courts are obligated to do it for them, to cut the amount of hours for which payment is sought, pruning out those that are excessive, redundant, or otherwise unnecessary."   *Barnes*, 168 F.3d at 428 (internal quotation marks omitted).   When a court finds the number of hours billed to be unreasonably high, a court has two choices:   it may review each entry and deduct the unreasonable time, or it may reduce the number of hours by an across-the-board cut.   *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008).

Defendants seek a total of 2,115.90 attorney and paralegal hours, broken down as follows:

**<u>Legon Attorneys</u>**

| | |
|---|---|
| Todd R. Legon | 631.50 |
| William F. Rhodes | 107.50 |
| Elizabeth Y. Slagle | 293.30 |
| Raymond M. Rufat | 529.40 |
| Wendy Polit Karp | 50.70 |
| Rosa Espinosa (Paralegal) | 40.60 |

**<u>W&S Attorneys</u>**

| | |
|---|---|
| Abbe Lowell | 43.50 (District)<br>24.60 (Appellate) |
| Christopher Man | 42.30 (District)<br>112.60 (Appellate) |
| Sarah Viebrock | 133.20 (District)<br>94.60 (Appellate) |
| Lauren Gailey | 8.70 (Appellate) |
| Lane Lerner | 3.40 (Appellate) |

Doc. No. 186-1, at 39; Doc. No. 196, at 16; Doc. No. 197-1, at 8.

In support of these hours, Defendants have attached their billing records and again point to the Declarations from Attorney Legon and Attorney Lowell.   As before, no expert testimony is provided.

In his Declaration, Attorney Legon first states that he personally performed or oversaw all of the services rendered by the Legon attorneys, and that the hours required to perform the legal services "were reasonable and necessary in order to properly defend against Plaintiff's claims in this litigation."   Doc. No. 196-1, at 2-3. Next, Attorney Legon states that he exercised billing judgment and removed any charges that were excessive, duplicative, clerical, or otherwise unreasonable.   *Id.*, at 3.   And last, Attorney Legon represents that the work he and the other Legon attorneys performed included, among other things, drafting of pleadings, extensive motions practice and drafting, participating in discovery, preparing for and attending depositions, preparing offers of judgment, drafting two lengthy summary judgment motions, and preparing for jury trial during the pendency of the summary judgment motions.   *Id.*, at 6.   Attorney Legon does not, however, provide any information as to the separate roles each of the five (5) Legon attorneys played in this case, or otherwise explain why it was necessary for five (5) attorneys from the Legon firm to work on this case.

Attorney Lowell's declaration is even more sparse.   Doc. No 196-2, at 2-5. As it pertains to services before this Court, Attorney Lowell states that the work performed included, but was not limited to, preparation for the upcoming jury trial. *Id.*, at 3.   Attorney Lowell then states that the work performed "was reasonable and necessary in order to properly defend against Plaintiff's claims in this litigation,"

and that Attorney Lowell exercised billing judgment and removed charges that were excessive, duplicative, clerical, or otherwise unreasonable.   *Id.*, at 4. Attorney Lowell does not, however, explain whether the W&S attorneys' work preparing for an anticipated jury trial was duplicative of any work performed by the Legon attorneys at the District Court level or why the W&S attorneys were necessary for these tasks.   Such explanation is also lacking from Defendants' supplemental motion.   Doc. No. 196.

As it pertains to services at the appellate level, however, Attorney Lowell provides slightly more information, stating that the work performed included, among other things, analyzing and discussing status and appeal strategy, preparing for and attending a court-ordered mediation, researching, analyzing, and drafting Defendants' appellate brief as well as a response to the Court of Appeals' jurisdictional question, and researching, drafting, and filing a motion for fees.   Doc. No. 186-1, at 3-4.   In addition, Attorney Lowell represents that the United States Supreme Court requested that Defendants respond to Plaintiff's petition for writ of certiorari, and therefore the hours expended on that task included reviewing the petition and discussing same with Defendants, and researching, drafting, and filing a response to the petition as well as a response to a motion for leave to file an amicus brief.   Doc. No. 197-1, at 3.   Attorney Lowell concludes with a representation that

he exercised billing judgment and did not bill excessive, redundant, or otherwise unnecessary hours.   Doc. No. 186-1, at 6; *see also* Doc. No. 197-1, at 4.

Defendants also provide some explanation in their motions about the length and nature of the litigation in this case.   As Defendants argue, this litigation, which spanned over two years including appeals, was needlessly protracted by Plaintiff, who continued to pursue claims that were without legal merit.   Doc. No. 196, at 2-4.   In particular, Defendants point to the fact that both the District Court and the Court of Appeals found Plaintiff's claims failed because there was "not even a scintilla of evidence showing – much less clear and convincing proof of – actual malice."   *Id.*, at 2 (citing Doc. No. 159, at 17; Doc. No. 175, at 6-7).   Defendants further argue that Plaintiff failed to meet and confer on stipulated material facts at the summary judgment stage, refused to use the same stipulations in the joint pretrial statement, and filed a 23-page "Delineation" document, which the Court struck.   *Id.*, at 7-8.   And as to the appellate proceedings, Defendants were forced to respond to not only a jurisdictional question, but also to nine separate issues raised by Plaintiff, many with subparts.   Doc. No. 189, at 12.   Defendants note that Plaintiff could have stopped the accrual of fees and costs if he had accepted the May 25, 2021 offers of judgment, but chose to press forward, even though his claims were without merit.   Doc. No. 196, at 8.

In his response, Plaintiff disputes that his claims were meritless, noting that he survived two rounds of motions to dismiss, as well as a motion for sanctions under Federal Rule of Civil Procedure 11.   Doc. No. 200, at 8-9.   Plaintiff also notes that the offers of judgment were for a mere $500.00 each, whereas the requests for fees equate to more than 2000 times that amount.   *Id.*, at 10.   And Plaintiff references Attorney Stovash's declaration, in which Attorney Stovash states that he has reviewed the docket for this case in both this Court and the Court of Appeals, reviewed several of the motions and other filings, Defendants' billing records, and considered the *Rowe* factors.   Doc. No. 200-1, at 3-5.   Based on that review, Attorney Stovash opines that the requested hours contain a substantial amount of duplicate billing, block billing, time associated with travel and clerical tasks, and hours that are redundant, excessive, and unnecessary.   *Id.*, at 5-6.   However, Attorney Stovash does not expand on these relatively conclusory statements, nor point to any specifically objectionable attorney time entries.   *Id.*

In addition to this information, Plaintiff raises several objections – some general and some specific – in an effort to reduce the hours requested.   Doc. No. 200, at 4-7, 10-11.   And Plaintiff has also provided a 144-page exhibit, through which he reviews each attorney's billing records and notes various objections.

Doc. No. 203-1.   The undersigned addresses each of Plaintiff's objections, as discussed in his opposition brief (Doc. No. 200), below.[12]

A.      *Fees for Unsuccessful Motions*

Without citing any legal authority in support, Plaintiff first argues that Defendants cannot recover their attorneys' fees incurred in litigating various unsuccessful motions.   Doc. No. 200, at 10-11 & n.16.[13]   It is undisputed that hours spent on unsuccessful *claims* should be deducted from a fee award.   *See Norman*, 836 F.2d at 1302.   However, "the law in this circuit is that a prevailing party entitled to attorneys' fees is not to be penalized for failed motions."   *Eagle Hosp. Physicians*,

---

[12] In his 144-page exhibit, Plaintiff also attempts to raise – for the first time – several additional objections, which include objections on the basis that the hours charged between April 22, 2022 and May 20, 2022 were unnecessary, that many of the time entries are vague, and that many of the time entries are irrelevant.   Doc. No. 203-1, at 1-3.   The undersigned has scoured Plaintiff's opposition brief and does not find even a passing reference to these objections.   While Plaintiff may use this exhibit to expand on objections previously raised, he may not use this exhibit as an attempt to evade the page limits for his opposition brief, *see* Local Rule 3.01(b), and he provides no legal authority permitting him to assert new objections in an exhibit.   Moreover, because Plaintiff did not address these objections in his opposition brief, the undersigned finds that he has failed to comply with Local Rule 7.01(d), which requires a detailed basis for each objection, and has failed to comply with applicable precedent, which requires an opposing party to submit objections and proof that are specific and reasonably precise.   *Barnes*, 168 F.3d at 428 (citing *Norman*, 836 F.2d at 1301); *Gray*, 125 F.3d at 1389.   Accordingly, the undersigned only addresses those objections mentioned in the opposition brief and relies on Plaintiff's exhibit as support for those objections.

[13] In his recitation of the applicable legal standards, Plaintiff cites to *Farrar v. Hobby*, 506 U.S. 103, 114 (1992), and *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983) for the proposition that "a party should not recover fees for the parts of the cases in which that party was unsuccessful."   Doc. No. 200, at 4-5.   Both of these decisions discussed partial or limited success on claims, not motions, and are therefore not helpful to Plaintiff's cause.

*LLC. v. SRG Consulting, Inc.*, 346 F. App'x 403, 404 (11th Cir. 2009) (citing *Columbus Mills, Inc. v. Freeland*, 918 F.2d 1575, 1580 (11th Cir. 1990)); *see also Universal Physician Servs., LLC v. Zotto*, No. 8:16-cv-1274-T-36JSS, 2021 WL 3193314, at *4 (M.D. Fla. July 9, 2021), *report and recommendation adopted*, 2021 WL 4434883 (M.D. Fla. July 29, 2021) (citing *Eagle Hospital* and awarding fees for preparing an unsuccessful motion to remand); *Rynd v. Nat'l Mut. Fire Ins. Co.*, No. 8:09-cv-1556-T-27TGW, 2012 WL 939387, at *5 (M.D. Fla. Jan. 25, 2012) (recognizing that time spent on unsuccessful claims should be reduced from a fee award, but "time is not excluded simply because a motion was denied" (citations omitted)), *report and recommendation adopted*, 2012 WL 939247 (M.D. Fla. Mar. 20, 2012).   This same tenet applies equally when addressing fee awards under Fla. Stat. § 768.79.   *See Kowalski v. Jackson Nat. Life Ins. Co.*, No. 12-60597-CIV, 2014 WL 4101567, at *6 (S.D. Fla. Aug. 20, 2014) ("The mere fact that Jackson was unsuccessful on this motion is not grounds for denying Jackson its fees.   This motion was unquestionably related to Jackson's prosecution of this case and would have been mooted had Kowalski accepted the offer.").

Here, there is no dispute that Defendants prevailed on all claims, *see* Doc. Nos. 159, 175-76, therefore the undersigned recommends that the Court reject Plaintiff's objection.

B.      *Fees for Litigating Fees*

Plaintiff also objects to any award of fees for litigating fees.   Doc. No. 200, at 6, n.7; *see also* Doc. No. 203-1.   The Florida Supreme Court has held that, while attorneys' fees incurred for litigating the issue of entitlement to attorneys' fees are recoverable, fees incurred for litigating the amount of attorneys' fees are not.   *State Farm Fire & Cas. Co. v. Palma*, 629 So. 2d 830, 833 (Fla. 1993); *see also Mukamal v. Swire Pac. Holdings, Inc.*, No. 08-23444-CIV, 2011 WL 13173589, at *5 (S.D. Fla. July 29, 2011) (collecting cases and noting that "Florida courts have consistently held that attorneys' fees should be awarded to the prevailing party for services rendered by an attorney in litigating the issue of *entitlement* to fees, but not for the services rendered litigating the *amount* of the fee award.").

Defendants filed their motion for entitlement to attorneys' fees in this Court on June 3, 2022.   Doc. No. 165.   The Court ruled on the motion on March 30, 2023. Doc. No. 184.   The last entry on the billing records for work performed in this Court for the Legon firm is November 29, 2022, and for the W&S firm is May 20, 2022, well before the question of entitlement had been resolved.   *See* Doc. No. 196-1, at 56, Doc. No. 196-2, at 9.   And the time entries listed on the billing records do not suggest that any attorney time expended prior to the Court's March 30, 2023 Order was on the issue of quantification.   *See, e.g.,* Doc. No. 196-1, at 53-56.   Indeed, the W&S billing records for work before this Court do not list a single time entry with

respect to attorneys' fees.   *See* Doc. No. 196-2, at 7-9.   Thus, as it pertains to work at the District Court level, the undersigned will recommend that the Court overrule Plaintiff's objection and not reduce the attorney hours on this basis.

As to the fees incurred at the appellate level, the motions papers filed before the Court of Appeals address both entitlement and quantification – with the vast majority of those filings focusing on the question of entitlement.   *See* Doc. No. 186 (Defendants' application for appellate fees, of the 15-page application, only two (2) pages are devoted to quantification); Doc. No. 189 (Defendants' reply brief, of the 16-page reply, less than two (2) pages are spent on quantification).   The billing records from the W&S firm also demonstrate that the hours expended were for drafting, researching, and reviewing the fee application as a whole, and that the hours expended were not unreasonable.   Doc. No. 196-2, at 7-9.   Therefore, any time spent solely on quantification would be minimal, at best.   As such, the undersigned finds this objection unpersuasive, and will not recommend a reduction in attorney hours on this basis.

C.      *The Lack of a Hearing and Competent Evidence*

Plaintiff also argues that any award of attorneys' fees under Florida law "must be based on substantial competent evidence presented to the court at a hearing," and since Defendants have not requested a hearing, retained experts, or conducted depositions to support their motions, Defendants' fees requests must be

denied in their entirety.   Doc. No. 200, at 6-7 & n.9.   But Plaintiff provides no binding or persuasive legal authority to support this argument.[14]   And neither Fla. Stat. § 768.79 nor Florida Rule of Civil Procedure 1.442 mandate that a hearing or any specific types of evidence must be submitted in order to obtain an award of fees and costs.   *See* Fla. Stat. § 768.79(b); Fla. R. Civ. P. 1.442.   Plaintiff's argument is also contradictory, as he admits that statements of "the recording of time and disbursements," – which Defendants have submitted in the form of their detailed billing records – constitute competent evidence.   *See* Doc. No. 200, at 7.   The undersigned therefore finds Plaintiff's objection in this regard unpersuasive.   *See,*

---

[14] The cases Plaintiff cites in support are readily distinguishable.   *Cadavid v. Saporta*, 344 So. 3d 478 (Fla. Dist. Ct. App. 2022) involved a hearing on an injunction for protection, at the conclusion of which the court awarded attorneys' fees as a sanction under Fla. Stat. § 57.105, and on appeal, the fees award was reversed because the evidence did not support entitlement to a sanction under the statute.   Nothing in that case even suggests that when quantifying an award of fees, a hearing and/or specific types of evidence is required.   *Griffin Windows & Doors, LLC v. Pomeroy*, 351 So. 3d 1125, 1126 (Fla. Dist. Ct. App. 2022) involved a petition for a writ of mandamus to compel a trial court to conduct an evidentiary hearing to quantify the fees and costs awardable – the trial court had already determined that the prevailing party was entitled to fees under Fla. Stat. § 768.79.   Again, nothing in *Griffin* suggest that a hearing is mandatory, and in the absence of which a fee petition is reduced to zero.   *Arce v. Wackenhut Corp.*, 146 So. 3d 1236 (Fla. Dist. Ct. App. 2014), involved a party who attempted to raise a question about whether an offer of judgment under Fla. Stat. § 768.79 was made in good faith at the quantification stage, after the question of entitlement had been decided; the court nowhere held that a hearing was mandatory on the issue.   And in *Barnes v. Morgan*, No. 3:07-cv-294/MD, 2009 WL 909432 (N.D. Fla. Apr. 2, 2009), the court found that attorneys' fees were warranted under Fla. Stat. § 768.79, and only disallowed the requested fees because the movant failed to comply with a Northern District of Florida Local Rule – a rule that does not apply in this Court.   *Id.*, at * 3.

*e.g.*, *Kearney*, 713 F. Supp. 2d 1369 (awarding fees under Fla. Stat. § 768.79 without a hearing and relying only on the parties' motions and evidentiary submissions).

    D.    *Block Billing*

Next, Plaintiff objects that the billing records are replete with improper block billing entries, and therefore must be reduced.  Generally, "[b]lock billing occurs when an attorney lists all the day's tasks on a case in a single entry, without separately identifying the time spent on each task." *Hiscox Dedicated Corp. Member, Ltd. v. Matrix Grp. Ltd., Inc.*, No. 8:09-cv-2465-T-33AEP, 2012 WL 2226441, at *4 (M.D. Fla. June 15, 2012) (quoting *Ceres Env't Servs., Inc. v. Colonel McCrary Trucking, LLC*, 476 F. App'x 198, 203 (11th Cir. 2012)).  The problem with block billing is that it results in "imprecision" in an attorney's records, "a 'problem' for which the opponent should not be 'penalized.'" *Ceres*, 476 F. App'x at 203 (citing *Barnes*, 168 F.3d at 429).  To remedy this problem, district courts may apply an across-the-board reduction to block billed hours. *Id.* (citing *Kearney*, 713 F. Supp. 2d at 1378 (awarding no attorney's fees to block billed entries or significantly reducing the requested attorney's fees)); *Hiscox*, 2012 WL 2226441, at *4 (applying a 20% across-the-board reduction to block billed hours).

However, "the mere fact that an attorney includes more than one task in a single billing entry is not, in itself, evidence of block-billing." *Franklin v. Hartford Life Ins. Co.*, No. 8:07-cv-1400-T-23MAP, 2010 WL 916682, at *3 (M.D. Fla. Mar. 10,

2010); *see also Signature Pharmacy, Inc. v. Soares*, No. 6:08-cv-1853-Orl-31TBS, 2012 WL 6652828, at *3 (M.D. Fla. Dec. 21, 2012) (same).   "When the tasks are intertwined, a thorough description of the activities clarifies, rather than obscures, the record."   *Wyndham Vacation Ownership, Inc. v. Slattery, Sobel & Decamp, LLP*, No. 6:19-cv-1908-WWB-EJK, 2022 WL 8217011, at *6 (M.D. Fla. July 22, 2022), *report and recommendation adopted*, 2022 WL 4285897 (M.D. Fla. Sept. 16, 2022), *reconsideration denied*, 2023 WL 2039378 (M.D. Fla. Jan. 27, 2023) (citations omitted)); *see also In re Acosta-Garriga*, No. 8:12-cv-731-T-23, 2014 WL 7404122, at *2 (M.D. Fla. Dec. 30, 2014) ("[A] fee applicant's including more than one task in a single billing entry is not invariably block-billing; a detailed description will vindicate the entry."); *Gay v. Brencorp, Inc.*, No. 3:09-cv-1002-J-JBT, 2013 WL 2683156, at *3 (M.D. Fla. June 11, 2013) (including multiple tasks in one entry may not be fatal unless it includes clearly non-compensable tasks).

Plaintiff first attacks the billing records for the Legon attorneys for the work performed at the District Court level.   Plaintiff has objected on the basis of block billing to nearly every time entry for Attorney Legon, and a large portion of the time entries for Attorneys Rhodes, Slagle, and Rufat.   *See generally* Doc. No. 203-1. Plaintiff does not elaborate on his objections, but rather simply provides a "BB" notation on his exhibit for each billing record he considers to be block-billed.   *Id.*

The undersigned first notes that for the most part, Plaintiff does not challenge these time entries based on arguments that the tasks, if separated, would not be compensable.[15]   Second, the undersigned has reviewed the entries at issue, and finds that the tasks objected to on the basis of block billing are, in fact, compensable and reasonable, and do not encompass clerical tasks – in fact, Plaintiff does not object to any of the Legon attorney hours on the basis that they are purely clerical in nature.   And the descriptions for the time entries contain a sufficient level of detail about what work was done in the associated time frame, such that the undersigned was able to ascertain that each task related to compensable legal services.[16]

---

[15]   For many of these entries, Plaintiff either only objects on the basis of block billing, objects on a basis that the undersigned has already found legally unviable (such as entries related to unsuccessful motions, entries related to the question of entitlement to fees, and entries related to hours spent on Plaintiff's appeal), or attempts to raise an objection that was never mentioned in Plaintiff's opposition brief, and therefore has not been considered here.   The undersigned addresses Plaintiff's objections on the basis of paralegal tasks, excessiveness, and travel below.   The undersigned also addresses Plaintiff's objection on the basis of clerical tasks, which applies only to hours expended by the W&S attorneys, below.   *See* Doc. No. 203-1, at 131-44.

[16]   For example, Plaintiff objects to a May 25, 2021 entry from Attorney Legon that lists "Exchange e-mail correspondence with clients and G. Howe."   Doc. No. 203-1, at 5. Plaintiff also objects to a January 4, 2022 entry from Attorney Legon described as "Telephone conference with R. Rufat regarding outstanding items to be completed with regard to motions in limine," and to a March 22, 2022 time entry for Attorney Rhodes described as "Review Plaintiff's Response to Rule 11 motion; review draft exhibit list." *Id.*, at 59, 76.   These time entries are clearly defined, and it is readily ascertainable that the time spent was on compensable services.

"[T]he computation of a fee award is necessarily an exercise of judgment, because '[t]here is no precise rule or formula for making these determinations.'" *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1305 (11th Cir. 2001) (quoting *Hensley*, 461 U.S. at 436) (alteration in original).   While Plaintiff advocates for the complete exclusion of any time entries that were block billed, given the detailed descriptions provided for the time entries at issue, and that the undersigned addresses Plaintiff's remaining discrete objections below, the undersigned will recommend that the Court overrule Plaintiff's block-billing objection as it pertains to the Legon attorneys.   *See Spanakos v. Hawk Sys., Inc.*, 362 So. 3d 226, 242 (Fla. Dist. Ct. App. 2023) (citing *Gay*, 2013 WL 2683156, at *3)(finding no abuse of discretion in trial court declining to reduce fees award under Fla. Stat. § 768.79 on the basis of block billing because the invoices were sufficiently detailed to apprise the court as to what the time was billed for, the time spent was reasonable for the work being performed, and "the entries are so well-detailed and informative that the lack of segregation does not interfere at all with the Court's task to determine the reasonableness of the time spent," and "there are no objectionable tasks that need to be eliminated from the computation of counsel's hours."); *see also Carithers v. Mid-Continent Cas. Co.*, No. 3:12-cv-890, 2015 WL 12841075, at *2 (M.D. Fla. Nov. 13, 2015) (declining to reduce block billing entries where all tasks were compensable and the attorney "at least identifie[d] the general subject matter of each time entry").

Turning next to the appellate work performed by the W&S attorneys, Plaintiff has noted a block-billing objection to four (4) time entries for Attorney Viebrock and one (1) for Attorney Lowell for work performed before the Court of Appeals.   Doc. No. 203-1, at 136-41.[17]   Plaintiff has also objected to three (3) time entries for Attorney Man, two (2) for Attorney Viebrock, and one (1) for attorney Lowell for work performed in filing the response to Plaintiff's petition for writ of certiorari. *Id.*, at 142-44.   A review of these time entries shows that with two exceptions, the time entries are sufficiently detailed so that the undersigned is able to determine that the tasks listed are reasonable and compensable.[18]

The two exceptions are a June 23, 2022 time entry by Attorney Viebrock for 3.00 hours that includes both compensable tasks (conducting additional docket research for factual support for jurisdictional allegations and drafting response to jurisdiction question) and non-compensable clerical tasks (coordinating filing of

---

[17] The undersigned does not address Plaintiff's block billing objections as they pertain to the work performed by the W&S attorneys before the District Court, because, as discussed below, the undersigned agrees with Plaintiff's objection to those hours on the basis of excessiveness and duplication and will recommend that those hours be stricken in their entirety.   Therefore, any discussion of block billing in that regard would be superfluous.

[18] Plaintiff's additional objection on the basis that these hours are not recoverable because they relate to appellate proceedings has been addressed and rejected above.   And with the exception of the two entries discussed in this section, the undersigned does not find that the time entries contain any impermissible clerical tasks.   As it pertains to the question of excessive or duplicative hours, the undersigned addresses that objection below.

certificate of interested persons, calling clerk regarding formatting of response); and an April 10, 2023 time entry by Attorney Viebrock for 4.9 hours that includes compensable work such as "review response to certiorari petition," and non-compensable clerical work for "coordinating refiling of appellate reply brief," corresponding with a vendor regarding Supreme Court filing, and preparing brief for filing.   Doc. No. 203-1, at 136, 143; *see also* Doc. No. 186-1, at 31; Doc. No. 197-1, at 7.

"[C]lerical and secretarial work, such as gathering materials, copying them, mailing them and refiling them" is not separately recoverable as attorneys' fees. *Scelta*, 203 F. Supp. 2d at 1334; *see also Peress v. Wand*, 597 F. Supp. 2d 1320, 1325-26 (S.D. Fla. 2008) (an attorney should not be permitted to recover fees for clerical time for e-filing, online research of addresses, preparing civil cover sheets and summonses, and for reviewing the CM/ECF email for documents prepared and filed by counsel).   Because these two entries for Attorney Viebrock combine both compensable attorney tasks with non-compensable clerical tasks, the undersigned will recommend that these hours be cut by 50%.   *See Truesdell*, 2018 WL 6983508, at *7, *report and recommendation adopted*, 2018 WL 6620486 (M.D. Fla. Dec. 3, 2018) ("The court has broad discretion in determining the extent to which a reduction in fees is warranted by block billing."); *see also Rabco Corp.*, 2019 WL 5188601, at *15, *report and recommendation adopted*, 2019 WL 5176284 (M.D. Fla. Aug. 13, 2019) (applying

50% across-the-board reduction to hours due to block billing and lack of specificity in the time entries); *Fuccillo v. Century Enters. Inc.*, No. 8:18-cv-1236-T-36AEP, 2020 WL 8224612, at *6 (M.D. Fla. Apr. 28, 2020) (recommending reduction in fees by 50% for duplicative, block billing, and excessive fees).

With this reduction, and rounding to the nearest tenth, the undersigned will recommend that Attorney Viebrock's appellate hours be reduced by 4.0 hours (50% of 7.9 hours). The undersigned does not recommend that any other appellate hours be reduced on the basis of block billing.

   E.   *Excessive and Duplicative Hours*

Plaintiff also objects to a large swath of attorney hours on the basis that they are excessive and duplicative. Doc. No. 200, at 5-6, 10-11. Plaintiff first argues that the majority of the work in this case involved drafting legal briefs – there were no evidentiary hearings and no trial – and such work can be performed by one lawyer alone. *Id.*, at 5-6. As such, Plaintiff contends that only hours expended by the attorneys who had the "laboring oar" at each stage of the case – Attorney Legon before the District Court, Attorney Viebrock before the Court of Appeals, and Attorney Man for the writ of certiorari response – would be recoverable (to the extent these hours are not otherwise objectionable). *Id.*, at 10-11. And Plaintiff has lodged a "one lawyer" or "OL" objection to every single time entry listed on

Defendants' billing records that was not incurred by these three attorneys.   *See* Doc. No. 203-1.

But Plaintiff provides no legal authority for such a drastic result.[19]   "Fees should be adjusted and hours reduced or eliminated to reflect duplications of services." *Brake v. Murphy*, 736 So. 2d 745, 748 (Fla. Dist. Ct. App. 1999) (citation omitted).   However, "there is nothing inherently unreasonable about a client having multiple attorneys . . ., a reduction for redundant hours is warranted only if the attorneys are unreasonably doing the same work.   An award for time spent by two or more attorneys is proper as long as it reflects the distinct contribution of each lawyer to the case and the customary practice of multiple-lawyer litigation." *Barnes*, 168 F.3d at 432 (citations and internal quotation marks omitted)); *see also Royal Bahamian Ass'n, Inc. v. QBE Ins. Corp.*, No. 10-21511-CIV, 2011 WL 13220459, at *11 (S.D. Fla. May 18, 2011), *report and recommendation adopted*, 2011 WL 13220497

---

[19]   Plaintiff cites to *Sanford v. Omni Hotels Management Corp.*, No. 3:16-cv-1578-J-34PDB, 2020 WL 5260191, at *17 (M.D. Fla. Aug. 19, 2020), *report and recommendation adopted as modified*, 2020 WL 5255122 (M.D. Fla. Sept. 3, 2020), but that case only resulted in a 25% reduction of the attorney hours sought, and not only on the basis that multiple attorneys performed duplicative work, but also due to "heavy redactions, block billing, and [the movant's] failure to identify by line-item the work for which it no longer seeks fees." *Sanford* nowhere held that a party cannot recover for the work of multiple attorneys, or that only one attorney per side is permissible.   And it appears that Plaintiff cites to *National Mining Ass'n v. Secretary, U.S. Department of Labor*, 812 F.3d 843, 854 (11th Cir. 2016) simply to define the term "laboring oar," as the undersigned has not found any discussion of attorneys' fees in that decision, which concerns pre-enforcement challenges to the authority of the Mine Safety and Health Administration to issue certain safety rules.

(S.D. Fla. June 20, 2011) ("[T]he Court deems it important also to note that there is nothing inherently 'inefficient' or duplicative about having multiple lawyers, or even multiple law firms, work together to accomplish the same tasks.   It is common practice in law firms, for instance, to have multiple attorneys review and edit important motions, or for a partner to supervise and review an associate's work." (citations and quotations omitted)).

Turning first to the Legon attorneys' hours before this Court, the undersigned finds that Plaintiff's objections are conclusory and grossly overbroad. Without providing any explanation other than his own opinion that only one lawyer could have done all the work, Plaintiff objects to the hours incurred by every other attorney besides Attorney Legon, and simply notes an "OL" objection by each time entry.   Doc. No. 200, at 5-6, Doc. No. 203-1.   This leaves the undersigned to sift through over 100 pages of records and objections in an attempt to ascertain the validity of Plaintiff's objection.   But "[t]hose opposing fee applications have obligations, too."   *Barnes*, 168 F.3d at 428.   "[O]bjections and proof from fee opponents concerning hours that should be excluded must be specific and reasonably precise."   *Id.* (internal quotation marks and citation omitted).   "[T]he proof of the hours spent in litigation and any corresponding objections posed [must] be voiced with a similar exactitude."   *Duckworth*, 97 F.3d at 1397; *see also Norman*, 836 F.2d at 1301 ("Generalized statements that the time spent was reasonable or

unreasonable . . . are not particularly helpful and not entitled to much weight," and "[a]s the district court must be reasonably precise in excluding hours thought to be unreasonable or unnecessary, so should be the objections and proof from fee opponents.").

Because Plaintiff did not provide any explanation for this objection as it pertains to the Legon attorneys – beyond a conclusory assumption that only one lawyer would suffice - the undersigned will recommend that Plaintiff's objection to the Legon attorneys' hours on this basis be overruled.  *See Domond v. PeopleNetwork APS*, 750 F. App'x 844, 848-49 (11th Cir. 2018) ("The objected-to billing entries were not obviously excessive, duplicative, or indiscernible, so the district court did not abuse its discretion in concluding that [the fee opponents] had to do more than object without a full explanation."); *River Cross Land Co., LLC v. Seminole Cty.*, No. 6:18-cv-1646-ACC-LHP, 2022 WL 20622333, at *15 (M.D. Fla. Dec. 12, 2022), *report and recommendation adopted*, 2023 WL 5748424 (M.D. Fla. Jan. 5, 2023) (overruling objection to attorney hours as duplicative where no explanation was provided as to why the hours were duplicative; only a one-word objection was listed on annotated time records); *Gray v. Novell, Inc.*, No. 8:06-cv-1950-T-33TGW, 2012 WL 3871872, at *8 (M.D. Fla. Sept. 6, 2012) (not considering objections to attorney hours that merely state "unrelated," "duplicative," and "other impermissible," as such objections "are too vague to assist the court in determining the propriety of the time entries."); *see*

*also* Local Rule 7.01(d) (a response to a supplemental motion on the amount of fees "must detail the basis for each objection").[20]

In any event, the undersigned has reviewed the billing records for the Legon attorneys and does not find that they are unreasonably excessive, duplicative, or redundant.   This was a heavily litigated case, with extensive discovery and motions practice, and the undersigned does not find the use of two (2) partners and three (3) associates to be excessive or unreasonable.   Moreover, Attorney Legon represented in his declaration that he removed any excessive, duplicative, or unreasonable charges.   Doc. No. 196-1, at 3.[21]   *See, e.g.*, *Spanakos*, 362 So. 3d at 241 (noting that "a reduction is warranted only if the attorneys are *unreasonably* doing the *same* work." (quoting *Johnson v. Univ. Coll. of Univ. of Ala. in Birmingham*, 706 F.2d 1205, 1208 (11th Cir. 1983))).   The billing records also do not establish that an extensive number of hours were spent in conferences between the Legon attorneys themselves, or that the hours spent researching and preparing motions was excessive.   *See* Doc. No. 196-1, at 9-57; *see also Am. Charities for Reasonable*

---

[20] The undersigned notes that Plaintiff himself utilized three attorneys during this litigation.

[21] The undersigned further notes that the billing records provided by Defendants contain several time entries that were stricken out, further supporting Attorney Legon's representations.   Doc. No. 196-1, at 9-57.   And Plaintiff's expert does not refute this representation, instead focusing primarily on whether the W&S attorney hours before this Court are unreasonably excessive and duplicative.   Doc. No. 200-1, at 6.

*Fundraising Regul., Inc. v. Pinellas Cty.*, 278 F. Supp. 2d 1301, 1315 (M.D. Fla. 2003) ("[T]ime spent in attorney conferences is generally compensable for each participant."); *Spanakos*, 362 So. 2d at 241 (noting that attorney conference time is generally reasonable and compensable because "attorneys must spend at least some of their time conferring with colleagues, particularly their subordinates, to ensure that a case is managed in an effective as well as efficient manner." (quoting *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1337 (D.C. Cir. 1982))).

For these reasons, the undersigned will recommend that the Court reject Plaintiff's objection to the Legon firm hours as duplicative and/or excessive.

But Plaintiff fares far better with his objection to all 219.0 W&S attorney hours expended before this Court.   *See* Doc. No. 200, at 10-11; Doc. No. 203-1, at 1, 131-35.   According to Attorney Lowell's declaration, the work performed by the W&S attorneys at the District Court level related to "preparation for an upcoming jury trial in this case prior to the Court's grant of final summary judgment in Defendants' favor."   Doc. No. 196-2, at 3.   And the billing records Defendants submitted for W&S – which span the time period March 21, 2022 through May 20, 2022 (the date of the order granting summary judgment) show that the services provided included reviewing various case materials such as the docket, discovery, deposition transcripts, and the previously filed summary judgment and other motions papers; getting up to speed on the relevant procedural and legal issues; and preparing for

an anticipated jury trial, which included working on the pretrial statement, proposed jury instructions, motions in limine, and trial exhibits. *Id.*, at 7-9. But the billing records for the Legon attorneys during this same time period show similar types of tasks were performed by the Legon attorneys. *See* Doc. No. 196-1, at 39-53 (listing, among other things, hours expended on reviewing document production and preparing exhibit and witness lists, preparing joint pretrial statement, preparing jury instructions, working on trial motions, trial strategy and preparing for trial).[22]

Defendants provide no further explanation in either their motion or supporting documentation to establish the reasonableness of these W&S attorney hours. To put a finer point on it, Defendants wholly fail to explain why they required the W&S attorneys to prepare for a potential jury trial in addition to the five (5) Legon attorneys (such as some novel or complex issue for which only the W&S attorneys possessed specialized expertise), and they wholly fail to identify or explain how the W&S attorneys performed separate and discrete roles in the litigation before this Court that are not duplicative of those performed by the Legon attorneys. Defendants also utterly fail to explain why hours spent by the W&S

---

[22] *See also* Doc. No. 196-1, at 41 (April 8, 2022 time entry for Attorney Legon, listing "Continued work on chronology of events to assist A. Lowell in coming up to speed in case. . .").

attorneys getting up to speed on the litigation is appropriate and reasonable.   *See U.S. ex rel. Educ. Career Dev., Inc. v. Cent. Fla. Reg'l Workforce Dev. Bd., Inc.*, No. 6:04-cv-93-Orl-19DABC, 2007 WL 1601747, at *4 (M.D. Fla. June 1, 2007) ("While time spent litigating a case is certainly recoverable, time spent 'getting up to speed' or learning about the principles of qui tam actions, which does not advance the case and was not a result of Defendants' actions, is not reasonably billed to a client or one's adversary."); *Lang v. Reedy Creek Improvement Dist.*, No. 94-cv-693-Orl-3ABF(17), 95-cv-956-Orl-3ABF(17), 1997 WL 809200, *3-4 (M.D. Fla. Dec. 23, 1997) (discounting time spent by attorney "getting up to speed" in a sex discrimination case).   *Cf. Centex-Rooney Const. Co. v. Martin Cty.*, 725 So. 2d 1255, 1259 (Fla. Dist. Ct. App. 1999) (finding attorney exercised appropriate billing judgment where she did not bill her client for any time spent by new attorneys "getting up to speed.").

Given the complete absence of any explanation or argument from Defendants, and upon the undersigned's own review of the billing records, the undersigned finds that the work performed by the W&S attorneys at the District Court level was duplicative and excessive, and Defendants have not established such duplicative efforts are reasonable so that the associated fees should be passed on to Plaintiff.   *See Troche v. City of Orlando*, No. 6:14-cv-419-Orl-22KRS, 2015 WL 631380, at *5 (M.D. Fla. Feb. 13, 2015) ("[A] fee applicant is entitled to recover for the hours of multiple attorneys if he satisfies his burden of showing that the time

spent by those attorneys reflects the distinct contribution of each lawyer to the case

. . . .   But the fee applicant has the burden of showing that, and where there is an

objection raising the point, it is not a make-believe burden." (quoting *Barnes*, 168

F.3d at 432)); *see also Spanakos*, 362 So. 3d at 241 ("[A] reduction is warranted only if

the attorneys are unreasonably doing the same work."); *N. Dade Church of God, Inc.*

*v. JM Statewide, Inc.*, 851 So. 2d 194, 196 (Fla. Dist. Ct. App. 2003) ("Duplicative time

charged by multiple attorneys working on the case are generally not

compensable.").

The undersigned therefore will recommend that the Court deduct all 219.0

hours of time expended by the W&S attorneys at the District Court level.   *See, e.g.,*

*Sanford v. Omni Hotels Mgmt. Corp.*, No. 3:16-cv-1578-J-34PDB, 2020 WL 5260191, at

*18-19 (M.D. Fla. Aug. 19, 2020), *report and recommendation adopted as modified*, 2020

WL 5255122 (M.D. Fla. Sept. 3, 2020) (applying 25% overall reduction in attorney

hours due, in part, to duplicative efforts of multiple attorneys); *Canalejo v. ADG,*

*LLC,* No. 8:14-cv-17-T-MAP, 2015 WL 7351446, at *4 (M.D. Fla. Nov. 20, 2015)

(applying 40% across the board reduction to all attorney hours where plaintiff's

attorneys engaged in excessive billing, including unnecessarily duplicating work

for new lead counsel "getting up to speed."); *Vega v. Orlando Hous. Auth.*, No. 6:14-

cv-1700-Orl-22GJK, 2015 WL 5521917, at *7 (M.D. Fla. Sept. 15, 2015) (reducing

attorney hours by 75% where the work appeared redundant, duplicative, and

excessive for a relatively straightforward litigation); *Indyne, Inc. v. Abacus Tech. Corp.*, No. 6:11-cv-137-Orl-22DAB, 2013 WL 11312471, at *19-20 (M.D. Fla. Dec. 6, 2013), *report and recommendation adopted as modified*, 2014 WL 1400658 (M.D. Fla. Feb. 25, 2014), *aff'd*, 587 F. App'x  552 (11th Cir. 2014) (cutting by 80% hours of one attorney, due to the redundancies and duplication in that attorney's time entries); *see also Brake*, 736 So. 2d at 748 ("Fees should be adjusted and hours reduced or eliminated to reflect duplications of services.").[23]

Plaintiff next objects to nearly all of the W&S attorney hours at the Court of Appeals level, leaving only a small portion of Attorney Viebrock's hours.   Doc. No. 203-1, at 136-41.   However, as with Plaintiff's objections to the Legon hours, Plaintiff's objection here is conclusory and unsupported, relying again solely on Plaintiff's opinion that one lawyer could have performed all of the work.   Doc. No. 200, at 10.[24]   On this basis alone, Plaintiff's objection fails.   *See Domond*, 750 F. App'x at 848-49; *River Cross Land Co., LLC*, 2022 WL 20622333, at *15; *Gray*, 2012 WL 3871872, at *8.

---

[23] While the legal authority the undersigned has located on this issue typically applies an across-the-board reduction to all hours, the approach recommended here (cutting all of the W&S hours without reducing the Legon hours) essentially has the same effect as a 50-60% across-the-board reduction for the duplicative hours, particularly in light of the undersigned's recommendation that the W&S hourly rates be reduced to those of the Legon attorneys.

[24] Attorney Stovash does not discuss the appellate hours in this expert declaration. And Plaintiff's unsupported assertion that 30 hours would be reasonable for preparing the appellate brief is not persuasive.   *See* Doc. No. 188, at 25.

Moreover, as discussed below, the undersigned is recommending a deduction of all of Attorney Lerner's time.   Further, the W&S billing records demonstrate that only two partners (Attorneys Lowell and Man) and one associate (Attorney Viebrock) worked on the appeal, that the tasks performed were not duplicative and/or redundant, and that most of the work was pushed down to the associate, who billed at a substantially lower rate.   *See Spanakos*, 362 So. 3d at 241 ("[T]he delegation of work to attorneys who bill at a lower rate than lead counsel can reduce the overall amount of attorney's fees incurred." (citing *Williams v. R.W. Cannon, Inc.*, 657 F. Supp. 2d 1302, 1311 (S.D. Fla. 2009))).   Thus, for the same reasons discussed above, the undersigned will recommend that the Court overrule Plaintiff's objections to the W&S appellate hours.

The last objection on the basis of excessive and/or duplicative hours focuses on the 72.7 hours the W&S attorneys expended on preparing and filing Defendants' response to Plaintiff's petition for writ of certiorari.   Doc. No. 200, at 11.   Plaintiff contends that Defendants' response was essentially cut and pasted from Defendants' appellate brief, and that such work should realistically take only 10-15 hours, and not the requested 72.7.   *Id.*   Plaintiff also asserts that all of the hours other than those incurred by Attorney Man are duplicative and excessive.   Doc. No. 203-1, at 142-44.   But once again, Plaintiff provides no evidence or legal authority to support this objection – Plaintiff has not even submitted a copy of the

two briefs so that the undersigned could verify Plaintiff's assertions.   *See Domond*, 750 F. App'x at 848-49; *River Cross Land Co., LLC*, 2022 WL 20622333, at *15; *Gray*, 2012 WL 3871872, at *8.   And upon the undersigned's own review of the billing records, it does not appear that the attorneys unnecessarily engaged in duplicative efforts.   The tasks are sufficiently described and appear to show each attorney's efforts, and the undersigned does not find 72.7 hours – less than two 40-hour work weeks – to be excessive when drafting and finalizing a response to a petition for writ of certiorari before the United States Supreme Court.   Further, as discussed in this Report, the undersigned is recommending a deduction of all of Attorney Lerner's time and some of Attorney Viebrock's hours which are clerical in nature. The undersigned therefore will not recommend any further reductions to the hours spent on the response to the writ of certiorari.

In sum, the undersigned recommends a reduction of all 219.0 hours incurred by the W&S attorneys for work performed at the District Court level, and further recommends that Plaintiff's objections be otherwise overruled.

F.      *Travel Time and "Unidentified Staff"*

In a footnote in his opposition brief, Plaintiff states that "time recorded for travel . . . and time for unidentified staff without qualifications presented (*e.g.* "Paralegal") are all unrecoverable."   Doc. No. 200, at 11, n.17.   In his exhibit, Plaintiff expands on these objections, arguing that travel time cannot be recovered

"because there is no showing that local attorneys were not available," and that paralegal time is not recoverable because it was performed "by an unidentified person whose qualifications are completely unknown, whose billing rate is entirely unsupported, and who appears to have been performing clerical rather than professional tasks."   Doc. No. 203-1, at 2.

      *1.*    *Paralegal Hours*

Turning to the paralegal objection first, Plaintiff objects to all 40.60 hours of paralegal time charged by the Legon firm for work performed in this Court.   Doc. No. 203-1.   To the extent Plaintiff challenges these hours on the grounds that the paralegal's identity and qualifications were not provided, that objection is belied by the record.   The declaration of Attorney Legon clearly identifies the paralegal as Rosa Espinosa and provides her qualifications.   Doc. No. 196-1, at 6.   And the undersigned has already found – and will recommend – that an hourly rate of $150.00 is appropriate for Ms. Espinosa's work on this case.

The undersigned agrees with Plaintiff that clerical work is not recoverable even when performed by a paralegal.   *See Scelta*, 203 F. Supp. 2d at 1334 ("[T]he efforts of a paralegal are recoverable only to the extent the paralegal performs work traditionally done by an attorney.   Where that is not the case, paralegal work is viewed as falling within the category of unrecoverable overhead expenses." (citations and quotation marks omitted)).   But upon the undersigned's own review

of the time entries, it is clear that not all of the objected-to-entries qualify as clerical tasks.    For example, Plaintiff objects to Paralegal Espinosa's hours spent on preparing notices of deposition, working on document production, and preparing witness and exhibit lists and objections for trial.[25]   These types of tasks constitute work normally performed by an attorney, and are therefore recoverable.   *See River Cross Land Co., LLC*, 2022 WL 20622333, at *12 (finding paralegal hours spent preparing and finalizing document production, drafting witness and exhibit lists for trial, and preparing notices of depositions to be recoverable); *Sembler Fam. P'ship No. 41, LTD. v. Brinker Fla., Inc.*, No. 8:08-cv-1212-T-24MAP, 2009 WL 3790339, at *2 (M.D. Fla. Nov. 9, 2009) (work that was performed in preparation for depositions is not clerical and is recoverable); *S.E.C. v. Kirkland*, No. 6:06–cv–183-JA-KRS, 2008 WL 3981434, at *9 (M.D. Fla. Aug. 21, 2008) (noting that recoverable paralegal work includes "factual investigation, including locating and interviewing witnesses; assistance with depositions, interrogatories, and document production; compilation of statistical and financial data; checking legal citations; and drafting correspondence" (quoting *Missouri v. Jenkins,* 491 U.S. 274, 288 n.10 (1989))); *Strickland v. Air Rescue Air Conditioning, Inc.*, No. 8:15-cv-1017-T-23AEP, 2016 WL

---

[25]   *See* Doc. No. 203-1, at 33 (October 21, 2021 entry), at 36 (November 1, 2021 entry), at 75 (March 14, 2022 entry), at 85 (April 7, 2022 entry), at 87 (April 8, 2022 entry), at 97 (April 18, 2022 entry), and at 99 (April 19, 2022 entry).

11581971, at *4 (M.D. Fla. Aug. 25, 2016), *report and recommendation adopted*, 2016 WL 11581970 (M.D. Fla. Sept. 12, 2016) (permitting recovery for work performed by paralegals that includes reviewing deadlines on case management order, preparing and serving notices of depositions and notices of mediation, reviewing correspondence from client and other documents).

However, there are some time entries that clearly do consist of clerical tasks. For example, Defendants seek to recover for paralegal time spent on preparing deposition notebooks, preparing deposition exhibits, and preparing research, discovery, and exhibit binders.[26]   Such tasks are purely clerical in nature and are neither reasonable nor compensable.   *See River Cross Land Co.*, 2022 WL 20622333, at *13 (deducting hours spent on preparing deposition and trial binders, and hours spent on preparing exhibits for depositions as purely clerical in nature and neither reasonable nor compensable); *Kahn v. Cleveland Clinic Fla. Hosp.*, No. 16-61994-CIV, 2020 WL 10502419, at *6 (S.D. Fla. Apr. 20, 2020) (eliminating paralegal hours spent on clerical work, including preparing trial binder, exhibit binder, and deposition binder); *Strickland*, 2016 WL 11581971, at *4 (deducting paralegal hours for clerical or secretarial work, "including contacting court reporters, calendaring deadlines,

---

[26] *See*, Doc. No. 203-1, at 37 (November 2, 2021 entries), at 84 (April 5, 2022 entry), at 85 (April 6, 2022 entry), at 88 (April 11, 2022 entry), at 89 (April 12, 2022 entry), and at 95 (April 15, 2022 entry).

gathering and copying documents, preparing binders and exhibits, and filing and mailing documents"); *Knight v. Paul & Ron Enters., Inc.*, No. 8:13-cv-310-T-36EAJ, 2015 WL 2401504, at *8 (M.D. Fla. May 18, 2015) (noting that time spent calendaring deadlines, handling scheduling issues, gathering documents, and preparing trial binders and exhibits constituted clerical work, and accordingly deducting the hours specifically identified and objected to by the defendant).

Based on this precedent and a review of the billing records, the undersigned will recommend that Plaintiff's paralegal objection be sustained in part, and that Paralegal Espinosa's hours be reduced by 21.90 hours as these hours represent non-compensable clerical tasks.[27]

With respect to W&S, Plaintiff objects to all 3.40 hours of Attorney Lerner's time (2.30 hours before the Court of Appeals, and 1.10 hours regarding the response to the petition for writ of certiorari), arguing that the time is both paralegal and clerical in nature.   Doc. No. 203-1, at 136, 143-44.   Upon review, the undersigned agrees.   The undersigned has already found that Defendants failed to provide any explanation of Attorney Lerner's qualifications, and the descriptions attached to these hours simply state that Attorney Lerner electronically submitted attorney

---

[27] Calculated as follows:   *See,* Doc. No. 203-1, at 37 (November 2, 2021 entries for 1.50 and 2.0 hours each), at 84 (April 5, 2022 entry for 3.70 hours), at 85 (April 6, 2022 entry for 5.50 hours), at 88 (April 11, 2022 entry for 2.70 hours), at 89 (April 12, 2022 entry for 2.50 hours), and at 95 (April 15, 2022 entry for 4.0 hours).

admissions applications; electronically filed the appellee brief, the response in opposition to the petition for writ of certiorari, and response in opposition to a motion to file an amicus brief; and coordinated transmission by courier of paper copies of the appellee brief to the Court of Appeals.  *See id.*  Such tasks, whether performed by an attorney or a paralegal, are clearly clerical in nature and therefore neither reasonable nor compensable.  *See Scelta*, 203 F. Supp. 2d at 1334; *Peress*, 597 F. Supp. 2d at 1325-26; *Strickland*, 2016 WL 11581971, at *4.  Accordingly, the undersigned will recommend that the Court deduct all 3.40 hours attributable to Attorney Lerner.  *See Holmes v. Collier Cty. Bd. of Comm'rs*, No. 2:09-cv-381-FtM-36SPC, 2011 WL 4048962, at *5 (M.D. Fla. Sept. 13, 2011), *report and recommendation adopted*, 2012 WL 718809 (M.D. Fla. Mar. 6, 2012) (deducting attorney hours as clerical that were spent on tasks such as formatting motions and responses and filing documents with the court).

In sum, the undersigned recommends that the paralegal hours from the Legon firm be reduced by 21.90 hours to a new total of 18.70 hours, and that Attorney Lerner's hours be reduced to zero.  The undersigned will further recommend that Plaintiff's paralegal objection be overruled in all other respects.

2.   *Travel Time*

Plaintiff also objects to 76.50 hours of attorney time expended by Attorneys Legon and Rufat for travel to and from Miami (where the Legon firm is located) to

Orlando.   Doc. No. 200, at 11, n.17; Doc. No. 203-1, at 2, 17, 41-42, 68.   According to Plaintiff, Defendants should not be able to recover any fees for these hours because Defendants have not established that local Orlando attorneys were not available to litigate this case.   Doc. No. 203-1, at 2.

There is no bright-line rule with respect to recovering attorney fees for counsel's travel time; indeed "[c]ourts in the Middle District have taken varying approaches to awarding fees for travel time.   Some have deducted the time where able counsel was available, some have awarded it, and others have reduced the number of recoverable hours."   *Martinez v. Hernando Cty. Sheriff's Off.*, No. 8:12-cv-666-T-27TGW, 2013 WL 6047020, at *3 (M.D. Fla. Nov. 13, 2013) (collecting cases);*see also Redish v. Blair*, No. 5:14-cv-260-Oc-22PRL, 2015 WL 6688410, at *2 (M.D. Fla. Oct. 30, 2015) (reducing hours spent on travel where were "incurred in part because Defendant chose a law firm located in Orlando when this matter was pending in Ocala.").   However, it appears that Florida courts have taken a much clearer approach, and do not award fees for travel time where able local counsel is available.   *See Dish Network Serv. L.L.C. v. Myers*, 87 So. 3d 72, 78–79 (Fla. Dist. Ct. App. 2012) ("In Florida, the longstanding rule is that an award of attorneys' fees should not include travel time 'without proof that a competent local attorney could not be obtained.'" (quoting *Mandel v. Decorator's Mart, Inc. of Deerfield Beach*, 965 So.2d 311, 315 (Fla. Dist. Ct. App. 2007))); *Fence Wholesalers of Am., Inc. v. Beneficial*

*Com. Corp.*, 465 So. 2d 570, 570 (Fla. Dist. Ct. App. 1985) (remanding attorneys' fees award to reduce for travel time, where there was no showing that a competent local attorney could not be obtained).   *Cf. Centex-Rooney Const. Co. v. Martin Cty.*, 725 So. 2d 1255, 1261 (Fla. Dist. Ct. App. 1999) (allowing fees for travel time where there was testimony that no local law firm had both the resources and the expertise to handle such a complex case).

The undersigned agrees that Defendants have the right to choose their own attorneys, and that "[t]here is no requirement that plaintiffs retain counsel located within the city limits of the courthouse."   *Baez v. LTD Fin. Servs., L.P.*, No. 6:15-cv-1043-Orl-40TBS, 2019 WL 2223773, at *7 (M.D. Fla. May 23, 2019).   And Defendants selected experienced counsel to represent them – with great success.   However, the Legon firm and Attorneys Legon and Rufat practice in Miami, which required them to travel to Orlando on several occasions for this case.   This travel time cannot reasonably be passed onto Plaintiff, since there are certainly many local attorneys who are qualified to handle a case of this nature, and who would not have been required to travel.[28]   *See Martinez*, 2013 WL 6047020, at *4.   Defendants make no argument to the contrary.   *See, e.g., Redish*, 2015 WL 6688410, at *2 ("While

---

[28] The undersigned notes that since Plaintiff filed this case (August 19, 2020), 17 other cases asserting claims for libel, slander, and/or defamation were filed in the Orlando Division alone, which strongly suggests that local counsel familiar with the legal issues in this case reside and work within the Orlando area.

Defendant is free to choose the representative of its choice, the fact that counsel needs extra travel time in order to attend mediation is not necessarily taxable to Plaintiff and should be reduced."); *Dish Network Serv. L.L.C.*, 87 So. 3d at 78–79 (requiring deduction of all travel time where there was no competent substantial evidence that the movant could not obtain a competent local lawyer, and no evidence that the case required any specialized expertise or board certified attorney).

Given Defendants' complete failure to make any argument on this issue, and in light of the persuasive precedent listed above, the undersigned will recommend a deduction for the travel time incurred by Attorneys Legon and Rufat.[29]   *See Ranize v. Town of Lady Lake, Fla.*, No. 5:11-cv-646-Oc-PRL, 2015 WL 1037047, at *6 (M.D. Fla. Mar. 10, 2015) ("Absent a showing of a lack of qualified counsel, travel

---

[29] The Presiding District Judge took a similar approach in another recent case, and rejected all travel hours due to a lack of evidence that able local counsel was not available. *See Johnston v. Borders*, No. 6:15-cv-936-Orl-40DCI, 2019 WL 8105896, at *2 (M.D. Fla. July 30, 2019), *vacated and remanded on other grounds*, 36 F.4th 1254 (11th Cir. 2022) ("This Court also agrees that a reduction in time for travel is warranted.   Plaintiff has the right to select counsel of her choice, but where that selection results in incurring additional fees and costs, it is not fair to shift that burden onto Defendants without an adequate showing that local counsel was not available or improper conduct on the part of the opposing party necessitated incurring the additional fees.").   Although the Court of Appeals vacated the attorneys' fees award, the issue of travel time was not addressed in that decision.   *See also Baez*, 2019 WL 2223773, at *6-7 (reducing travel time by only 10%, but finding that any greater reduction would result in an impermissible double deduction based on other reductions in attorney hours, and finding that the case was difficult, and required experienced attorneys).

time is not properly visited on one's adversary." (citations omitted)); *Cox Enters., Inc. v. News-Journal Corp.*, No. 6:04-cv-698-Orl-28DAB, 2012 WL 6212861, at *7 (M.D. Fla. Nov. 13, 2012), *report and recommendation adopted*, 2012 WL 6539397 (M.D. Fla. Dec. 13, 2012) (finding that "the decision to retain out of town counsel resulted in fees for time spent in travel that are not subject to cost shifting"); *John M. Floyd & Assocs., Inc. v. First Fla. Credit Union*, No. 3:09-cv-168-J-MCR, 2012 WL 162331, *2 (M.D. Fla. Jan. 19, 2012) (stating that while defendant was "free to choose the representative of its choice, the fact that such a representative need[ed] a full day of travel time in order to attend discovery events and mediation" was not necessarily taxable to plaintiff and finding it appropriate to reduce the travel time); *Demers v. Adams Homes of Nw. Fla., Inc.*, No. 6:06-cv-1235-Orl-31KRS, 2008 WL 2413934, at *2 (M.D. Fla. June 11, 2008), *aff'd*, 321 F. App'x 847 (11th Cir. 2009) (reducing time entries including travel time, where lawyers traveled 72 miles from Melbourne to Orlando).

Plaintiff has identified three (3) time entries for Attorney Rufat that involve travel:   August 25, 2021 for 8.50 hours, November 9, 2021 for 9.0 hours, and November 10, 2021 for 8.0 hours.   Doc. No. 203-1, at 17, 41.   Plaintiff also identifies four (4) time entries for Attorney Legon that involve travel:   November 8, 2021 for 10.0 hours, January 30, 2022 for 5.70 hours, January 31, 2022 for 10.0 hours, February

1, 2022 for 5.30 hours.   *Id.*, at 40-41, 68.[30]   A review of the descriptions for these time entries show that they include both non-compensable travel time, and compensable attorney tasks such as preparing and attending depositions.   *Id.* Because Defendants have not specified how many hours are attributable to each task, the undersigned will recommend a 50% reduction in these hours.   This results in a reduction of 12.75 hours for Attorney Rufat (total of 25.50 hours x .50), and a reduction of 15.50 hours for Attorney Legon (total of 31 hours x .50).[31]

## VII.   THE FINAL LODESTAR AMOUNT

Having considered the objections raised by Plaintiff, and upon the undersigned's own review of the submitted evidence, the undersigned finds that the reasonable hourly rates applied to the reasonable hours as reduced above results in the following total amounts:

---

[30]  Plaintiff identifies two other time entries for Attorney Legon, a November 9, 2021 time entry for 9.0 hours, and November 10, 2021 time entry for 10.0 hours.   Doc. No. 203-1, at 41, 42.   However, the descriptions for those entries only list compensable services, such as preparing for and attending depositions; there is no indication from the billing records or from Plaintiff's objections that these time entries involved travel time.   While it stands to reason that at some point Attorney Legon returned to Miami, the undersigned is unwilling to speculate as to when that occurred, or as to whether such travel hours are included in the requested fee award.

[31]  By making this reduction, the undersigned notes that this also takes into account any block billing for these specific time entries, and also recognizes that the purposes for the travel time were reasonable.   *See, e.g., River Cross*, 2022 WL 20622333, at *13-14 (reducing hours by 50% for time entries that combined both compensable and non-compensable work).

| **Legon Attorneys** | **Hours** | **Rates** | **Total** |
| --- | --- | --- | --- |
| Todd R. Legon | 616.00 | $475.00 | $292,600.00 |
| William F. Rhodes | 107.50 | $400.00 | $43,000.00 |
| Elizabeth Y. Slagle | 293.30 | $375.00 | $109,987.50 |
| Raymond M. Rufat | 516.65 | $350.00 | $180,827.50 |
| Wendy Polit Karp | 50.70 | $350.00 | $17,745.00 |
| Rosa Espinosa (Paralegal) | 18.70 | $150.00 | $2,805.00 |
| **W&S Attorneys** | **Hours (Appellate Only)** | **Rates** | **Total** |
| Abbe Lowell | 24.60 | $475.00 | $11,685.00 |
| Christopher Man | 112.60 | $400.00 | $45,040.00 |
| Sarah Viebrock | 90.60 | $375.00 | $33,975.00 |
| Lauren Gailey | 8.70 | $350.00 | $3,045.00 |
| Lane Lerner | 0.00 | $140.00 | $0.00 |

**Total:  $740,710.00**

## VIII.  THE REASONABLENESS FACTORS OF FLA. STAT. § 768.79(8)(B)

Plaintiff's final challenge to Defendants' requested fees is an argument that under the factors set forth in Fla. Stat. § 768.79(8)(b), the requested fees are not reasonable and therefore must be drastically reduced, if not eliminated entirely. Doc. No. 200, at 13-19.   Section 768.79(8)(b) provides that:

(b) When determining the reasonableness of an award of attorney's fees pursuant to this section, the court shall consider, along with all other relevant criteria, the following additional factors:

1. The then apparent merit or lack of merit in the claim.

2. The number and nature of offers made by the parties.

3. The closeness of questions of fact and law at issue.

4. Whether the person making the offer had unreasonably refused to furnish information necessary to evaluate the reasonableness of such offer.

5. Whether the suit was in the nature of a test case presenting questions of far-reaching importance affecting nonparties.

6. The amount of the additional delay cost and expense that the person making the offer reasonably would be expected to incur if the litigation should be prolonged.

Fla. Stat. § 768.79(8)(b).

The undersigned has considered these factors, Plaintiff's arguments, and the record as a whole, and finds that the recommended fees are reasonable under §768.79(8)(b), and therefore will not recommend any further reductions.   As to factors one and three – the then merit of the claims, and the closeness of the questions of law and fact – Plaintiff argues that these factors weigh in favor of a reduction because at the time the offers of judgment were made (May 25, 2021), Plaintiff's claims had survived two motions to dismiss, and Judge Byron had denied Defendants' motion for sanctions under Federal Rule of Civil Procedure 11.   Doc. No. 188, at 25-26, Doc. No. 200, at 13.

Plaintiff's original complaint and first amended complaint were both dismissed without prejudice with leave to amend, based on two motions to dismiss Defendants filed pursuant to Federal Rule of Civil Procedure 12(b)(6).   *See* Doc. Nos. 28, 34.   In making these rulings, Judge Byron did not speak to the merits of Plaintiff's claims, but rather addressed the sufficiency of Plaintiff's pleadings.   In the absence of any authority to the contrary, the undersigned does not find that such rulings establish that Plaintiff's claims were meritorious, or that the questions of law and fact were close.   *S. Nuclear Operating Co., Inc. v. Elec. Data Sys. Corp.*, No. 1:06-CV-1988-TCB, 2007 WL 9758013, at *1 (N.D. Ga. May 16, 2007), *on reconsideration*, No. 1:06-CV-1988-TCB, 2007 WL 9758014 (N.D. Ga. July 6, 2007), *aff'd*, 273 F. App'x 834 (11th Cir. 2008) ("[T]he purpose of a motion to dismiss under Rule 12(b)(6) 'is to test the formal sufficiency of the statement of the claim for relief; the motion is not a procedure for resolving a contest between the parties about the facts or the substantive merits of the case.'" (quoting 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (3d ed. 2004))).   Moreover, the Court later held that Plaintiff's claims for injunctive relief were clearly without merit from near inception.   *See* Doc. No. 184; Doc. No. 180, at 12-14.

The Court also previously addressed Plaintiff's Rule 11 argument and found it unpersuasive.   *See* Doc. No. 184; Doc. No. 180, at 17.   And in the absence of any new legal authority in support, it is equally unpersuasive here.   In any event,

whether a complaint survives a Rule 11 challenge does not equate to a claim having substantive merit.   *See, e.g., In re Miller*, 414 F. App'x 214, 217-18 (11th Cir. 2011) (per curiam) ("[M]otions to dismiss and motions for sanctions serve different purposes and are governed by different standards. . . .   Thus, many arguments which might support a motion to dismiss would fail to provide a sufficient basis for a motion for sanctions." (citations omitted)); *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998) (noting the different standards for a Rule 11 motion and a motion for summary judgment); *see also Kowalski*, 2014 WL 4101567, at *5 (awarding fees under Fla. Stat. § 768.79 and finding that the filing of a Rule 11 motion indicated how strongly the defendant believed the plaintiff would not prevail on her claim, and it was "readily apparent" that the defendant was entitled to summary judgment).

The undersigned also finds Plaintiff's argument lacking as to the third factor – the closeness of questions of fact and law at issue - given both this Court and the Eleventh Circuit's holdings that "there is not even a scintilla of evidence showing – much less clear and convincing proof of – actual malice."   Doc. No. 159, at 17; *see also* Doc. No. 175, at 6-7 (affirming District Court finding that Plaintiff "submitted no evidence from which a jury might plausibly infer" actual malice).   *See Muegge v. Heritage Oaks Gulf & Country Club, Inc.*, No. 8:05-cv-354-T-24MAP, 2006 WL 1678840, at *4-6 (M.D. Fla. June 16, 2006) (declining to reduce fee award and finding

it reasonable under prior version of § 768.79 "especially given the complete lack of evidence in support of Plaintiff's claim."). *Cf. Atl. Marine Fla., LLC v. Evanston Ins. Co.*, No. 3:08-cv-538-J-20JBT, 2015 WL 12839134, at *5 (M.D. Fla. Nov. 24, 2015), *report and recommendation adopted*, 2016 WL 3407825 (M.D. Fla. June 16, 2016) (reducing fees by an additional 20 percent under prior version of Fla. Stat. § 768.79, in part where the questions of law at issue were close, reasonable minds could differ on the interpretation of insurance policy language, the insurer's exposure was significant in light of an amended final judgment in excess of $600,000, and the offers of judgment were nominal in light of this actual judgment).

Plaintiff's arguments as to the second factor – the number and nature of the offers made – is a near identical recitation of the same arguments (with the same case authority) Plaintiff raised during the entitlement stage regarding whether Defendants' offers were made in good faith. *Compare* Doc. No. 200, at 13-17, *with* Doc. No. 178, at 13-18. The Court rejected those arguments and held that Plaintiff failed to carry his burden of establishing that the offers were not made in good faith. Doc. No. 184; Doc. No. 180, at 19-22. That ruling applies equally here, and Plaintiff has made no argument nor presented any authority suggesting that the good faith factor can or should be revisited when addressing the reasonableness of the amount of the fee award under § 769.79(8)(b)(2). *See Arce v. Wackenhut Corp.*, 146 So. 3d 1236, 1240–41 (Fla. Dist. Ct. App. 2014) ("It is evident from a plain reading of the

statute and the rule that the issue of good faith is not a factor to be considered by the court in determining the amount and reasonableness of the fees and costs to be awarded."); *Kowalski*, 2014 WL 4101567, at *7 (finding total fees reasonable under prior version of § 768.79 "given the contentiousness of th[e] litigation," and that plaintiff's rejection of the nominal offer of judgment was unreasonable given the state of the law governing the claims at issue).

As to the fourth factor, Plaintiff argues that Defendants unreasonably refused to furnish information necessary for Plaintiff to evaluate the reasonableness of the offers of judgment when Defendants "improperly withheld their entire document production for eight months, until after their offer had expired, and the Court sanctioned them for doing so."   Doc. No. 200, at 17.   But Plaintiff does not explain what information was withheld, or how that information "crippled the Plaintiff's ability to evaluate the reasonableness of [Defendants'] offer."   *Id.*; *see also TMH Med. Servs., LLC v. Nat'l Union Fire Ins. Co. of Pittsburg, PA*, No. 6:17-cv-920-Orl-37DCI, 2020 WL 4188209, at *4 (M.D. Fla. July 21, 2020) (finding fourth factor under prior version of § 768.79 was not satisfied where opposing party failed "to adequately explain how [the allegedly withheld] information affected its decision to reject the Proposal for Settlement.").   The undersigned also finds this argument somewhat contradictory, given Plaintiff's repeated and vigorous assertions that the

offers of judgment were nominal, did not bear any reasonable relationship to the claims, and were "designed to fail."[32]

Turning to the last factor - the amount of the additional delay and expense Defendants could reasonably expect to incur – the undersigned finds this factor weighs in favor of the recommended fee award.   At the time that Defendants made their offers of judgment, the case had already been vigorously litigated, and was not even at the halfway point.   While the claims had been crystalized, nearly seven (7) months of discovery remained, as well as the deadlines for mediation, summary judgment and *Daubert* motions, and trial preparation.   *See* Doc. No. 22.   From May 25, 2021 to the date of judgment, the case continued to be heavily litigated, with numerous discovery and other motions, and as Plaintiff himself notes, an extensive and lengthy summary judgment motions practice.   By the undersigned's count, Plaintiff's rejection of the offers of judgment (which the Court has determined were made in good faith) resulted in another 18 months of litigation – including appeals – and another several months of litigation on the fees entitlement issue.   And there is nothing before the undersigned suggesting that Defendants failed to account for

---

[32] The sanctions Plaintiff references relate to a motion to compel filed on July 9, 2021, well after the 30-day period for accepting Defendants' offers of judgment had expired, for which Defendants failed to timely respond, and the undersigned therefore granted as unopposed.   Doc. Nos. 38-39, 45.   Moreover, Plaintiff's own motion explains that Defendants had responded to the discovery requests (albeit not to Plaintiff's liking), and there is no indication that Defendants failed to comply with the undersigned's Orders.

the additional cost and delay they could expect to incur if litigation proceeded; if anything the offers were a "manifestation of a business or legal strategy that accounted for potential cost and delay." *TMH Med. Servs., LLC*, 2020 WL 4188209, at *5; *see also Am. Home Assur. Co. v. Weaver Aggregate Transp., Inc.*, 89 F. Supp. 3d 1294, 1301 n.7 (M.D. Fla. 2015) (under prior version of Fla. Stat. § 768.79(8)(b), finding that the factors weighed in favor of the fee award in part because the defendant's refusal to accept the offer of judgment "resulted in an additional 2.5 years of litigation, and nearly a year of post-trial motions practice").

The only factor that potentially weighs in favor of a reduction of the fee award is the fifth.   The undersigned agrees that this case was not in the nature of the "test case" and did not present questions of far-reaching importance affecting nonparties. However, the undersigned does not find that this lone factor is sufficient to outweigh the other § 768.79(8)(b) factors such that a reduction of the fee award is warranted.   Accordingly, the undersigned will recommend that the Court find the suggested fee award in this report reasonable under § 768.79(8)(b), and that no further reductions be made.   *Cf. SB Holdings I, LLC*, 2022 WL 3711770, at *6 (discussing the § 768.79(8)(b) factors and the lodestar and finding fee award reasonable); *Egwuatu v. Burlington Coat Factory Warehouse Corp.*, No. 8:10-cv-996-T-33TGW, 2011 WL 3793457, at *6 (M.D. Fla. Aug. 25, 2011) (considering the reasonableness factors in prior version of § 768.79 but noting that "none [of the

factors] warrant[ ] an adjustment to the lodestar, which is presumed to be a reasonable attorneys' fee"); *Tiara Condo. Ass'n, Inc. v. Marsh USA, Inc.*, 697 F. Supp. 2d 1349, 1361, n.7 (S.D. Fla. 2010) (noting that the § 768.79(8)(b) factors "do not substantively change" the lodestar analysis).[33]

## IX.    RECOMMENDATION

For the foregoing reasons, the undersigned **RESPECTFULLY RECOMMENDS** that Defendants' Application for Attorneys' Fees Pursuant to Eleventh Circuit Rule 39-2 (Doc. No. 186); Supplemental Motion for Attorneys' Fees on Amount With Incorporated Memorandum of Law (Doc. No. 196); and

---

[33] Plaintiff raises two final arguments.   The first is that under the Florida Rules of Professional Conduct, a court may reduce a fee award where there is a definite and firm conviction that the requested fees are overreaching or unconscionable.   Doc. No. 200, at 18-19.   For the reasons stated in this (perhaps overly) lengthy report, the undersigned finds that the requested fees – as reduced – are neither overreaching nor unconscionable. Second, Plaintiff argues that to award such a high amount of fees would violate due process.   *Id.*, at 19-20.   But other than referencing Supreme Court decisions related to punitive damages, Plaintiff cites to no authority to support this argument.   The one decision he cites, *Toussie v. County of Suffolk*, No. 01-CV-6716 JS ARL, 2012 WL 3860760, at *6 (E.D.N.Y. Sept. 6, 2012) did not address fees under Fla. Stat. § 768.79, and reduced fees in part due to the movant's lack of success on various claims, and inclusion of fees that had previously been awarded, were duplicative, or included impermissible travel, among other things.   Thus, the undersigned recommends that the Court reject Plaintiff's final two arguments.

Plaintiff also appears to argue against any award of non-taxable expenses.   Doc No. 200, at 6, n. 8.   But Defendants have made no such request.   In their motion for appellate fees, Defendants reference $481.00 for "disbursements," but provide no further explanation.   Doc. No. 186, at 12; *see also* Doc. No. 186-1, at 39 (listing $481.00 for court costs and fees).   Given the lack of explanation, the undersigned has not recommended any award of costs or non-taxable expenses and has removed this $481.00 from the recommended fee awards.

Supplemental Motion for Appellate Attorneys' Fees (Doc. No. 197) each be **GRANTED IN PART AND DENIED IN PART.** The undersigned further **RECOMMENDS** that Defendants be awarded attorneys' fees in the total amount of **$740,710.00**, and that in all other respects, the motions be **DENIED**.

## NOTICE TO PARTIES

A party has fourteen days from the date the Report and Recommendation is served to serve and file written objections to the Report and Recommendation's factual findings and legal conclusions. Failure to serve written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. 11th Cir. R. 3-1.

Recommended in Orlando, Florida on January 4, 2024.

_____
LESLIE HOFFMAN PRICE
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy